Exhibit "A"

(part 1)

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

NOVEMBER 2022

E-Filing Number: 2211045880

002195

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| GEORGE E. NORCROSS III | REPUBLIC FIRST BANCORP, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 350 ROYAL PALM WAY SUITE 500 PALM BEACH FL 33480 | 50 SOUTH 16TH STREET SUITE 2400 PHILADELPHIA PA 19102 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| GREGORY B. BRACA | HARRY MADONNA |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 350 ROYAL PALM WAY SUITE 500 PALM BEACH FL 33480 | 50 SOUTH 16TH STREET SUITE 2400 PHILADELPHIA PA 19102 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| PHILIP A. NORCROSS | ANDREW B. COHEN |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2 COOPER STREET CAMDEN NJ 08102 | 50 SOUTH 16TH STREET SUITE 2400 PHILADELPHIA PA 19102 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 3 | 7 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal ☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☐ Jury ☐ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☒ Commerce ☐ Minor Court Appeal ☐ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

CASE TYPE AND CODE

1S - STOCKHOLDERS' SUITS

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

NOV 22 2022

**E. HAURIN**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES      NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: GEORGE E NORCROSS III, GREGORY B BRACA , PHILIP A NORCROSS

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| SHAWN F. SUMMERS | 1735 MARKET STREET 51ST FLOOR PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)864-8347 | (215)864-8999 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 327471 | summerss@ballardspahr.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| SHAWN SUMMERS | Tuesday, November 22, 2022, 02:39 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

1. REPUBLIC FIRST BANCORP, INC.
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102
2. HARRY MADONNA
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102
3. ANDREW B. COHEN
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102
4. LISA JACOBS
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102
5. HARRIS WILDSTEIN
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102
6. PETER B.. BARTHOLOW
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102
7. BENJAMIN C. DUSTER IV
   50 SOUTH 16TH STREET SUITE 2400
   PHILADELPHIA PA 19102

George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,

        Plaintiffs,

vs.

Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,

        Defendants.

Filed and Attested by the Office of Judicial Records COMW 2022 11:38pm E. MAURIN

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

CASE NO. _____

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la courte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Case ID: 221102195

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-6333
TTY (215) 451-6197

ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

# COMMERCE PROGRAM ADDENDUM
## TO CIVIL COVER SHEET

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

**X** 1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

    a. Uniform Commercial Code transactions;

    b. Purchases or sales of business or the assets of businesses;

    c. Sales of goods or services by or to business enterprises;

    d. Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

    e. Surety bonds;

    f. Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

    g. Franchisor/franchisee relationships.

3. Actions relating to trade secret or non-compete agreements;

4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

5. Actions relating to intellectual property disputes;

6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

7. Derivative actions and class actions based on claims otherwise falling within these ten types, such as shareholder class actions, but not including consumer class actions, personal injury class actions, and products liability class actions;

8. Actions relating to corporate trust affairs;

9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

BALLARD SPAHR LLP
By: Adrian R. King, Jr. (PA No. 69315)
    M. Norman Goldberger (PA No. 28241)
    Laura E. Krabill (PA No. 76879)
    Shawn F. Summers (PA No. 327471)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8622
kinga@ballardspahr.com

Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN

*Attorneys for Plaintiffs*

| | |
|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>              Plaintiffs,<br><br>vs.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>              Defendants. | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY<br><br><br>CASE NO. _____ |

## VERIFIED COMPLAINT

Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,

for their Verified Complaint ("Complaint") against defendants Republic First

Bancorp, Inc. ("Republic First" or the "Company"), a Pennsylvania corporation, and

its current directors, Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris

Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV (collectively, the

"Director Defendants" and, together with Republic First, the "Defendants"), by their

Case ID: 221102195

undersigned attorneys, allege, upon personal knowledge with regard to Plaintiffs' own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a clear case of a board of directors (the "Board") of a Pennsylvania company ignoring the will of the shareholders and altering the corporate governance of the Company to frustrate a proxy contest and a special meeting request and thereby entrench themselves at the expense of fundamental shareholder voting rights. Defendants' wrongful actions are specifically designed to undermine Plaintiffs' right to contest the election of directors and to impinge on the most basic rights of all of the Company's shareholders to determine by vote the rightful managers of their company. The Board's improper actions cannot be allowed to stand.

2. Republic First is a Pennsylvania company and the holding company for Republic First Bank ("Republic Bank"). At all relevant times until November 4, 2022, the Republic First Board consisted of eight director seats, with three classes of directors (Classes I, II, and III). After the Board's 2021 annual meeting, the directors were: defendant Madonna and non-party Brian Tierney (Class I); defendants Jacobs, Wildstein and Cohen (Class II); and non-parties Vernon W. Hill, II, Barry L. Spevak and Theodore J. Flocco, Jr. (Class III).

| April 2022 Board | | |
|---|---|---|
| **Class** | **Board Members** | **Term Expiration** |
| I | Harry Madonna<br>Brian Tierney | 2023 |
| II | Andrew B. Cohen<br>Lisa Jacobs<br>Harris Wildstein | 2024 |
| III | Vernon W. Hill, II,<br>Barry L. Spevak<br>Theodore J. Flocco, Jr | 2022 |

3.     Each class of directors was elected to serve a three year term, with the class up for election rotating at each annual meeting. The Class III directors are up for election at the 2022 annual shareholder meeting.

4.     Since February 2022, Plaintiffs have been engaged in a proxy contest with the Board. They have repeatedly announced their disagreement with the Board and management of the Company and their intention to solicit proxies for alternate candidates to serve as directors, rather than incumbent Board members.

5.     In April and again in October 2022, Plaintiffs sent Republic First requests to schedule special meetings of shareholders pursuant to the Company's Bylaws and Pennsylvania law. In April 2022, Plaintiffs requested a special meeting to elect the Class III directors after Republic First failed to hold its regularly scheduled annual meeting. In October 2022, Plaintiffs requested that a special meeting of shareholder be held to, among other things, fill certain vacant Class I and Class III director seats. To date, both requests have been left unanswered.

Case ID: 221102195

6.     Since Plaintiffs began their proxy contest, there has been significant infighting and unprecedented upheaval within the Board. Earlier this year, four of the directors (defendants Madonna, Cohen, Jacobs, and Wildstein, collectively the "Madonna Faction") publicly accused the other four (non-parties Hill, Flocco, Spevak, and Tierney, collectively the "Hill Faction") of seeking to subvert the shareholders' rights to vote in the upcoming annual meeting to entrench themselves. The Hill Faction retorted that the Madonna Faction was making knowingly false and misleading statements to undermine a fair election in respect of the incumbent Class III directors that faced a contested re-election in 2022.

7.     Litigation abounded, including two suits filed by Plaintiffs in this Court seeking books and records and to uphold the shareholders' voting rights, and another action by a second activist investor group to compel the Company to hold its 2022 annual shareholder meeting in May 2022 as originally scheduled.

8.     The accusations, litigation, and unrest resulted in the Company's auditors refusing to certify the Company's financial statements and insisting on an investigation of the Board members' competing allegations by independent counsel. As a result, Republic First failed to timely file its required 2021 annual report on Form 10-K and three 2022 quarterly reports on Form 10-Q with the United States Securities and Exchange Commission (the "SEC").

Case ID: 221102195

9.     In May 2022, Mr. Flocco (one of the Hill Faction directors) died.  The Madonna Faction immediately pressed its numerical advantage by holding a Board meeting to install defendant Madonna as Chairman of the Board.  The remaining members of the Hill Faction sued, contending that the Madonna Faction could not hold Board meetings because it did not constitute a quorum and that its insistence on doing so was illegal, oppressive, and fraudulent.

10.     On July 6, 2022, the United States Court of Appeals for the Third Circuit ruled that the Madonna Faction was entitled to appoint a director to fill the deceased director's seat under the Company's bylaws.  The Madonna Faction appointed defendant Duster as a Class III director[1] and took full control of the Board.

11.     On August 8, 2022, two of the remaining members of the Hill Faction (Hill and Spevak, both Class III directors) resigned.  On September 19, 2022, the last remaining member of the Hill Faction (Tierney, a Class I director) also resigned.  At that time, the eight member Republic First Board was left with just five members:

| September 2022 Board | | |
|---|---|---|
| **Class** | **Board Members** | **Term Expiration** |
| I | Harry Madonna<br>Vacant | 2023 |
| II | Andrew B. Cohen<br>Lisa Jacobs<br>Harris Wildstein | 2024 |

---

[1]     Duster was not a shareholder of the Company when he was appointed and thus is not a valid director under Article II Section 2 of the Company's bylaws.

Case ID: 221102195

| III | Benjamin Duster<br>Vacant<br>Vacant | 2022 |
| --- | --- | --- |

12.     Since taking control of the Board on July 6, 2022, the Madonna Faction along with Duster have failed to take action to address the concerns that prompted Plaintiffs to begin their proxy contest in February 2022.  If anything, the Board has allowed the problems to fester and worsen, resulting in the Republic First share price falling and its financial position growing more dire by the day.

13.     The remaining members of the Board have also taken multiple steps to entrench themselves and avoid facing the shareholders' judgment so they can continue to pursue potential "strategic transactions" that benefit themselves but harm the Company, its shareholders, and other constituents.

14.     Among other things, the Company and its directors (the Defendants here) have:

>     a.     Repeatedly delayed holding the 2022 annual shareholder meeting, where the three Class III directors were subject to multiple proxy contests;

>     b.     Refused to schedule special shareholders' meetings — including two sought by Plaintiffs—to allow the shareholders to vote on the election of Class III directors whose terms should have ended by May 2022 and to fill the vacancies on the Board; and

c.  Paid off one activist shareholder group by appointing one of its nominees — defendant Bartholow — to a vacant seat on the Board and paying it over $900,000 in exchange for its silence and support of the Board's other chosen director nominees.

