Exhibit "A"
(part 2)



*Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN*

# EXHIBIT 1

Exhibit 3.2

AMENDED AND RESTATED BY-LAWS OF
REPUBLIC FIRST BANCORP, INC.
A Pennsylvania Corporation

## ARTICLE I
## SHAREHOLDERS

Section 1. Annual Meetings. The annual meeting of the shareholders of the Corporation shall be held on a date fixed from time to time by the Board of Directors. An annual meeting may be held at any place in or out of the Commonwealth of Pennsylvania as may be determined by the Board of Directors and as shall be designated in the notice of the meeting and at the time specified by the Board of Directors. Notwithstanding the preceding sentence, if a meeting of the shareholders is held by means of the internet or other electronic communications technology in a fashion pursuant to which the shareholders have the opportunity to read or hear the proceedings substantially concurrently with their occurrence, vote on matters submitted to the shareholders, pose questions to the directors, make appropriate motions and comment on the business of the meeting, the meeting need not be held at a particular geographic location. Any business of the Corporation may be transacted at an annual meeting without being specifically designated in the notice unless otherwise provided by statute, the Corporation's Amended and Restated Articles of Incorporation (the "Articles of Incorporation") or these By-Laws, as they may be amended from time to time.

Section 2. Special Meetings. Special meetings of the shareholders for any purpose or purposes, unless otherwise prescribed by statute or by the Corporation's Articles of Incorporation, may be held at any place within the United States, and may be called at any time (a) by the Chairman of the Board, (b) by the Board of Directors or (c) at the request in writing of shareholders entitled to cast at least twenty (20%) percent of the votes entitled to be cast at the meeting upon payment by such shareholders to the Corporation of the reasonably estimated cost of preparing and mailing a notice of the meeting (which estimated cost shall be provided to such shareholders by the Secretary of the Corporation); provided, however, that special meetings of shareholders of the Corporation which have as their purpose a change in control of the Corporation, amendment to these By-Laws or an amendment of the Corporation's Articles of Incorporation may only be called by a majority of the Board of Directors of the Corporation. Notwithstanding the foregoing, unless requested by shareholders entitled to cast a majority of the votes entitled to be cast at the meeting, a special meeting of the shareholders need not be called at the request of shareholders to consider any matter that is substantially the same as a matter voted on at any meeting of the shareholders held during the preceding twelve (12) months. A written request shall state the purpose or purposes of the proposed meeting.

Section 3. <u>Notice of Meetings.</u> Written or printed notice stating the time and place of every meeting of the shareholders and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be given by the Secretary of the Corporation to each shareholder of record entitled to vote at the meeting, by placing the notice in the mail at least ten (10) days, but not more than sixty (60) days, prior to the date designated for the meeting addressed to each shareholder at his address appearing on the books of the Corporation or supplied by the shareholder to the Corporation for the purpose of notice. The notice of any meeting of shareholders may be accompanied by a form of proxy approved by the Board of Directors in favor of the actions or persons as the Board of Directors may select. Notice of any meeting of shareholders shall be deemed waived by any shareholder who attends the meeting in person or by proxy, or who before or after the meeting submits a signed waiver of notice that is filed with the records of the meeting.

Section 4. <u>Quorum.</u> Except as otherwise provided by statute or by the Corporation's Articles of Incorporation, the presence at a meeting in person or by proxy of shareholders of the Corporation entitled to cast at least a majority of the votes entitled to be cast at such meeting shall constitute a quorum at a meeting of the shareholders. Except as otherwise provided by statute or by the Corporation's Articles of Incorporation, all questions to be decided at any meeting shall be decided by majority vote of the shares so represented in person or by proxy at the annual meeting and entitled to vote. In the absence of a quorum, the shareholders present in person or by proxy at the meeting, by majority vote and without notice other than by announcement at the meeting, may adjourn the meeting from time to time as provided in Section 5 of this Article I until a quorum shall be present in person or by proxy. The shareholders present at any duly organized meeting may continue to do business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum present and voting at such meeting. The absence from a meeting of shareholders representing such number of shares making it impossible to meet any greater quorum requirement imposed by the laws of the Commonwealth of Pennsylvania or other applicable statute, the Corporation's Articles of Incorporation or these By-Laws for action upon any given matter shall not prevent action at the meeting on any other matter or matters that may properly come before the meeting, so long as there are present, in person or by proxy, holders of the number of shares of stock of the Corporation required for action upon the other matter or matters. The presence or participation, including voting and taking other action, at a meeting of shareholders or the expression of consent or dissent to corporate action by a shareholder by conference telephone or other electronic means, including, without limitation, the internet, shall constitute the presence of, or vote or action by, the shareholder for purposes of these By-Laws.

Section 5. <u>Adjournment.</u> Any meeting of the shareholders may be adjourned from time to time and for such period as the shareholders present and entitled to vote shall direct, without notice other than by announcement at the meeting at which the adjournment is taken. At any adjourned meeting at which a quorum shall be present, any action may be taken that could have been taken at the meeting originally called.

Section 6. <u>Organization.</u> At every annual meeting of the shareholders, the Chairman of the Board, or in his absence or inability to act or at the request of the Chairman, the President, or in his absence or inability to act, a Vice President, or in the absence or inability to act of the Chairman of the Board, the President and all the Vice Presidents, a chairman chosen by the shareholders, shall act as chairman of the meeting. The Secretary, or in his absence or inability to act, a person appointed by the chairman of the meeting, shall act as secretary of the meeting and keep the minutes of the meeting.

Section 7. <u>Order of Business.</u> The order of business at all meetings of the shareholders shall be as determined by the chairman of the meeting.

Section 8. <u>Voting</u>. Except as otherwise provided by statute or the Corporation's Articles of Incorporation, each holder of record of shares of stock of the Corporation having voting power shall be entitled at each meeting of the shareholders to one (1) vote for every share of stock standing in his name on the records of the Corporation as of the record date determined pursuant to Section 9 of this Article I.

Each shareholder entitled to vote at any meeting of shareholders may authorize another person or persons to act for him by a proxy signed by the shareholder or his attorney-in- fact. Such proxy shall be authorized by an instrument in writing, or by a transmission permitted by law, filed in accordance with the procedure established for the meetings. Any copy, facsimile, telecommunication or other reliable reproduction of the writing or transmission created pursuant to this paragraph may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used provided that such copy, facsimile, telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission. No proxy shall be valid after the expiration of eleven (11) months from the date thereof, unless otherwise provided in the proxy. Every proxy shall be revocable at the pleasure of the shareholder executing it, except in those cases in which the proxy states that it is irrevocable and in which an irrevocable proxy is permitted by law. A proxy shall not be revoked by the death or incapacity of the maker unless, before the authority is exercised or the vote counted, written notice of the death or incapacity is given to the secretary of the corporation. (R)

Proxies solicited on behalf of management shall be voted as directe4 by the shareholders or, in the absence of such direction, as determined by the Board of Directors.

Section 9. <u>Fixing Record Date of Voting.</u> The Board of Directors may set a record date for the purpose of determining shareholders entitled to vote at any meeting of the shareholders or any adjournment thereof or, (subject to the provisions of Article IV, Section 6 of these By-Laws) for any other proper purpose. Such record date in any case shall be not more than ninety (90) nor fewer than ten (10) days before the date of the particular action to be taken.

All persons who were holders of record of shares as of the record date of a meeting, and no others, shall be entitled to vote at such meeting and any adjournment thereof.

Section 10. <u>Inspectors.</u> The Board of Directors may, in advance of any meeting of shareholders, appoint one (1) or three (3) inspectors to act at the meeting or at any adjournment of the meeting. If the inspectors shall not be so appointed or if any of them shall fail to appear or act, the chairman of the meeting may appoint inspectors prior to the convening of the meeting. Each inspector, before entering upon the discharge of his duties, shall take and sign an oath to execute faithfully the duties of inspector at the meeting with strict impartiality and according to the best of his ability. Unless otherwise prescribed by the Board, the inspectors shall: determine the number of shares outstanding and the voting power of each share; the Number of shares represented at the meeting; the existence of a quorum and the validity and effect of proxies; receive votes, ballots or consents; hear and determine all challenges and questions arising in connection with the right to vote; count and tabulate all votes, ballots or consents; determine the result thereof, and, do those acts as are proper to conduct the election of vote with fairness to all shareholders. Upon request of the chairman of the meeting or any shareholder entitled to vote at the meeting, the inspectors shall make a report in writing of any challenge, request or matter determined by them and shall execute a certificate of any fact found by them. Inspectors need not be shareholders of the Corporation.

Section 11. <u>Shareholder Proposals.</u> At all Annual Meetings of shareholders commencing after the Annual Meeting of Shareholders to be held in 1996, if any, shareholder proposals with respect to an annual meeting shall be made in compliance with the provisions of Rule 14a-8 of the Securities Exchange Act of 1934, as amended ("Rule 14a-8"). With respect to a Special Meeting of shareholders, shareholder proposals must be stated in writing and filed with the secretary of the Corporation not later than the close of business on the seventh (7th) day following the day on which notice of such Special Meeting is first given to shareholders. This provision shall not prevent the consideration and approval or disapproval at the annual meeting of reports of officers, directors and committees; but, in connection with such reports, no new business shall be acted upon at such annual meeting unless stated and filed as herein provided.

Section 12. <u>Action By Unanimous Consent.</u> At all Annual Meetings of shareholders commencing after the Annual Meeting of Shareholders to be held in 1996, if any, shareholders of the Corporation shall not be entitled to take action by means of a unanimous written consent.

**ARTICLE II**
**BOARD OF DIRECTORS**

Section 1. <u>General Powers.</u> Except as otherwise provided in the Corporation's Articles of Incorporation, the business and affairs of the Corporation shall be managed under the direction of the Board of Directors. All powers of the Corporation may be exercised by or under authority of the Board of Directors except as conferred on or reserved to the shareholders by law, by the Corporation's Articles of Incorporation or by these By-Laws.

Section 2. <u>Number and Term.</u> The number of directors shall be fixed from time to time by resolution of the Board of Directors adopted by a majority of the directors then in office; provided, however, that the number of directors shall in no event be fewer than five (5) nor more than twenty-five (25). The Board of Directors shall be divided into three classes as nearly equal as possible. The members of each class shall be elected for a term of three years and until their successors are elected and qualified. One class shall be elected by ballot annually. Any vacancy created by an increase in directors may be filled in accordance with Section 6 of this Article II. No reduction in the number of directors shall have the effect of moving any director from office prior to the expiration of his term unless the director is specifically removed pursuant to Section 5 of this Article II at the time of the decrease. A director need not be a citizen of the United States or a resident of the Commonwealth of Pennsylvania but must be a shareholder of the Corporation at the commencement of his term.

Section 3. <u>Standard of Care; Justifiable Reliance.</u> A director shall stand in a fiduciary relation to the corporation and shall perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

      (a) One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

      (b) Counsel, public accountants or other persons as to matters, which the director reasonably believes to be within the professional or expert competence of such person.

      (c) A committee of the board upon which the directors does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

Section 4. <u>Nomination by Shareholders.</u> At all Annual Meetings of shareholders commencing after the Annual Meeting of Shareholders to be held in 1996, if any, any stockholder who desires to propose nominees to the Board of Directors must provide for the receipt of a written notice of the intention to nominate a person or persons for election as directors by the Secretary of the Corporation: (i) with respect to an election to be held at any annual meeting of shareholders in accordance with the provision of Rule 14a-8, and (ii) with respect to an election to be held at a special meeting of shareholders for the election of directors, the close of business on the seventh (7th) day following the day on which notice of such meetings is first given to shareholders.

      The notice is required to contain: (i) the name and address of the shareholder who intends to make the nomination and of the person or persons to be nominated; (ii) a representation that the shareholder is a holder of record of stock entitled to vote at the meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (iv) such other information regarding each nominee proposed by such shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had each nominee been nominated or intended to be nominated, by the Board of Directors of the Corporation; and (v) the consent of each nominee to serve as a director of the Company if so elected. The chairman of any meeting of shareholders to elect directors and the Board of Directors may refuse to recognize the nomination of any person not made in compliance with the foregoing.

Section 5. <u>Resignation.</u> A director of the Corporation may resign at any time by giving written notice of his resignation to the Board of Directors or the Chairman of the Board or the Secretary of the Corporation. Any resignation shall take effect at the time specified in it or, should the time when it is to become effective not be specified in it, upon its formal acceptance by the Board of Directors. Other than as provided herein, acceptance of a resignation shall not be necessary to make it effective unless the resignation states otherwise. When one or more directors resign from the board effective at a future date, the directors then in office, including those who have so resigned, shall have power by the applicable vote to fill the vacancies, the vote thereon to take effect when the resignations become effective.

Section 6. <u>Removal of Directors.</u> Subject to the rights of the holders of any class separately entitled to elect one or more directors, any director, or the entire Board of Directors, may be removed from office for cause by the affirmative vote of the holders of at least 75% of the combined voting power of all classes of capital stock entitled to vote in the election of directors.

The Board of Directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within sixty (60) days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the Board of Directors.

Section 7. <u>Vacancies.</u> Any vacancies in the Board of Directors, whether arising from death, resignation, removal or any other cause except an increase in the number of directors, shall be filled by a vote of the majority of the Board of Directors then in office even though that majority is less than a quorum. A majority of the entire Board may fill a vacancy that results from an increase in the number of directors. In the event that at any time a vacancy exists in any office of a director that may not be filled by the remaining directors, a special meeting of the shareholders shall be held as promptly as possible and in any event within sixty (60) days, for the purpose of filling the vacancy or vacancies. Any director elected or appointed to fill a vacancy shall hold office for the balance of the term then remaining and until a successor has been chosen and qualifies or until his earlier resignation or removal.

Section 8. <u>Place of Meetings.</u> Meetings of the Board may be held at any place that the Board of Directors may from time to time determine or that is specified in the notice of the meeting.

Section 9. <u>Regular Meetings.</u> Regular meetings of the Board of Directors may be held without notice at the time and place determined by the Board of Directors.

Case ID: 221102195

Section 10. Special Meetings. Special meetings of the Board of Directors may be called by a majority of the Board or by the Chairman of the Board.

Section 11. Organizational Meeting. The organizational meeting of each newly elected Board of Directors shall be held as soon as practicable after the meeting of shareholders at which the directors were elected. No notice of such annual meeting shall be necessary if held immediately after the adjournment, and at the site, of the meeting of shareholders. If not so held, notice shall be given as hereinafter provided for special meeting of the Board of Directors.

Section 12. Chairman of the Board. The Chairman of the Board shall preside at all meetings of the shareholders and of the Board of Directors, unless otherwise provided herein. Subject to the control of the Board of Directors, the Chairman of the Board shall have general charge of the business and affairs of the Corporation. In the absence or inability of the Chairman of the Board to act, a majority of the Board of Directors shall designate the person or persons to preside at meetings of Shareholders and the Board of Directors.

Section 13. Notice of Special Meetings. Notice of each special meeting of the Board of Directors shall be given by the Secretary as hereinafter provided. Each notice shall state the time and place of the meeting and shall be delivered to each director, either personally, by courier or by telephone or other standard form of telecommunication, at least twenty-four (24) hours before the time at which the meeting is to be held, or by first-class mail, postage prepaid, addressed to the director at his residence or usual place of business, and mailed at least two (2) days before the day on which the meeting is to be held.

Section 14. Waiver of Notice of Meetings. Notice of any special meeting need not be given to any director who shall, either before or after the meeting, sign a written waiver or notice that is filed with the records of the meeting or who shall attend the meeting.

Section 15. Quorum and Voting. A majority of the members or the entire Board of Directors shall be present in person at any meeting of the Board so as to constitute a quorum for the transaction of business at the meeting, and except as otherwise expressly required by statute, the Corporation's Articles of Incorporation, these By-Laws, or any applicable statute, the act of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board. In the absence of a quorum at any meeting of the Board, a majority of the directors present may adjourn the meeting to another time and place until a quorum shall be present. Notice of the time and place of any adjourned meeting shall be given to the directors who were not present at the time of the adjournment and, unless the time and place were announced at the meeting at which the adjournment was taken, to the other directors. At any adjourned meeting at which a quorum is present, any business may be transacted that might have been transacted at the meeting as originally called.