15.  Finally, on October 26, 2022, the Company filed its long-delayed Form 10-K with the SEC, lifting the Company's purported impediment to holding the 2022 annual shareholder meeting.

16.  Plaintiffs proceeded with their planned proxy contest, seeking shareholder records from the Company and making other preparations to nominate candidates and solicit proxies to seek two of the eight seats on the Company's Board through (a) nominations to fill two of the three Class III Board seats up for election at the belatedly scheduled 2022 meeting (the seats occupied by defendants Duster and Bartholow, as well as one vacant seat), and/or (b) a special meeting to elect directors to fill the vacant Class I and Class III Board seats.[2]  Plaintiffs also made clear their intent to support in the 2022 annual meeting, as well as in the special shareholder meeting they requested and in future elections, viable candidates nominated by other shareholders in lieu of the Board's chosen nominees, as they had

---

[2]  Absent prior regulatory approval, Plaintiffs were arguably limited in their ability to nominate candidates to fill more than two of the eight director seats by federal banking regulations addressing "control" of a bank.

with the other activist shareholder's three director nominations in February through May 2022 before the 2022 annual meeting was postponed.

17. On November 4, 2022, the Board finally announced that the Republic First 2022 annual shareholder meeting will take place on January 26, 2023, and set the deadline for shareholders to submit proposals and director nominations as November 14, 2022 — just ten calendar days later (including two intervening weekends and a federal holiday) — despite the annual meeting being almost three months later.

18. Unable to buy off Plaintiffs, who were continuing to publicly criticize the Board and its management of the Company and seeking a special shareholder meeting to fill the two vacant Board seats, the Board took an extraordinary step to consolidate its power and undermine Plaintiffs' proxy contest and the shareholders' rights to decide the direction of the Company through the election of directors.

19. On November 7, 2022, the Company announced that the Board was nominating defendants Bartholow and Duster for election as Class III directors at the 2022 annual shareholder meeting. But, in an obvious attempt to thwart Plaintiffs' proxy efforts and the shareholders' right to choose the stewards of their Company who would represent the shareholders in opposing the actions of the current Board, the Board announced that it had determined to reduce the size of the Board from eight to six members, eliminating Board seats in Classes I and III, and reducing the

Case ID: 221102195

available seats for election at the 2022 annual meeting and the special shareholder meeting sought by Plaintiffs from four to two directors (the "Board Entrenchment Scheme").

20.     The Board Entrenchment Scheme would seriously handicap shareholders' voice in the election of directors, leaving three Class II directors, two Class III directors and only one Class I director, in violation of Pennsylvania law and the Company's bylaws requiring that the Board "be divided into three classes as nearly equal as possible." As Defendants knew, the Board Entrenchment Scheme would also restrict Plaintiffs' ability to nominate directors from two to one in light of federal banking regulations.

21.     The implementation of the Board Entrenchment Scheme in the face of Plaintiffs' proxy contest and demand for a special shareholders meeting to fill the two vacant seats is a transparent attempt to undermine Plaintiffs' rights to influence the election of directors and all of the Company's shareholders' rights to exercise their voting power to substantially change the composition of the Board and thus the direction of the Company.

22.     Defendants' efforts to rig the election of directors to maintain their control of the Company and frustrate the rights of the shareholders to determine the direction of the Company did not end there. On November 11, 2022, in advance of the deadline set forth in the November 4, 2022, notice by the Company, Plaintiffs

submitted their nomination of Mr. Braca as a director for election at the 2022 annual meeting. Despite having accepted and found sufficient the same documentation from Plaintiffs' broker confirming Plaintiff Philip Norcross' record ownership of Company stock in accordance with the Bylaws multiple times before, on November 16, 2022, two days after the deadline for nominations, Defendants claimed that Philip Norcross was not a record owner and that the Company was therefore rejecting Plaintiffs' nomination of Mr. Braca for a director position.

23.     Defendants' gamesmanship — relying on a newly asserted technicality and sandbagging Plaintiffs who believed they had record ownership based on their broker's representation and the Company's acceptance of the representation multiple times despite having the list of record owners at its fingertips — cannot succeed or prevent Plaintiffs (undeniably beneficial owners of almost 10% of the Company stock) from participating in the Board election process. In addition, Defendants and their counsel were aware that Plaintiffs were submitting a nomination and relying on the same letter from their broker stating that Mr. Norcross was a record holder (because the Company would be informed if there was new record ownership); rather than raise the point at that time, Defendants waited for Plaintiffs to submit the notification and then only got back to Plaintiffs on the previously known alleged defect after the period for nominations had run so Plaintiffs could not address the purported defect. Defendants waived the record ownership provision, are estopped

Case ID: 221102195

from enforcing it by their bad faith conduct or, alternatively, are bound to accept Plaintiffs' nomination under Rule 14a-8 incorporated into the Company's Articles of Incorporation and bylaws.

24.     Defendants' manipulation of the Company's Board and rigging the election process to entrench themselves and avoid the reckoning of the shareholder vote is precisely the type of misconduct that this Court and others have repeatedly condemned and enjoined. *See Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C.4th 391, 406-07 (Phila. C.P. 2002) (enjoining board from advancing date of shareholder meeting in the midst of a proxy contest); *Pell v. Kill,* 135 A.3d 764, 769-70 (Del. Ch. 2016) (enjoining board plan to reduce the number of board seats in the midst of a proxy contest).

25.     Defendants' unlawful and invalid actions must be stopped to ensure that the Republic First shareholders, including Plaintiffs, can fully and fairly exercise their rights to elect directors who will fulfill their fiduciary duties and manage the Company for the benefit of the shareholders and other constituents, rather than in their own self-interest.

26.     The Court can and should act to prevent such imminent, irreparable harm, both for Republic First's shareholders, and for the market perception of judicial protection of the franchise rights of all Pennsylvania corporations.

Case ID: 221102195

27.     The Defendants' inequitable conduct is in direct violation of settled law in Pennsylvania.   Pennsylvania courts have long recognized and protected a shareholder's right to vote as among the most fundamental rights and privileges of the ownership of corporate stock.   The shareholder franchise is the bedrock of corporate democracy and director legitimacy, constituting the primary way, via election of directors, that owners of a corporation — the shareholders — control the direction that their corporation takes.   Directors are not permitted to take actions that curtail or impede the efficacy of this fundamental right.

28.     Critically, the Board Entrenchment Scheme materially alters the Republic First shareholders' ability to determine the composition of their Board and the stewards of their Company.   Prior to the Board Entrenchment Scheme, half of Republic First' Board seats — four of eight — were up for election at the 2022 annual meeting and the special shareholder meeting requested by Plaintiffs.   And, through the 2023 annual meeting to elect the Class I directors, shareholders would vote to fill at least five of the eight Board seats.   In other words, within months, Republic First shareholders would have the ability to elect directors comprising more than half of its Board.   By reducing the size of the Board from eight to six directors — and disproportionately leaving three Class III directors in violation of Pennsylvania law and the Company's bylaws — Defendants have kneecapped shareholders' right to determine control over the Board.

Case ID: 221102195

29.     The Board Entrenchment Scheme is a disproportionate and unreasonable burden on the voting rights of Republic First shareholders. Pennsylvania courts will look to the inequity of a corporate board's actions and strike down measures that have as their purpose or effect the curtailment of shareholders' fundamental voting rights. *See Warehime v. Warehime*, 777 A.2d 469, 478 (Pa. Super. 2001), *rev'd on other grounds*, 860 A.2d 41 (Pa. 2004); *Jewelcor Mgmt.*, 60 Pa. D. & C.4th at 406-07.

30.     The Board Entrenchment Scheme is a blatant act of entrenchment that seeks to disenfranchise the Company's shareholders and undermine Plaintiffs' rights to influence the Board election through a proxy contest and special shareholder meeting. That alone renders it invalid. This is not a change that the Defendants deliberated about and adopted on a "clear day," when there was no known challenge to the Defendants' incumbency. There is no legitimate, and certainly no compelling, governance purpose for the Defendants' actions. Pennsylvania law abhors such attempts to subvert corporate democracy.

31.     The Board Entrenchment Scheme plainly disenfranchises Plaintiffs and the other Republic First shareholders and dilutes the efficacy of their voting rights. By reducing the size of the Board, Plaintiffs are limited to nominating one director for the Company's Board, which severely limits Plaintiffs' potential influence in Board matters and the director's ability to bring proposals to a Board vote. It also

Case ID: 221102195

requires Plaintiffs to seek to unseat a sitting director in the 2022 annual meeting rather than fill two vacant Board seats. And, it entrenches Defendants, and greatly expands the minimum time by which Republic First shareholders may elect half or more of the Board by at least a year.

32. This action seeks to remedy the Defendants' inequitable and unlawful conduct intended to entrench themselves in office by depriving Plaintiffs of their right to nominate directors and engage in a proxy fight and depriving all Company shareholders of their voting rights. Plaintiffs seek injunctive relief to stop Defendants from engaging in illegal actions to the detriment of Plaintiffs and all Republic First shareholders.

33. Accordingly, by this action, Plaintiffs seek injunctive and declaratory relief to protect the shareholder franchise, including an order (i) declaring that the Board Entrenchment Scheme is invalid and cannot be implemented; (ii) ordering the Company to hold a special shareholder meeting to fill the Class I Board seat; (iii) enjoining the Company from engaging in any changes to the size of the Board until after the 2022 annual shareholder meeting and special shareholder meeting; (iv) requiring Defendants to reopen the nominations for directors for the 2022 annual meeting to include the improperly removed third Class III seat; (v) requiring Defendants to accept nominations for directors submitted by Plaintiffs; and (vi)

precluding Defendants from taking any other actions designed to frustrate Plaintiffs' proxy contest, special meeting request or the shareholder vote.