Section 16. Organization. The Board of Directors shall designate a Chairman of the Board, who shall preside at each meeting of the Board. In the absence or inability of the Chairman of the Board to act, or at the Chairman's request, the President, or, in his absence or inability to act, another director chosen by a majority of the directors present, shall act as chairman of the meeting and preside at the meeting. The Secretary (or, in his absence or inability to act, any person appointed by the chairman) shall act as secretary of the meeting and keep the minutes of the meeting.

Section 17. Committees. The Board of Directors may designate one (1) or more committees of the Board of Directors including, but not limited to, an Executive Committee, Audit Committee, Compensation Committee and Nominating Committee, each consisting of two (2) or more directors. To the extent provided in the resolution creating such committees, and permitted by law, the committee or committees shall have and may exercise the powers of the Board of Directors in the management and conduct of the business and affairs of the Corporation and may authorize the seal of the Corporation to be affixed to all papers that may require it. Any committee or committees shall have the name or names determined from time to time by resolution adopted by the Board of Directors. Each committee shall keep regular minutes of its meetings and provide those minutes to the Board of Directors when required. The members of a committee present at any meeting, whether or not they constitute a quorum, may appoint a director to act in the place of the absent member.

Section 18. Written Consent of Directors in Lieu of Meeting. Any action required or permitted to be taken at any meeting of the Board of Directors or of any committee of the Board may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of the proceedings of the Board or committee.

Section 19. Telephone Conference. Members of the Board of Directors or any committee of the Board may participate in any Board or committee meeting by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time. Participation by such means shall constitute presence in person at the meeting.

Section 20. Compensation. Each director shall be entitled to receive compensation, if any, as may from time to time be fixed by the Board of Directors, including a fee for each meeting of the Board or any committee thereof, regular or special, he attends. Directors may also be reimbursed by the Corporation for all reasonable expenses incurred in traveling to and from the place of a Board or committee meeting. Directors who are also officers of the Corporation and/or any of its subsidiaries shall not receive compensation in consideration of their services as a director.

### ARTICLE III
### OFFICERS, AGENTS AND EMPLOYEES

Section 1. Number and Qualifications. The officers of the Corporation shall be a Chief Executive Officer or Officers, a President, a Secretary and a Treasurer, each of whom shall be elected by the Board of Directors. The Board of Directors may elect or appoint one (1) or more Vice Presidents and may also appoint any other officers, offices, agents and employees as it deems necessary or proper. Any two (2) or more offices may be held by the same person, except the offices of President and Vice President, but, unless otherwise authorized by the Board of Directors or an executive committee thereof, no officer shall execute, acknowledge or verify any instrument in more than one (1) capacity. Officers shall be elected by the Board of Directors each year at its organizational meeting held after the annual meeting of shareholders and until his successor shall have been duly elected and shall have qualified, or until his death, or until he shall have resigned or have been removed, as provided in these By-Laws. The Board of Directors may from time to time elect, or delegate to the Chairman of the Board or the President the power to appoint, such officers (including, but not limited to, one or more Assistant Vice Presidents, one or more Assistant Treasurers and one or more Assistant Secretaries) and such agents as may be necessary or desirable for the business of the Corporation. Such other officers and agents shall have such duties and shall hold their offices for such terms as may be prescribed by the Board or by the appointing authority.

Section 2. Resignations. Any officer of the Corporation may resign at any time by giving written notice of his resignation to the Board of Directors, the Chairman of the Board, the President or the Secretary. Any resignation shall take effect at the time specified therein or, if the time when it shall become effective is not specified therein, immediately upon its formal acceptance by the Board of Directors. Other than as specifically provided herein, the acceptance of a resignation shall not be necessary to make it effective unless otherwise stated in the resignation.

Section 3. Removal of Officer, Agent or Employee. Any officer, agent or employee of the Corporation may be removed by the Board of Directors with or without cause at any time, and the Board may delegate the power of removal as to agents and employees not elected or appointed by the Board of Directors. Removal shall be without prejudice to the person's contract rights, if any, but the appointment of any person as an officer, agent or employee of the Corporation shall not of itself create contract rights.

Section 4. Vacancies. A vacancy in any office, whether arising from death, resignation, removal or any other cause, may be filled for the unexpired portion of the term of the office that shall be vacant, in the manner prescribed in these By-Laws, for the regular election or appointment to the office.

Section 5. Compensation. The compensation of the officers of the Corporation shall be fixed by the Board of Directors or a designated committee thereof, but this power may be delegated to any officer with respect to other officers under his control.

Section 6. Bonds or Other Security. If required by the Board, any officer, agent or employee of the Corporation shall give a bond or other security for the faithful performance of his duties, in an amount and with any surety or sureties as the Board may require.

Section 7. President. The President shall have the powers and perform the duties that the Board or the Chairman of the Board may from time to time prescribe.

Section 8. <u>Vice President.</u> Each Vice President shall have the powers and perform the duties that the Board of Directors, the Chairman of the Board or the President may from time to time prescribe.

Section 9. <u>Treasurer.</u> Unless otherwise designated by the Board of Directors or an executive committee thereof, the Treasurer shall be the Chief Financial Officer and Chief Accounting Officer of the Corporation. Subject to the provisions of any contract that may be entered into with any custodian pursuant to authority granted by the Board of Directors, the Treasurer shall have charge of all receipts and disbursements of the Corporation and shall have or provide for the custody of the Corporation's funds and securities; he shall have full authority to receive and give receipts for all money due and payable to the Corporation, and to endorse checks, drafts, and warrants, in its name and on its behalf and to give full discharge for the same; he shall deposit all funds of the Corporation, except those that may be required for current use, in such banks or other places of deposit as the Board of Directors may from time to time designate; and, in general, he shall perform all duties incident to the office of Treasurer and such other duties as may from time to time be assigned to him by the Board of Directors, the Chairman of the Board or the President.

Section 10. <u>Secretary.</u> The Secretary shall:

(a) keep or cause to be kept in one or more books provided for the purpose, the minutes of all meetings of the Board of Directors, the committees of the Board and the shareholders;

(b) see that all notices are duly given in accordance with the provisions of these By-Laws and as required by law;

(c) be custodian of the records and the seal of the corporation and affix and attest the seal to all stock certificates of the Corporation (unless the seal of the Corporation on such certificates shall be a facsimile, as hereinafter provided) and affix and attest the seal to all other documents to be executed on behalf of the Corporation under its seal;

(d) see that the books, reports, statements, certificates and other documents and records required by law to be kept and filed are properly kept and filed; and

(e) in general, perform all the duties incident to the office of Secretary and such other duties as from time to time may be assigned to him by the Board of Directors, the Chairman of the Board or the President.

Section 11. <u>Delegation of Duties.</u> In case of the absence of any officer of the Corporation, or for any other reason that the Board of Directors may deem sufficient, the Board of Directors may provisionally confer the powers or duties, or any of them, of such officer upon any other officer or upon any director.

# ARTICLE IV
## STOCK

Section 1. <u>Stock Certificates.</u> Each holder of stock of the Corporation shall be entitled, upon specific written request to such person as may be designated by the Corporation, to have a certificate or certificates, in a form approved by the Board, representing the number of shares of stock of the Corporation owned by him; provided, however, that certificates for fractional shares will not be delivered in any case. The certificates representing shares of stock shall be signed by or in the name of the Corporation by the Chairman of the Board, the President or a Vice President and by the Secretary, an Assistant Secretary, the Treasurer or an Assistant Treasurer and sealed with the seal of the Corporation. Any or all of the signatures or the seal on the certificate may be facsimiles. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before the certificate is issued, it may be issued by the Corporation with the same effect as if the officer, transfer agent or registrar was still in office at the date of issue.

Section 2. <u>Books of Account and Record of Shareholders.</u> There shall be kept at the principal executive office of the Corporation correct and complete books and records of account of all the business and transactions of the Corporation. There shall be made available, upon the request of any shareholder, in accordance with Pennsylvania law, a record containing the number of shares of stock issued during a specified period not to exceed twelve (12) months and the consideration received by the Corporation for each such share.

Section 3. <u>Transfers of Shares.</u> Transfers of shares of stock of the Corporation shall be made on the stock records of the Corporation only by the registered holder of the shares, or by his attorney thereunto authorized by power of attorney duly executed and filed with the Secretary or with a transfer agent or transfer clerk, and on surrender of the certificate or certificates, if issued, for the shares properly endorsed or accompanied by a duly executed stock transfer power and the payment of all taxes thereon. Except as otherwise provided by law, the Corporation shall be entitled to recognize the exclusive right of a person in whose name any share or shares stand on the record of shareholders as the owner of the share or shares for all purposes, including, with limitation, the rights to receive dividends or other distributions and to vote as the owner, and the Corporation shall not be bound to recognize any equitable or legal claim to or interest in any such share or shares on the part of any other person.

Section 4. <u>Regulations.</u> The Board of Directors may make any additional rules and regulations, not consistent with these By-Laws, as it may deem expedient concerning the issue, transfer and registration of certificates for shares of stock of the Corporation. The Board may appoint, or authorize any officer or officers to appoint, one or more transfer agents or one or more transfer clerks and one or more registrars and may require all certificates for shares of stock to bear the signature or signatures of any of them.

Section 5. <u>Lost, Destroyed or Mutilated Certificates.</u> The holder of any Certificate representing shares of stock of the Corporation shall immediately notify the Corporation of its loss, destruction or mutilation and the Corporation may issue a new certificate of stock in the place of any certificate issued by it that has been alleged to have been lost or destroyed or that shall have been mutilated. The Board may, in its discretion, require the owner (or his legal representative) of a lost, destroyed or mutilated certificate to give to the Corporation a bond in a sum, limited or unlimited, and in a form and with any surety or sureties, as the Board in its absolute discretion shall determine, to indemnify the Corporation against any claim that may be made against it on account of the alleged loss or destruction of any such certificate, or issuance of a new certificate. Anything herein to the contrary notwithstanding, the Board of Directors, in its absolute discretion, may refuse to issue any such new certificate, except pursuant to legal proceedings under the laws of the Commonwealth of Pennsylvania.

Section 6. <u>Fixing of Record Date for Dividends, Distributions, etc.</u> The Board may set, in advance, a date for the payment of any dividend or the making of any distribution or the allotment of rights to subscribe for securities of the Corporation, or for the delivery of evidences of rights or evidences of interests arising out of any change, conversion or exchange of common stock or other securities, as the record date for the determination of the shareholders entitled to receive any such dividend, distribution, allotment, rights or interests, and in such case only the shareholders of record at the time so set shall be entitled to receive such dividend, distribution, allotment, rights or interests. Such record date shall not be more than ninety (90) days or fewer than ten (10) days before the date of the particular action to be taken.

Section 7. <u>Information to Shareholders and Others.</u> Any shareholder of the Corporation or his agent may inspect, during the Corporation's usual business hours, the Corporation's By-Laws, minutes of the proceedings of its shareholders, annual statements of its affairs and voting trust agreements on file at its principal office.

**ARTICLE V**
**INDEMNIFICATION AND INSURANCE**

Section 1. Scope of Indemnification. The corporation shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the act that such person is or was serving in an indemnified capacity, including, without limitation, liabilities resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

        (1)     where such indemnification is expressly prohibited by applicable law;

        (2)     where the conduct of the indemnified representative has been finally determined pursuant to Section 6 or otherwise:

             (i) to constitute willful misconduct or recklessness within the meaning of 15 Pa.C.S. 513(b) and l 746(b) or any superseding provision of law sufficient in the circumstances to bar indemnification against liabilities arising from the conduct; or

(ii) to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(iii) to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 6 to be otherwise unlawful.

(3) with respect to expenses or the payment of profits arising from the purchase or sale of securities of the corporation in violation of Section 16(b) of the Securities Exchange Act of 1934;

(4) expenses or liabilities of any type whatsoever (including, but not limited to, judgments, fines and amounts paid in settlement) which have been paid directly to, or for the benefit of, such person by directors' liability insurance whose premiums are paid for by the corporation or by an individual or entity other than such director or officer;

(5) amounts paid in settlement of any proceeding without the written consent of the corporation or;

The Board of Directors of the corporation is hereby authorized, at any time by resolution, to add to the above list of exceptions from the right of indemnification, but any such additional exception shall not apply with respect to any event, act or omission which has occurred prior to the date that the Board of Directors in fact adopts such resolution. Any such additional exception may, at any time after its adoption, be amended, supplemented, waived or terminated by further resolution of the Board of Directors of the corporation.

If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

For purposes of this Article:

(1) "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee, or agent of the corporation, or at the request of the corporation, as a director, office_r, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

Case ID: 221102195

(2) "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the Board of Directors of the corporation (which may, but not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise):

(3) "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys' fees and disbursements); and

(4) "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

(5) "to the fullest extent permitted by applicable law" means the maximum extent permitted by public policy, common law or statute. Any person covered by this Article may, to the fullest extent permitted by applicable law, elect to have the right to indemnification or to advancement or reimbursement of expenses, interpreted, at such person's option (i) on the basis of the applicable law on the date this Article was approved by shareholders, or (ii) on the basis of the applicable law in effect at the time of the occurrence of event or events giving rise to the proceeding, or (iii) on the basis of the applicable law in effect at the time indemnification or advancement or reimbursement of expenses is sought.

(6) The corporation shall have the right to appoint the attorney for an indemnified representative provided such appointment is not unreasonable under the circumstances.

Section 2. Proceedings Initiated By Indemnified Representatives. Notwithstanding any other provision of this Article , the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office. This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 6 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 3. <u>Advancing Expenses.</u> The corporation shall pay the expenses (including attorneys' fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 1 or the initiation of or participation in which is authorized pursuant to Section 2 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 6 that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 4. <u>Securing of Indemnification Obligations.</u> To further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the Board of Directors shall deem appropriate. Absent fraud, the determination of the Board of Directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to void ability.

Section 5. <u>Payment of Indemnification.</u> An indemnified representative shall be entitled to indemnification within thirty (30) days after a written request for indemnification has been delivered to the Secretary of the corporation.

Section 6. <u>Arbitration.</u> Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the American Arbitration Association cannot be initiated, or if one of the parties fails or refuses to select an arbitrator or if the arbitrators selected by the corporation and the indemnified representative cannot agree on the selection of the third arbitrator with thirty (30) days after such time as the corporation and the indemnified representative have each been notified of the selection of the other's arbitrator, the necessary arbitrator or arbitrators shall be selected by the presiding judge of the court of general jurisdiction in such metropolitan area.

The party or parties challenging the right of an indemnified representative to the benefits of this Article shall have the burden of proof.

The corporation shall reimburse an indemnified representative for the expenses (including attorney's fees and disbursements) incurred unsuccessfully prosecuting or defending such arbitration.

Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon by any party in accordance with applicable law in any court of competent jurisdiction, except that the corporation shall be entitled to interpose as a defense in any such judicial enforcement proceeding any prior final judicial determination adverse to the indemnified representative under Section 7.0l(a)(2) in a proceeding not directly involving indemnification under this Article. This arbitration provision shall be specifically enforceable.

Section 7. <u>Contribution.</u> If the indemnification provided for in this Article or otherwise is unavailable for any reason in respect of any liability or portion thereof, the corporation shall contribute to the liabilities to which the indemnified representative may be subject in such proportion as is appropriate to reflect the intent of this Article or otherwise.

Section 8. <u>Mandatory Indemnification of Directors, Officers, Etc.</u> To the extent that an authorized representative of the corporation has been successful on the merits or otherwise in defense of any action or proceeding referred to in 15 Pa.C.S. 1741 or 1742 or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursements) actually and reasonably incurred by such person in connection therewith.

Section 9. <u>Optional Indemnification.</u> The corporation may, to the fullest extent permitted by applicable law, indemnify and advance or reimburse expenses for, persons in all situations other than that covered by this Article.

Section 10. <u>Contract Rights; Amendment or Repeal.</u> All rights under this Article shall be deemed a contract between the corporation and the indemnified representative pursuant to which the corporation and each indemnified representative intend to be legally bound. Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing.