## THE PARTIES AND RELEVANT NON-PARTIES

34.     Plaintiff George E. Norcross, III is the beneficial owner of 674,572 shares of common stock of the Company.   Mr. Norcross is a successful businessman and Executive Chairman of Conner Strong & Buckelew Companies LLC, one of the nation's 30 largest insurance, risk management and employee benefits brokerage and consulting firms.   Mr. Norcross has been the head of Conner Strong & Buckelew and predecessor companies since founding the firm in 1979 in a basement office in Camden, New Jersey.   Mr. Norcross has a long history with and deep knowledge about the banking industry and has served in the leadership of numerous charitable organizations.

35.     Plaintiff Gregory B. Braca is the beneficial owner of 462,384 shares of common stock of the Company.   Mr. Braca has years of experience in the banking industry and was the President and Chief Executive Officer of TD Bank, one of the largest banks in the country.

36.     Plaintiff Philip A. Norcross is the beneficial owner of 450,000 shares and believed, based on the representation of his broker and the Defendants' repeated acceptance of that representation despite their access to the official corporate shareholder list, that he was the record owner of 10,000 shares of

Case ID: 221102195

common stock of the Company. Philip Norcross is also a trustee for the Avery Conner Capital Trust (the "Avery Trust"). The Avery Trust is the beneficial owner of 4,724,662 shares of common stock of the Company. Philip Norcross is a public finance lawyer and the Managing Shareholder and Chief Executive Officer of Parker McCay P.A., and has previously served on the board of a federally chartered national bank and its holding company.

37. Collectively, Plaintiffs and the Avery Trust are beneficial owners of 6,311,618 shares of common stock of the Company, which amounts to approximately 9.9% of the Company's outstanding shares. Plaintiffs and the Avery Trust have repeatedly sought from the Board a waiver under Article XII of the Company's Articles of Incorporation to exceed 10% ownership of the Company's shares while retaining all rights of the stock; the Board has failed to respond.

38. Defendant Republic First is a corporation incorporated under the laws of the Commonwealth of Pennsylvania, with its principal executive offices located in Two Liberty Place, in Philadelphia, Pennsylvania. Republic First is the holding company for Republic Bank. Republic First's common stock is publicly traded on the NASDAQ stock exchange under the ticker symbol FRBK.

39. Defendant Harry Madonna is the founder of the Company, Executive Chairman of the Board, and since August 9, 2022, the Interim Chief Executive Officer. Madonna has previously served as the Company's Chief Executive Officer,

Case ID: 221102195

as well as Chief Executive Officer and Chairman of the Company's subsidiary Republic Bank.

40.    Defendant Andrew Cohen is chief investment officer and co-founder of Stamford, Connecticut-based Cohen Private Ventures LLC, the investment firm for New York Mets owner Steve Cohen (no relation).   Mr. Cohen controls Cohen Private Ventures, which owns 5,442,570 shares of the Company's common stock, approximately 9.15% of the outstanding shares.

41.    Defendant Lisa Jacobs is a partner at Stradley Ronon Stevens & Young, and previously was a partner at DLA Piper and Pepper Hamilton.   Ms. Jacobs has served as the Company's corporate secretary since May 2022.   On information and belief, Ms. Jacobs has been the long-time personal attorney for defendant Madonna.

42.    Defendant Harris Wildstein was co-founder of Republic First with Madonna and is owner and officer of pre-settlement funding organization Lifeline Funding, which has been a long time shareholder of Republic First.

43.    Defendant Peter B. Bartholow was one of three director nominees proposed by activist investor Driver Management Company LLC and certain of its affiliates ("Driver") in its proxy contest.   Mr. Bartholow has been a director of Republic First since he was appointed as part of the Company's settlement with Driver, announced on October 4, 2022.   While Defendant Bartholow was a shareholder of the Company at the time he was appointed to the Board (as required

by the Company's bylaws), he and the Company failed to timely file the required SEC forms reflecting his ownership, instead filing a Form 3 almost three weeks later. Mr. Bartholow is one of the two Class III director nominees by the Company for election at the 2022 annual meeting.

44.     Defendant Benjamin C. Duster, IV was appointed a director of the Company by the Madonna Faction to replace deceased director Flocco as announced on July 11, 2022. Defendant Duster is one of the two Class III directors nominated by the Company for election at the 2022 annual meeting. Mr. Duster, however, is not and has never been a valid director of the Company and his nomination is invalid since the Company's bylaws expressly require a director to be "a shareholder of the Corporation at the commencement of his term" and, based on his failure to make SEC filings that would be required if he were a shareholder and the Company's Form 10-K disclosing that he owned no shares as of October 25, 2022, Defendant Duster is not a shareholder of the Company and thus was never a valid director.

45.     Non-party Vernon W. Hill, II, has been an investor in and consultant to Republic First since 2008, served as a director from December 2016 until his resignation on August 8, 2022, and as the Company's CEO (and CEO of Republic Bank) from February 2021 until his resignation effective August 8, 2022.

46.     Non-party Theodore J. Flocco, Jr., CPA, served as a director of the Company from June 2008 until his death on May 11, 2022.

Case ID: 221102195

47.    Non-party Brian Tierney served as a Company director from September 2011 until his resignation on September 19, 2022.

48.    Non-party Barry Spevak served as a Company director from April 2004 until his resignation on August 8, 2022.

## JURISDICTION AND VENUE

49.    This Court has jurisdiction pursuant to 42 Pa. C.S. § 931(a).

50.    Venue is proper in Philadelphia County because Republic First's place of business is in Philadelphia County and certain of the acts giving rise to this suit took place in Philadelphia County.

## FACTUAL BACKGROUND

### A.    The History of Republic First

51.    Republic First was organized and incorporated under the laws of the Commonwealth of Pennsylvania in 1987 and is the holding company for Republic Bank.

52.    Republic Bank operates through offices and branches in Philadelphia, Bucks, Delaware, and Montgomery Counties in Pennsylvania; Atlantic, Burlington, Camden, and Gloucester Counties in New Jersey; and New York County in New York.

53.    According to Article I, Section 2 of the Republic First bylaws,

Special meetings of the shareholders for any purpose or purposes . . . may be called at any time (a) by the Chairman

of the Board, (b) by the Board of Directors or (c) at the request in writing of shareholders entitled to cast at least twenty (20%) percent of the votes entitled to be cast at the meeting upon payment by such shareholders to the Corporation of the reasonably estimated cost of preparing and mailing a notice of the meeting (which estimated cost shall be provided to such shareholders by the Secretary of the Corporation) . . . .

A true and correct copy of the Company's bylaws is attached hereto as **Exhibit 1**.

54.     According to Article II, Section 2 of the Republic First bylaws,

The Board of Directors shall be divided into three classes as nearly equal as possible. The members of each class shall be elected for a term of three years and until their successors are elected and qualified. One class shall be elected by ballot annually. . . . A director need not be a citizen of the United States or a resident of the Commonwealth of Pennsylvania but must be a shareholder of the Corporation at the commencement of his term.

*Id.*

55.     Article II, Section 7 of the bylaws provides:

Any vacancies in the Board of Directors, whether arising from death, resignation, removal or any other cause except an increase in the number of directors, shall be filled by a vote of the majority of the Board of Directors then in office even though that majority is less than a quorum. . . . In the event that at any time a vacancy exists in any office of a director that may not be filled by the remaining directors, a special meeting of the shareholders shall be held as promptly as possible and in any event within sixty (60) days, for the purpose of filling the vacancy or vacancies. Any director elected or appointed to fill a vacancy shall hold office for the balance of the term then remaining and until a successor has been chosen and qualifies or until his earlier resignation or removal.

*Id.*

56.     Article II, Section 4 of the bylaws (consistent with the Articles of

Incorporation) provides:

> Nomination by Shareholders.  At all Annual Meetings of
> shareholders . . . any stockholder who desires to propose
> nominees to the Board of Directors must provide for the
> receipt of a written notice of the intention to nominate a
> person or persons for election as directors by the Secretary
> of the Corporation: (i) with respect to an election to be held
> at any annual meeting of shareholders in accordance with
> the provision of Rule 14a-8 . . . .
>
> The notice is required to contain: (i) the name and address
> of the shareholder who intends to make the nomination
> and of the person or persons to be nominated; (ii) a
> representation that the shareholder is a holder of record of
> stock entitled to vote at the meeting and intends to appear
> in person or by proxy at the meeting to nominate the
> person or persons specified in the notice; (iii) a description
> of all arrangements or understandings between the
> shareholder and each nominee and any other person or
> persons (naming such person or persons) pursuant to
> which the nomination or nominations are to be made by
> the shareholder; (iv) such other information regarding
> each nominee proposed by such shareholder as would
> have been required to be included in a proxy statement
> filed pursuant to the proxy rules of the Securities and
> Exchange Commission had each nominee been nominated
> or intended to be nominated, by the Board of Directors of
> the Corporation; and (v) the consent of each nominee to
> serve as a director of the Company if so elected.  The
> chairman of any meeting of shareholders to elect directors
> and the Board of Directors may refuse to recognize the
> nomination of any person not made in compliance with the
> foregoing.

Case ID: 221102195

*Id.*; *see also* Articles of Incorporation of First Republic Bancorp, Inc., a true and correct copy of which is attached hereto as **Exhibit 2**, at Art. VII, § D (same).

57.     The Board has been composed of eight seats since November 2007, with two Class I directors, three Class II directors and three Class III directors since at least 2009.

58.     From mid-2017 through May 11, 2022, the Company's directors were: defendant Madonna and non-party Tierney (Class I); defendants Jacobs, Cohen and Wildstein (Class II); and non-parties Hill, Flocco and Spevak (Class III).