Section 11. <u>Scope of Article.</u> The rights granted by this Article shall not be deemed exclusive of any other rights to which those seeking indemnification, contribution or advancement of expenses may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise both as to action in an indemnified capacity and as to action in any other capacity. The indemnification, contribution and advancement of expenses provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 12. <u>Reliance of Provisions.</u> Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article.

Section 13. <u>Interpretation.</u> The provisions of this Article are intended to constitute By-Laws authorized by 15 Pa.C.S. 513 and 1746.

## ARTICLE VI
### SEAL

The seal of the Corporation shall be circular in form and shall bear the name of the Corporation, the year of its incorporation, the words "Corporate Seal" and "Commonwealth of Pennsylvania" and any emblem or device approved by the Board of Directors. The seal may be used by causing it or a facsimile to be impressed or affixed or in any other manner reproduced, or by placing the word "(seal)" adjacent to the signature of the authorized officer of the Corporation.

## ARTICLE VII
### FISCAL YEAR

Section 1. <u>Fiscal Year.</u> The Corporation's fiscal year shall be fixed by the Board of Directors from time to time.

## ARTICLE VIII
### DIVIDENDS

Dividends upon any class of shares of the capital stock of the Corporation may be declared as provided by and subject to the restrictions contained in the laws of the Commonwealth of Pennsylvania and the Articles of Incorporation of the corporation, as the same or either of them may be amended from time to time, but only as and when and of the character and to the amount that the Board of Directors of the Corporation may from time to time deem advisable and only in the manner contemplated herein.

## ARTICLE IX
## EMERGENCY BY-LAW

In the event of an emergency declared by the President of the United States or the person performing his functions, the officers and employees of this Corporation will continue to conduct the affairs of the Corporation under such guidance from the directors as may be available except as to matters which by statute require specific approval of the Board and subject to conformance with any governmental directives during the emergency. The Board shall have the power, in the absence of disability of any officer, or upon the refusal of any officer to act, to delegate and prescribe such office's power and duties to any other officer, or to any director, for the time being. In the event of a state of disaster of sufficient severity to prevent the conduct and management of the affairs and business of this Corporation by its directors and officers as contemplated by these By-Laws, any three or more available members of the then incumbent Executive Committee shall constitute a quorum of that committee for the full conduct and management of the affairs and business of the Corporation in accordance with this emergency By-Law. In the event of the unavailability, at such time, of a minimum of three members of the then incumbent Executive Committee, any three available directors shall constitute the management of the affairs and business of the corporation in accordance with the foregoing provisions of this section. This section shall be subject to implementation by resolutions of the Board passed from time to time for that purpose, and any provision of these By-Laws other than this section and any resolutions which are contrary to the provisions of this section or to the provisions of any such implementary resolutions shall be suspended until it shall be determined by any interim Executive Committee acting under this section that it shall be to the advantage of this Corporation to resume the conduct and management of its affairs and business under all of the other provisions of these By-Laws. During an emergency resulting in any authorized place of business of this Corporation being unable to function, the business ordinarily conducted at such location shall be relocated elsewhere in suitable quarters, in addition to or in lieu of the location heretofore mentioned, as may be designated by the Board or by the Executive Committee or by such persons as are then, in accordance with resolutions adopted from time to time by the Board dealing with the exercise of authority in the time of such emergency, conducting the affairs of this Corporation. Any temporarily relocated place of business of this Corporation shall be returned to its legally authorized location as soon as practicable and such temporary place of business shall then be discontinued.

## ARTICLE X
## AMENDMENTS

These By-Laws may be amended or repealed by the affirmative vote of a majority of the Board of Directors at any regular or special meeting of the Board of Directors, or by the vote of shareholders holding at least seventy-five (75%) percent of the total aggregate outstanding shares of the Corporation's capital stock, at an annual or special meeting called for such purpose.


Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN

# EXHIBIT 2

EX-3.1 2 ex3-1.htm EXHIBIT 3.1

Exhibit 3.1

**ARTICLES OF INCORPORATION
OF REPUBLIC FIRST BANCORP, INC.
(As amended through May 27, 2016)**

ARTICLE I - NAME

The name of the Corporation is REPUBLIC FIRST BANCORP, INC.

ARTICLE II - REGISTERED OFFICE

The location and post office address of its registered office in the Commonwealth of Pennsylvania is Two Liberty Place, 50 South 16th Street, Philadelphia, Pennsylvania 19102.

ARTICLE III - PURPOSE

The purpose for which the Corporation is incorporated is to have unlimited power to engage in and to do any lawful act concerning any or all lawful business for which a corporation may be incorporated under the provisions of the Business Corporation Law of the Commonwealth of Pennsylvania.

The Corporation is incorporated pursuant to the provisions of the Business Corporation Law of the Commonwealth of Pennsylvania (Act of May 5, 1933, P.L. 364, as amended).

ARTICLE IV - TERM

The term for which the Corporation is to exist is perpetual.

ARTICLE V - CAPITAL STOCK

The aggregate number of capital shares, which the Corporation shall have authority to issue, shall be as follows:

A. 100,000,000 shares of Common Stock with a par value of $.01 per share.

B. 10,000,000 shares of Preferred Stock with a par value of $.01 per share. The Board of Directors of the Corporation may authorize and issue the unissued shares of Preferred Stock in one or more series by setting or changing the preferences, conversion or other rights, voting powers, restrictions, limitations as to dividends, qualifications and terms or conditions of redemption of the Preferred Stock. The Board may reclassify unissued shares of any series. The authority of the Board of Directors shall include the authority to determine the following provisions of the shares of each series:

(1) the designation of such series and the number of shares to constitute such series;

(2) whether the shares of such series shall have voting rights, and, if so, the terms of such voting rights;

(3) the annual dividend rate, if any, payable on such series, the conditions and dates upon which such dividends shall be payable, the preference or relation which such dividends shall bear to the dividends payable on any other class or classes or any other series of the capital stock of the Corporation and whether such dividends shall be cumulative or noncumulative;

(4) whether the shares of such series shall be redeemable at the option of the Corporation or the holder thereof and, if redeemable, the times, prices and other terms of such redemption;

1

Case ID: 221102195

(5) the amounts payable upon shares of such series and the rights of the holders of such series upon liquidation, dissolution or winding up of the Corporation;

(6) whether or not the shares of such series shall be subject to the operation of a retirement or sinking fund, and, if so, the extent to and manner in which any such retirement or sinking funds shall be applied to the purchase or redemption of the shares of such series for retirement or to other corporate purposes and the terms and provisions relative to the operation thereof;

(7) whether or not the shares of such series shall be convertible into, or exchangeable for, shares of stock of any other class or classes or of any other series of the same class, and, if so convertible or exchangeable, the price or prices or the rate or rates of conversion or exchange and the method, if any, of adjusting the same;

(8) the limitations and restrictions, if any, to be effective while any shares of such series are outstanding upon the payment of dividends or making of other distributions on, and upon the purchase, redemption or other acquisition by the Corporation, of the Common Stock or any other class or classes of stock of the Corporation ranking on a parity with or junior to the shares of such series either as to dividends or upon liquidation; and

(9) any other preferences, relative, participating, optional or other rights and qualifications, limitations or restrictions.

Except as otherwise provided by the Board of Directors, all shares of Preferred Stock shall be of equal rank and all shares of any one series shall be identical in all of respects with all of the other shares of such series, except that shares of any one series issued at different times may differ as to the dates from which dividends thereon shall be cumulative.

Prior to issuance of a series of Preferred Stock, the Board of Directors may provide that the holders of the shares of the series of Preferred Stock voting as a separate class may elect that number of directors as determined by the Board of Directors at each annual meeting of shareholders of the Corporation, whether upon default in the payment of any dividends payable thereon or otherwise, and shall have the right to approve any amendment to the charter which adversely affects the series of Preferred Stock.

C. All shares of Common Stock shall be identical with each other in every respect. The Common Stock is subject to all the powers, rights, privileges, preferences and priorities of the Preferred Stock as adopted by the Board of Directors of the Corporation pursuant to authority granted to and vested in it by the provisions of this Article FIVE. The shares of Common Stock shall entitle the holders thereof to one vote for each share upon all matters upon which shareholders have the right to vote. Subject to the provisions of this Article FIVE and any further provisions prescribed in accordance herewith, the holders of the Common Stock shall be entitled to receive, when and as declared by the Board of Directors, out of funds legally available for that purpose, dividends payable either in cash, stock or otherwise.

D. Shares of stock may be issued in fractional shares. Any fractional share shall carry proportionately the rights of a whole share including, without limitation, the right to vote and the right to receive dividends. A fractional share shall not, however, have the right to receive a certificate evidencing it.

E. All persons who shall acquire stock in the Corporation shall acquire same subject to the provisions of the Articles of Incorporation and By-Laws of the Corporation.

F. The Board of Directors is expressly authorized, without the assent or vote of the shareholders, to authorize the issuance from time to time of shares of the stock of any class of the Corporation, whether now or hereafter authorized, and securities convertible into shares of stock of the Corporation of any class or classes, whether now or hereafter authorized, for such consideration as the Board of Directors may deem advisable.

2

Case ID: 221102195

## ARTICLE VI - NO PREEMPTIVE RIGHTS, NO CUMULATIVE VOTING

A. No holder of shares of the Common Stock of the Corporation shall have any preemptive or preferential right to subscribe for, purchase or otherwise acquire or receive any shares of any class of stock hereafter issued by the Corporation, whether now or hereafter authorized, or any shares of any class of stock of the Corporation now or hereafter acquired and held by the Corporation as treasury stock and subsequently reissued and sold or otherwise disposed of, or any bonds, certificates of indebtedness, notes or any other securities convertible into or exchangeable for, or any warrants or rights to purchase or otherwise acquire, any shares of any class of stock of the Corporation, whether now or hereafter authorized.

B. At each election of directors every shareholder entitled to vote at such election shall have the right to vote the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote. Cumulative voting shall not be allowed.

## ARTICLE VII - BOARD OF DIRECTORS

A. The number of directors of the Corporation shall be such number as set by a majority of the Board of Directors; provided, however, that if required by law, said number shall be between five (5) and twenty-five (25).

B. Until the 1989 Annual Meeting of shareholders, each director of the Corporation shall serve for a one-year term. Commencing with the 1989 Annual Meeting of Shareholders, the Board of Directors shall be divided into three classes, Class I, Class II and Class III, which classes shall be as nearly equal in number as possible, and each director shall serve a term ending as of the date of the third annual meeting of shareholders occurring following the annual meeting at which such director was elected; provided, however, that each initial Class III director elected at the 1989 Annual Meeting of Shareholders shall serve until the 1990 Annual Meeting of Shareholders and each initial Class II director elected at the 1989 Annual Meeting of Shareholders shall serve until the 1991 Annual Meeting of Shareholders.

At each annual meeting held beginning in 1992, the directors chosen to succeed those whose terms are expiring shall be identified as being of the same class as the directors whom they succeed and shall be elected for a term expiring at the third annual meeting of stockholders following the annual meeting at which they are elected.

C. In the event of any increase or decrease in the authorized number of directors (i) each director then serving as such shall nevertheless continue as a director of the class of which he or she is a member until the expiration of his or her current term, or his or her prior death, retirement, resignation, or removal, and (ii) the newly created or eliminated directorship(s) resulting from such increase or decrease shall be apportioned by the Board of Directors among the three classes of directors so as to maintain such classes as nearly equal as possible.

D. At all Annual Meetings of shareholders commencing after the Annual Meeting of Shareholders to be held in 1996, if any, any stockholder who desires to propose nominees to the Board of Directors must provide for the receipt of a written notice of the intention to nominate a person or persons for election as directors by the Secretary of the Corporation: (i) with respect to an election to be held at any annual meeting of shareholders in accordance with the provision of Rule 14a-8, and (ii) with respect to an election to be held at a special meeting of shareholders for the election of directors, the close of business on the seventh (7th) day following the day on which notice of such meeting is first given to shareholders.

The notice is required to contain: (i) the name and address of the shareholder who intends to make the nomination and of the person or persons to be nominated; (ii) a representation that the shareholder is a holder of record of stock entitled to vote at the meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (iv) such other information regarding each nominee proposed by such shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had each nominee been nominated or intended to be nominated, by the Board of Directors of the Corporation; and (v) the consent of each nominee to serve as a director of the company if so elected. The chairman of any meeting of shareholders to elect directors and the Board of Directors may refuse to recognize the nomination of any person not made in compliance with the foregoing.

Case ID: 221102195

E. Subject to the rights of the holders of any class separately entitled to elect one or more directors, any director or the entire Board of Directors, may be removed from office at any time, but only upon the affirmative vote of the holders of at least 75% of the combined voting power of all classes of capital stock entitled to vote in the election of directors.

## ARTICLE VIII - BUSINESS COMBINATION

A. Section 910 of the Pennsylvania Business Corporation Law shall not be applicable to the Corporation.

B. The affirmative vote of the holders of not less than 75% of the outstanding shares of "Voting Stock" held by the shareholders other than a "Related Person" shall be required for the approval or authorization of any "Business Combination" of the Corporation with any Related Person; provided, however, that the 75% voting requirement shall not be applicable if:

(1) The "Continuing Directors" of the Corporation by at least a two-thirds vote of such Continuing Directors have expressly approved such Business Combination either in advance of or subsequent to such Related Person having become a Related Person; or

(2) The cash or fair market value (as determined by at least two-thirds of the Continuing Directors) of the property, securities or other consideration to be received per share by holders of Voting Stock of the Corporation in the Business Combination is not less than the "Highest Per Share Price" or the "Highest Equivalent Price" paid by the Related Person in acquiring any of its holdings of the Corporation's Voting Stock.

C. For the purposes of this Article VIII:

(1) The term "Business Combination" shall mean (i) any merger or consolidation of the Corporation or a subsidiary of the Corporation with or into a Related Person, (ii) any sale, lease, exchange, transfer or other disposition, including without limitation a mortgage or any other security device, or all or any "Substantial Part" of the assets either of the Corporation (including without limitation any voting securities of a subsidiary) or of a subsidiary of the Corporation to a Related Person, (iii) any merger or consolidation of a Related Person with or into the Corporation or a subsidiary of the Corporation, (iv) any sale, lease, exchange, transfer or other disposition, including without limitation a mortgage or any other security device, of all or any Substantial Part of the assets of a Related Person to the Corporation or a subsidiary of the Corporation, (v) the issuance of any securities of the Corporation or a subsidiary of the Corporation to a Related Person other than the issuance on a pro rata basis to all holders of shares of the same class pursuant to a stock split or a stock dividend, or a distribution of warrants or rights, (vi) any recapitalization that would have the effect of increasing the voting power of a Related Person, and (vii) any agreement, contract or other arrangement providing for any of the transactions described in this definition of Business Combination.

(2) The term "Related Person" shall mean and include any individual, corporation, partnership or other person or entity which, together with its "Affiliates" and "Associates," becomes the "Beneficial Owner" of an aggregate of 10% or more of the outstanding Voting Stock of the Corporation, and any Affiliates or Associate of any such individual, corporation, partnership or other person or entity; provided, however, that the term "Related Person" shall not include (i) a person or entity whose acquisition of such aggregate percentage of Voting Stock was approved in advance by two-third of the Continuing Directors or (ii) any trustee or fiduciary when acting in such capacity with respect to any employee benefit plan of the Corporation or a wholly owned subsidiary of the Corporation.

4

Case ID: 221102195

(3) The term "Substantial Part" shall mean an amount equal to 10% or more of the fair market value as determined by two-thirds of the Continuing Directors of the total consolidated assets of the Corporation and its subsidiaries taken as a whole as of the end of its most recent fiscal year ended prior to the time the determination is being made.

(4) The term "Beneficial Owner" shall mean any person (i) who beneficially owns shares of Voting Stock within the meaning ascribed in Rule 13d-3 under the Securities Exchange Act of 1934, as in effect on the date of adoption of this Article VIII by the shareholders of the Corporation, or (ii) who has the right to acquire Voting Shares (whether or not such right is exercisable immediately) pursuant to any agreement, contract, arrangement or understanding or upon the exercise of conversion rights, exchange rights, warrants or options, or otherwise.