59.     The Company's last annual shareholder meeting was held on April 27, 2021, at which the Class II directors were up for election; the 2022 annual shareholder meeting (and the election of the Class III directors) was originally scheduled to occur in early May 2022.

**B.      Since Late 2021, the Company Has Been Facing Proxy Contests.**

60.     Since early December 2021, several significant investors in the Company have publicly reported their dissatisfaction with the Board and management and their desire to elect a slate of new independent directors to replace the incumbent directors up for election at the Company's 2022 annual meeting.

61.     On December 9, 2021, Republic First filed a Form 8-K with the SEC announcing that it had received a letter from Driver, an investment management company that owned approximately 668,824 shares of Company stock, disclosing

Driver's intent to nominate an alternative slate of three candidates as directors in connection with the Company's 2022 annual meeting. A true and correct copy of the December 9, 2021 Form 8-K is attached hereto as **Exhibit 3**.

62. For months afterward, Driver and the Company issued competing press releases and SEC filings regarding Driver's significant criticisms of the Board and management and its efforts to elect its slate of directors, rather than the incumbent directors up for reelection at the 2022 annual meeting.

63. For instance, on January 14, 2022, Driver filed a Form PREN14A preliminary proxy statement with the SEC, providing further detail on the reasons for Driver's efforts to elect a slate of three new independent directors to replace the three incumbent directors. A true and correct copy of the January 14, 2022 Form PREN14A is attached hereto as **Exhibit 4**.

64. On January 31, 2022, Plaintiffs and the Avery Trust filed a Form 13D with the SEC, disclosing that they collectively owned 3,910,921 shares of common stock, or approximately 6.6% of the Company's outstanding shares. A true and correct copy of the January 31, 2022 Form 13D is attached hereto as **Exhibit 5**.

65. In that filing, Plaintiffs suggested installing Mr. Braca as CEO of the Company to address the obvious lack of vision that was causing the Company's financial performance to suffer. In particular, the Form 13D stated:

> We also believe that, with the ability to provide input to the Board, we can begin to help the Company unlock value

immediately through the Company making specific changes in its leadership. The severe lag in total return to shareholders over a prolonged period demonstrates the need for this. We believe that Mr. Gregory Braca, the former President and CEO of TD Bank and current President and CEO of General American Capital, LLC, would be an outstanding candidate to be hired as CEO of the Company.... We would also suggest that shareholders would well receive any action the Board might undertake to add additional independent directors and create a more diverse and independent Board.

*Id.*

66. Through several subsequent acquisitions, as reported in a Form 13D/A filed with the SEC on February 10, 2022, Plaintiffs' and the Avery Trust's beneficial ownership increased to a total of 5,706,583 shares of common stock, or approximately 9.6% of the Company's outstanding shares. A true and correct copy of the February 10, 2022 Form 13D/A is attached hereto as **Exhibit 6**.

67. In the February 10 Form 13D/A filing, Plaintiffs and the Avery Trust also publicly announced that they intended to, "independently and at [their] own cost, file appropriate proxy materials and engage in activities that may constitute solicitation under the SEC's proxy rules in opposition to the Issuer's three Class III director nominees . . . and in support of the candidates (Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III) nominated by Driver Management Company, LLC ('Driver') for election as Class III directors at the Issuer's 2022 annual meeting of shareholders . . . ." *Id.*

Case ID: 221102195

## C.    The Republic First Board Splits into Warring Factions.

68.    With two groups of significant shareholders criticizing the Company's Board and management, the Board erupted into two equal warring factions, with four directors (defendants Madonna, Cohen, Jacobs and Wildstein, the "Madonna Faction") publicly accusing the other four directors (non-parties Hill, Flocco, Spevak and Tierney, the "Hill Faction") of entrenchment and undermining shareholder voting rights.

69.    The Hill Faction responded by claiming that the Madonna Faction was making intentionally false and misleading claims in an effort to undermine the Hill Faction's bids for reelection as directors because, according to Hill, Madonna and Cohen were intent on selling the Company to further their own personal financial interests.

70.    The infighting among Board members resulted in significant upheaval at the Company, prompting multiple lawsuits. These included two filed by Plaintiffs based on their concerns about the revelations being made by the Board members, and one by Driver seeking to force the 2022 annual meeting to take place as scheduled in early May 2022 so it could proceed with its proxy solicitations.

71.    The upheaval also caused the Company's auditors to insist on an investigation to be conducted by independent counsel regarding the various accusations made by the Board members before it would certify the Company's

financials. This delayed Republic First's required annual report filing on Form 10-K and several subsequent quarterly report filings on Form 10-Q and led to the Company receiving a notice from NASDAQ that it would be delisted if it did not complete its required SEC filings.

72. In May 2022, Mr. Flocco died. The Madonna Faction, now with the clear majority, immediately took advantage of their former colleague's death by holding a Board meeting and voting to replace Hill with one of its members, defendant Madonna, as Chairman of the Board.

73. At that point, the remaining members of the Hill Faction filed suit in federal court to block the majority from holding meetings and taking action without a quorum of the Board.

74. On May 31, 2022, finding that the Madonna Faction had acted illegally, oppressively and fraudulently, the federal court appointed esteemed Philadelphia lawyer Alfred Putnam to serve as custodian to oversee the operations of the Company and hold a special shareholder meeting to elect two new directors, one to replace Mr. Flocco and a new ninth director to ensure that the Board would not be evenly split.

75. The court-appointed custodian scheduled the special shareholder meeting and announced that he had received nominations from several shareholders, including Plaintiffs, who nominated Mr. Braca to join the Company's Board. *See*

July 5, 2022, Schedule 14C filed by the Company, a true and correct copy of which is attached hereto as **Exhibit 7**. In submitting Mr. Braca's nomination to the custodian (Alfred Putnam, Esq.) and to Defendant Jacobs, the Company's secretary, Plaintiffs stated that Philip Norcross was a record owner and included a letter from Philip Norcross' broker attesting that Mr. Norcross was record owner of 10,000 shares of Company stock. A true and correct copy of the June 21, 2022, letter with attachments is attached hereto as **Exhibit 8**. The Company did not challenge Mr. Norcross' record ownership and accepted the nomination. *See* Ex. 7, at 7 (July 5, 2022 Schedule 14C).[3]

76. Before the special meeting was to take place, the U.S. Court of Appeals for the Third Circuit reversed the district court's decision and upheld the Madonna

---

[3] Plaintiffs also continued to pursue their pending books and records request. The custodian questioned the validity of the request sent on behalf of Plaintiff George Norcross — a beneficial owner — citing Pennsylvania law defining "shareholder" as a record owner. *See* June 8, 2022 Letter from Jeffrey P. Justman, counsel for the custodian, a true and correct copy of which is attached hereto as **Exhibit 9**. In response, Plaintiffs sent a letter (cc'd to Defendant Jacobs in her role as corporate secretary) revising the request to come from Plaintiff Philip Norcross, including a letter from Mr. Norcross's broker certifying that Mr. Norcross was a record owner of 10,000 shares of Company stock purchased on November 16, 2021. *See* June 13, 2022 letter and attachments, a true and correct copy of which is attached hereto as **Exhibit 10**. In response, the Company negotiated a confidentiality agreement and provided certain of the books and records sought in the request, thereby accepting Mr. Norcross' record ownership of shares under the bylaws and Pennsylvania law.

Case ID: 221102195

Faction's right to appoint a new director to fill Mr. Flocco's seat despite the absence of a quorum under the Company's bylaws.

77. Immediately thereafter, the Madonna Faction declined to give shareholders a say in the composition of their Board and canceled the special shareholder meeting scheduled by the custodian. *See* July 11, 2022 Schedule 14A, a true and correct copy of which is attached hereto as **Exhibit 11**. Instead, the Madonna Faction arrogated that important right to itself, and appointed Defendant Benjamin Duster to the Board as a new Class III director. *Id.* On information and belief, including his failure to file a required Form 3 reporting ownership of Company shares and the Company's October 26, 2022 Form 10-K stating that Mr. Duster owned no shares as of October 25, 2022 — *see* Form 10-K, a true and correct excerpt of which is attached hereto as **Exhibit 12**, at 156 — Mr. Duster was not a shareholder of the Company before being appointed as a director, contrary to the requirements of Article II, Section 2 of the Company's bylaws. Thus, Mr. Duster is not and has never been a legitimate director of the Company, and all actions of the Board since his appointment are invalid.

78. In appointing Defendant Duster, the Board touted his experience on Wall Street and with mergers and acquisitions, giving credence to the Hill Faction's claims that Madonna and Cohen were intent on engaging in a sale of the Company for their own personal financial benefit. *See* Ex. 11 (July 11, 2022 Schedule 14A)

("Mr. Duster is a 30-year veteran of Wall Street with extensive experience in M&A and Strategic Advisory Services in both developed and emerging markets."); *id.* (quoting Wildstein as saying, "Ben's extensive knowledge of public company governance ***and M&A processes*** as well as his financial expertise and business and legal background will be welcomed in the boardroom") (emphasis added).

79.     Conceding defeat, the three remaining members of the Hill Faction resigned.  Hill and Spevak (the other two Class III directors) resigned on August 9, 2022.  Tierney, the last Hill Faction director (and a Class I director), followed on September 19, 2022.  This left three vacant Board seats: two Class III seats (up for election at the 2022 annual meeting) and one Class I seat.

**D.     The Proxy Contests Continue to Be Waged.**

80.     While the litigation and infighting played out on the public stage, the Company failed to file its annual report on SEC Form 10-K or schedule its 2022 annual meeting of shareholders.

81.     Plaintiffs and Driver continued to actively pursue their proxy contests, criticizing the Board and management for the direction of the Company and its abysmal financial performance, as well as its lack of transparency.