(5) For purposes of subparagraph B(2) of this Article VIII, the term "other consideration to be received" shall include, without limitation, the value per share of Common Stock or other capital stock of the Corporation retained by its existing shareholders as adjusted to give effect to the proposed Business Combination in the event of any Business Combination in which the Corporation is a surviving corporation.

(6) The term "Voting Stock" shall mean all of the outstanding shares of Common Stock and the outstanding shares of Preferred Stock entitled to vote on each matter on which the holders of record of Common Stock shall be entitled to vote, and each reference to a proportion of shares of Voting Stock shall refer to such proportion of the votes entitled to be cast by such shares.

(7) The term "Continuing Director" shall mean a Director who was a member of the Board of Directors of the Corporation immediately prior to the time that the Related Person involved in a Business Combination became a Related Person. As to any person who became a Related Person prior to April 30, 1988, a Continuing Director shall mean a Director who was a member of the Board of Directors on April 30, 1988.

(8) A Related Person shall be deemed to have acquired a share of the Voting Stock of the Corporation at the time when such Related Person became the Beneficial Owner thereof. With respect to the shares owned by Affiliates, Associates or other persons whose ownership is attributed to a Related Person under the foregoing definition of Related Person, if the price paid by such Related Person for such shares is not determinable by two-thirds of the Continuing Directors, the price so paid shall be deemed to be the higher of (i) the price paid upon the acquisition thereof by the Affiliate, Associate or other person or (ii) the market price of the shares in question at the time when the Related Person became the Beneficial Owner thereof.

(9) The terms "Highest Per Share Price" and "Highest Equivalent Price" as used in this Article NINE shall mean the following: If there is only one class of capital stock of the Corporation issued and outstanding, the Highest Per Share Price shall mean the highest price that can be determined to have been paid at any time by the Related Person for any shares or shares of that class of capital stock. If there is more than one class of capital stock of the Corporation issued and outstanding, the Highest Equivalent Price shall mean, with respect to each class and series of capital stock of the Corporation, the amount determined by two-thirds of the Continuing Directors, on whatever basis they believe is appropriate, to be the highest per share price equivalent of the highest price that can be determined to have been paid at any time by the Related Person for any share or shares of any class or series of capital stock of the Corporation. In determining the Highest Per Share Price and Highest Equivalent Price, all purchases by the Related Person shall be taken into account regardless of whether the shares were purchased before or after the Related Person becomes a Related Person. Also, the Highest Per Share Price and the Highest Equivalent Price shall include any brokerage commissions, transfer taxes and soliciting dealers' fees or other value paid by the Related Person with respect to the shares of capital stock of the Corporation acquired by the Related Person.

5

Case ID: 221102195

(10) The terms "Affiliate" and "Associate" shall have the same meaning as in Rule 12b-2 under the Securities Exchange Act of 1934 as in effect on the date of the adoption of this Article VIII by the shareholders of the Corporation.

D. This Article VIII and any of the provisions thereof may not be amended, altered, changed or repealed in any respect unless such action is approved by the affirmative vote of the holders of not less than 75% of the outstanding shares of Voting Stock of the Corporation at a meeting of the shareholders duly called for the consideration of such amendment, alteration, change or repeal; provided, however, that if there is a Related Person, such action must also be approved by the affirmative vote of the holders of not less than 75% of the outstanding shares of Voting Stock not held by any Related Person.

## ARTICLE IX - CONSTITUENCIES

A. The Board of Directors may, if it deems it advisable, oppose a tender, or other offer for the Corporation's securities, whether the offer is in cash or in the securities of a corporation or otherwise. When considering whether to oppose an offer, the Board of Directors may, but is not legally obligated to, consider any pertinent issues; by way of illustration, but not of limitation, the Board of Directors may, but shall not be legally obligated to, consider any or all of the following:

(1) whether the offer price is acceptable based on the historical and present operating results or financial condition of the Corporation;

(2) whether a more favorable price could be obtained for the Corporation's securities in the future;

(3) the impact which an acquisition of the Corporation would have on the employees, depositors and customers of the Corporation and its subsidiaries and the community which they serve;

(4) the reputation and business practices of the offeror and its management and affiliates as they would affect the employees, depositors and customers of the Corporation and its subsidiaries and the future value of the Corporation's stock;

(5) the value of the securities (if any) which the offeror is offering in exchange for the Corporation's securities, based on an analysis of the worth of the Corporation as compared to the corporation or other entity whose securities are being offered;

(6) any antitrust or other legal and regulatory issues that are raised by the offer.

B. If the Board of Directors determines that an offer should be rejected, it may take any lawful action to accomplish its purpose including, but not limited to, any or all of the following: advising shareholders not to accept the offer; litigation against the offeror; filing complaints with all governmental and regulatory authorities; acquiring the Corporation's securities; selling or otherwise issuing authorized but unissued securities or treasury stock or granting options with respect thereto; acquiring a company to create an antitrust or other regulatory problem for the offeror; and obtaining a more favorable offer from another individual or entity.

## ARTICLE X - INDEMNIFICATION AND INSURANCE

A. The corporation shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the act that such person is or was serving in an indemnified capacity, including, without limitation, liabilities resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

6

Case ID: 221102195

(1) where such indemnification is expressly prohibited by applicable law;

(2) where the conduct of the indemnified representative has been finally determined pursuant to paragraph F or otherwise:

(i) to constitute willful misconduct or recklessness within the meaning of 15 Pa.C.S. 513(b) and 1746(b) or any superseding provision of law sufficient in the circumstances to bar indemnification against liabilities arising from the conduct; or

(ii) to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(iii) to the extent such indemnification has been finally determined in a final adjudication pursuant to paragraph F to be otherwise unlawful.

(3) with respect to expenses or the payment of profits arising from the purchase or sale of securities of the corporation in violation of Section 16(b) of the Securities Exchange Act of 1934;

(4) expenses or liabilities of any type whatsoever (including, but not limited to, judgments, fines and amounts paid in settlement) which have been paid directly to or for the benefit of, such person by directors' liability insurance whose premiums are paid for by the corporation or by an individual or entity other than such director or officer;

(5) amounts paid in settlement of any proceeding without the written consent of the corporation or;

The Board of Directors of the corporation is hereby authorized, at any time by resolution, to add to the above list of exceptions from the right of indemnification, but any such additional exception shall not apply with respect to any event, act or omission which has occurred prior to the date that the Board of Directors in fact adopts such resolution. Any such additional exception may, at any time after its adoption, be amended, supplemented, waived or terminated by further resolution of the Board of Directors of the corporation.

If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

For purposes of this Article X:

(1) "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

(2) "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the Board of Directors of the corporation (which may, but not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise);

7

Case ID: 221102195

(3) "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation attorneys' fees and disbursements); and

(4) "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

(5) "to the fullest extent permitted by applicable law" means the maximum extent permitted by the public policy, common law or statute. Any person covered by this Article X may, to the fullest extent permitted by applicable law, elect to have the right to indemnification or to advancement or reimbursement of expenses, interpreted, at such person's option (i) on the basis of the applicable law on the date this Article X was approved by shareholders, or (ii) on the basis of the applicable law in effect at the time of the occurrence of the event or events giving rise to the proceeding, or (iii) on the basis of the applicable law in effect at the time indemnification or advancement or reimbursement of expenses is sought.

(6) The corporation shall have the right to appoint the attorney for an indemnified representative provided such appointment is not unreasonable under the circumstances.

B. Notwithstanding any other provision of this Article X, the corporation shall not indemnify under this Article X an indemnified representative for any liability incurred in a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office. This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under paragraph F or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article X.

C. The corporation shall pay the expenses (including attorneys' fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in paragraph A or the initiation of or participation in which is authorized pursuant to paragraph B upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to paragraph F that such person is not entitled to be indemnified by the corporation pursuant to this Article X. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to making of such advance.

D. To further effect, satisfy or secure the indemnification obligation provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the Board of Directors shall deem appropriate. Absent fraud, the determination of the Board of Directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to void ability.

E. An indemnified representative shall be entitled to indemnification within thirty (30) days after a written request for indemnification has been delivered to the Secretary of the corporation.

F. Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article X, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the American Arbitration Association cannot be initiated, or if one of the parties fails or refuses to select an arbitrator or if the arbitrators selected by the corporation and the indemnified representative cannot agree on the selection of the third arbitrator within thirty (30) days after such time as the corporation and the indemnified representative have each been notified of the selection of the other's arbitrator, the necessary arbitrator or arbitrators shall be selected by the presiding judge of the court of general jurisdiction in such metropolitan area.

8

Case ID: 221102195

The party or parties challenging the right of an indemnified representative to the benefits of this Article X shall have the burden of proof.

The corporation shall reimburse an indemnified representative for the expenses (including attorneys' fees and disbursements) incurred unsuccessfully prosecuting or defending such arbitration.

Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon by any party in accordance with applicable law in any court of competent jurisdiction, except that the corporation shall be entitled to interpose as a defense in any such judicial enforcement proceeding any prior final judicial determination adverse to the indemnified representative in a proceeding not directly involving indemnification under this Article X. This arbitration provision shall be specifically enforceable.

G. If the indemnification provided for in this Article X or otherwise is unavailable for any reason in respect of any liability or portion thereof, the corporation shall contribute to the liabilities to which the indemnified representative may be subject in such proportion as is appropriate to reflect the intent of this Article X or otherwise.

H. To the extent that an authorized representative of the corporation has been successful on the merits or otherwise in defense of any action or proceeding referred to in 15 Pa.C.S. 1741 or 1742 or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursement) actually and reasonably incurred by such person in connection therewith.

I. The corporation may, to the fullest extent permitted by applicable law, indemnify and advance or reimburse expenses for, persons in all situations other than that covered by this Article X.

J. All rights under this Article X shall be deemed a contract between the corporation and the indemnified representative pursuant to which the corporation and each indemnified representative intend to be legally bound. Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing.

K. The rights granted by this Article X shall not be deemed exclusive of any other rights to which those seeking indemnification, contribution or advancement of expenses may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise both as to action in an indemnified capacity and as to action in any other capacity. The indemnification, contribution and advancement of expenses provided by or granted pursuant to this Article X shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

L. Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article X.

## ARTICLE XI - AMENDMENTS

These Articles of Incorporation may be amended, subject to the provisions of the laws of the Commonwealth of Pennsylvania, at any regular or special meeting of the shareholders for which adequate notice has been given, by the affirmative vote of the holders of outstanding shares of stock of the Corporation representing a majority of the votes entitled to be cast; provided, however, that Article V through Article XII, including this Article XI, may be amended only by the affirmative vote of holders of outstanding shares representing at least sixty percent (60%) of the votes entitled to be cast for that purpose.

9

Case ID: 221102195

## ARTICLE XII- OWNERSHIP LIMITATION

A. Except as provided in paragraph B, no shareholder may have Holdings (as defined in paragraph D of this Article) that exceed ten percent (10%) of the issued and outstanding shares of common stock.

B. Upon the resolution of at least two-thirds of the Board of Directors, the restriction imposed by paragraph A may be waived with respect to the Holdings of any shareholders.

C. If any shareholder acquires Holdings which cause the violation of the restriction contained in paragraph A, the Board of Directors may (i) terminate all voting rights attributable to the Holdings of such shareholder during the time that paragraph A is being violated; (ii) commence litigation to require divestiture of such amount of the Holdings so that after such divestiture the shareholder would no longer be in violation of the restriction contained in paragraph A; or (iii) take such other action as is appropriate under the circumstances.

D. Holdings mean (i) the common stock the shareholder owns of record; (ii) the common stock to which the shareholder has direct or indirect beneficial ownership (as such term is defined in Section 13(d) of the Securities Exchange Act of 1934 and the regulations thereunder in effect on the date hereof, "Section 13(d)"); and (iii) the common stock owned of record or beneficially by other shareholder(s) acting together with the shareholder as a group (as such term is defined in Section 13(d)) for the purpose of acquiring, holding or disposing of common stock (a "Shareholder Group"). The Board of Directors' determination of the existence and membership of a Shareholder Group, of a shareholder's Holdings and of the record and beneficial ownership of common stock shall be final and conclusive, absent proof of bad faith.

10

Case ID: 221102195


Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN

# EXHIBIT 3

Case ID: 221102195

# SECURITIES AND EXCHANGE COMMISSION

Washington, D.C. 20549

# FORM 8-K

**CURRENT REPORT**

Pursuant to Section 13 or 15(d) of
The Securities Exchange Act of 1934

**December 9, 2021**

Date of Report (Date of earliest event reported)

# REPUBLIC FIRST BANCORP, INC.

(Exact name of registrant as specified in its charter)

| **Pennsylvania** | **000-17007** | **23-2486815** |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| **50 South 16th Street, Suite 2400, Philadelphia, Pennsylvania** | **19102** |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

**(215) 735-4422**

Registrant's telephone number, including area code

**N/A**

(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☒ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4 (c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock | FRBK | Nasdaq Global Market |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (17 CFR §230.405) or Rule 12b-2 of the Securities Exchange Act of 1934 (17 CFR §240.12b-2).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Case ID: 221102195

**Item 8.01    Other Events.**

On December 9, 2021, Republic First Bancorp, Inc. (the "Company") issued a press release, a copy of which is filed as Exhibit 99.1. Copies of a letter, dated December 6, 2021, received from Driver Management Company LLC and the Company's response letter, dated December 7, 2021, are attached hereto as Exhibits 99.2 and 99.3, respectively.

**Important Additional Information**

The Company, its directors and certain of its executive officers are participants in the solicitation of proxies from the Company's shareholders in connection with the Company's 2022 annual meeting of shareholders. The Company intends to file a definitive proxy statement and a WHITE proxy card with the Securities and Exchange Commission (the "SEC") in connection with any such solicitation of proxies from the Company's shareholders. SHAREHOLDERS OF THE COMPANY ARE STRONGLY ENCOURAGED TO READ SUCH PROXY STATEMENT, ACCOMPANYING WHITE PROXY CARD AND ALL OTHER DOCUMENTS FILED WITH THE SEC CAREFULLY AND IN THEIR ENTIRETY WHEN THEY BECOME AVAILABLE AS THEY WILL CONTAIN IMPORTANT INFORMATION. The Company's definitive proxy statement for the 2021 annual meeting of shareholders contains information regarding the direct and indirect interests, by security holdings or otherwise, of the Company's directors and executive officers in the Company's securities. Information regarding subsequent changes to their holdings of the Company's securities can be found in the SEC filings on Forms 3, 4, and 5, which are available on the Company's website at http://investors.myrepublicbank.com/ or through the SEC's website at www.sec.gov. Information can also be found in the Company's Annual Report on Form 10-K for the year ended December 31, 2020 on file with the SEC. Updated information regarding the identity of potential participants, and their direct or indirect interests, by security holdings or otherwise, will be set forth in the definitive proxy statement and other materials to be filed with the SEC in connection with the 2022 annual meeting of shareholders. Shareholders will be able to obtain the definitive proxy statement, any amendments or supplements to the proxy statement and other documents filed by the Company with the SEC at no charge at the SEC's website at www.sec.gov. Copies will also be available at no charge at the Company's website at http://investors.myrepublicbank.com.

**Item 9.01    Financial Statements and Exhibits.**

(d)    Exhibits:

| | |
|---|---|
| 99.1 | Press Release, dated December 9, 2021, of Republic First Bancorp, Inc. |
| 99.2 | Letter, dated December 6, 2021, from Driver Management Company LLC. |
| 99.3 | Response Letter, dated December 7, 2021, sent to Driver Management Company LLC. |
| 104 | Cover Page Interactive Data File (embedded within the Inline XBRL document). |

Case ID: 221102195

<u>SIGNATURES</u>

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

REPUBLIC FIRST BANCORP, INC.