82.     Plaintiffs continued to press for the election of new independent directors who would change the direction of the Company and improve its performance.  Among other things, on April 28, 2022, Plaintiffs submitted a demand

for a special shareholder meeting to elect three Class III directors whose terms should have already expired since the Company had failed to schedule its 2022 annual shareholder meeting. *See* April 28, 2022 Schedule 13D/A, a true and correct copy of which is attached hereto as **Exhibit 13**.

83.     Driver filed suit in federal court asking that the court force Republic First to hold its 2022 annual shareholder meeting in May as originally scheduled so that its slate of directors could be elected.

84.     Plaintiffs nominated Mr. Braca to be elected a director in connection with the court-appointed custodian's attempt to schedule a special shareholder meeting pursuant to the court's order. *See* Ex. 7 (July 5, 2022, Schedule 14C).

85.     After the Madonna Faction took control of the Board, Plaintiffs sought to actively engage with the Board and to increase their ownership interest in the Company above the 10% threshold set forth in the Articles. *See* July 7, 2022 Schedule 13D, a true and correct copy of which is attached hereto as **Exhibit 14**.

86.     Although Plaintiffs were initially hopeful that the prevailing Madonna Faction would take positive steps to reverse actions that had been taken before the Board's implosion and to set the Company on the right path, that did not happen. Instead, the Board has continued to mismanage the Company and its affairs, resulting in a significant reduction in Republic Bank's capital ratio and worsening of other financial metrics. Further, the Board has continued to rebuff advances made

Case ID: 221102195

by Plaintiffs to infuse capital into the Company and provide much needed assistance in managing its affairs, including through the appointment of Mr. Braca as CEO.

87.     Indeed, since the Madonna Faction and defendant Duster took control, the Board has engaged in breaches of fiduciary duty designed to keep the shareholders in the dark and retain control of the Company to benefit their own interests at the expense of the Company and its shareholders.

88.     The Board took the following inappropriate actions, among others:

   a.     It named Madonna interim CEO and Executive Chairman;

   b.     It reported that the investigation demanded by the Company's auditors was completed in August 2022, but has continually failed to report the findings or conclusions of the investigation;

   c.     It failed to timely file the Company's required annual report and quarterly financial reports with the SEC, resulting in Republic First facing potential delisting from the NASDAQ exchange;

   d.     It failed to schedule any shareholder meeting (annual or special) to allow the shareholders to elect three Class III directors (whose terms should have ended by May 2022) and a Class I director despite repeated calls by Plaintiffs for special shareholder meetings for those purposes;

Case ID: 221102195

e.   It reinstated Madonna's employment contract with an increased salary and significant parachute payments (amounting to millions of dollars in the event of a change of control transaction), and delayed over one month in reporting that decision, in violation of SEC reporting rules; and

f.   Immediately after reporting the employment arrangement with Madonna—providing him significant incentive to sell the Company—it announced the formation of a "strategic review" committee and its intent to engage with potential "transaction" partners, essentially conducting a fire sale where the Company's assets are significantly impaired as a result of the Board's abysmal investment and business decisions. The sale of the business would therefore only benefit the Director Defendants, particularly Madonna who would receive substantial payments upon a change of control, to the significant detriment of the Company and its shareholders.

89.   In light of the Board's failure to take action to address the Company's problems and its apparent insistence on doubling down on the entrenchment the Madonna Faction had derided the Hill Faction for engaging in, Plaintiffs renewed their challenges to the Board's actions and reiterated their intention to engage in a

proxy contest and promote alternative candidates to fill the vacant Board seats and seats due to be elected at the delayed 2022 annual meeting.

90. In particular, on September 16, 2022, Plaintiffs submitted a letter to the Board (subsequently filed on Schedule 13D/A) criticizing the Board's failure to engage Plaintiffs on their proposals to infuse capital into the Company and instead appearing to favor a fire sale that would benefit only the directors themselves (particularly Madonna) and harm shareholders. *See* September 16, 2022 Schedule 13D/A, a true and correct copy of which is attached hereto as **Exhibit 15**.

91. On September 22, 2022, Plaintiffs again notified the Board (and their fellow shareholders) of their concerns about the Board's inaction and entrenchment, emphasizing that the lack of a shareholders' meeting had allowed the directors to avoid facing accountability from the Company's shareholders well past the time the Class III directors should have been subjected to a contested election. *See* September 22, 2022 Schedule 13D/A, a true and correct copy of which is attached hereto as **Exhibit 16**.

92. Plaintiffs also disclosed that, in connection with Plaintiffs' offer to infuse the Company with capital (as well as other proposals beneficial to the Company), the Board tried to impose a standstill agreement that would prohibit Plaintiffs from recommending directors for election at the 2022 annual meeting. *Id.*

Case ID: 221102195

93. Driver likewise continued to make SEC filings critical of the Board, particularly of its decision to install Madonna (who is almost 80 years old) as interim CEO and provide him with significant parachute payments in connection with a change of control transaction, as well as the Company's lack of transparency about the members of the strategic review committee and whether Madonna had any role in the strategic review process. *See* September 22, 2022, Schedule 14A filed by Driver, a true and correct copy of which is attached hereto as **Exhibit 17**.

94. On October 4, 2022, the Board solved one of its problems — it announced that it had made a deal with Driver to buy its silence and acquiescence to the Board's ongoing control of the Company in exchange for the Board's agreement to appoint Driver nominee, Defendant Bartholow, to a vacant Class III director seat and to pay Driver $925,000. *See* October 4, 2022 Form 8-K, including attachments, a true and correct copy of which is attached hereto as **Exhibit 18**.

95. This still left two vacant Board seats — one Class III seat (vacated by Hill or Spevak on August 9, 2022) and one Class I seat (vacated by Tierney on September 19, 2022). Contrary to the dictates of Article II, Section 7 of the Republic First bylaws, the Class III seat remained vacant for more than 60 days with the Board failing to fill it and refusing to call a shareholders' meeting for that purpose.

96. Plaintiffs, therefore, continued to pursue their proxy contest. On October 21, 2022, Plaintiffs sent a derivative demand to the Board demanding that

Case ID: 221102195

it appoint a special litigation committee to investigate various breaches of fiduciary duty by the current Board. *See* October 21, 2022 Schedule 13D/A, a true and correct copy of which is attached hereto as **Exhibit 19**.

97.     On October 25, 2022, Plaintiffs delivered a letter to the Board requesting a special shareholders' meeting for two purposes: (1) adopting a resolution encouraging the Board to revise Madonna's employment agreement to eliminate the incentive to engage in a change of control transaction; and (2) "[e]lecting two directors to the board of directors of Republic First" to fill the vacant Class I and Class III director seats. *See* October 25, 2022 letter to the Board requesting a special meeting, including attachments thereto, a true and correct copy of which is attached hereto as **Exhibit 20**.

**E.      The Board Devises a Plan to Undermine Plaintiffs' Proxy Contest and the Shareholders' Voting Rights in the Face of the Upcoming 2022 Annual Meeting.**

98.     On October 24, 2022, the Company filed a Form 8-K with the SEC reporting that its audit was complete but that it was waiting for a response from its former auditor before filing its Form 10-K.

99.     Recognizing that they would soon have the opportunity to solicit proxies from fellow shareholders and nominate directors, at least for two of the three Class III seats, as well as potentially support candidates nominated by other shareholders, Plaintiffs immediately sought books and records from the Company,

including shareholder information, so that their proxy solicitation firm could contact fellow shareholders. *See* October 25, 2022 letter to the Board requesting books and records, including attachments thereto, a true and correct copy of which is attached hereto as **Exhibit 21**. Plaintiffs' books and records request again included a representation that Mr. Philip Norcross was a record owner of Company stock and a letter from Mr. Norcross' broker attesting to that fact. *Id.* Defendants did not challenge Mr. Norcross's record ownership and, instead, expressly agreed to provide certain of the requested documents subject to the entry of a confidentiality agreement. *See* November 1, 2022 letter from Michael Charlson, counsel for the Board, a true and correct copy of which is attached hereto as **Exhibit 22**. Since then, the confidentiality agreement has been fully executed and the Company has pledged to share shareholder lists with Plaintiffs' proxy solicitation firm.

100. On October 26, 2022, the Company finally filed its long overdue Form 10-K. As was predicted by Plaintiffs, the Form 10-K revealed that there were certain related-party transactions that had not been properly disclosed previously. Despite this, the Company still failed to provide any details about the findings or conclusions of the investigation demanded by its auditors that had purportedly been completed in August 2022.

101. Nonetheless, with the filing of the Form 10-K, the Defendants' only purported obstacle to scheduling the belated 2022 annual shareholders' meeting

(which had been delayed since early May) was eliminated, and the Board would be forced to finally face the judgment of the Company's shareholders.

102. On November 1, 2022, Plaintiffs sent another letter to the Board, criticizing it for its continued lack of transparency on the investigation and on the recent abrupt resignation of Republic First's Chief Financial Officer. *See* November 2, 2022 Schedule 13D/A, a true and correct copy of which is attached hereto as **Exhibit 23**.

103. On November 4, 2022, Plaintiffs sent yet another letter to the Board, calling for the immediate resignation of Madonna as both interim CEO and director. *See* November 7, 2022 Schedule 13D/A, a true and correct copy of which is attached hereto as **Exhibit 24**.

104. That same day, the Company finally announced that the Board had scheduled the 2022 annual shareholders' meeting to take place on January 26, 2023, almost nine months after its originally scheduled date. *See* November 4, 2022 Form 8-K, a true and correct copy of which is attached hereto as **Exhibit 25**. That announcement intentionally omitted reference to the fact that the Board already had tilted the playing field by purporting to reduce the number of Board seats up for election.