Dated: December 9, 2021

By:   /s/ Frank A. Cavallaro
Name: Frank A. Cavallaro
Title:  Executive Vice President and
       Chief Financial Officer

Exhibit 99.1



**News Release**
**Republic First Bancorp, Inc.**
**December 9, 2021**

## REPUBLIC FIRST BANCORP, INC. RECEIVES NOTICE OF INTENT FOR DIRECTOR NOMINEES

Philadelphia, PA, December 9, 2021 (GlobeNewswire) - Republic First Bancorp, Inc. (NASDAQ: FRBK), the holding company for Republic Bank, announced that the Board of Directors of Republic First Bancorp, Inc. (the "Company") is in receipt of Driver Management Company LLC's and certain of its affiliates' ("Driver") notice of intent to nominate Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III in connection with the Company's 2022 annual meeting (the "Notice"). Shareholders are not required to take any action at this time. The Board will make its recommendations with respect to director nominations in its proxy statement for the 2022 annual meeting to be filed with the Securities and Exchange Commission.

Since receiving the Notice from Driver, the Board has attempted to engage with Driver as it would with any shareholder of the Company. The Board's engagement efforts have included a request to interview Driver's director candidates - Mr. Bartholow, Ms. Bundy and Mr. Sinkfield - in order to both evaluate the qualifications of Driver's director candidates and explore whether a mutually agreeable resolution might be achievable where Driver would withdraw its proxy fight. Unfortunately, Driver refused to permit Mr. Bartholow, Ms. Bundy and Mr. Sinkfield to be interviewed unless the Board first met a number of conditions, including reimbursing Driver's expenses in connection with its investment in the Company to date. Although Driver will not support any interviews taking place, the Board intends to reach out to Mr. Bartholow, Ms. Bundy and Mr. Sinkfield to see if they would independently agree to schedule interviews with members of the Board.

In order for shareholders to have timely, complete and accurate information about these matters, the Company is filing Driver's and the Board's correspondence about the interviews of Mr. Bartholow, Ms. Bundy and Mr. Sinkfield contemporaneously with this Form 8-K.

### About Republic Bank

Republic Bank, a subsidiary of Republic First Bancorp, Inc., is a full-service, state-chartered commercial bank, whose deposits are insured up to the applicable limits by the Federal Deposit Insurance Corporation (FDIC). The Bank provides diversified financial products through its thirty-two stores located in the Greater Philadelphia, Southern New Jersey and New York market place. Republic Bank stores are open 7 days a week, 361 days a year, with extended lobby and drive-thru hours providing customers with some of the most convenient hours compared to any bank in its market. The Bank offers free checking, free coin counting, ATM/Debit cards issued on the spot and access to more than 55,000 surcharge free ATMs worldwide via the Allpoint Network. The Bank also offers a wide range of residential mortgage products through its mortgage division which does business under the name of Oak Mortgage Company. For more information about Republic Bank, visit www.myrepublicbank.com.

**Important Additional Information**

The Company, its directors and certain of its executive officers are participants in the solicitation of proxies from the Company's shareholders in connection with the Company's 2022 annual meeting of shareholders. The Company intends to file a definitive proxy statement and a WHITE proxy card with the Securities and Exchange Commission (the "SEC") in connection with any such solicitation of proxies from the Company's shareholders. SHAREHOLDERS OF THE COMPANY ARE STRONGLY ENCOURAGED TO READ SUCH PROXY STATEMENT, ACCOMPANYING WHITE PROXY CARD AND ALL OTHER DOCUMENTS FILED WITH THE SEC CAREFULLY AND IN THEIR ENTIRETY WHEN THEY BECOME AVAILABLE AS THEY WILL CONTAIN IMPORTANT INFORMATION. The Company's definitive proxy statement for the 2021 annual meeting of shareholders contains information regarding the direct and indirect interests, by security holdings or otherwise, of the Company's directors and executive officers in the Company's securities. Information regarding subsequent changes to their holdings of the Company's securities can be found in the SEC filings on Forms 3, 4, and 5, which are available on the Company's website at http://investors.myrepublicbank.com/ or through the SEC's website at www.sec.gov. Information can also be found in the Company's Annual Report on Form 10-K for the year ended December 31, 2020 on file with the SEC. Updated information regarding the identity of potential participants, and their direct or indirect interests, by security holdings or otherwise, will be set forth in the definitive proxy statement and other materials to be filed with the SEC in connection with the 2022 annual meeting of shareholders. Shareholders will be able to obtain the definitive proxy statement, any amendments or supplements to the proxy statement and other documents filed by the Company with the SEC at no charge at the SEC's website at www.sec.gov. Copies will also be available at no charge at the Company's website at http://investors.myrepublicbank.com.

**Forward Looking Statements**

The Company may from time to time make written or oral "forward-looking statements", including statements contained in this release and in the Company's filings with the Securities and Exchange Commission. The forward-looking statements contained herein, are subject to certain risks and uncertainties that could cause actual results to differ materially from those projected in the forward-looking statements. For example, risks and uncertainties can arise with changes in: general economic conditions, including turmoil in the financial markets and related efforts of government agencies to stabilize the financial system; the adequacy of our allowance for loan losses and our methodology for determining such allowance; adverse changes in our loan portfolio and credit risk-related losses and expenses; concentrations within our loan portfolio, including our exposure to commercial real estate loans, and to our primary service area; changes in interest rates; business conditions in the financial services industry, including competitive pressure among financial services companies, new service and product offerings by competitors, price pressures and similar items; deposit flows; loan demand; the regulatory environment, including evolving banking industry standards, changes in legislation or regulation; impact of the Dodd-Frank Wall Street Reform and Consumer Protection Act; our securities portfolio and the valuation of our securities; accounting principles, policies and guidelines as well as estimates and assumptions used in the preparation of our financial statements; rapidly changing technology; litigation liabilities, including costs, expenses, settlements and judgments; and other economic, competitive, governmental, regulatory and technological factors affecting our operations, pricing, products and services. You should carefully review the risk factors described in the Form 10-K for the year ended December 31, 2020 and other documents the Company files from time to time with the Securities and Exchange Commission. The words "would be," "could be," "should be," "probability," "risk," "target," "objective," "may," "will," "estimate," "project," "believe," "intend," "anticipate," "plan," "seek," "expect" and similar expressions or variations on such expressions are intended to identify forward-looking statements. All such statements are made in good faith by the Company pursuant to the "safe harbor" provisions of the U.S. Private Securities Litigation Reform Act of 1995. The Company does not undertake to update any forward-looking statement, whether written or oral, that may be made from time to time by or on behalf of the Company, except as may be required by applicable law or regulations.

| | |
|---|---|
| **Source:** | Republic First Bancorp, Inc. |
| **Contact:** | Frank A. Cavallaro, CFO |
| | (215) 735-4422 |

Case ID: 221102195

**Exhibit 99.2**



December 6, 2021

Mr. Lawrence Elbaum, Esq.
Vinson & Elkins
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
VIA EMAIL

Re:     Notice of Nomination (the "_Notice_"), dated November 23, 2021, of Individuals (the "_Nominees_") for Election as Directors at the 2022 Annual Meeting of Shareholders (the "_2022 Annual Meeting_") of Republic First Bancorp, Inc. (the "_Company_") made by Driver Opportunity Partners I LP ("_Driver Fund_"; together with its affiliates, "_Driver_")

Lawrence,

Further to our recent conversation, and in the hopes of sparing the Company and its shareholders the cost, aggravation and distraction of a proxy fight, below please find the outlines of a framework pursuant to which Driver would make the Nominees available to be interviewed (any interviews made pursuant to this framework, the "Interviews") by the Nominating and Governance Committee (the "Nominating Committee") of the Company's board of directors (the "Board").

Interview by Nominating Committee. The Nominees will be interviewed either by the Nominating Committee (comprising the directors listed as members of the Nominating Committee in the Company's Proxy Statement dated March 23, 2021) as a whole or such representative(s) as the Nominating Committee shall designate (so long as such representatives are members of the Nominating Committee). The Nominating Committee shall have until December 31, 2021 to conduct the Interviews and make a recommendation (the "Nominating Committee Recommendation") to the Board as to whether any Nominee should be immediately appointed to the Board or nominated by the Board for election to director at the 2022 Annual Meeting. The Nominating Committee shall deliver a copy of the Nominating Committee Recommendation to Driver when transmitted to the Board. The Board will act on the Nominating Committee Recommendation within five business days of receipt thereof and will immediately notify Driver of such action. The date, time, duration and manner (in person or virtual) of the Interviews will be determined.

Company Commitments. In recognition of Driver's willingness to enter into this framework and allow for the Interviews, the Company will commit to:

- The use of a universal proxy card at the 2022 Annual Meeting;[1]
- Appointing an independent chairman who will not be Vernon Hill;
- Establishing a Capital Planning Committee of the Board;[2]
- Revising the Company's executive compensation policies and practices to incorporate short- and long-term incentive compensation structures generally designed to align the interests of executives with those of shareholders; and
- Reimbursing Driver for any and all out-of-pocket expenses incurred through the date hereof in connection with its investment in the Company.

Public Statement. Prior to any Interview, the Company will issue a public statement (the "Public Statement") acknowledging receipt of the Notice, which shall include an acknowledgement that the Notice was validly made and accepted by the Board and the Company. The Public Statement shall include the biographies of the Nominees contained in the Notice and reflect that Driver and the Company have agreed to the framework described herein with respect to the Interviews.

---

1     In the absence of any agreement by Driver to the contrary, the Company will agree that the rule regarding universal proxies contained in SEC Release No. 34-9356 shall apply to the 2022 Annual Meeting.

2     The Capital Planning Committee shall be made up of independent directors and be empowered to retain financial and legal advisors of its choosing. The purpose of the Capital Planning Committee will be to evaluate any and all proposed capital raising transactions as well as to regularly review how the Company is allocating shareholders' capital.

250 Park Avenue
7th Floor
New York, NY 10177

Case ID: 221102195

So that there is no later misunderstanding, Driver expressly reserves the right to solicit proxies for the election of <u>all</u> the Nominees to director at the 2022 Annual Meeting and nothing contained herein nor contemplated hereby shall be deemed to limit or infringe that right.

Given all parties' interest in moving this along, your prompt reply to this letter is appreciated.

/s/ Abbott

2

Exhibit 99.3

# Vinson&Elkins

Lawrence Elbaum lelbaum@velaw.com
**Tel** +1.212.237.0084 **Fax** +1.917.849.5379

December 7, 2021

<u>**Via Email**</u>

J. Abbott R. Cooper
Driver Management Company LLC
250 Park Avenue, 7th Floor
New York, NY 10177

Re: Director Interview Framework

Dear Abbott:

     Thanks for the director interview framework letter that you sent to us yesterday via email.

     By way of background, on Sunday, we conveyed to you over the phone that our client was open to considering new directors joining Republic First Bancorp, Inc.'s Board of Directors (the "Board") as part of a settlement with you that included the withdrawal of your proxy fight, but that the full Board requested to schedule interviews with your candidates in order to make a fully informed decision about whether a settlement might be achievable. After initially rejecting the Board's requests for interviews, you indicated that it might be acceptable to you if the interviews were conducted by directors that were not in the class that is up for re-election at Republic First Bancorp Inc.'s 2022 annual meeting of shareholders. You conveyed to us on Monday morning that you would be sending us a letter setting forth a director interview framework that would be acceptable to you. Following our conversation with you, we conveyed the substance of Sunday's call and our subsequent communications with you to the Board and forwarded your Monday letter to it as well.

     After a Board discussion last night, which included discussion of your director interview framework, the Board has unanimously agreed that it cannot accept the director interview framework set forth in your letter. The Board, however, remains interested in interviewing your candidates in order to explore whether we might be able to find a mutually agreeable resolution to your proxy fight.

                            Very truly yours,

                            /s/ Lawrence S. Elbaum

                            Lawrence S. Elbaum



*Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN*

# EXHIBIT 4

# SCHEDULE 14A

**(Rule 14a-101)**

**Information Required in Proxy Statement**

**Schedule 14a Information**

**Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934**

**(Amendment No. )**

Filed by the Registrant ☐

Filed by a Party other than the Registrant ☒

Check the appropriate box:

- ☒ Preliminary Proxy Statement

- ☐ Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))

- ☐ Definitive Proxy Statement

- ☐ Definitive Additional Materials

- ☐ Soliciting Material Under Rule 14a-12

# REPUBLIC FIRST BANCORP, INC.

(Name of Registrant as Specified in Its Charter)

**DRIVER MANAGEMENT COMPANY LLC**
**DRIVER OPPORTUNITY PARTNERS I LP**
**J. ABBOTT R. COOPER**
**PETER B. BARTHOLOW**
**PAMELA D. BUNDY**
**RICHARD H. SINKFIELD III**
(Name of Persons(s) Filing Proxy Statement, if Other Than the Registrant)

Payment of Filing Fee (Check the appropriate box):

- ☒ No fee required.

- ☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

  (1) Title of each class of securities to which transaction applies:

  _____

  (2) Aggregate number of securities to which transaction applies:

  _____

  (3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

  _____

  (4) Proposed maximum aggregate value of transaction:

  _____

  (5) Total fee paid:

  _____

- ☐ Fee paid previously with preliminary materials:

- ☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the form or schedule and the date of its filing.

Case ID: 221102195

(1) Amount previously paid:

_____

(2) Form, Schedule or Registration Statement No.:

_____

(3) Filing Party:

_____

(4) Date Filed:

_____

**DRIVER MANAGEMENT COMPANY LLC**

•, 2022

**PLEASE VOTE THE ENCLOSED <u>WHITE</u> PROXY CARD TODAY-BY PHONE,
BY INTERNET OR BY SIGNING, DATING AND RETURNING IT IN THE
POSTAGE-PAID ENVELOPE PROVIDED**

To Our Fellow Republic First Shareholders:

Driver Management Company LLC and the other participants in this solicitation (collectively, "Driver", "we" or "our") are the beneficial owners of an aggregate of [674,192] shares of common stock, par value $0.01 per share (the "Common Stock"), of Republic First Bancorp, Inc, a Pennsylvania corporation ("FRBK" or the "Company"). From December 4, 2016 (the day before Vernon Hill was named chairman of the Board of Directors of the Company (the "Board")) to December 31, 2021, the total return from shares of the Common Stock (as calculated by S&P Capital IQ) was *negative* 30.47%. We believe that meaningful changes to the composition of the Board are necessary to prevent further erosion of shareholder value. We are seeking your support for the election of our three (3) nominees at the Company's 2022 annual meeting of shareholders scheduled to be held on •, 2022 at • •m., local time at • (including any adjournments or postponements thereof and any meeting which may be called in lieu thereof, the "Annual Meeting"). The individuals that we have nominated are highly qualified and focused on preserving and enhancing shareholder value. We believe that our nominees, if elected, will bring provide the Board with much needed new perspectives and insights.

We are concerned that Mr. Hill, the Company's chief executive officer and chairman of the Board, is committed to a strategy that will continue to erode shareholder value and believe that the Board (as currently constituted) is unable or unwilling to take action to protect shareholders' interests. We believe that until there is meaningful change in the composition of the Board, Mr. Hill will continue to put shareholder value at risk. We believe that our nominees have the right mix of experience, and determination necessary to prevent Mr. Hill from further destroying shareholder value. The Company has a classified Board, which is currently divided into three (3) classes. The terms of three (3) Class III directors expire at the Annual Meeting. We are seeking your support at the Annual Meeting to elect our three (3) nominees in opposition to three (3) of the Company's director nominees for the class with terms ending in 2025. Your vote to elect our nominees will have the legal effect of replacing three (3) incumbent directors with our nominees. If elected, our nominees will constitute a minority on the Board, and there can be no guarantee that our nominees will be able to implement any actions that they may believe are necessary to preserve and enhance shareholder value.

We urge you to carefully consider the information contained in the attached proxy statement and then support our efforts by signing, dating and returning the enclosed **WHITE** proxy card today. The attached proxy statement and the enclosed **WHITE** proxy card are first being mailed to stockholders on or about •, 2022.

If you have already voted for the incumbent management slate, you have every right to change your vote by signing, dating and returning a later dated **WHITE** proxy card or by voting in person at the Annual Meeting.