105. In the same SEC filing, Defendants set November 14, 2022, only ten calendar days later (including two intervening weekends and a federal holiday) and

over two months before the scheduled meeting, for shareholders to submit proposals

or director nominations. *Id.* In particular, the Form 8-K stated:

> [S]hareholders wishing ... to nominate a person for election to the Board at the 2022 Annual Meeting must submit timely notice thereof to the Company in order for such matters to be considered at the 2022 Annual Meeting. In accordance with the requirements of the Company's Amended and Restated By-Laws (the "By-Laws"), to be timely, such notice must be delivered to the Secretary of the Company . . . no later than the close of business on Monday, November 14, 2022, which the Company has determined is a reasonable time before it expects to begin to print and send its proxy materials for the 2022 Annual Meeting. Such nominations and proposals must also comply with the requirements of Pennsylvania law, the rules and regulations promulgated by the Securities and Exchange Commission (the "SEC") and the By-Laws, as applicable.

*Id.*

106. Apparently recognizing that their time in control of Republic First could soon draw to a close if shareholders had the right to elect a new majority of the Board between the belatedly scheduled 2022 annual shareholder meeting, the special shareholder meeting demanded by Plaintiffs and the forthcoming 2023 annual meeting that will presumably take place by May 2023 pursuant to the Company's normal annual meeting schedule, Defendants devised a plan to undermine Plaintiffs' right to engage in a proxy fight and the shareholders' right to determine the composition of their Board. Rather than allow Plaintiffs to, on their own, propose two director nominees at the 2022 annual meeting and for Plaintiffs to

support and the public shareholders to elect five of the eight Republic First directors over the next six months, the Board decided to avoid an imminent loss of control by implementing the Board Entrenchment Scheme, eliminating the vacant Class I seat that was the focus of Plaintiffs' special meeting request (and would be up for election in 2023) and the vacant Class III seat, also addressed in Plaintiffs' special meeting request and up for election at the 2022 annual meeting. As a result, only two of six Board seats, rather than four of eight seats, are up for election pursuant to the 2022 annual meeting and the special meeting requested by Plaintiffs.

107. On November 7, 2022, the Company filed a Form 8-K with the SEC announcing that the Board would nominate Defendants Bartholow and Duster as Class III directors for election at the 2022 annual shareholders' meeting. The Form 8-K also revealed for the first time that, effective November 4, 2022, the Board chose to reduce the size of the Board from eight members to six. *See* November 7, 2022 Form 8-K, a true and correct copy of which is attached hereto as **Exhibit 26**.

108. Under federal banking regulations, as Defendants certainly know, the Board Entrenchment Scheme would limit Plaintiffs' ability to nominate directors to serve on the Board from two to one, based on potential issues regarding "control" of Republic Bank's holding company. It also would defeat through self-help the main proposal in Plaintiffs' pending special meeting request — the election of two directors to fill the two vacant Board seats. The Board's decision to institute the

Board Entrenchment Scheme also came after the remaining vacant Class III Board seat should have been filled under Article II, Section 7 of the Company's bylaws through a shareholder election.

109. The Defendants had no legitimate basis to reduce the number of Board seats. The Board Entrenchment Scheme does not solve the problem of a potential deadlock on the Board, as there are still an even number of seats. The Board Entrenchment Scheme does not ensure legitimate oversight of the management of the Company where, as here, all of the Board members are beholden to Madonna, the interim CEO and Executive Chair. And, the Board Entrenchment Scheme does not maintain the equality among the classes of directors (now with one Class I director, two Class III directors and three Class II directors) mandated by the Company's bylaws and Pennsylvania law. In all respects, these self-interested acts were done with no input from shareholders.

| | | 2022 Board | | |
|---|---|---|---|---|
| Class | Term Expiration | April Board Members | September Board Members | Current Board Members |
| I | 2023 | Harry Madonna<br>Brian Tierney | Harry Madonna<br>Vacant | Harry Madonna |
| II | 2024 | Andrew B. Cohen<br>Lisa Jacobs<br>Harris Wildstein | Andrew B. Cohen<br>Lisa Jacobs<br>Harris Wildstein | Andrew Cohen<br>Lisa Jacobs<br>Harris Wildstein |
| III | 2022 | Vernon Hill<br>Barry Spevak<br>Theodore Flocco | Benjamin Duster<br>Vacant<br>Vacant | Benjamin Duster<br>Peter Bartholow |

Case ID: 221102195

110. Instead, the Board Entrenchment Scheme was clearly designed to entrench the Company's current Board and prevent Plaintiffs and the Company's other shareholders from electing new independent directors to fill up to four of the eight Board seats through Plaintiffs' requested special shareholder meeting and the 2022 annual meeting (and potentially a fifth in the 2023 annual meeting that should be scheduled within the next six months — *i.e.*, by early May of next year), thereby significantly changing the dynamics and direction of the Board and the Company.

111. The Board Entrenchment Scheme also prevents Company shareholders from freely exercising their voting rights to elect the three Class III directors who should have been installed seven months ago, and a fourth director to fill the vacant Class I seat pursuant to Plaintiffs' special meeting demand.

112. The Board Entrenchment Scheme serves no business, operational or governance purposes. Its only purpose is to benefit and entrench the current Board, while disenfranchising the shareholders the Board is supposed to protect.

113. The Board Entrenchment Scheme was only the most egregious example of the Defendants' overreaching defensive measures taken to entrench themselves at the expense of the franchise of the Company's shareholders. The Board Entrenchment Scheme followed the Defendants' refusal to grant Plaintiffs an exception to the Articles to allow them to purchase more of the Company's shares, repeated failure and refusal to schedule the 2022 annual meeting, repeated refusal to

Case ID: 221102195

schedule a special meeting for the election of directors sought by Plaintiffs, cancellation of the special meeting to fill Mr. Flocco's seat and one more Board seat scheduled by the court-appointed custodian, suppression of opposition by buying off Driver with a Board seat and $925,000 payment, and attempt to prevent Plaintiffs from continuing their proxy contest in exchange for considering their proposals to inject capital and otherwise benefit the Company and its shareholders.

114. Defendants were still not done with their efforts to rig the director election and undermine the shareholders' rights to select the custodians of their company. Defendants took one last step to rig the election in favor of the incumbent directors and prevent Plaintiffs from contesting the election of directors and the shareholders from having a voice in the Company.

115. Pursuant to the Company's November 4, 2022, notice finally setting the long-delayed 2022 annual shareholder meeting, on November 11, 2022 (three days before the deadline set in the notice), Plaintiffs submitted Mr. Braca as their nominee for election to the Board at the 2022 annual meeting. *See* November 11, 2022, notice, with attachments, a true and correct copy of which is attached hereto as **Exhibit 27**. As with multiple prior submissions to the Company and Board (two books and records requests and the nomination of Mr. Braca in connection with the special shareholder meeting scheduled by the custodian), Plaintiffs attached as their proof of ownership a letter from Plaintiff Philip Norcross' broker asserting that Mr.

Norcross is a record owner of 10,000 shares of Company stock and has been since November 16, 2021. *Id.* Plaintiffs also submitted their Schedule 13D filings with the SEC showing their beneficial ownership of almost 10% of the Company's shares. *Id.* The nomination was submitted on time and contained all of the information required by the Company's Articles of Incorporation and bylaws. *Id.*

116. On November 16, 2022, two days after the short deadline Defendants imposed for nominations to be submitted, Defendants for the first time disputed Mr. Norcross' record ownership of Company stock and refused to accept the nomination of Mr. Braca for election to the Board. *See* November 16, 2022, letter from Defendant Madonna to Philip Norcross, a true and correct copy of which is attached hereto as **Exhibit 28**.

117. Defendants did so to avoid a fair proxy contest, despite having accepted the very same proof of Mr. Norcross' record ownership, as evidenced by letters from his broker, three times before — including two prior books and records requests and the nomination of Mr. Braca for a Board seat in connection with the special shareholder meeting called by the custodian — without dispute and with full knowledge of the Company's internal records regarding its shareholders. *See* Exs. 8, 10, 21. Plaintiffs believed, based on the representations of Mr. Norcross' broker and Defendants' prior conduct and statements, that Plaintiff Philip Norcross was a valid record owner of Company stock. Defendants knew that Plaintiffs held that

belief and induced that belief despite having superior access to the Company's formal records.

118. Upon information and belief, Defendants failed to alert Plaintiffs of their objection to Mr. Braca's nomination until after the deadline to prevent Plaintiffs from being able to cure any deficiency.

119. Upon information and belief, Defendants also set an unreasonable deadline for submission of director nominations (setting a short ten calendar day notice period after delaying the 2022 annual meeting for over eight months and requiring nominations more than two months before the meeting date of January 26, 2023) in bad faith and with the specific goal of precluding Plaintiffs from meeting the standards under the Exchange Act Rule 14a-8 (specifically incorporated into the Articles of Incorporation and bylaws for making a nomination).

120. Under the Articles and bylaws, a shareholder may comply with Rule 14a-8 to make a nomination. Rule 14a-8 allows a shareholder with beneficial ownership (rather than a record holder) to make a proposal if the shareholder owns at least $25,000 of stock for one year. The statements from Mr. Norcross' broker, submitted multiple times to Defendants, showed that Mr. Norcross purchased 10,000 shares of Company stock (worth over $25,000) on November 16, 2021. On information and belief, Defendants set the unreasonably short November 14, 2022,

deadline for nominations not for any valid reason but instead to foreclose Plaintiffs from satisfying the one-year holding standard under Rule 14a-8.

121.   In fact, the November 14, 2022, deadline for submission of director nominations (announced in the Company's November 4, 2022, Form 8-K) was not reasonable at all under Pennsylvania law, and Defendants should be enjoined from enforcing it in any event.