If you have any questions or require any assistance with your vote, please contact Saratoga Proxy Consulting LLC, who is assisting us, at its address and toll-free numbers listed below.

Thank you for your support,

/s/ J. Abbott R. Cooper

J. Abbott R. Cooper
Driver Management Company LLC

2

Case ID: 221102195

*If you have any questions, require assistance in voting your **WHITE** proxy card,*
*or need additional copies of Driver's proxy materials,*
*please contact Saratoga at the phone numbers listed below.*

# s a r a t o g a



## *Saratoga Proxy Consulting LLC*
520 8th Avenue, 14th Floor
New York, NY  10018
(212) 257-1311

*Stockholders call toll free at (888) 368-0379*
*Email: info@saratogaproxy.com*

Case ID: 221102195

**PRELIMINARY PROXY STATEMENT**
**SUBJECT TO COMPLETION**
**DATED JANUARY 14, 2022**

**2022 ANNUAL MEETING OF STOCKHOLDERS**
**OF**
**REPUBLIC FIRST BANCORP, INC.**

––––––––––––––––––––

**PROXY STATEMENT**
**OF**
**DRIVER MANAGEMENT COMPANY LLC**

––––––––––––––––––––

**PLEASE SIGN, DATE AND MAIL THE ENCLOSED WHITE PROXY CARD TODAY**

Driver Management Company LLC and the other participants in this solicitation (collectively, "Driver", "we" or "our") are the beneficial owners of an aggregate of 674,192 shares of common stock, par value $0.01 per share (the "Common Stock"), of Republic First Bancorp, Inc, a Pennsylvania corporation ("FRBK" or the "Company"). From December 4, 2016 (the day before Vernon Hill was named chairman of the Board of Directors of the Company (the "Board") to December 31, 2021, the total return from shares of the Common Stock (as calculated by S&P Capital IQ) was *negative* 30.47%. We believe that meaningful changes to the composition of the Board are necessary to prevent further erosion of shareholder value. We have nominated three (3) highly-qualified director candidates who are committed to protecting and enhancing shareholder value. We are seeking your support at the Company's 2022 annual meeting of shareholders scheduled to be held on •, 2022 at • •.m., local time at • (including any adjournments or postponements thereof and any meeting which may be called in lieu thereof, the "Annual Meeting"), for the following:

1.  To elect Driver's three (3) director nominees, Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III (each a "Nominee" and, collectively, the "Nominees"), to the Board as Class III directors to serve until the 2025 annual meeting of shareholders or until their respective successors are duly elected and qualified ("Proposal 1");

2.  [To approve, on an advisory basis, the compensation of the Company's named executive officers for 2022 as described in the Company's Proxy Statement ("Proposal 2" or the "Say-on-Pay Proposal")];

3.  [To ratify the appointment of [BDO USA, LLP]as the Company's independent registered public accounting firm for the fiscal year ending December 31, 2022 ("Proposal 3")]; and

4.  To transact such other business as may properly come before the Annual Meeting.

4

This Proxy Statement and the enclosed **WHITE** proxy card are first being mailed to stockholders on or about •, 2022.

Driver Management, Driver Opportunity Partners I LP, a Delaware limited partnership ("Partners"), J. Abbott R. Cooper, Peter B. Bartholow, Pamela B. Bundy and Richard H. Sinkfield III are members of a group (the "Group") formed in connection with this proxy solicitation and are deemed participants in this proxy solicitation.

As of •, 2022, the participants in this solicitation collectively own [674,260] shares of Common Stock (the "Driver Group Shares"). We intend to vote such shares **FOR** the election of the Nominees and to **ABSTAIN** from voting on Proposal 2 and Proposal 3.

The Company has set the close of business on •, 2022 as the record date for determining shareholders entitled to notice of and to vote at the Annual Meeting (the "Record Date"). The mailing address of the principal executive offices of the Company is 50 South 16th Street, Philadelphia, Pennsylvania 19102. Shareholders of record at the close of business on the Record Date will be entitled to vote at the Annual Meeting. According to the Company's Proxy Statement, as of the Record Date, there were • shares of Common Stock outstanding.

THIS SOLICITATION IS BEING MADE BY DRIVER AND NOT ON BEHALF OF THE BOARD OR MANAGEMENT OF THE COMPANY. WE ARE NOT AWARE OF ANY OTHER MATTERS TO BE BROUGHT BEFORE THE ANNUAL MEETING OTHER THAN AS SET FORTH IN THIS PROXY STATEMENT. SHOULD OTHER MATTERS, WHICH DRIVER IS NOT AWARE OF A REASONABLE TIME BEFORE THIS SOLICITATION, BE BROUGHT BEFORE THE ANNUAL MEETING, THE PERSONS NAMED AS PROXIES IN THE ENCLOSED **WHITE** PROXY CARD WILL VOTE ON SUCH MATTERS IN THEIR DISCRETION.

DRIVER URGES YOU TO SIGN, DATE AND RETURN THE **WHITE** PROXY CARD IN FAVOR OF THE ELECTION OF THE NOMINEES.

IF YOU HAVE ALREADY SENT A PROXY CARD FURNISHED BY COMPANY MANAGEMENT OR THE BOARD, YOU MAY REVOKE THAT PROXY AND VOTE ON EACH OF THE PROPOSALS DESCRIBED IN THIS PROXY STATEMENT BY SIGNING, DATING AND RETURNING THE ENCLOSED **WHITE** PROXY CARD. THE LATEST DATED PROXY IS THE ONLY ONE THAT COUNTS. ANY PROXY MAY BE REVOKED AT ANY TIME PRIOR TO THE ANNUAL MEETING BY DELIVERING A WRITTEN NOTICE OF REVOCATION OR A LATER DATED PROXY FOR THE ANNUAL MEETING OR BY VOTING IN PERSON AT THE ANNUAL MEETING.

**Important Notice Regarding the Availability of Proxy Materials for the Annual Meeting-**
**This Proxy Statement and our WHITE proxy card are available at**
•

---

Case ID: 221102195

**Your vote is important, no matter how many shares of Common Stock you own. Driver urges you to sign, date, and return the enclosed WHITE proxy card today to vote FOR the election of the Nominees and in accordance with Driver's recommendations on the other proposals on the agenda for the Annual Meeting.**

**Registered Owners**

If your shares of Common Stock are registered in your own name, please sign and date the enclosed **WHITE** proxy card and return it to Driver, c/o Saratoga Proxy Consulting LLC ("Saratoga"), in the enclosed postage-paid envelope today. Stockholders also have the following two options for authorizing a proxy to vote their shares:

- Via the Internet at • at any time prior to 11:59 p.m. Eastern Time on •, 2022, and follow the instructions provided on the **WHITE** proxy card; or

- By telephone, by calling • at any time prior to 11:59 p.m. Eastern Time on •, 2022, and follow the instructions provided on the **WHITE** proxy card.

**Beneficial Owners**

If your shares of Common Stock are held in a brokerage account or bank, you are considered the beneficial owner of the shares of Common Stock, and these proxy materials, together with a **WHITE** voting instruction form, are being forwarded to you by your broker or bank. As a beneficial owner, if you wish to vote, you must instruct your broker, trustee or other representative how to vote. Your broker cannot vote your shares of Common Stock on your behalf without your instructions.

Beneficial owners may vote either by the Internet or toll-free telephone. Please refer to the enclosed instructions on how to vote by Internet or telephone. You may also vote by signing, dating and returning the enclosed **WHITE** voting instruction form.

Since only your latest dated proxy card will count, we urge you not to return any proxy card you receive from the Company. Even if you return the management proxy card marked "withhold" as a protest against the incumbent directors, it will revoke any proxy card you may have previously sent to us. Remember, you can vote for our three (3) Nominees only on our **WHITE** proxy card. So please make certain that the latest dated proxy card you return is the **WHITE** proxy card.

6

Case ID: 221102195

*If you have any questions, require assistance in voting your **WHITE** proxy card,*
*or need additional copies of Driver's proxy materials,*
*please contact Saratoga at the phone numbers listed below.*




## *Saratoga Proxy Consulting LLC*

520 8th Avenue, 14th Floor
New York, NY 10018
(212) 257-1311

*Stockholders call toll free at (888) 368-0379*
*Email: info@saratogaproxy.com*

Case ID: 221102195

## REASONS FOR THE SOLICITATION

Driver believes that Vernon Hill, the Company's Chief Executive Officer and Chairman of the Board, is irrevocable committed to a strategy that will continue to erode shareholder value and that the Board, as currently constituted, is unwilling or unable to take action to protect shareholders' interests. Driver believes that the results of Mr. Hill's strategy, and its impact on shareholder value, can be seen from the information below.

The following table shows total shareholder return ("TSR") for the Common Stock and the Dow Jones U.S. Micro Cap Banks Index (the "Micro Cap Banks Index") from the trading day prior to the events listed below to (or for the periods ended) December 31, 2021:

| | Total Shareholder Return[1] | | |
|---|---|---|---|
| | FRBK | Micro Cap Banks Index | Difference[2] |
| Since Mr. Hill named Chairman[3] | -30.47% | 62.68% | -9,315bps |
| Since Mr. Hill named CEO[4] | -7.83% | 26.09% | -3,392bps |
| One year | 32.86% | 47.88% | -1,502bps |
| Three years | -56.74% | 34.16% | -9,090bps |
| Five years | -13.08% | 113.05% | -12,613bps |

Driver believes that FRBK's TSR (particularly relative to the Micro Cap Banks Index) since Mr. Hill was named Chairman, as well as since Mr. Hill was named CEO and for the 1, 3 and 5 year periods ended December 31, 2021, is compelling evidence that Mr. Hill's tenure at FRBK and the strategy that he has implemented have had an adverse impact on shareholder value. Driver further believes that FRBK's consistent and long-term underperformance (as measured by TSR) relative to the Micro Cap Banks Index is evidence that the Board has abdicated its responsibility to hold Mr. Hill accountable for FRBK's performance and will not or cannot take any affirmative action to protect shareholders' interests.

Driver believes that only a significant change in the composition of the Board will prevent further erosion of shareholder value. Driver has nominated three highly qualified individuals who Driver believes will bring much needed new perspective to the Board and will act to preserve and enhance shareholder value.

---

[1] Source: S&P Capital IQ.

[2] Measured in basis points ("bps")

[3] Mr. Hill was named Chairman on December 5, 2016. https://www.sec.gov/Archives/edgar/data/0000834285/000095015916000819/rfbk8k.htm

[4] Mr. Hill was named to the additional role of CEO on February 23, 2021. https://www.sec.gov/ix?doc=/Archives/edgar/data/0000834285/000143774921004178/frbk20210225_8k.htm

## ELECTION OF DIRECTORS

The Company currently has a classified Board, which is divided into three (3) classes. The directors in each class are elected for terms of three (3) years so that the term of office of one (1) class of directors expires at each annual meeting of stockholders. We believe that the terms of three (3) Class III directors expire at the Annual Meeting. We are seeking your support at the Annual Meeting to elect our three (3) Nominees, Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III, each of whom is independent of the Company, in opposition to three (3) of the Company's director nominees for terms ending in 2025.

Your vote to elect the Nominees will have the legal effect of replacing three (3) incumbent directors of the Company with the Nominees. If elected, the Nominees will represent a minority of the members of the Board, and therefore it is not guaranteed that they will be able to implement any actions that they may believe are necessary to enhance stockholder value.

**THE NOMINEES**

The following information sets forth the name, age, business address, present principal occupation, and employment and material occupations, positions, or offices for the past five (5) years of each of the Nominees. The nominations were made in a timely manner and in compliance with the applicable provisions of the Company's governing instruments. The specific experience, qualifications, attributes and skills that led us to conclude that the Nominees should serve as directors of the Company are set forth below. This information has been furnished to us by the Nominees. All of the Nominees are citizens of the United States of America.

Peter B. Bartholow, age 73, most recently served as Chief Operating Officer and Chief Financial Officer and on the board of directors of Texas Capital Bancshares, Inc. (NASAQ: TCBI), a bank holding company, and Chief Financial Officer of its subsidiary, Texas Capital Bank, from 2003, and Chief Operating Officer, from 2014, until stepping down from his Chief Financial Officer roles in June 2017 and his eventual retirement from the company in December 2017. Prior to that, Mr. Bartholow served as Managing Director of Hat Creek Partners LLC, a private equity investment company, from 1999 to 2003. From 1995 to 1998, Mr. Bartholow served as Corporate Vice President of Finance at Electronic Data Systems, Corp. (formerly NYSE: EDS) ("EDS"), a multinational information technology equipment and services company. Mr. Bartholow served as Chief Financial Officer of First USA, Inc. (formerly NYSE: FUS), a financial services company originally formed as a subsidiary of MCorp, from 1994 to 1995. From 1989 to 1994, Mr. Bartholow served as Chairman of the Board of Directors, Chief Financial Officer, Chief Executive Officer and President of MCorp, which was a bank holding company a majority of whose banks were acquired by Bank One Corporation (formerly NYSE: ONE). Mr. Bartholow served on the board of directors of MTech, a publicly owned technology services company, of which MCorp was the majority stockholder, from 1985 to 1988, when MTech was acquired by EDS. Mr. Bartholow also served on the board of directors of A.T. Kearney, Inc., a subsidiary of EDS and provider of management consulting services, from 1995 to 1998 and MCorp, from 1989 to 1994. Mr. Bartholow received an M.B.A. from the University of Texas and a Bachelor's Degree in Economics from Vanderbilt University.

Case ID: 221102195

Driver believes that Mr. Bartholow's extensive knowledge of capital markets, mergers & acquisitions, divestitures, and litigation management, as a result of his significant experience in executive roles, coupled with his board experience, will make him well qualified to serve on the Board.

Pamela D. Bundy, age 59, is the Chief Executive Officer and President of Bundy Development Corporation ("BDC"), a real estate development company, since founding the company in 1996. Early in her career, Ms. Bundy served as a District Manager at PepsiCo, Inc. (NASDAQ: PEP), a multinational food, snack and beverage corporation, from 1991 to 1992 and as District Manager at The Southland Corporation (n/k/a 7-Eleven, Inc.), a chain of convenience stores, from 1985 to 1991. She later became a certified real estate appraiser and opened the appraisal firm Pamela Bundy & Associates in 1992. Ms. Bundy has served as a member of Lincoln University's Foundation Board, a public university, since September 2020. Additionally, Ms. Bundy currently serves on board of trustees of the Barnes Foundation, an art collection and educational institution, since 2016. Ms. Bundy also serves on the board of directors of the District of Columbia Building Industry Association, a non-profit trade association representing the real estate development industry, since 2000, where she initially became a member of the Executive Committee upon her appointment as Vice President of the board of directors in 2015 and served as Vice President until 2017. Ms. Bundy also serves on the board of advisors of Lowe Economic Development Company, an affiliate of Lowe Enterprises, Inc./Atwater Infrastructure, which is a leading national real estate investment, development and management firm, since October 2015. Ms. Bundy served on the Capital One Advisory Board, a group which provided advice to Capital One Financial Corporation (NYSE: COF), from 2005 to 2006. In addition, Ms. Bundy served on the board of directors of Jubilee Housing, a committee housing initiative, from 2009 to 2010 and as a member of Urban Land Institute's Executive Counsel, a nonprofit research and education organization, from 2009 to 2010. Throughout her career, Ms. Bundy has received numerous awards, including the 2014 Commercial Real Estate Women ("CREW") Placemaking Award, CREW's 2011 Network impact Award and the Washington Business Journal's 2008 Minority Business Leader Award. In 2004, Ms. Bundy was named one of the "Women Who Mean Business" by the Washington Business Journal and "Entrepreneur of the Year" by the Parren J. Mitchell Foundation. In 2001, under her leadership, BDC was nominated for Black Enterprise's "Emerging Company of the Year." Ms. Bundy received a B.A. from Lincoln University and completed Harvard Business School's Executive Owner President Manager management program.

Driver believes that Ms. Bundy's extensive real estate and development expertise and experience from her executive roles make her a valuable addition to the Company's Board.