122.   Under Rule 14a-8, a proposal (or nomination pursuant to the Company's Articles and bylaws) must be submitted within a "reasonable time before the company begins to print and send its proxy materials." 15 Pa. C.S. § 1758(e), entitled "Advance notice of nominations and other business," likewise provides that companies must provide a "reasonable time" for shareholder proposals and nominations.   The explanatory notes to Section 1758 explain that advance notice requires providing a "reasonable opportunity for shareholders to comply with them" and that they be "reasonable in relationship to corporate needs." They also specify:

> Among the considerations to be taken into account in determining the reasonableness of an advance notice bylaw authorized by subsection (e) is whether the time frame within which director nominations or shareholder resolutions must be submitted is consistent with the corporation's need, if any, to (i) prepare and publish a proxy statement, (ii) verify that a director nominee meets any established qualifications for director and is willing to serve, (iii) determine that a proposed resolution is a proper subject for shareholder action, and (iv) give interested parties adequate opportunity to communicate a

recommendation or response with respect to such matters
or to solicit proxies.

*Id.*

123. Here, the Company's deadline for nominations was not reasonable.
The Company delayed from March 17, 2022 to October 26, 2022 in filing its annual
report on Form 10-K. It also failed to make its required 2022 quarterly reports on
Form 10-Q. Indeed, it belatedly filed its first quarter Form 10-Q on November 18,
2022, four days *after* the deadline imposed by Defendants for submitting Board
nominations. It still has not filed its belated second and third quarter Form 10-Qs.
Shareholders are therefore in the dark about the financial status of the Company and
its operations under the current Board and management — critical information in
determining whether to nominate other directors and who would be best positioned
to address the Company's business and financial needs.

124. Similarly, Defendants delayed the 2022 annual meeting from its
originally scheduled date in early May 2022 until January 26, 2023 — more than
eight months late. Defendants have made no indication of when the Company will
prepare and publish its proxy statement and will likely not do so until it completes
its delayed second and third quarter Form 10-Qs. Defendants set the record date for
the meeting for November 29, 2022, *see* Ex. 25 (Nov. 4, 2022 Form 8-K), so they
cannot distribute proxy material to shareholders until after that date. And,
Defendants have delayed providing Plaintiffs with shareholder lists pursuant to their

books and records demand on the grounds that they will not obtain the list until after the record date.

125. Defendants' only proffered excuse for disenfranchising shareholders through the unreasonable and self-serving deadline is some supposed need to "print and sent its proxy materials for the 2022 Annual Meeting." *Id.* This purported justification is at best pretextual, and at worse false. Over the past five years, the Company has mailed its annual meeting proxy between 35 and 38 days before the scheduled meeting, meaning that the 2022 Annual Meeting proxy will likely be mailed no sooner than December 19, 2022.

126. Thus, Defendants' actions of setting a short deadline of ten calendar days after the announcement of the 2022 annual meeting (while depriving shareholders of required SEC financial information and with over two months before the meeting date) is not reasonable and was done in bad faith to stifle Plaintiffs' proxy contest and ability to present viable alternate candidates for the Company's shareholders to elect. The deadline for submitting nominations must be extended (not only to provide all shareholders sufficient time and information to submit nominations and proposals but also to allow nominations for the vacant Board seats that Defendants improperly eliminated). Defendants also must accept Plaintiffs' nomination of Mr. Braca for the Board.

127. Defendants' inequitable and oppressive conduct in furtherance of their scheme to entrench themselves, rig the election of directors and undermine Plaintiffs' proxy contest and all of Republic First shareholders' voting rights is the exact type of disenfranchisement that Pennsylvania law will not abide.

128. By their actions, Defendants have undermined Plaintiffs' right to engage in a proxy contest, deprived the Company's shareholders of their rightful voice in the governance of the Company, and sown chaos and confusion into the market. Defendants' actions constitute irreparable harm warranting the imposition of immediate injunctive relief.

## COUNT I:
### (Declaratory and Injunctive Relief: Violation of Shareholder Voting Rights through the Board Entrenchment Scheme)

129. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

130. The right to vote is among the most fundamental rights of ownership of company stock. *See Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 322 n.8 (Pa. 1961). The right to vote helps ensure corporate democracy — the principle that the owners of a corporation should control the direction that their corporation takes. *Warehime*, 777 A.2d at 481. While the business judgment rule affords directors leeway in decisions they make in good faith and with due care, and while directors may consider constituencies other than the shareholders, neither

Case ID: 221102195

provision can validate corporate actions designed to undermine shareholders' voting rights. *Id.* at 480.

131. Furthermore, 15 Pa. C.S. § 1724(b) provides that, unless a company's articles of incorporation provide otherwise, "[e]ach class [of directors] shall be as nearly equal in number as possible."

132. Likewise, Article II, Section 2 of the Company's bylaws requires that "[t]he Board of Directors shall be divided into three classes as nearly equal as possible."

133. Defendants' Board Entrenchment Scheme, eliminating one Board seat from each of Classes I and III — leaving one director in Class I, three directors in Class II, and two directors in Class III — directly violates both Pennsylvania law and the Company's bylaws, which explicitly mandate equality of classes.

134. The Defendants have reduced the size of the Board as a defensive response to Plaintiffs' annual meeting proxy contest and special meeting request and their public statements that they intend to support alternative candidates for director rather than those nominated by the Board. The Board Entrenchment Scheme is an unreasonable burden on the shareholder franchise. In eliminating two Board seats, Defendants have acted for the purpose of entrenchment and to impermissibly interfere with the shareholder franchise, without any legitimate justification for their actions.

Case ID: 221102195

135. As such, the Defendants' actions are inequitable and impermissible under Pennsylvania law. *See Jewelcor Mgmt.*, 60 Pa. D. & C.4th at 406-07 (enjoining board from advancing date of shareholder meeting in the midst of a proxy contest); *Pell*, 135 A.3d at 769-70 (enjoining board plan to reduce the number of board seats in the midst of a proxy contest).

136. Accordingly, any attempt to implement the Board Entrenchment Scheme is invalid and has no force or effect, and the Company must be precluded from adopting or implementing any such plan.

137. Plaintiffs seek declaratory relief pursuant to 42 Pa. C.S. §§ 7531 *et seq.* because there is an immediate and actual controversy between the parties, and Plaintiffs seek to remedy a threat to their legal rights.

138. Plaintiffs have no adequate remedy at law.

## COUNT II:
**(Declaratory and Injunctive Relief: Violation of Shareholder Voting Rights through the Nomination Process and Rejection of Plaintiffs' Nominee)**

139. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

140. The right to wage a proxy contest and nominate directors is commensurate with a shareholder's right to vote and is therefore among the most fundamental rights of ownership of company stock. *See Jewelcor Mgmt.*, 60 Pa. D. & C.4th at 400, 406-07; *Reifsnyder*, 173 A.2d at 322 n.8. Thus, actions by directors

Case ID: 221102195

designed to undermine or thwart a shareholder's right to engage in a proxy contest undermine all corporate shareholders' voting rights and are invalid. *See Warehime*, 777 A.2d at 481.

141. Here, Defendants' action in setting a short deadline for shareholders to submit director nominations and rejecting Plaintiffs' nomination of Mr. Braca for election to the Board are part and parcel of their scheme to entrench themselves and rig the election to prevent the Company's shareholders from having their say in the governance of Republic First. Defendants cannot be permitted to proceed with their improper and inequitable scheme.

142. First, Defendants have waived their right to deny Mr. Norcross is a record owner of Republic First shares where they have repeatedly accepted his broker's proof of record ownership (including for the purpose of a prior director nomination) and acted in conformance with Mr. Norcross being a record owner despite having access to the Company's formal records relating to the record owners of its shares.

143. Second, Defendants are estopped from refusing to recognize Mr. Norcross as a record holder because they knew that he believed he was a record holder, had superior information with access to the formal Company documents and did not refute his record ownership (and in fact implicitly acknowledged it) multiple

Case ID: 221102195

times before, inducing Mr. Norcross to justifiably rely on his record ownership status.

144. Third, Defendants acted in bad faith in setting an unreasonably short period for submission of nominations with the specific intent to frustrate Mr. Norcross' nomination and his ability to rely on Rule 14a-8 under the Securities Exchange Act which is incorporated into the Articles and bylaws by setting the nomination deadline for two days before Mr. Norcross would have met the one-year ownership standard under the Rule.

145. Fourth, Defendants must be required to extend the deadline for nomination of directors because the date they set (only ten calendar days after the announcement of the belated 2022 annual meeting, including two intervening weekends and a federal holiday) was not reasonable in light of the Company's failure to file with the SEC its required financial reports for any period in 2022 and its filing of its first quarter 2022 10-Q four days after the nomination deadline — with the second and third quarter 10-Qs still unfiled — thereby not allowing Plaintiffs and the Company's other shareholders access to the Company's most recent financial information before having to make decisions on the nomination of directors.

146. The deadline for nominations was also unreasonable in light of the extensive delays in scheduling the 2022 annual meeting, the fact that the meeting was more than two months away, and the uncertainty created by Defendants'

announcement of the Board Entrenchment Scheme three days after announcing the meeting date and nomination deadline (thus impacting Plaintiffs' and all shareholders' ability to nominate three Class III directors they believed would be up for election at the 2022 annual meeting for over one year and reducing to one week the time period for shareholders to consider potential nominations).

147. The deadline for nominations was also unreasonable as the Company does not have any imminent deadline to prepare and distribute its proxy statement and will likely not do so until after its second and third quarter 2022 quarterly financial statements on Form 10-Q are filed with the SEC and, consistent with past practice, until late December 2022.

148. The Defendants' bad faith setting of an artificially short deadline for nominating directors and denial of Plaintiffs' Board nomination are yet another defensive measure taken to upend Plaintiffs' annual meeting proxy contest, special shareholder meeting request and intent to support alternative candidates for director rather than those nominated by the Board. Defendants' actions place an unreasonable burden on the shareholder franchise — precluding the Company's owners from being able to select the directors who are best aligned with their interests and will exercise better judgment in overseeing the operations of the Company. In manipulating the nomination process, Defendants have acted for the

Case ID: 221102195

purpose of entrenchment and to impermissibly interfere with the shareholder franchise, without any legitimate justification for their actions.