Case ID: 221102195

Richard H. Sinkfield III, age 52, is the Chief Legal Officer and Chief Ethics & Compliance Officer at Laureate Education, Inc. (NASDAQ: LAUR) ("Laureate"), a corporation which owns and operates Laureate International Universities, a position he has held since July 2020. Prior to his current role, Mr. Sinkfield served in various positions at Laureate, including Senior Vice President and Assistant General Counsel of Latin America, from 2015 to June 2020, Vice President and Regional Counsel of Brazil, from 2010 to 2014, and Vice President and Assistant General Counsel, from 2004 to 2010. Prior to Laureate, Mr. Sinkfield was an Associate at Sidley Austin LLP, an international law firm, from 2001 to 2004. Before that, Mr. Sinkfield was an Associate at Akin Gump Strauss Hauer & Feld LLP, from 1999 to 2001. Mr. Sinkfield served as Deputy Assistant Secretary of Legislative Affairs and Public Liaison at the U.S. Department of the Treasury, from 1997 to 1999 and as a Senior Advisor, from 1995 to 1997. Mr. Sinkfield began his career as an Attorney Advisor at the U.S. Department of State, from 1994 to 1995. Mr. Sinkfield has significant non-profit board experience, having served on the boards of directors or trustees of Daniel C. Payne Community Development Corporation, a charitable organization, from 2005 to 2010, William E. Doar, Jr. Public Charter School for the Performing Arts, a public elementary school, from 2002 to 2007, and The Newport School, a public school, from 1999 to 2001. Mr. Sinkfield served as Advisor to the São Paulo Action for Children and Education, a program aimed at educating marginalized youth from impoverished neighborhoods in São Paulo, from 2011 to 2015. Mr. Sinkfield is a distinguished member of the legal community, having served as a Hearing Committee Member on the D.C. Board on Professional Responsibility and as an adjunct professor at the George Washington University Law School. Mr. Sinkfield received a B.S. in International Relations and Affairs from Georgetown University's School of Foreign Service and a J.D., cum laude, from Harvard Law School.

Driver believes that Mr. Sinkfield's significant understanding of governance and oversight, compliance and risk management, coupled with his expertise in mergers & acquisitions and securities law, make him well qualified to serve on the Board.

Mr. Bartholow's principal business address is 4300 Beverly Drive Dallas, Texas 75205. Ms. Bundy's principal business address is 611 Eye Street, SW Washington, D.C. Mr. Sinkfield's principal business address is 1897 John Calvin Avenue College Park, Georgia 30337.

As of •, 2022, Mr. Bartholow owns [6,000] shares of Common Stock, Ms. Bundy owns [10,000] shares of Common Stock and Mr. Sinkfield owns [2,932] shares of Common Stock. The shares of Common Stock purchased by each of the Nominees were purchased using personal funds in the open market.

Each Nominee may be deemed to be a member of the Group for the purposes of Section 13(d)(3) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Each Nominee specifically disclaims beneficial ownership of shares of Common Stock that he or she does not directly own. For information regarding purchases and sales of securities of the Company during the past two (2) years by the Nominees and the members of the Group, please see Schedule I.

Driver has signed separate letter agreements (the "Indemnification Agreements") with each of the Nominees pursuant to which it and its affiliates have agreed to indemnify such Nominees against certain claims arising from the solicitation of proxies from the Company's shareholders in connection with the Annual Meeting and any related transactions. For the avoidance of doubt, such indemnification does not apply to any claims made against such Nominees in their capacities as directors of the Company, if so elected

On January 11, 2022, the members of the Group entered into a Joint Filing and Solicitation Agreement (the "Joint Filing and Solicitation Agreement") pursuant to which, among other things, (i) the members of the Group agreed to the joint filing on behalf of each of them of statements on Schedule 13D, and any amendments thereto, with respect to the securities of the Company, (ii) the Group agreed to solicit proxies or written consents for the election of the Nominees to the Board at the Annual Meeting, (iii) each of the Nominees agreed to provide Driver advance written notice prior to effecting any purchase, sale, acquisition or disposal of any securities of the Company of which he or she has, or would have, direct or indirect beneficial ownership so that Driver has an opportunity to review the potential implications of any such transaction in the securities of the Company and pre-clear any such potential transaction in the securities of the Company by the Nominees, (iv) each of the Nominees agreed that he or she shall not undertake or effect any purchase, sale, acquisition or disposal of any securities of the Company without the prior written consent of Driver, and (v) Driver agreed to pay directly all pre-approved expenses in connection with the solicitation for the election of the Nominees at the Annual Meeting.

Case ID: 221102195

Other than as stated herein, there are no arrangements or understandings between the members of the Group or any other person or persons pursuant to which the nomination of the Nominees described herein is to be made, other than the consent by each Nominee to be named in this Proxy Statement and to serve as a director of the Company if elected as such at the Annual Meeting. None of the Nominees is a party adverse to the Company or any of its subsidiaries or has a material interest adverse to the Company or any of its subsidiaries in any material pending legal proceeding.

Each Nominee presently is, and if elected as a director of the Company, each of the Nominees would, in our view, qualify as, an "independent director" within the meaning of (i) applicable NASDAQ listing standards applicable to board composition, including Rule 5605(a)(2), and (ii) Section 301 of the Sarbanes-Oxley Act of 2002. Notwithstanding the foregoing, no director of an NASDAQ listed company qualifies as "independent" under the NASDAQ listing standards unless the board of directors affirmatively determines that such director is independent under such standards. Accordingly, if the Nominees are elected, the determination of the Nominees' independence under the NASDAQ listing standards ultimately rests with the judgment and discretion of the Board. No Nominee is a member of the Company's compensation, nominating or audit committee that is not independent under any such committee's applicable independence standards.

We do not expect that the Nominees will be unable to stand for election, but, in the event any Nominee is unable to serve or for good cause will not serve, the shares of Common Stock represented by the enclosed **WHITE** proxy card will be voted for substitute nominee(s), to the extent this is not prohibited under the Bylaws and applicable law. In addition, we reserve the right to nominate substitute person(s) if the Company makes or announces any changes to the Bylaws or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any Nominee, to the extent this is not prohibited under the Bylaws and applicable law. In any such case, we would identify and properly nominate such substitute nominee(s) in accordance with the Bylaws and shares of Common Stock represented by the enclosed **WHITE** proxy card will be voted for such substitute nominee(s). We reserve the right to nominate additional person(s), to the extent this is not prohibited under the Bylaws and applicable law, if the Company increases the size of the Board above its existing size or increases the number of directors whose terms expire at the Annual Meeting.

**WE URGE YOU TO VOTE "FOR" THE ELECTION OF THE NOMINEES ON THE ENCLOSED WHITE PROXY CARD.**

Case ID: 221102195

## OTHER MATTERS TO BE CONSIDERED AT THE ANNUAL MEETING

[Based on information contained in the Company's Proxy Statement, shareholders at the Annual Meeting will be asked to approve, on on an advisory basis, the named executive officer ("NEO") compensation disclosed in the Company's Preliminary Proxy Statement ("Proposal 2" or the "Say on Pay Vote"). According to the Company's Proxy Statement, this vote is advisory in nature, meaning that it is non-binding on the Company, its Board or the compensation committee thereof (the "Compensation Committee"). However, according to the Company's Proxy Statement, the Board and the Compensation Committee will consider the outcome of the vote on Proposal 3 in connection with future executive compensation decisions. Based on information contained in the Company's Proxy Statement, the Board is recommending a vote "FOR" Proposal 2. Driver makes no recommendation on this matter.]

[Based on information contained in the Company's Proxy Statement, shareholders at the Annual Meeting will be asked to ratify the employment of [BDO USA LLP] as the independent registered public accounting firm to perform the audit of the Company's financial statements and its internal controls over financial reporting for the fiscal year ending December 31, 2022 ("Proposal 3"). According to the Company's Proxy Statement, although the Company is not required to do so, the Company believes that it is appropriate for it to request shareholder ratification of the appointment of [BDO USA LLP] as its independent registered public accounting firm for the fiscal year ending December 31, 2022. According to the Company's Preliminary Proxy Statement, if shareholders do not ratify the appointment, the audit committee will investigate the reasons for the shareholders' rejection and reconsider the appointment, but it will not be required to and may decide not to change the appointment of the Company's independent registered public accounting firm. In addition, per the Company's Preliminary Proxy Statement, although even if the shareholders ratify the selection of [BDO USA LLP], the audit committee may, in its discretion, appoint a different independent registered public accounting firm at any time during the year if the audit committee determines that a change is in the best interest of the Company. Based on information contained in the Company's Proxy Statement, the Board is recommending a vote "FOR" Proposal 3. Driver makes no recommendation on this matter.]

Case ID: 221102195

Shareholders are entitled to one vote for each share of Common Stock held of record on the Record Date with respect to each matter to be acted on at the Annual Meeting. Only shareholders of record on the Record Date will be entitled to notice of and to vote at the Annual Meeting. Shareholders who sell their shares of Common Stock before the Record Date (or acquire them without voting rights after the Record Date) may not vote such shares. Shareholders of record on the Record Date will retain their voting rights in connection with the Annual Meeting even if they sell such shares after the Record Date. Based on publicly available information, Driver believes that the only outstanding class of securities of the Company entitled to vote at the Annual Meeting is the Common Stock.

Shares of Common Stock represented by properly executed **WHITE** proxy cards will be voted at the Annual Meeting as marked and, in the absence of specific instructions, will be voted **FOR** the election of the Nominees and will **ABSTAIN** from voting on Proposals 2 and 3, and in the discretion of the persons named as proxies on all other matters as may properly come before the Annual Meeting, as described herein.

## QUORUM; BROKER NON-VOTES; DISCRETIONARY VOTING

A quorum is the minimum number of shares of Common Stock that must be represented at a duly called meeting in person or by proxy in order to legally conduct business at the meeting. The presence, in person or by proxy, of stockholders entitled to cast a majority of all votes entitled to be cast at the Annual Meeting shall constitute a quorum. Withheld votes (in the case of the election of directors), abstentions and broker non-votes will all be counted for purposes of determining whether a quorum is present.

Please note that if you hold your shares in a stock brokerage account, your broker may not be able to vote your shares of Common Stock (a "broker non-vote") unless you provide voting instructions to your broker. You should instruct your broker to vote your shares by following the instructions provided by the broker when it sends this Proxy Statement to you. You may not vote shares held in street name by returning a proxy card directly to the Company or by voting in person at the Annual Meeting unless you provide a "legal proxy", which you must obtain from your bank, broker, trustee or other nominee.

If you hold your shares in "street name" and do not provide voting instructions to your broker, then your broker will not have the authority to vote your shares on any proposal presented at the Annual Meeting unless it has discretionary authority with respect to that proposal. In that case, your shares will be considered to be broker non-votes and will not be voted on that proposal. Whether a broker has discretionary authority depends on your agreement with your broker and the rules of the various regional and national exchanges of which your broker is a member. These rules generally prohibit a broker from exercising discretionary voting authority on non-routine matters without specific instructions from their customers. Proposals are determined to be routine or non-routine matters based on these rules. However, in the case of meetings involving contested director elections, these rules generally prohibit a broker from exercising discretionary authority with respect to any proposals to be voted on at such meetings, whether routine or not. As a result, brokers subject to these rules generally will not be permitted to vote shares held by a beneficial holder at the Annual Meeting without instructions from that beneficial holder as to how to the shares are to be voted. Any shares held by such a broker who has not received instructions from the beneficial owner as to how such shares are to be voted will have no effect on the outcome of Proposals 1, 2 or 3, but the shares will be counted for establishing the presence of a quorum. It is therefore very important that you instruct your broker on how to vote shares that you hold in street name.

Case ID: 221102195

## VOTES REQUIRED FOR APPROVAL

*Election of Directors* - According to information contained in the Company's Proxy Statement directors are elected by a plurality vote of shares of common stock cast in person or by proxy at the annual meeting, provided a quorum is present. A "plurality" means that the individuals who receive the largest number of affirmative votes cast are elected as directors up to the maximum number of directors to be chosen at the annual meeting. Votes that are withheld from a director nominee will be excluded entirely from the vote for such nominee and will have no effect on the result. Broker non-votes will have no effect on the outcome of the vote. Shareholders are not entitled to cumulative voting in the election of directors.

*Other Proposals* - According to information contained in the Company's Proxy Statement, Proposal 2 will be approved if a majority of the votes represented in person or by proxy at the annual meeting and entitled to vote are voted for the proposal. Abstentions will have the same legal effect as votes against the proposal. Broker non-votes will have no effect on the outcome of the vote.

According to information contained in the Company's Proxy Statement, Proposal 3 will be approved if a majority of the votes represented in person or proxy at the annual meeting and entitled to vote are voted for the proposal. Abstentions will have the same legal effect as votes against the proposal. Brokers or other nominees will have discretion to vote on Proposal 3.

## REVOCATION OF PROXIES

Shareholders of the Company may revoke their proxies at any time prior to exercise by attending the Annual Meeting and voting in person (although, attendance at the Annual Meeting will not in and of itself constitute revocation of a proxy) or by delivering a written notice of revocation. The delivery of a subsequently dated proxy which is properly completed will constitute a revocation of any earlier proxy. The revocation may be delivered either to Driver in care of Saratoga at the address set forth on the back cover of this Proxy Statement or to the Company at Two Liberty Place, 50 South 16th Street, Suite 2400, Philadelphia, Pennsylvania 19102 or any other address provided by the Company. Although a revocation is effective if delivered to the Company, we request that either the original or photostatic copies of all revocations be mailed to Driver in care of Saratoga at the address set forth on the back cover of this Proxy Statement so that we will be aware of all revocations and can more accurately determine if and when proxies have been received from the holders of record on the Record Date of a majority of the shares entitled to be voted at the Annual Meeting. Additionally, Saratoga may use this information to contact stockholders who have revoked their proxies in order to solicit later dated proxies for the election of the Nominees.

**IF YOU WISH TO VOTE FOR THE ELECTION OF THE NOMINEES TO THE BOARD, PLEASE SIGN, DATE AND RETURN PROMPTLY THE ENCLOSED WHITE PROXY CARD IN THE POSTAGE-PAID ENVELOPE PROVIDED.**

Case ID: 221102195

## SOLICITATION OF PROXIES

The solicitation of proxies pursuant to this Proxy Statement is being made by Driver. Proxies may be solicited by mail, facsimile, telephone, Internet, in person and by advertisements.

Members of Driver have entered into an agreement with Saratoga for solicitation and advisory services in connection with this solicitation, for which Saratoga will receive a fee not to exceed $•, together with reimbursement for its reasonable out-of-pocket expenses, and will be indemnified against certain liabilities and expenses, including certain liabilities under the federal securities laws. Saratoga will solicit proxies from individuals, brokers, banks, bank nominees and other institutional holders. Driver has requested banks, brokerage houses and other custodians, nominees and fiduciaries to forward all solicitation materials to the beneficial owners of the shares of Common Stock they hold of record. Driver will reimburse these record holders for their reasonable out-of-pocket expenses in so doing. It is anticipated that Saratoga will employ approximately 20 persons to solicit stockholders for the Annual Meeting.

The entire expense of soliciting proxies is being borne by Driver. Costs of this solicitation of proxies are currently estimated to be approximately $• (including, but not limited to, fees for attorneys, solicitors and other advisors, and other costs incidental to the solicitation). Driver estimates that through the date hereof its expenses in connection with this solicitation are approximately $•. To the extent legally permissible, if Driver is successful in its proxy solicitation, Driver intends to seek reimbursement from the Company for the expenses it incurs in connection with this solicitation. Driver does not intend to submit the question of such reimbursement to a vote of security holders of the Company.

## ADDITIONAL PARTICIPANT INFORMATION

Driver Management, Partners, J. Abbott R. Cooper and the Nominees are participants in this solicitation. The principal business of Driver is serving as the general partner of Partners and managing certain other investments on behalf of separately managed accounts and other investment vehicles. The principal business of Partners is investing in securities. The principal occupation of Mr. Cooper is serving as the managing member of Driver.

The address of the principal office of each of Driver Management, Partners and Mr. Cooper is 250 Park Avenue, 7th Floor, New York, New York 10177.