149. As such, the Defendants' actions are inequitable and impermissible under Pennsylvania law. *See Jewelcor Mgmt.*, 60 Pa. D. & C.4th at 406-07 (enjoining board from advancing date of shareholder meeting in the midst of a proxy contest); *Pell*, 135 A.3d at 769-70 (enjoining board plan to reduce the number of board seats in the midst of a proxy contest).

150. Accordingly, any attempt to enforce the nomination deadline or preclude Plaintiffs' Board nomination is invalid and has no force or effect, and Defendants must be precluded from doing so.

151. Plaintiffs seek declaratory relief pursuant to 42 Pa. C.S. §§ 7531 *et seq.* because there is an immediate and actual controversy between the parties, and Plaintiffs seek to remedy a threat to their legal rights.

152. Plaintiffs have no adequate remedy at law.

## COUNT III:
### (Declaratory and Injunctive Relief: Waiver of Enforcement of the Bylaws)

153. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

154. By their actions in repeatedly accepting Mr. Norcross' proof of record ownership, the Defendants have waived the right to assert that Mr. Norcross is not a

record owner of Company stock and preclude him from nominating directors for the 2022 annual meeting on that basis.

155. Accordingly, any attempt to preclude Plaintiffs' Board nomination is invalid and has no force or effect, and Defendants must be precluded from doing so.

156. Plaintiffs seek declaratory relief pursuant to 42 Pa. C.S. §§ 7531 *et seq.* because there is an immediate and actual controversy between the parties, and Plaintiffs seek to remedy a threat to their legal rights.

157. Plaintiffs have no adequate remedy at law.

## COUNT IV:
### (Declaratory and Injunctive Relief: Estoppel)

158. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

159. Defendants are estopped from refusing to recognize Mr. Norcross as a record owner because they knew that he believed he was a record holder and Defendants had superior information with access to the formal Company documents but did not refute his record ownership three times before, inducing him to reasonably rely on his record ownership.

160. Accordingly, any attempt to preclude Plaintiffs' Board nomination is invalid and has no force or effect, and Defendants must be precluded from doing so.

Case ID: 221102195

161. Plaintiffs seek declaratory relief pursuant to 42 Pa. C.S. §§ 7531 *et seq.* because there is an immediate and actual controversy between the parties, and Plaintiffs seek to remedy a threat to their legal rights.

162. Plaintiffs have no adequate remedy at law.

## COUNT V:
### (Declaratory and Injunctive Relief: Violation of Company Articles, Bylaws and Pennsylvania Law in Setting an Unreasonable Nomination Deadline)

163. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

164. Defendants acted in bad faith in setting an unreasonably short period for submission of nominations with the specific intent to frustrate Mr. Norcross' nomination and his ability to rely on Rule 14a-8 under the Securities Exchange Act which is incorporated into the Articles and bylaws by setting the nomination deadline two days before Mr. Norcross would have met the one-year ownership standard under the Rule.

165. Defendants must be required to extend the deadline for nomination of directors because the date they set (only ten calendar days after the announcement of the belated 2022 annual meeting, with two intervening weekends and a federal holiday, thus amounting to five business days) was not reasonable in light of the Company's failure to file with the SEC its required financial reports for any period in 2022 by the deadline, filing its first quarter 2022 10-Q four days after the

nomination deadline — with the second and third quarter 10-Q' still unfiled — thereby not allowing Plaintiffs and the Company's other shareholders access to the Company's most recent financial information before having to make decisions on the nomination of directors.

166. The deadline for nominations was also unreasonable in light of the extensive delays in scheduling the 2022 annual meeting, the fact that the meeting was more than two months away, and the uncertainty created by Defendants' announcement of the Board Entrenchment Scheme three days after announcing the meeting date and nomination deadline (thus impacting Plaintiffs' and all shareholders' ability to nominate three Class III directors they believed would be up for election at the 2022 annual meeting for over one year and reducing to one week — including a federal holiday — the time period for shareholders to consider potential nominations).

167. The deadline for nominations was also unreasonable as the Company does not have any imminent deadline to prepare and distribute its proxy statement and will likely not do so until after its second and third quarter 2022 quarterly financial statements on Form 10-Q are filed with the SEC and, consistent with past practice, not until late December 2022.

168. Accordingly, any attempt to enforce the nomination deadline is invalid and has no force or effect, and Defendants must be precluded from doing so.

Case ID: 221102195

169. Plaintiffs seek declaratory relief pursuant to 42 Pa. C.S. §§ 7531 *et seq.* because there is an immediate and actual controversy between the parties, and Plaintiffs seek to remedy a threat to their legal rights.

170. Plaintiffs have no adequate remedy at law.

## COUNT VI:
### (Declaratory and Injunctive Relief: Violation of Bylaws)

171. Plaintiffs incorporate by reference the foregoing paragraphs as if set forth fully herein.

172. Article II, Section 2 of the Company's bylaws require that any director must be a shareholder at the commencement of the director's term. Ex. 1 (Company bylaws) ("A director need not be a citizen of the United States or a resident of the Commonwealth of Pennsylvania but must be a shareholder of the Corporation at the commencement of his term.").

173. Defendant Duster's appointment to the Board to fill the Board seat vacated by Mr. Flocco's death was announced on July 11, 2022.

174. Defendant Duster was not a shareholder at the commencement of his term as director and continues to not be a shareholder of the Company as noted in the Company's Form 10-K filed on October 26, 2022.

175. Therefore, Defendant Duster is not a valid director.

Case ID: 221102195

176. As Defendant Duster was never a valid director, the Board was improperly constituted since his appointment. All of the Board's actions since Defendant Dusker's appointment are tainted by his participation. Thus, all actions taken by the Board since July 2022, particularly those taken in bad faith in an attempt to entrench the Board and disenfranchise shareholders, including the Board Entrenchment Scheme, the improper setting of the nomination deadline and the rejection of Plaintiffs' director nomination, are null and void and have no effect.

177. Plaintiffs seek declaratory relief pursuant to 42 Pa. C.S. §§ 7531 *et seq.* because there is an immediate and actual controversy between the parties, and Plaintiffs seek to remedy a threat to their legal rights.

178. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

A. declaring that the Defendants' actions in adopting the Board Entrenchment Scheme are inequitable and impermissible under Pennsylvania law and that, accordingly, any such plan is invalid and will have no force or effect;

B. declaring that the Defendants' actions in adopting the Board Entrenchment Scheme violate shareholder voting rights and are therefore impermissible under Pennsylvania law;

Case ID: 221102195

C.      preliminarily and permanently enjoining Defendants from implementing the Board Entrenchment Scheme or any similar measure that has the effect of impeding, thwarting, frustrating, or interfering with shareholders' voting rights;

D.      preliminarily and permanently enjoining Defendants from making any amendments to the Company's bylaws or the size of the Board until after the 2022 annual meeting and a special meeting for the election of a director to fill the vacant Class I seat;

E.      requiring Defendants to reopen the nomination process for the 2022 annual meeting to allow shareholders to submit nominations for the three Class III Board seats up for election at the 2022 annual meeting;

F.      requiring Defendants to schedule a special shareholder meeting for the election of a director to fill the vacant Class I Board seat;

G.      declaring that the Defendants' actions in setting an unreasonable deadline for Board nominations and shareholder proposals violates shareholder voting rights, is inequitable and impermissible under Pennsylvania law and, accordingly, the nomination and proposal deadline is invalid and will have no force or effect;

H.      declaring that the Defendants' actions in rejecting Plaintiffs' nomination of Mr. Braca for election as a Class III director at the 2022 annual

Case ID: 221102195

meeting violates shareholder voting rights, is inequitable and impermissible under Pennsylvania law and, accordingly, is invalid and Defendants must recognize Mr. Braca as a valid nominee for a Class III Board seat at the 2022 annual meeting;

I.        preliminarily and permanently enjoining Defendants from imposing any deadline for nominations or shareholder proposals that is more than six weeks before the 2022 annual meeting date or taking any other action that has the effect of impeding, thwarting, frustrating, or interfering with shareholders' voting rights;

J.        declaring that Defendant Duster is not a valid director of the Company;

K.        declaring that all actions taken by the Board with Defendant Duster's involvement, including the Board Entrenchment Scheme, setting an unreasonable deadline for shareholders to submit nominations and proposals for the 2022 annual meeting, and rejecting Plaintiffs' director nomination, are null and void;

L.        awarding Plaintiffs their costs and disbursements in this action, including reasonable attorneys' and experts' fees; and

M.        granting Plaintiffs such other and further relief as this Court may deem just and proper.

Case ID: 221102195

Dated: November 22, 2022

/s/ Adrian R. King, Jr.
Adrian R. King, Jr. (PA No. 69315)
M. Norman Goldberger (PA No. 28241)
Laura E. Krabill (PA No. 76879)
Shawn F. Summers (PA No. 327471)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8622
kinga@ballardspahr.com
goldbergern@ballardspahr.com
krabilll@ballardspahr.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Brian T. Frawley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
212.558.4000
frawleyb@sullcrom.com

# CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Dated: November 22, 2022        /s/ Adrian R. King, Jr.

Adrian R. King, Jr.

# **VERIFICATION**

*Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN*

I hereby state that I am authorized to make this verification on behalf of the Plaintiffs and that the statements made in the foregoing document are true and correct to the best of my knowledge, information and belief.

I understand that the statements in the foregoing document are made subject to the penalties of 18 Pa. C.S. § 4909 relating to unsworn falsification to authorities.


Dated:  November 21, 2022                    _____

                                             Philip A. Norcross

Case ID: 221102195