As of •, 2022, Partners directly beneficially owns [339,355] shares of Common Stock. Driver Management, as the general partner of Partners, may be deemed to beneficially own the shares of Common Stock directly beneficially owned by Partners. Mr. Cooper, as the managing member of Driver Management, may be deemed to beneficially own the shares of Common Stock directly beneficially owned by Partners.

As of •, 2022, Driver Management beneficially owns an additional [334,925] shares of Common Stock held in certain managed accounts for which Driver Management has sole voting and dispositive power. Mr. Cooper, as the managing member of Driver Management, may be deemed to beneficially own the shares of Common Stock beneficially owned by Driver Management and held in the certain managed accounts.

Case ID: 221102195

Each participant in this solicitation is a member of a "group" with the other participants for the purposes of Section 13(d)(3) of the Exchange Act. The Group may be deemed to beneficially own the •shares of Common Stock owned in the aggregate by all of the participants in this solicitation. Each participant in this solicitation disclaims beneficial ownership of the shares of Common Stock that he, she or it does not directly own. For information regarding purchases and sales of securities of the Company during the past two (2) years by the participants in this solicitation, see Schedule I.

The shares of Common Stock purchased by Partners were purchased with working capital (which may, at any given time, include margin loans made by brokerage firms in the ordinary course of business). The shares of Common Stock purchased in the certain managed account were purchased with working capital (which may, at any given time, include margin loans made by brokerage firms in the ordinary course of business).

Except as set forth in this Proxy Statement (including the Schedules hereto), (i) during the past ten (10) years, no participant in this solicitation has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors); (ii) no participant in this solicitation directly or indirectly beneficially owns any securities of the Company; (iii) no participant in this solicitation owns any securities of the Company which are owned of record but not beneficially; (iv) no participant in this solicitation has purchased or sold any securities of the Company during the past two (2) years; (v) no part of the purchase price or market value of the securities of the Company owned by any participant in this solicitation is represented by funds borrowed or otherwise obtained for the purpose of acquiring or holding such securities; (vi) no participant in this solicitation is, or within the past year was, a party to any contract, arrangements or understandings with any person with respect to any securities of the Company, including, but not limited to, joint ventures, loan or option arrangements, puts or calls, guarantees against loss or guarantees of profit, division of losses or profits, or the giving or withholding of proxies; (vii) no associate of any participant in this solicitation owns beneficially, directly or indirectly, any securities of the Company; (viii) no participant in this solicitation owns beneficially, directly or indirectly, any securities of any parent or subsidiary of the Company; (ix) no participant in this solicitation or any of his, her or its associates was a party to any transaction, or series of similar transactions, since the beginning of the Company's last fiscal year, or is a party to any currently proposed transaction, or series of similar transactions, to which the Company or any of its subsidiaries was or is to be a party, in which the amount involved exceeds $120,000; (x) no participant in this solicitation or any of his, her or its associates has any arrangement or understanding with any person with respect to any future employment by the Company or its affiliates, or with respect to any future transactions to which the Company or any of its affiliates will or may be a party; and (xi) no participant in this solicitation has a substantial interest, direct or indirect, by securities holdings or otherwise, in any matter to be acted on at the Annual Meeting.

There are no material proceedings to which any participant in this solicitation or any of his, her or its associates is a party adverse to the Company or any of its subsidiaries or has a material interest adverse to the Company or any of its subsidiaries. With respect to each of the Nominees, none of the events enumerated in Item 401(f)(1)-(8) of Regulation S-K of the Exchange Act occurred during the past ten (10) years.

Case ID: 221102195

## OTHER MATTERS AND ADDITIONAL INFORMATION

Driver is unaware of any other matters to be considered at the Annual Meeting. However, should other matters, which Driver is not aware of at a reasonable time before this solicitation, be brought before the Annual Meeting, the persons named as proxies on the enclosed **WHITE** proxy card will vote on such matters in their discretion.

## SHAREHOLDER PROPOSALS AND NOMINATIONS FOR THE 2023 ANNUAL MEETING

The following information regarding shareholder proposals and nominations for the Company's 2023 Annual Meeting of Shareholders is taken from the Company's Proxy Statement:

[to come]

The information set forth above regarding the procedures for submitting shareholder proposals and nominations for the Company's 2022 Annual Meeting of Shareholders is taken from the Company's Proxy Statement. The incorporation of this information in this Proxy Statement should not be construed as an admission by Driver that such procedures are legal, valid or binding.

## CERTAIN ADDITIONAL INFORMATION

WE HAVE OMITTED FROM THIS PROXY STATEMENT CERTAIN DISCLOSURE REQUIRED BY APPLICABLE LAW THAT IS EXPECTED TO BE INCLUDED IN THE COMPANY'S PROXY STATEMENT RELATING TO THE ANNUAL MEETING BASED ON OUR RELIANCE ON RULE 14A-5(C) UNDER THE EXCHANGE ACT. THIS DISCLOSURE IS EXPECTED TO INCLUDE, AMONG OTHER THINGS, CURRENT BIOGRAPHICAL INFORMATION ON THE COMPANY'S DIRECTORS AND EXECUTIVE OFFICERS, INFORMATION CONCERNING EXECUTIVE COMPENSATION AND DIRECTOR COMPENSATION, INFORMATION CONCERNING THE COMMITTEES OF THE BOARD AND OTHER INFORMATION CONCERNING THE BOARD, INFORMATION CONCERNING CERTAIN RELATIONSHIPS AND RELATED PARTY TRANSACTIONS, INFORMATION ABOUT THE COMPANY'S INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM AND OTHER IMPORTANT INFORMATION. SEE SCHEDULE II FOR INFORMATION REGARDING PERSONS WHO BENEFICIALLY OWN MORE THAN 5% OF THE SHARES AND THE OWNERSHIP OF THE SHARES BY THE DIRECTORS AND MANAGEMENT OF THE COMPANY.

The information concerning the Company contained in this Proxy Statement and the Schedules attached hereto has been taken from, or is based upon, publicly available information.

**DRIVER OPPORTUNITY PARTNERS I LP**

•, 2022

Case ID: 221102195

**TRANSACTIONS IN SECURITIES OF the Company
DURING THE PAST TWO YEARS**

| Nature of Transaction | Amount of Securities Purchased/(Sold) | Date of Purchase/Sale |
|---|---|---|
| **DRIVER OPPORTUNITY PARTNERS I LP** | | |
| Purchase of Common Stock | 20,000 | 10/19/2021 |
| Purchase of Common Stock | 21,623 | 10/20/2021 |
| Purchase of Common Stock | 5,650 | 10/21/2021 |
| Purchase of Common Stock | 2,982 | 10/22/2021 |
| Purchase of Common Stock | 100 | 10/25/2021 |
| Purchase of Common Stock | 150,000 | 10/27/2021 |
| Purchase of Common Stock | 60,000 | 10/28/2021 |
| Purchase of Common Stock | 20,000 | 11/09/2021 |
| Purchase of Common Stock | 40,000 | 11/15/2021 |
| Purchase of Common Stock | 20,000 | 11/22/2021 |
| **CERTAIN MANAGED ACCOUNTS** | | |
| Purchase of Common Stock | 20,000 | 10/27/2021 |
| Purchase of Common Stock | 21,500 | 10/28/2021 |
| Purchase of Common Stock | 34,354 | 10/29/2021 |
| Purchase of Common Stock | 906 | 11/04/2021 |
| Purchase of Common Stock | 5,052 | 11/18/2021 |
| Purchase of Common Stock | 69,500 | 11/26/2021 |
| Purchase of Common Stock | 440 | 11/19/2021 |
| Purchase of Common Stock | 51,200 | 11/30/2021 |
| Purchase of Common Stock | 53,004 | 12/1/2021 |
| Purchase of Common Stock | 43,778 | 12/2/2021 |
| Purchase of Common Stock | 10,841 | 12/3/2021 |
| Purchase of Common Stock | 24,009 | 12/17/2021 |
| Purchase of Common Stock | 341 | 12/20/2021 |
| **PETER B. BARTHOLOW** | | |
| Purchase of Common Stock | 6,000 | 11/29/2021 |
| **PAMELA D. BUNDY** | | |
| Purchase of Common Stock | 10,000 | 12/8/2021 |
| **RICHARD H. SINKFIELD III** | | |
| Purchase of Common Stock | 2,932 | 11/29/2021 |

Case ID: 221102195

*The following table is reprinted from the [preliminary proxy statement] filed by Republic First Bancorp, Inc. with the Securities and Exchange Commission on •, 2022.*

[to come]

**IMPORTANT**

   Your vote is important, no matter how many shares of Common Stock you own.  Driver urges you to sign, date, and return the enclosed WHITE proxy card today to vote FOR the election of the Nominees.

**Registered Owners**

If your shares of Common Stock are registered in your own name, please sign and date the enclosed **WHITE** proxy card and return it to Driver, c/o Saratoga Proxy Consulting LLC ("Saratoga"), in the enclosed postage-paid envelope today. Stockholders also have the following two options for authorizing a proxy to vote their shares:

- Via the Internet at • at any time prior to 11:59 p.m. Eastern Time on •, 2022 and follow the instructions provided on the **WHITE** proxy card; or

- By telephone, by calling • at any time prior to 11:59 p.m. Eastern Time on •, 2022, and follow the instructions provided on the **WHITE** proxy card.

**Beneficial Owners**

If your shares of Common Stock are held in a brokerage account or bank, you are considered the beneficial owner of the shares of Common Stock, and these proxy materials, together with a **WHITE** voting instruction form, are being forwarded to you by your broker or bank. As a beneficial owner, if you wish to vote, you must instruct your broker, trustee or other representative how to vote. Your broker cannot vote your shares of Common Stock on your behalf without your instructions.

Beneficial owners may vote either by the Internet or toll-free telephone. Please refer to the enclosed instructions on how to vote by Internet or telephone. You may also vote by signing, dating and returning the enclosed **WHITE** voting instruction form.

Case ID: 221102195

Since only your latest dated proxy card will count, we urge you not to return any proxy card you receive from the Company. Even if you return the management proxy card marked "withhold" as a protest against the incumbent directors, it will revoke any proxy card you may have previously sent to us. Remember, you can vote for our three (3) Nominees only on our **WHITE** proxy card. So please make certain that the latest dated proxy card you return is the **WHITE** proxy card.

If you have any questions or require any additional information concerning this Proxy Statement, please contact Saratoga at the address set forth below.

*If you have any questions, require assistance in voting your WHITE proxy card,*
*or need additional copies of Driver's proxy materials,*
*please contact Saratoga at the phone numbers listed below.*




*Saratoga Proxy Consulting LLC*
520 8th Avenue, 14th Floor
New York, NY 10018
(212) 257-1311

*Stockholders call toll free at (888) 368-0379*
*Email: info@saratogaproxy.com*

Case ID: 221102195

PRELIMINARY PROXY STATEMENT
SUBJECT TO COMPLETION
DATED JANUARY 14, 2022

**REPUBLIC FIRST BANCORP, INC.**

**2022 ANNUAL MEETING OF SHAREHOLDERS**

**THIS PROXY IS SOLICITED ON BEHALF OF DRIVER MANAGEMENT COMPANY
LLC AND THE OTHER PARTICIPANTS NAMED IN THIS PROXY SOLICITATION
(COLLECTIVELY, "DRIVER")**

**THE BOARD OF DIRECTORS OF REPUBLIC FIRST BANCORP, INC.
IS NOT SOLICITING THIS PROXY**

**P R O X Y**

The undersigned appoints J. Abbott R. Cooper and John Ferguson, and each of them, attorneys and agents with full power of substitution to vote all shares of common stock of Republic First Bancorp, Inc. (the "Company") that the undersigned would be entitled to vote if personally present at the 2022 Annual Meeting of Shareholders of the Company scheduled to be held on •, 2022 at • •.m., local time, at •(including any adjournments or postponements thereof and any meeting called in lieu thereof, the "Annual Meeting").

The undersigned hereby revokes any other proxy or proxies heretofore given to vote or act with respect to the shares of common stock of the Company held by the undersigned, and hereby ratifies and confirms all action the herein named attorneys and proxies, their substitutes, or any of them may lawfully take by virtue hereof. If properly executed, this Proxy will be voted as directed on the reverse and in the discretion of the herein named attorneys and proxies or their substitutes with respect to any other matters as may properly come before the Annual Meeting that are unknown to Driver a reasonable time before this solicitation.

**IF NO DIRECTION IS INDICATED WITH RESPECT TO THE PROPOSALS ON THE REVERSE, THIS PROXY WILL BE VOTED "FOR" PROPOSAL 1 AND WILL ABSTAIN FROM VOTING ON PROPOSAL 2 AND PROPOSAL 3.**

This Proxy will be valid until the completion of the Annual Meeting. This Proxy will only be valid in connection with Driver's solicitation of proxies for the Annual Meeting.

**Important Notice Regarding the Availability of Proxy Materials for the Annual Meeting**

**This Proxy Statement and our WHITE proxy card are available at**
•

**IMPORTANT: PLEASE SIGN, DATE AND MAIL THIS PROXY CARD PROMPTLY!**

**CONTINUED AND TO BE SIGNED ON REVERSE SIDE**

22

Case ID: 221102195

☒ **Please mark vote as in this example**

**DRIVER STRONGLY RECOMMENDS THAT STOCKHOLDERS VOTE IN FAVOR
OF THE NOMINEES LISTED BELOW IN PROPOSAL 1. DRIVER EXPRESSES NO
OPINION ON PROPOSALS 2 AND 3.**

1. Driver's proposal to elect Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III as Class III directors of the Company to serve until the 2025 Annual Meeting of Stockholders.

| | FOR ALL NOMINEES | WITHHOLD AUTHORITY TO VOTE FOR ALL NOMINEES | FOR ALL EXCEPT NOMINEE(S) WRITTEN BELOW |
|---|---|---|---|
| | ☐ | ☐ | ☐ |
| Nominees:   Peter B. Bartholow | | | ———————— |
| Pamela D. Bundy | | | ———————— |
| Richard H. Sinkfield III | | | |

Driver does not expect that any of the Nominees will be unable to stand for election, but, in the event that any Nominee is unable to serve or for good cause will not serve, the shares of common stock represented by this proxy card will be voted for substitute nominee(s), to the extent this is not prohibited under the Bylaws and applicable law. In addition, Driver has reserved the right to nominate substitute person(s) if the Company makes or announces any changes to the Bylaws or takes or announces any other action that has, or if consummated would have, the effect of disqualifying any nominee, to the extent this is not prohibited under the Bylaws and applicable law. In any such case, shares of common stock represented by this proxy card will be voted for such substitute nominee(s).

Driver intends to use this proxy to vote "FOR" Mr. Bartholow, Ms. Bundy and Mr. Sinkfield. The names, backgrounds and qualifications of the candidates who have been nominated by the Company, and other information about them, can be found in the Company's proxy statement. There is no assurance that any of the candidates who have been nominated by the Company will serve as directors if Driver's Nominees are elected.

Note: If you do not wish for your shares of common stock to be voted "FOR" a particular nominee, mark the "FOR ALL NOMINEES EXCEPT" box and write the name(s) of the nominee(s) you do not support on the line below. Your shares of common stock will be voted for the remaining nominee(s).

Case ID: 221102195

2. Company's proposal to approve, on an advisory basis, the compensation of the Company's named executive officers.

        ☐ FOR        ☐ AGAINST        ☐ ABSTAIN

3. Company's proposal to ratify the appointment of [BDO USA. LLP as the Company's independent registered public accounting firm for the fiscal year ending December 31, 2022.

        ☐ FOR        ☐ AGAINST        ☐ ABSTAIN

DATED: _____

_____
(Signature)

_____
(Signature, if held jointly)

_____
(Title)

WHEN SHARES ARE HELD JOINTLY, JOINT OWNERS SHOULD EACH SIGN. EXECUTORS, ADMINISTRATORS, TRUSTEES, ETC., SHOULD INDICATE THE CAPACITY IN WHICH SIGNING. PLEASE SIGN EXACTLY AS NAME APPEARS ON THIS PROXY.

Case ID: 221102195