Exhibit "A"
(part 3)



*Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN*

# EXHIBIT 5

Case ID: 221102195

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Schedule 13D
### (Rule 13d-101)

**Information to be Included in Statements Filed Pursuant to § 240.13d-1(a) and Amendments Thereto Filed Pursuant to § 240.13d-2(a)**

**Under the Securities Exchange Act of 1934**
**(Amendment No.)\***

# Republic First Bancorp, Inc.
#### (Name of Issuer)

**Common Stock, par value $0.01 per share**
(Title of Class of Securities)

**760416107**
(CUSIP Number)

**George E. Norcross, III**
**350 Royal Palm Way, Suite 500**
**Palm Beach, Florida 33480**
**(561) 500-4600**

*With a Copy to:*

*H. Rodgin Cohen*
*Mitchell S. Eitel*
*Sullivan & Cromwell LLP*
*125 Broad Street*
*New York, NY 10004*
*212-558-4000*

(Name, address and telephone number of person authorized to receive notices and communications)

**January 20, 2022**
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box ☐.

**Note:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. *See* § 240.13d-7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

Case ID: 221102195

| 1. | Names of Reporting Persons |
|---|---|
| | George E. Norcross, III |

| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) |
|---|---|
| | a. ☒ b. ☐ |

| 3. | SEC Use Only |
|---|---|

| 4. | Source of Funds (See Instructions) |
|---|---|
| | PF |

| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
|---|---|
| | ☐ |

| 6. | Citizenship or Place of Organization |
|---|---|
| | United States of America |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power |
|---|---|---|
| | | 471,342 |
| | 8. | Shared Voting Power |
| | | 0 |
| | 9. | Sole Dispositive Power |
| | | 471,342 |
| | 10. | Shared Dispositive Power |
| | | 0 |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person |
|---|---|
| | 471,342(1) |

| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
|---|---|
| | ☐ |

| 13. | Percent of Class Represented By Amount in Row (11) |
|---|---|
| | 0.8%(2) |

| 14. | Type of Reporting Person (See Instructions) |
|---|---|
| | IN |

(1)   The Reporting Person is reporting on this Schedule 13D as a member of a "group" with the other Reporting Persons. The group beneficially owns 3,910,921 shares of Common Stock owned by all of the Reporting Persons in the aggregate, representing approximately 6.6% of the outstanding shares of Common Stock. See Item 5.

(2)   For purposes of calculating beneficial ownership percentages in this statement on Schedule 13D, the total number of shares of Common Stock outstanding as of November 5, 2021 is 59,454,998, as reported by the Issuer in its Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2021, filed with the SEC on November 8, 2021.

Case ID: 221102195

| 1. | Names of Reporting Persons |
| --- | --- |
|  | Avery Conner Capital Trust |

| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) |
| --- | --- |
|  | a. ☒ b. ☐ |

| 3. | SEC Use Only |
| --- | --- |

| 4. | Source of Funds (See Instructions) |
| --- | --- |
|  | AF, WC |

| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
| --- | --- |
|  | ☐ |

| 6. | Citizenship or Place of Organization |
| --- | --- |
|  | Florida |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power |
| --- | --- | --- |
|  |  | 0 |
|  | 8. | Shared Voting Power |
|  |  | 3,116,185(3) |
|  | 9. | Sole Dispositive Power |
|  |  | 0 |
|  | 10. | Shared Dispositive Power |
|  |  | 3,116,185(3) |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person |
| --- | --- |
|  | 3,116,185(1) |

| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
| --- | --- |
|  | ☐ |

| 13. | Percent of Class Represented By Amount in Row (11) |
| --- | --- |
|  | 5.2%(2) |

| 14. | Type of Reporting Person (See Instructions) |
| --- | --- |
|  | OO |

(3)  3,116,185 shares of Common Stock held by the Avery Conner Capital Trust, of which Philip A. Norcross, Susan D. Hudson, Geoffrey B. Hudson and Rose M. Guida serve as Trustees and may be deemed to have shared beneficial ownership as Trustees.

Case ID: 221102195

| 1. | Names of Reporting Persons | | |
|---|---|---|---|
| | Philip A. Norcross | | |
| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) | | |
| | a. ☒ b. ☐ | | |
| 3. | SEC Use Only | | |
| 4. | Source of Funds (See Instructions) | | |
| | PF, OO See Item 3 | | |
| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) | | |
| | ☐ | | |
| 6. | Citizenship or Place of Organization | | |
| | United States of America | | |
| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power | |
| | | 250,000 | |
| | 8. | Shared Voting Power | |
| | | 3,116,185(3) | |
| | 9. | Sole Dispositive Power | |
| | | 250,000 | |
| | 10. | Shared Dispositive Power | |
| | | 3,116,185(3) | |
| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person | | |
| | 3,366,185(1), (3) | | |
| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) | | |
| | ☐ | | |
| 13. | Percent of Class Represented By Amount in Row (11) | | |
| | 5.7%(2) | | |
| 14. | Type of Reporting Person (See Instructions) | | |
| | IN | | |

Case ID: 221102195

| 1. | Names of Reporting Persons. |
|---|---|
| | Susan D. Hudson, in her capacity as a Trustee |

| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) |
|---|---|
| | a. ☒ b. ☐ |

| 3. | SEC Use Only |
|---|---|

| 4. | Source of Funds (See Instructions) |
|---|---|
| | OO See Item 3 |

| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
|---|---|
| | ☐ |

| 6. | Citizenship or Place of Organization |
|---|---|
| | United States of America |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power |
|---|---|---|
| | | 0 |
| | 8. | Shared Voting Power |
| | | 3,116,185(3) |
| | 9. | Sole Dispositive Power |
| | | 0 |
| | 10. | Shared Dispositive Power |
| | | 3,116,185(3) |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person |
|---|---|
| | 3,116,185(1), (3) |

| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
|---|---|
| | ☐ |

| 13. | Percent of Class Represented By Amount in Row (11) |
|---|---|
| | 5.2%(2) |

| 14. | Type of Reporting Person (See Instructions) |
|---|---|
| | IN |

Case ID: 221102195

| 1. | Names of Reporting Persons |
|---|---|
| | Geoffrey B. Hudson, in his capacity as a Trustee |

| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) |
|---|---|
| | a. ☒ b. ☐ |

| 3. | SEC Use Only |
|---|---|

| 4. | Source of Funds (See Instructions) |
|---|---|
| | OO See Item 3 |

| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
|---|---|
| | ☐ |

| 6. | Citizenship or Place of Organization |
|---|---|
| | United States of America |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power |
|---|---|---|
| | | 0 |
| | 8. | Shared Voting Power |
| | | 3,116,185(3) |
| | 9. | Sole Dispositive Power |
| | | 0 |
| | 10. | Shared Dispositive Power |
| | | 3,116,185(3) |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person |
|---|---|
| | 3,116,185(1), (3) |

| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
|---|---|
| | ☐ |

| 13. | Percent of Class Represented By Amount in Row (11) |
|---|---|
| | 5.2%(2) |

| 14. | Type of Reporting Person (See Instructions) |
|---|---|
| | IN |

| 1. | Names of Reporting Persons |
|----|---|
| | Rose M. Guida, in her capacity as a Trustee |

| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) |
|----|---|
| | a. ☒ b. ☐ |

| 3. | SEC Use Only |
|----|---|

| 4. | Source of Funds (See Instructions) |
|----|---|
| | OO See Item 3 |

| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
|----|---|
| | ☐ |

| 6. | Citizenship or Place of Organization |
|----|---|
| | United States of America |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power |
|---|---|---|
| | | 0 |
| | 8. | Shared Voting Power |
| | | 3,116,185(3) |
| | 9. | Sole Dispositive Power |
| | | 0 |
| | 10. | Shared Dispositive Power |
| | | 3,116,185(3) |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person |
|----|---|
| | 3,116,185(1), (3) |

| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
|----|---|
| | ☐ |

| 13. | Percent of Class Represented By Amount in Row (11) |
|----|---|
| | 5.2%(2) |

| 14. | Type of Reporting Person (See Instructions) |
|----|---|
| | IN |

Case ID: 221102195

| 1. | Names of Reporting Persons Gregory B. Braca |
|---|---|
| 2. | Check the Appropriate Box If a Member of a Group (See Instructions) a. ☒ b. ☐ |
| 3. | SEC Use Only |
| 4. | Source of Funds (See Instructions) PF |
| 5. | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) ☐ |
| 6. | Citizenship or Place of Organization United States of America |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7. | Sole Voting Power 73,394 |
|---|---|---|
| | 8. | Shared Voting Power 0 |
| | 9. | Sole Dispositive Power 73,394 |
| | 10. | Shared Dispositive Power 0 |

| 11. | Aggregate Amount Beneficially Owned by Each Reporting Person 73,394(1) |
|---|---|
| 12. | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) ☐ |
| 13. | Percent of Class Represented By Amount in Row (11) 0.1%(2) |
| 14. | Type of Reporting Person (See Instructions) IN |

Case ID: 221102195

**Item 1.**        **Security and Issuer.**

The class of equity securities to which this statement on Schedule 13D (this "Statement") relates is the common stock, par value $0.01 per share (the "Common Stock"), of Republic First Bancorp, Inc., a one-bank holding company organized and incorporated under the laws of the Commonwealth of Pennsylvania (the "Issuer"). The principal executive office of the Issuer is located at 50 South 16th Street, Philadelphia, Pennsylvania 19102.

**Item 2.**        **Identity and Background.**

(a) This Statement is being filed jointly on behalf of and by each of the following persons (each, a "Reporting Person" and, collectively, the "Reporting Persons"): (i) George E. Norcross, III; (ii) Avery Conner Capital Trust, a trust organized under the laws of the State of Florida (the "Avery Conner Capital Trust"); (iii) Philip A. Norcross; (iv) Susan D. Hudson (in her capacity as trustee of the Avery Conner Capital Trust); (v) Geoffrey B. Hudson (in his capacity as trustee of the Avery Conner Capital Trust); (vi) Rose M. Guida (in her capacity as trustee of the Avery Conner Capital Trust); and (vii) Gregory B. Braca. The filing of this Statement shall not be deemed an admission that any Reporting Person is the beneficial owner of the securities reported herein for purposes of Section 13 of the Securities Act of 1934, as amended, or otherwise.

(b)(i) The business address of George E. Norcross, III is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(ii) The address of the principal business office of the Avery Conner Capital Trust is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(iii) The business address of Philip A. Norcross is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(iv) The business address of Susan D. Hudson is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(v) The business address of Geoffrey B. Hudson is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(vi) The business address of Rose M. Guida is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(vii) The business address of Gregory B. Braca is 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(c)(i) George E. Norcross, III is the Executive Chairman of Conner Strong & Buckelew Companies, LLC, an insurance, risk management and employee benefits brokerage and consulting firm, with a business address at 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(ii) The principal business of the Avery Conner Capital Trust is to provide for the security and wellbeing of grantor George E. Norcross, III's descendants. Philip A. Norcross, Susan D. Hudson, Geoffrey B. Hudson and Rose M. Guida are the trustees of the Avery Conner Capital Trust (each, a "Trustee" and, collectively, the "Trustees"). The Trustees have the power to invest and dispose of trust property.

Case ID: 221102195

(iii) Philip A. Norcross is the Managing Shareholder and Chief Executive Officer of Parker McCay P.A., a law firm, with a business address at 2 Cooper Street, Suite 1901, Camden, New Jersey 08102.

(iv) Susan D. Hudson is the Manager of General American Asset Management, LLC, an investment management company, and a Trustee of the Avery Conner Capital Trust, each with a principal business address at 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(v) Geoffrey B. Hudson is a Trustee of the Avery Conner Capital Trust, with a principal business address at 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(vi) Rose M. Guida is a Trustee of the Avery Conner Capital Trust, with a principal business address at 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(vii) Gregory B. Braca is the President and Chief Executive Officer of General American Capital, LLC, an investment holding company with a principal business address at 350 Royal Palm Way, Suite 500, Palm Beach, Florida 33480.

(d)-(e) During the last five years, none of the Reporting Persons nor any control persons of a Reporting Person has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) or has been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

(f)(i), (iii), (iv), (v), (vi), (vii) Each of George E. Norcross, III, Philip A. Norcross, Susan D. Hudson, Geoffrey B. Hudson, Rose M. Guida and Gregory B. Braca is a citizen of the United States.

**Item 3.**          **Source and Amount of Funds or Other Consideration.**

General American Capital, LLC (the "Initial Acquiror") is a wholly-owned subsidiary of a trust administered and disposed of by the Trustees under the same terms of indenture and for the benefit of the same beneficiaries as those of the Avery Connor Capital Trust. From December 1, 2021 until December 17, 2021, as set forth in Schedule A, the Initial Acquiror acquired 2,950,000 shares of Common Stock (the "Initial Shares") through a broker on the open market for a total of approximately $10,730,765.82. The source of funds for such purchases was funds of the Initial Acquiror.

On January 26, 2022, the Initial Shares were transferred from the Initial Acquiror to the Avery Conner Capital Trust for no additional consideration, following which the Initial Acquiror ceased to hold any shares of Common Stock. On January 27, 2022, as set forth in Schedule A, the Avery Conner Capital Trust acquired 166,185 shares of Common Stock through a broker on the open market for a total of approximately $726,412.40. The source of funds for such purchase was trust funds.

From January 20, 2022 until January 28, 2022, as set forth in Schedule A, George E. Norcross, III, acting through an individual retirement account for his benefit, acquired 471,342 shares of Common Stock through a broker on the open market for a total of approximately $1,936,055.497. The source of funds for such purchases was funds held in such account.

From November 16, 2021 until January 26, 2022, as set forth in Schedule A, Philip A. Norcross acquired 250,000 shares of Common Stock through a broker on the open market for a total of approximately $1,010,097.289. The source of funds for such purchases was personal funds.

Case ID: 221102195

On January 26, 2022, as set forth in Schedule A, Gregory B. Braca acquired 73,394 shares of Common Stock through a broker on the open market for a total of approximately $318,433.851. The source of funds for such purchase was personal funds.

**Item 4.          Purpose of the Transaction.**

The Reporting Persons acquired the shares of Common Stock reported herein and formed a group (the "Group") to explore the possibility of engaging in discussions with the board of directors of the Issuer (the "Board") regarding, among other things, the Group's desire to build a substantial, long-term equity investment in the Issuer. In furtherance thereof, on January 31, 2022, the Group delivered a letter to the Board, the text of which is set forth below:

Dear Directors:

We are the largest non-institutional, non-insider shareholders of Republic First Bancorp, Inc. (the "Company" or "Republic"). Given recent events and market conditions, we are writing to request that you consider adopting the initiatives that we describe below in an effort to unleash the powerful potential of the Republic franchise for the benefit of its shareholders, employees, customers, and communities.

We currently own 6.6% of the outstanding common shares of the Company, and intend to acquire additional shares. We have filed a Schedule 13D with the Securities and Exchange Commission disclosing our current ownership. We have explored our options for making a substantial, long-term equity investment, and we welcome discussions with the Board as we decide how best to build that investment, whether through open market purchases or some other approach. We do not need to obtain financing to acquire shares. We also are prepared to make any required regulatory filings for an increased share ownership position, if and when necessary.

We believe that the underlying value of the Company is substantially greater than that reflected by the Company's current trading price. We would like the opportunity to consult with the Board towards the development of the best approaches for the Board to deliver on its underlying value to shareholders as soon as possible.

We know that you and we are disappointed in the Company's market performance. Unfortunately, however, the facts are indisputable. For some time now, the Company's stock has historically traded at the lowest ratio of price to tangible book value of all banks with $1.0 billion or more in assets, and this reflects both performance to date and the market's negative view of future prospects. We are of the opinion that the Company's depressed stock performance over several years is directly attributable to weak operating results, including return on assets and return on capital of less than half that of its peers and efficiency ratios and cost of funds for its deposits running higher than industry norms. Collectively, these results over the last several years have been so poor as to suggest an immediate reevaluation of strategy.

We also believe that, with the ability to provide input to the Board, we can begin to help the Company unlock value immediately through the Company making specific changes in its leadership. The severe lag in total return to shareholders over a prolonged period demonstrates the need for this. We believe that Mr. Gregory Braca, the former President and CEO of TD Bank and current President and CEO of General American Capital, LLC, would be an outstanding candidate to be hired as CEO of the Company, of course, subject to the Company and Mr. Braca agreeing on terms for his appointment. Mr. Braca is widely recognized for his leadership at one of the 10 largest U.S. banks and has been a leader in the industry for over 35 years. We would also suggest that shareholders would well receive any action the Board might undertake to add additional independent directors and create a more diverse and independent Board. This letter is not a nomination or notice of such a nomination under the Company's by-laws.

Case ID: 221102195

Given the sub-par performance of the organization over the last several years as described above, we wish to be given the opportunity to work with the Board as it reexamines elements of the Company's business strategy. Some of the initiatives we believe the Board should consider include the following: (1) expanding the Company's commercial business throughout the metropolitan New York and Philadelphia areas, (2) increasing the Company's investment in its digital and financial technology capabilities, (3) identifying steps that could be taken to rein in expenses (currently running well above industry norms) to drive positive operating leverage, while not adversely affecting service to the Company's customers and communities or its culture as an organization, (4) ensuring that future deposit growth is accretive to earnings, and (5) making sure the Company has in place the talent and resources needed to drive the Board's strategy.

Finally, as another critical element of any plan to enable the Company to reach its full potential, we think the Company should develop a new community investment plan that would make it a leader in major-minority and low and moderate-income communities. Again, in partnership with the Board, we believe we could help the Company to develop and implement a reimagined strategy, in light of the vast experience of Mr. Braca as a community banker and Mr. George Norcross as a community leader and philanthropist.

It is our strongly held view that a cooperative dialogue between the Board and us would maximize value for the Company's shareholders. To that end, we are prepared to meet with the Board, or representatives of the Board, at your earliest opportunity or, if you have any questions of a legal nature, we would also be pleased to put you in touch with our counsel, H. Rodgin Cohen or Mitch Eitel, at Sullivan & Cromwell LLP.

We believe that such a collaborative arrangement could help the Company avoid the disruption and expense of, and value destructive possibilities inherent in, situations such as the recently initiated proxy contest, which includes the current CEO and Chairman.

Sincerely,

George E. Norcross, III

Gregory Braca

Philip A. Norcross

The Reporting Persons cannot predict the Issuer's response to the letter, and there can be no assurances as to what further actions will be taken by the Reporting Persons or whether and when the Reporting Persons may develop any specific proposals to make to the Issuer and how such actions will be taken or proposals made. Each Reporting Person reserves the right to take actions other than as described in the letter.

**Item 5.          Interest in Securities of the Issuer.**

(a) The Reporting Persons may be deemed to beneficially own 3,910,921 shares of Common Stock or approximately 6.6% of the outstanding shares of Common Stock, which percentage was calculated based upon the 59,454,998 shares of Common Stock outstanding as of November 5, 2021 as reported in the Issuer's Form 10-Q for the quarter ended September 30, 2021. Specifically, each Reporting Person beneficially owns such number of shares of Common Stock and such percentage of the outstanding Common Stock as reflected on Items 11 and 13 of the applicable cover page to this Statement.

Case ID: 221102195

(b) Each Reporting Person has the sole or shared power to vote or direct the vote and sole or shared power to dispose or to direct the disposition the number of shares of Common Stock reflected on Items 7-10 of the applicable cover page to this Statement.

(c) Except as set forth on Schedule A attached hereto, none of the Reporting Persons has engaged in transactions in shares of Common Stock (or securities convertible into, exercisable for or exchangeable for Common Stock) during the past 60 days.

(d) Except as otherwise reported herein, no person other than a Reporting Person is known to have the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, the shares of Common Stock.

(e) Not applicable.

**Item 6.        Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer.**

The Reporting Persons have entered into a joint filing agreement, dated as of January 31, 2022, a copy of which is attached hereto as Exhibit 7(a).

Other than as listed above, there are no contracts, arrangements, understandings or relationships (legal or otherwise) between the persons named in Item 2 and any other person with respect to any securities of the Issuer, including, but not limited to, transfer or voting of any of the shares of Common Stock, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or loss, or the giving or withholding of proxies, including any securities pledged or otherwise subject to a contingency the occurrence of which would give another person voting power or investment power over such securities other than standard default and similar provisions contained in loan agreements.

**Item 7.        Material to be Filed as Exhibits.**

| Exhibit Number | Description |
| --- | --- |
| **7(a)** | Joint Filing Agreement, dated January 31, 2022, by and among George E. Norcross, III, the Avery Conner Capital Trust, Philip A. Norcross, Susan D. Hudson, Geoffrey B. Hudson, Rose M. Guida and Gregory B. Braca. |

Case ID: 221102195

**SIGNATURES**

After reasonable inquiry and to the best of my knowledge and belief, the undersigned certifies that the information set forth in this statement is true, complete and correct.

Date: January 31, 2022

**George E. Norcross, III**

By:     /s/ George E. Norcross, III

**Avery Conner Capital Trust**

By:     /s/ Philip A. Norcross
Name:    Philip A. Norcross
Title:     Trustee

**Philip A. Norcross**

By:     /s/ Philip A. Norcross

**Susan D. Hudson**

By:     /s/ Susan D. Hudson

**Geoffrey B. Hudson**

By:     /s/ Geoffrey B. Hudson

**Rose M. Guida**

By:     /s/ Rose M. Guida

**Gregory B. Braca**

By:     /s/ Gregory B. Braca

Case ID: 221102195

**SCHEDULE A**

**Transactions in the Common Stock of the Issuer During the Last 60 Days**

The following table sets forth all the transactions in the Common Stock of the Issuer effected during the past sixty days by the Reporting Persons. Except as otherwise noted, all such transactions were effected in the open market through brokers.

**George E. Norcross, III**

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 1/20/2022(1) | 56,160 | 3.780 |
| 1/21/2022(1) | 127,022 | 3.818 |
| 1/24/2022(1) | 25,427 | 3.997 |
| 1/25/2022(1) | 79,286 | 4.159 |
| 1/28/2022(1) | 150,000 | 4.400 |
| 1/28/2022(1) | 33,447 | 4.409 |

**Philip A. Norcross**

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 11/16/2021 | 10,000 | 3.489 |
| 12/1/2021(2) | 28,128 | 3.351 |
| 12/2/2021(2) | 100,000 | 3.409 |
| 12/3/2021(2) | 25,735 | 3.415 |
| 12/6/2021(2) | 9,439 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.670 |
| 12/7/2021(2) | 15,555 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.649 |
| 12/8/2021(2) | 22,307 | 3.444 |
| 12/9/2021(2) | 4,032 | 3.459 |
| 12/10/2021(2) | 924 | 3.510 |
| 12/13/2021(2) | 12,534 | 3.525 |
| 12/14/2021(2) | 680,000 | 3.650 |
| 12/16/2021(2) | 37,045 | 3.560 |
| 12/17/2021(2) | 14,301 | 3.532 |
| 1/24/2022 | 207,353 | 4.020 |
| 1/26/2022(2) | (2,950,000) | (3) |
| 1/26/2022(4) | 2,950,000 | (3) |
| 1/26/2022 | 32,647 | 4.339 |
| 1/27/2022(4) | 150,000 | 4.378 |
| 1/27/2022(4) | 16,185 | 4.306 |

**Avery Conner Capital Trust**

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 1/26/2022 | 2,950,000 | (3) |
| 1/27/2022 | 150,000 | 4.378 |
| 1/27/2022 | 16,185 | 4.306 |

Case ID: 221102195

### Susan D. Hudson

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 12/1/2021(2) | 28,128 | 3.351 |
| 12/2/2021(2) | 100,000 | 3.409 |
| 12/3/2021(2) | 25,735 | 3.415 |
| 12/6/2021(2) | 9,439 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.670 |
| 12/7/2021(2) | 15,555 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.649 |
| 12/8/2021 | (18,000) | 3.479 |
| 12/8/2021(2) | 22,307 | 3.444 |
| 12/9/2021(2) | 4,032 | 3.459 |
| 12/10/2021(2) | 924 | 3.510 |
| 12/13/2021(2) | 12,534 | 3.525 |
| 12/14/2021(2) | 680,000 | 3.650 |
| 12/16/2021(2) | 37,045 | 3.560 |
| 12/17/2021(2) | 14,301 | 3.532 |
| 1/26/2022(2) | (2,950,000) | (3) |
| 1/26/2022(4) | 2,950,000 | (3) |
| 1/27/2022(4) | 150,000 | 4.378 |
| 1/27/2022(4) | 16,185 | 4.306 |

### Geoffrey B. Hudson

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 12/1/2021(2) | 28,128 | 3.351 |
| 12/2/2021(2) | 100,000 | 3.409 |
| 12/3/2021(2) | 25,735 | 3.415 |
| 12/6/2021(2) | 9,439 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.670 |
| 12/7/2021(2) | 15,555 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.649 |
| 12/8/2021(2) | 22,307 | 3.444 |
| 12/9/2021(2) | 4,032 | 3.459 |
| 12/10/2021(2) | 924 | 3.510 |
| 12/13/2021(2) | 12,534 | 3.525 |
| 12/14/2021(2) | 680,000 | 3.650 |
| 12/16/2021(2) | 37,045 | 3.560 |
| 12/17/2021(2) | 14,301 | 3.532 |
| 1/26/2022(2) | (2,950,000) | (3) |
| 1/26/2022(4) | 2,950,000 | (3) |
| 1/27/2022(4) | 150,000 | 4.378 |
| 1/27/2022(4) | 16,185 | 4.306 |

### Rose M. Guida

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 12/1/2021(2) | 28,128 | 3.351 |
| 12/2/2021(2) | 100,000 | 3.409 |
| 12/3/2021(2) | 25,735 | 3.415 |
| 12/6/2021(2) | 9,439 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.670 |

Case ID: 221102195

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 12/7/2021(2) | 15,555 | 3.460 |
| 12/7/2021(2) | 1,000,000 | 3.649 |
| 12/8/2021(2) | 22,307 | 3.444 |
| 12/9/2021(2) | 4,032 | 3.459 |
| 12/10/2021(2) | 924 | 3.510 |
| 12/13/2021(2) | 12,534 | 3.525 |
| 12/14/2021(2) | 680,000 | 3.650 |
| 12/16/2021(2) | 37,045 | 3.560 |
| 12/17/2021(2) | 14,301 | 3.532 |
| 1/26/2022(2) | (2,950,000) | (3) |
| 1/26/2022(4) | 2,950,000 | (3) |
| 1/27/2022(4) | 150,000 | 4.378 |
| 1/27/2022(4) | 16,185 | 4.306 |

**Gregory B. Braca**

| Trade Date | Shares Acquired (Disposed) | Price Per Share ($) |
|---|---|---|
| 1/26/2022 | 73,394 | 4.339 |

(1)   Indicates transaction effected through individual retirement account for the benefit of George E. Norcross, III.

(2)   Indicates transaction of the Initial Acquiror, a wholly-owned subsidiary of a trust with respect to which the Trustees have the power to invest and dispose of trust property.

(3)   Indicates that the Initial Shares were transferred to the Avery Conner Capital Trust for no additional consideration.

(4)   Indicates transaction of the Avery Conner Capital Trust (with respect to which the Trustees have the power to invest and dispose of trust property).

Case ID: 221102195

**Exhibit 7(a)**

<u>JOINT FILING AGREEMENT</u>

The undersigned acknowledge and agree that the foregoing statement on Schedule 13D is filed on behalf of each of the undersigned and that all subsequent amendments to this statement on Schedule 13D shall be filed on behalf of each of the undersigned without the necessity of filing additional joint filing agreements. The undersigned acknowledge that each shall be responsible for the timely filing of such amendments, and for the completeness and accuracy of the information concerning him, her or it contained therein, but shall not be responsible for the completeness and accuracy of the information concerning the others, except to the extent that he, she or it knows or has reason to believe that such information is inaccurate.

Date: January 31, 2022

**George E. Norcross, III**

By: /s/ George E. Norcross, III

**Avery Conner Capital Trust**

By: /s/ Philip A. Norcross
Name: Philip A. Norcross
Title: Trustee

**Philip A. Norcross**

By: /s/ Philip A. Norcross

**Susan D. Hudson**

By: /s/ Susan D. Hudson

**Geoffrey B. Hudson**

By: /s/ Geoffrey B. Hudson

**Rose M. Guida**

By: /s/ Rose M. Guida

**Gregory B. Braca**

By: /s/ Gregory B. Braca



Filed and Attested by the
Office of Judicial Records
22 NOV 2022 02:39 pm
E. HAURIN

# EXHIBIT 6

Case ID: 221102195

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## Schedule 13D/A
(Rule 13d-101)

**Information to be Included in Statements Filed Pursuant
to § 240.13d-1(a) and Amendments Thereto Filed
Pursuant to § 240.13d-2(a)**

**Under the Securities Exchange Act of 1934
(Amendment No. 3)\***

# Republic First Bancorp, Inc.
(Name of Issuer)

**Common Stock, par value $0.01 per share**
(Title of Class of Securities)

**760416107**
(CUSIP Number)

**George E. Norcross, III**
**350 Royal Palm Way, Suite 500**
**Palm Beach, Florida 33480**
**(561) 500-4600**

*With a Copy to:*

*H. Rodgin Cohen*
*Mitchell S. Eitel*
*Sullivan & Cromwell LLP*
*125 Broad Street*
*New York, NY 10004*
*212-558-4000*

(Name, address and telephone number of person authorized to receive notices and communications)

**February 9, 2022**
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box ☐.

**Note:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. *See* § 240.13d-7 for other parties to whom copies are to be sent.

\*     The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

Case ID: 221102195

| 1 | Names of Reporting Persons<br>George E. Norcross, III | |
|---|---|---|
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions)<br>(a) ☒ (b) ☐ | |
| 3 | SEC Use Only | |
| 4 | Source of Funds (See Instructions)<br>PF | |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)<br>☐ | |
| 6 | Citizenship or Place of Organization<br>United States of America | |
| Number of Shares Beneficially Owned By Each Reporting Person With | 7 | Sole Voting Power<br>674,572 |
| | 8 | Shared Voting Power<br>0 |
| | 9 | Sole Dispositive Power<br>674,572 |
| | 10 | Shared Dispositive Power<br>0 |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br>674,572(1) | |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions)<br>☐ | |
| 13 | Percent of Class Represented By Amount in Row (11)<br>1.1%(2) | |
| 14 | Type of Reporting Person (See Instructions)<br>IN | |

(1)     The Reporting Person is reporting on this Schedule 13D as a member of a "group" with the other Reporting Persons. The group beneficially owns 5,706,583 shares of Common Stock owned by all of the Reporting Persons in the aggregate, representing approximately 9.6% of the outstanding shares of Common Stock. See Item 5.

(2)     For purposes of calculating beneficial ownership percentages in this statement on Schedule 13D, the total number of shares of Common Stock outstanding as of November 5, 2021 is 59,454,998, as reported by the Issuer in its Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2021, filed with the SEC on November 8, 2021.

Case ID: 221102195

| 1 | Names of Reporting Persons |
|---|---|
| | Avery Conner Capital Trust |
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions) |
| | (a) ☒ (b) ☐ |
| 3 | SEC Use Only |
| 4 | Source of Funds (See Instructions) |
| | AF, WC |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
| | ☐ |
| 6 | Citizenship or Place of Organization |
| | Florida |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7 | Sole Voting Power |
|---|---|---|
| | | 0 |
| | 8 | Shared Voting Power |
| | | 4,219,627(3) |
| | 9 | Sole Dispositive Power |
| | | 0 |
| | 10 | Shared Dispositive Power |
| | | 4,219,627(3) |

| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person |
|---|---|
| | 4,219,627(1) |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
| | ☐ |
| 13 | Percent of Class Represented By Amount in Row (11) |
| | 7.1%(2) |
| 14 | Type of Reporting Person (See Instructions) |
| | OO |

(3)    4,219,627 shares of Common Stock held by the Avery Conner Capital Trust, of which Philip A. Norcross, Susan D. Hudson, Geoffrey B. Hudson and Rose M. Guida serve as Trustees and may be deemed to have shared beneficial ownership as Trustees.

Case ID: 221102195

| | | |
|---|---|---|
| 1 | Names of Reporting Persons<br>Philip A. Norcross | |
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions)<br>(a) ☒ (b) ☐ | |
| 3 | SEC Use Only | |
| 4 | Source of Funds (See Instructions)<br>PF, OO See Item 3 | |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)<br>☐ | |
| 6 | Citizenship or Place of Organization<br>United States of America | |
| Number of<br>Shares<br>Beneficially<br>Owned By<br>Each<br>Reporting<br>Person<br>With | 7 | Sole Voting Power<br>400,000 |
| | 8 | Shared Voting Power<br>4,219,627(3) |
| | 9 | Sole Dispositive Power<br>400,000 |
| | 10 | Shared Dispositive Power<br>4,219,627(3) |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br>4,619,627(1), (3) | |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions)<br>☐ | |
| 13 | Percent of Class Represented By Amount in Row (11)<br>7.8%(2) | |
| 14 | Type of Reporting Person (See Instructions)<br>IN | |

Case ID: 221102195

| 1 | Names of Reporting Persons<br>Susan D. Hudson, in her capacity as a Trustee | |
|---|---|---|
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions)<br>(a) ☒ (b) ☐ | |
| 3 | SEC Use Only | |
| 4 | Source of Funds (See Instructions)<br>OO See Item 3 | |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)<br>☐ | |
| 6 | Citizenship or Place of Organization<br>United States of America | |
| Number of<br>Shares<br>Beneficially<br>Owned By<br>Each<br>Reporting<br>Person<br>With | 7 | Sole Voting Power<br>0 |
| | 8 | Shared Voting Power<br>4,219,627(3) |
| | 9 | Sole Dispositive Power<br>0 |
| | 10 | Shared Dispositive Power<br>4,219,627(3) |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br>4,219,627(1), (3) | |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions)<br>☐ | |
| 13 | Percent of Class Represented By Amount in Row (11)<br>7.1%(2) | |
| 14 | Type of Reporting Person (See Instructions)<br>IN | |

Case ID: 221102195

| 1 | Names of Reporting Persons<br>Geoffrey B. Hudson, in his capacity as a Trustee | |
|---|---|---|
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions)<br>(a) ☒ (b) ☐ | |
| 3 | SEC Use Only | |
| 4 | Source of Funds (See Instructions)<br>OO See Item 3 | |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)<br>☐ | |
| 6 | Citizenship or Place of Organization<br>United States of America | |
| Number of<br>Shares<br>Beneficially<br>Owned By<br>Each<br>Reporting<br>Person<br>With | 7 | Sole Voting Power<br>0 |
| | 8 | Shared Voting Power<br>4,219,627(3) |
| | 9 | Sole Dispositive Power<br>0 |
| | 10 | Shared Dispositive Power<br>4,219,627(3) |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person<br>4,219,627(1), (3) | |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions)<br>☐ | |
| 13 | Percent of Class Represented By Amount in Row (11)<br>7.1%(2) | |
| 14 | Type of Reporting Person (See Instructions)<br>IN | |

Case ID: 221102195

| 1 | Names of Reporting Persons | | |
|---|---|---|---|
| | Rose M. Guida, in her capacity as a Trustee | | |
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions) | | |
| | (a) ☒ (b) ☐ | | |
| 3 | SEC Use Only | | |
| 4 | Source of Funds (See Instructions) | | |
| | OO See Item 3 | | |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) | | |
| | ☐ | | |
| 6 | Citizenship or Place of Organization | | |
| | United States of America | | |
| Number of Shares Beneficially Owned By Each Reporting Person With | 7 | Sole Voting Power | |
| | | 0 | |
| | 8 | Shared Voting Power | |
| | | 4,219,627(3) | |
| | 9 | Sole Dispositive Power | |
| | | 0 | |
| | 10 | Shared Dispositive Power | |
| | | 4,219,627(3) | |
| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person | | |
| | 4,219,627(1), (3) | | |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) | | |
| | ☐ | | |
| 13 | Percent of Class Represented By Amount in Row (11) | | |
| | 7.1%(2) | | |
| 14 | Type of Reporting Person (See Instructions) | | |
| | IN | | |

Case ID: 221102195

| 1 | Names of Reporting Persons |
|---|---|
| | Gregory B. Braca |
| 2 | Check the Appropriate Box If a Member of a Group (See Instructions) |
| | (a) ☒ (b) ☐ |
| 3 | SEC Use Only |
| 4 | Source of Funds (See Instructions) |
| | PF |
| 5 | Check Box If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) |
| | ☐ |
| 6 | Citizenship or Place of Organization |
| | United States of America |

| Number of Shares Beneficially Owned By Each Reporting Person With | 7 | Sole Voting Power |
|---|---|---|
| | | 412,384 |
| | 8 | Shared Voting Power |
| | | 0 |
| | 9 | Sole Dispositive Power |
| | | 412,384 |
| | 10 | Shared Dispositive Power |
| | | 0 |

| 11 | Aggregate Amount Beneficially Owned by Each Reporting Person |
|---|---|
| | 412,384(1) |
| 12 | Check Box If the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) |
| | ☐ |
| 13 | Percent of Class Represented By Amount in Row (11) |
| | 0.7%(2) |
| 14 | Type of Reporting Person (See Instructions) |
| | IN |

Case ID: 221102195

This Amendment No. 3 ("Amendment No. 3") amends the statement on Schedule 13D filed with the Securities and Exchange Commission on January 31, 2022, as amended prior to the date of this Amendment No. 3 (the "Original Schedule 13D") as specifically set forth herein (as so amended, the "Schedule 13D"). Except as provided herein, each Item of the Original Schedule 13D remains unchanged.

**Item 3.**         **Source and Amount of Funds or Other Consideration.**

Item 3 of the Original Schedule 13D is hereby amended to add the following:

On February 8, 2022, as set forth in Schedule A, the Avery Conner Capital Trust acquired 270,854 shares of Common Stock through a broker on the open market for a total of approximately $1,323,102.14. The source of funds for such purchases was trust funds.

On February 8, 2022, as set forth in Schedule A, Philip A. Norcross acquired 77,000 shares of Common Stock through a broker on the open market for a total of approximately $376,764.46. The source of funds for such purchase was personal funds.

On February 8, 2022, as set forth in Schedule A, Gregory B. Braca acquired 150,000 shares of Common Stock through a broker on the open market for a total of approximately $734,327. The source of funds for such purchases was personal funds.

**Item 4.**         **Purpose of the Transaction.**

Item 4 of the Original Schedule 13D is hereby amended to delete the last paragraph thereof and add the following:

On February 9, 2022, the Group determined that it intends to, independently and at its own cost, file appropriate proxy materials and engage in activities that may constitute solicitation under the SEC's proxy rules in opposition to the Issuer's three Class III director nominees, which the Group expects to be the current Class III directors (Vernon W. Hill, II, Barry L. Spevak and Theodore J. Flocco, Jr.), and in support of the candidates (Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III) nominated by Driver Management Company, LLC ("Driver") for election as Class III directors at the Issuer's 2022 annual meeting of shareholders (the "2022 Annual Meeting"). The Group has not communicated with Driver or any of its representatives or any of the other participants in Driver's proxy solicitation, and the Group is not and has no intention of acting in concert with Driver on the proxy solicitation process or otherwise.

GEORGE E. NORCROSS, III, GREGORY B. BRACA, PHILIP A. NORCROSS, AVERY CONNER CAPITAL TRUST AND SUSAN D. HUDSON, GEOFFREY B. HUDSON, ROSE M. GUIDA AND PHILIP A. NORCROSS, EACH IN THEIR CAPACITIES AS CO-TRUSTEES THEREOF, MAY BE DEEMED TO BE PARTICIPANTS IN THE SOLICITATION OF PROXIES WITH RESPECT TO THE 2022 ANNUAL MEETING. A DESCRIPTION OF THE PARTICIPANTS' INTERESTS, BY SECURITY HOLDINGS OR OTHERWISE, IS CONTAINED IN THIS SCHEDULE 13D, AS AMENDED FROM TIME TO TIME. SHAREHOLDERS OF THE ISSUER ARE STRONGLY ADVISED TO READ ANY DEFINITIVE PROXY STATEMENTS AND OTHER PROXY MATERIALS AS THEY BECOME AVAILABLE BECAUSE THEY WILL CONTAIN IMPORTANT INFORMATION. SUCH PROXY MATERIALS WILL BE AVAILABLE AT NO CHARGE ON THE SEC'S WEBSITE AT HTTP://WWW.SEC.GOV.

The Reporting Persons may engage in discussions with shareholders, management and the Board regarding a variety of matters relating to the Group's intended solicitation in support of Driver's nominees and the other matters described in this Schedule 13D, as well as industry analysts, research analysts, rating agencies, investment firms, and other consultants and advisors, but there can be no

Case ID: 221102195

assurances as to what further actions will be taken by the Reporting Persons and whether or when the Reporting Persons may develop any specific proposals to make to the Issuer and how such actions will be taken or proposals made. Each Reporting Person reserves the right to take actions, including those that relate to or could result in any of the matters set forth in clauses (a) through (j) of Item 4 of Schedule 13D, other than as described in this Item 4.

**Item 5.        Interest in Securities of the Issuer.**

Items 5(a) through 5(c) of the Original Schedule 13D are hereby amended and restated as follows:

(a) The Reporting Persons may be deemed to beneficially own 5,706,583 shares of Common Stock or approximately 9.6% of the outstanding shares of Common Stock, which percentage was calculated based upon the 59,454,998 shares of Common Stock outstanding as of November 5, 2021 as reported in the Issuer's Form 10-Q for the quarter ended September 30, 2021. Specifically, each Reporting Person beneficially owns such number of shares of Common Stock and such percentage of the outstanding Common Stock as reflected on Items 11 and 13 of the applicable cover page to this Statement.

(b) Each Reporting Person has the sole or shared power to vote or direct the vote and sole or shared power to dispose or to direct the disposition the number of shares of Common Stock reflected on Items 7-10 of the applicable cover page to this Statement.

(c) Except as set forth on Schedule A attached hereto, none of the Reporting Persons has engaged in transactions in shares of Common Stock (or securities convertible into, exercisable for or exchangeable for Common Stock) since the filing of the Original Schedule 13D.

Case ID: 221102195

After reasonable inquiry and to the best of my knowledge and belief, the undersigned certifies that the information set forth in this statement is true, complete and correct.

Date: February 10, 2022

**George E. Norcross, III**

By:      /s/ George E. Norcross, III

**Avery Conner Capital Trust**

By:      /s/ Philip A. Norcross
Name:  Philip A. Norcross
Title:    Trustee

**Philip A. Norcross**

By:      /s/ Philip A. Norcross

**Susan D. Hudson**

By:      /s/ Susan D. Hudson

**Geoffrey B. Hudson**

By:      /s/ Geoffrey B. Hudson

**Rose M. Guida**

By:      /s/ Rose M. Guida

**Gregory B. Braca**

By:      /s/ Gregory B. Braca

Case ID: 221102195

**Transactions in the Common Stock of the Issuer Since the Filing of the Original Schedule 13D**

The following table sets forth all the transactions in the Common Stock of the Issuer effected since the filing of the Original Schedule 13D by the Reporting Persons. Except as otherwise noted, all such transactions were effected in the open market through brokers.

**Philip A. Norcross**

| Trade Date | Shares Purchased (Sold) | Price Per Share ($) |
|---|---|---|
| 2/8/2022(1) | 120,854 | 4.885 |
| 2/8/2022(1) | 150,000 | 4.885 |
| 2/8/2022 | 77,000 | 4.893 |

**Avery Conner Capital Trust**

| Trade Date | Shares Purchased (Sold) | Price Per Share ($) |
|---|---|---|
| 2/8/2022 | 120,854 | 4.885 |
| 2/8/2022 | 150,000 | 4.885 |

**Susan D. Hudson**

| Trade Date | Shares Purchased (Sold) | Price Per Share ($) |
|---|---|---|
| 2/8/2022(1) | 120,854 | 4.885 |
| 2/8/2022(1) | 150,000 | 4.885 |

**Geoffrey B. Hudson**

| Trade Date | Shares Purchased (Sold) | Price Per Share ($) |
|---|---|---|
| 2/8/2022(1) | 120,854 | 4.885 |
| 2/8/2022(1) | 150,000 | 4.885 |

**Rose M. Guida**

| Trade Date | Shares Purchased (Sold) | Price Per Share ($) |
|---|---|---|
| 2/8/2022(1) | 120,854 | 4.885 |
| 2/8/2022(1) | 150,000 | 4.885 |

**Gregory B. Braca**

| Trade Date | Shares Purchased (Sold) | Price Per Share ($) |
|---|---|---|
| 2/8/2022 | 73,000 | 4.885 |
| 2/8/2022 | 77,000 | 4.905 |

(1)     Indicates transaction of the Avery Conner Capital Trust (with respect to which the Trustees have the power to invest and dispose of trust property).



*Filed and Attested by the*
*Office of Judicial Records*
*22 NOV 2022 02:39 pm*
*E. HAURIN*

# EXHIBIT 7

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

## SCHEDULE 14C

Information Statement Pursuant to Section 14(c) of
the Securities Exchange Act of 1934 (Amendment No. 3)

Check the appropriate box:

☒   Preliminary Information Statement
☐   Confidential for Use of the Commission Only (as permitted by Rule 14c-5(d)(2))
☐   Definitive Information Statement

## REPUBLIC FIRST BANCORP, INC.

(Name of Registrant as Specified In Its Charter)

Payment of Filing Fee (Check all boxes that apply):

☒   No fee required
☐   Fee paid previously with preliminary materials
☐   Fee computed on table in exhibit required by Item 25(b) of Schedule 14A (17 CFR 240.14a-101) per Item 1 of this Schedule and Exchange Act Rules 14c-5(g) and 0-11

Case ID: 221102195



**Republic First Bancorp, Inc.**
**Two Liberty Place, 50 South 16th Street, Suite 2400**
**Philadelphia, Pennsylvania 19102**
_____, 2022
**NOTICE OF SPECIAL MEETING OF SHAREHOLDERS**
**We Are Not Asking You for a Proxy and You are Requested Not To Send Us a Proxy**

Dear Shareholder:

This Information Statement is being furnished in connection with a special meeting (the "Special Meeting") of the shareholders of Republic First Bancorp, Inc. ("we," "us," "our," or the "Company"), to be held at The Union League of Philadelphia, 140 South Broad Street, Philadelphia, PA 19102, at 10:00 AM, local time on July __, 2022, to the holders of record of the outstanding shares of common stock, par value $0.01 per share (the "Common Stock") as of the close of business on June 24, 2022 (the "Record Date"), pursuant to Rule 14c-2 promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act").

As a result of public health and travel guidance related to the ongoing COVID-19 pandemic, you will also be able to attend the Special Meeting through our virtual platform which can be accessed at www.virtualshareholdermeeting.com/FRBK2022. We may announce alternative arrangements for the Special Meeting, which could include switching to a virtual-only format or changing the date or location of the Special Meeting if circumstances require such a change. If we take this step, then we will announce any changes in advance through a press release in addition to other means of communication as required by applicable state law.

Following the death of Theodore J. Flocco, Jr., one of the Company's directors, and litigation among the remaining directors of the Company, on May 26, 2022, Judge Paul S. Diamond, J. of the United States District Court for the Eastern District of Pennsylvania (the "Court") appointed Alfred W. Putnam, Jr. as Custodian for the Company (the "Custodian") and has directed that he (1) call and oversee a Special Shareholders' Meeting at which the Company's shareholders would elect two new directors, including one director to replace the late Theodore Flocco, and (2) take any and all lawful actions necessary to manage the Company in its shareholders' best interests.

The Special Meeting is being called by the Company pursuant to this order of the Court. Subject to the Company's By-laws, shareholders may also consider any other business as may properly come before the Special Meeting or any postponement or adjournment thereof. The order of business at Special Meeting shall be as determined by the chairman of the meeting. The Special Meeting is not the Company's 2022 annual meeting of shareholders or a special meeting in lieu of an annual meeting. The Custodian expects that the Company's 2022 annual meeting of shareholders will be held as soon as practicable following the conclusion of the Investigation (as defined below) and the filing of the Company's Annual Report on Form 10-K for the year ended December 31, 2021. The Custodian is not responsible for calling or overseeing the Company's 2022 annual meeting of shareholders or a special meeting in lieu of the annual meeting of shareholders.

The Custodian and the Company's Board of Directors (the "Board") will make no recommendation and will not take any position with respect to the election of any director. The Company and Custodian will not submit any nominee for election to the Board at the Special Meeting. If a shareholder desires to nominate an individual for director, the shareholder must provide the Custodian with written notice of the intention to nominate by ___, 2022, the seventh (7th) day following the day on which notice of the Special Meeting was first given to shareholders.

The notice is required to contain: (i) the name and address of the shareholder who intends to make the nomination and of the person or persons to be nominated; (ii) a representation that the shareholder is a holder of record of stock entitled to vote at the meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (iv) such other information regarding each nominee proposed by such shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission (the "SEC") had each nominee been nominated or intended to be nominated, by the Board of the Company; and (v) the consent of each nominee to serve as a director of the Company if so elected. The Custodian may refuse to recognize the nomination of any person not made in compliance with the foregoing.

In addition, pursuant to the Pennsylvania Banking Code, the advance approval of the Pennsylvania Department of Banking and Securities is required in order to solicit proxies for the election of directors of the Company. Persons intending to solicit proxies for an individual are encouraged to consult the Pennsylvania Department of Banking and Securities.

The Custodian has to date received notice of the following three nominees:

- Driver Management Company LLC, Driver Opportunity Partners I LP and Mr. J. Abbott R. Cooper, who together beneficially own 385,854 shares of common stock, par value $0.01 per share, of the Company, have nominated Peter B. Bartholow for election to director at the Special Meeting;
- George E. Norcross, III, Philip A. Norcross, Gregory B. Braca and the Avery Conner Capital Trust, who together beneficially own 6,251,806 shares of common stock, par value $0.01 per share, of the Company, have nominated Gregory B. Braca for election to director at the Special Meeting; and
- Vernon W. Hill, II who, together with certain of its affiliates, beneficially owns 6,422,864 shares of common stock, par value $0.01 per share, of the Company, has nominated Brian R. Ford for election to director at the Special Meeting.

The director nominees have consented to serving as director of the Company if elected. The Company has been advised that the nominating shareholders listed above intend to solicit proxies in support of their nominee's election. Please refer to the proxy materials filed with the SEC on behalf of the nominees when they become available. You can access these proxy statements, and any other relevant documents, without cost on EDGAR at www.sec.gov.

The Custodian has concluded, on a preliminary basis, that the nominees have been nominated in accordance with the provisions of the Company's By-laws. If the Custodian receives additional nominations that he concludes satisfy the requirements set forth in the By-laws, the Custodian will cause the Company to report this by filing a current report on Form 8-K.

Case ID: 221102195

Persons nominating individuals for election may solicit their own proxies separately. We are not asking you for a proxy and you are requested not to send us a proxy. Nevertheless, shareholders may vote: (1) by preparing, executing and transmitting to us a proxy appointment conforming to the applicable provisions of Pennsylvania law and our By-laws; or (2) by attending the Special Meeting in person and voting. Please note that if you hold your shares through a broker, bank or other nominee, and you wish to vote at the Special Meeting (whether in person or by appointment of a proxy), you must obtain a legal proxy issued in your name from the record holder.

Republic First Bancorp, Inc. is the holding company for Republic First Bank, which does business under the name Republic Bank and may be referred to as the "Bank" throughout this document.

This Information Statement is being furnished to you solely for the purpose of informing you of the matters described herein pursuant to Section 14(c) of the Exchange Act and the regulations promulgated thereunder, including Regulation 14C, and applicable provisions of the Pennsylvania Business Corporation Law of 1988, as amended (the "Pa BCL") and the Company's governing documents.

In the event that there are not sufficient shares present for a quorum or sufficient votes to approve or ratify the proposals at the time of the Special Meeting, the Special Meeting may be adjourned in order to permit further solicitation of proxies by the Company.

The Special Meeting may be adjourned or postponed due to unanticipated circumstances or reasons outside of the control of the Company or the Custodian. At any adjourned or postponed meeting, action with respect to matters specified in this Notice of Special Meeting of Shareholders may be taken without further notice to stockholders, unless required by law or the Company's By-laws.

By order of the Custodian

/s/ _____

Alfred W. Putnam, Jr.
Custodian

Case ID: 221102195

# TABLE OF CONTENTS

Information About the Special Meeting | 5
Proposal 1 - Election of Director to Fill the Vacancy | 9
    Director Nominees | 11
    Current Directors | 12
Board of Directors and Committees | 15
    Director Independence and Leadership | 15
    Meetings of the Board and Attendance | 15
    Board Diversity | 15
    Board Committees | 16
Corporate Governance | 19
    Hedging and Pledging Policies | 19
    Risk Management and Oversight | 19
    Communication with Directors | 21
Security Ownership of Certain Beneficial Owners and Management | 22
Executive Officers and Compensation | 24
    Executive Officers | 24
    Executive Compensation | 25
    Potential Payments Upon Termination or Change in Control | 32
    Chief Executive Officer Pay Ratio Disclosure | 34
    Director Compensation | 36
    Services and Employment Agreements with Chairman and Chief Executive Officer | 37
Certain Relationships and Related Transactions | 38
    Transactions with Related Persons | 38
    Review, Approval or Ratification of Transactions with Related Persons | 39
Environmental, social, diversity, equity and inclusion highlights | 39
    Environmental Commitments | 39
    Social Commitments | 39
    Diversity, Equity and Inclusion in the Workplace | 42
Delinquent Section 16(a) Reports | 44
Shareholder Proposals and Nominations for the 2022 Annual Meeting | 44
Other Matters | 44
Householding | 45

**Website References**

Throughout this information statement (the "Information Statement"), we identify certain materials that are available in full on our website. The information contained on, or available through the Company's internet website is not and shall not be deemed to be, incorporated by reference in this information statement.

**Forward-looking Statements**

This information statement contains forward-looking statements within the meaning of the federal securities laws. Forward-looking statements may be identified by the use of words such as "believe," "expect," "plans," "intends," "may," "strategy," "target," "goals," "anticipate". These statements are subject to certain risks, uncertainties, and other factors, which could cause actual results to differ materially from those anticipated. Such risks include those contained in the Company's Annual Report on Form 10-K for the year ended December 31, 2020 and other documents the Company files with the SEC. These risks are not comprehensive, and given these and other possible risks and uncertainties, investors should not place undue reliance on forward-looking statements as a prediction of actual results. Any forward-looking statements made by the Company speak only as of the date on which they are made. The Company is under no obligation to, and expressly disclaims any obligation to, update or alter its forward-looking statements, whether as a result of new information, subsequent events or otherwise.

Case ID: 221102195

INFORMATION STATEMENT
OF
REPUBLIC FIRST BANCORP, INC.
**Two Liberty Place, 50 S. 16th Street, Suite 2400**
**Philadelphia, Pennsylvania 19102**
**We Are Not Asking You for a Proxy and You are Requested Not To Send Us a Proxy**
**INFORMATION ABOUT THE SPECIAL MEETING**

You should review the preceding Notice of Special Meeting of Shareholders and this Information Statement. The preceding Notice of Special Meeting of Shareholders and this Information Statement are available online at www.myrepublicbank.com. On or about _____, the preceding Notice of Special Meeting of Shareholders and this Information Statement are being mailed to the holders of our Common Stock as of the Record Date (as defined in the Notice of Special Meeting of Shareholders).

<u>Outstanding Shares and Voting Rights</u>

The Custodian has fixed the close of business on June 24, 2022 as the Record Date for the determination of the holders of our Common Stock entitled to notice of, and to vote at, the Special Meeting.

At the close of business on the Record Date, there were _____ shares of our Common Stock outstanding.

The Common Stock is the only class of capital securities of the Company that may be voted at the Special Meeting. Each share of Common Stock you own as of the Record Date entitles you to one vote on each matter to be presented at the Special Meeting.

<u>What is on the agenda for the Special Meeting? Why did I receive this Information Statement?</u>

The Special Meeting is being called solely to elect two new directors, including one director to fill the vacancy created by the death of Director Theodore J. Flocco, Jr. Subject to the Company's By-laws, shareholders may also consider any other business as may properly come before the Special Meeting or any postponement or adjournment thereof. The order of business at Special Meeting shall be as determined by the chairman of the meeting. The Special Meeting is not the Company's 2022 annual meeting of shareholders or a special meeting in lieu of an annual meeting. The Custodian expects that the Company's 2022 annual meeting of shareholders will be held as soon as practicable following the conclusion of the Investigation (as defined below) and the filing of the Company's Annual Report on Form 10-K for the year ended December 31, 2021. The Custodian is not responsible for calling or overseeing the Company's 2022 annual meeting of shareholders or a special meeting in lieu of the annual meeting of shareholders.

Following the death of Theodore J. Flocco, Jr., one of the Company' directors, and litigation among the remaining directors of the Company, on May 26, 2022, Judge Paul S. Diamond, J. of the United States District Court for the Eastern District of Pennsylvania issued an order appointing Alfred W. Putnam, Jr. as Custodian for the Company to (1) call and oversee a Special Shareholders' Meeting at which the Company's shareholders would elect a new director to replace the late Theodore Flocco, and (2) take any and all lawful actions necessary to manage the Company in its shareholders' best interests, including, should the Custodian so decide, the election of a ninth director. On June 24, 2022, Judge Diamond modified his order to require that the Special Meeting be held before the end of July and that a ninth director be elected at this meeting.

Case ID: 221102195

*Summary of Investigation*

On March 31, 2022, the independent registered public accounting firm (the "Auditors") of the Company, in connection with its audit of the Company's financial statements for the year ended December 31, 2021, advised the chair of the Company's audit committee (the "Audit Committee") and management that the Auditors were requesting that an independent investigation be undertaken concerning certain previously disclosed related party transactions and related matters that are the subject of pending litigation involving the Company.

On April 22, 2022, the Audit Committee appointed Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") to serve as counsel to the Audit Committee and to conduct an independent investigation into the Company's financial controls and disclosures, including (without limitation) with respect to related party transactions and branch expenditures (the "Investigation"). The Audit Committee authorized the appointment of WilmerHale by resolution dated April 22, 2022, which further specifies that WilmerHale, as investigative counsel, will report to the Audit Committee with respect to the scope of the Investigation, the results of the Investigation, and any work to be performed; and that WilmerHale shall report the results of the Investigation to the Board and such other persons as requested by the Audit Committee.

WilmerHale's Investigation is on-going. WilmerHale has advised the Audit Committee that it cannot presently provide an estimated date for completion of the Investigation, but has assured the Audit Committee that it is moving as quickly as possible.

*Appointment of the Custodian*

On May 26, 2022, the United States District Court for the Eastern District of Pennsylvania issued two orders (the "Orders") in connection with a Complaint and related Motion for an Emergency Temporary Restraining Order and Preliminary Injunction filed on May 17, 2022 in the matter of Vernon W. Hill, II, et al. v. Andrew B Cohen, et al. and the Company, as nominal defendant, Civ. No. 22-1924. The Orders appoint Alfred W. Putnam, Jr. of Faegre Drinker Biddle & Reath LLP as Custodian of and for the Company pursuant to the provisions of Section 1767(a)(3) of the Pa BCL, and the Court's inherent equitable powers, and set forth the duties and responsibilities of the Custodian which include: (1) calling and overseeing a Special Shareholders' Meeting to take place on or before July 10, 2022, at which the Company's shareholders shall elect a new director to replace the late Theodore Flocco; and (2) taking any and all lawful actions necessary to manage the Company in its shareholders' best interests, including, should the Custodian so decide, the election of a ninth director. On June 24, 2022, Judge Diamond modified his order to require that the Special Meeting be held before the end of July and that a ninth director be elected at this meeting.

The Custodian's duties do not include calling or overseeing the Company's 2022 annual meeting of shareholders or a special meeting in lieu of the annual meeting of shareholders. On May 31, 2022, Defendants, other than the Company as nominal defendant, objected to the Orders. On the same day, the United States District Court for the Eastern District of Pennsylvania overruled the objections. Defendants, other than the Company as nominal defendant, have filed a notice of appeal in the matter to the United States Court of Appeals for the Third Circuit.

- 6 -

Case ID: 221102195

*Director Nominees for Vacant Positions*

In accordance with the Orders, the Custodian has called a Special Meeting for the election of two directors. The two directors so elected will each become a Class III director and will serve until the 2022 annual meeting and his or her successor shall have been elected and shall have qualified. The Company has to date received notice of the following nominees, in accordance with the nominating procedures provided in the By-laws as described in further detail under "Proposal 1 Election of Director to Fill the Vacancy - Nominating & Voting Procedures" beginning on page 11:

- Driver Management Company LLC, Driver Opportunity Partners I LP and Mr. J. Abbott R. Cooper, who together beneficially own 385,854 shares of common stock, par value $0.01 per share, of the Company, have nominated Peter B. Bartholow for election to director at the Special Meeting;

- George E. Norcross, III, Philip A. Norcross, Gregory B. Braca and the Avery Conner Capital Trust, who together beneficially own 6,251,806 shares of common stock, par value $0.01 per share, of the Company, have nominated Gregory B. Braca for election to director at the Special Meeting; and

- Vernon W. Hill. II who, together with certain of its affiliates, beneficially owns 6,422,864 of common stock, par value $0.01 per share, of the Company, has nominated Brian R. Ford for election to director at the Special Meeting.

The director nominees have consented to serving as director of the Company if elected. The Company has been advised that the nominating shareholders listed above intend to solicit proxies in support of their nominee's election.

The Custodian has concluded, on a preliminary basis, that the nominees have been nominated in accordance with the provisions of the Company's By-laws. If the Custodian receives additional nominations that he concludes satisfy the requirements set forth in the By-laws, the Custodian will cause the Company to report this by filing a current report on Form 8-K.

The Custodian and the Board make no recommendation and take no position with respect to the election of any person at the Special Meeting. The Company and Custodian will not be submitting any person for election of any person at the Special Meeting.

What constitutes a quorum at the Special Meeting?

The presence, in person or by proxy, of shareholders entitled to cast at least a majority of the votes entitled to be cast at the Special Meeting shall constitute a quorum for the conduct of business at the Special Meeting. In the absence of a quorum, the shareholders present in person or by proxy at the meeting, by majority vote and without notice other than by announcement at the meeting, may adjourn the meeting until a quorum is present in person or by proxy. Under the Pa BCL and the By-laws, the shareholders entitled to vote who attend a meeting of shareholders at which directors are to be elected that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in the Pa BCL or in the By-laws, shall nevertheless constitute a quorum for the purpose of electing directors.

- 7 -

<u>Can I attend the Special Meeting and vote in person?</u>

Yes. If governmental restrictions or other public health policies or concerns related to the ongoing COVID-19 pandemic do not prevent us from holding the Special Meeting in person, the Special Meeting will be held at The Union League of Philadelphia which is located at 140 South Broad Street, Philadelphia, PA 19102. If your shares are held in "street name" and you plan to attend the Special Meeting in person, you must present proof of your ownership of the Common Stock, such as a bank or brokerage account statement, as well as valid government-issued photo identification to be admitted to the Special Meeting. Any holder of a proxy from a shareholder must present a valid proxy card, properly executed, and a copy of proof of ownership as well as valid government-issued photo identification.

<u>Can I attend the Special Meeting on a virtual basis through the Internet?</u>

Yes. Due to the public health impact of the ongoing COVID-19 pandemic and to support the health and well-being of our shareholders, you will be able to attend the Special Meeting through our virtual platform. Shareholders will be deemed to be "present" if they access the Special Meeting through the virtual platform. We have designed our virtual format to enhance, rather than constrain, shareholder access to the Special Meeting. Virtual attendance capabilities will provide shareholders with the ability to participate and ask questions during the Special Meeting. Shareholders will also have the ability to vote their shares at the Special Meeting, or revoke or change a previously submitted vote, through the virtual platform.

<u>How many votes are required for the election of directors?</u>

Directors are elected by a plurality vote of shares of Common Stock cast in person or by proxy at the Special Meeting. A "plurality" means that the individual who receives the largest number of affirmative votes cast in the election of directors will be elected. Votes that are withheld from a director nominee will be excluded entirely from the vote for such nominee and will have no effect on the result. Broker non-votes will have no effect on the outcome of the vote. Shareholders are not entitled to cumulative voting in the election of directors.

Persons nominating individuals for election may solicit their own proxies separately. We are not asking you for a proxy and you are requested not to send us a proxy. Nevertheless, shareholders may vote: (1) by preparing, executing and transmitting to us a proxy appointment conforming to the applicable provisions of Pennsylvania law and our By-laws; or (2) by attending the Special Meeting in person and voting. Please note that if you hold your shares through a broker, bank or other nominee, and you wish to vote at the Special Meeting (whether in person or by appointment of a proxy), you must obtain a legal proxy issued in your name from the record holder. If there are not enough shares represented at the Special Meeting for quorum or votes to approve or ratify a proposal at the Special Meeting, the Custodian may adjourn the Special Meeting to permit further solicitation of proxies.

<u>When will the voting results be announced?</u>

The final voting results will be reported on Form 8-K, which will be filed with the SEC within four business days after the Special Meeting. If our final voting results are not available within four business days after the Special Meeting, we will file a Form 8-K reporting the preliminary voting results and subsequently file the final voting results in an amendment to the Form 8-K within four business days after the final voting results are known to us.

<u>Do I have appraisal or dissenter's rights?</u>

No. Dissenters or appraisal rights are not available under applicable Pennsylvania law, the Company's Articles of Incorporation, as amended (the "Charter"), or its By-laws. Pennsylvania law, the Company's Charter and the Company's By-laws do not provide for appraisal or other similar rights for dissenting shareholders in connection with any of the proposals set forth in this information statement. Accordingly, you will have no right to dissent and obtain payment for your shares in connection with such proposals.

**We Are Not Asking You for a Proxy and You are Requested Not To Send Us a Proxy**

- 8 -

Case ID: 221102195

## PROPOSAL 1
## ELECTION OF DIRECTOR TO FILL THE VACANCY

The By-laws provide that the Board may consist of not less than five directors and not more than twenty-five directors, classified into three classes, as nearly equal in number as possible, with the specific number of directors fixed from time to time by resolution of the Board.

The members of one class of directors are elected at each annual meeting and each class of directors serves for approximately three years. The classes of directors have been designated as "Class I," "Class II" and "Class III."

The Board has currently fixed the number of directors at eight. The Class I Directors are Harry D. Madonna, Esq. and Brian P. Tierney, Esq.; the Class II Directors are Lisa R. Jacobs, Esq., Harris Wildstein, Esq. and Andrew B. Cohen; and the Class III Directors are Vernon W. Hill, II, Barry L. Spevak and (before his death) Theodore J. Flocco, Jr. The incumbent Class III Directors will continue in office until the Company's 2022 annual meeting of shareholders, the incumbent Class I Directors will continue in office until the Company's 2023 annual meeting of shareholders and the incumbent Class II Directors will continue in office until the Company's 2024 annual meeting of shareholders. All directors will hold office until the annual meeting of shareholders at which their terms expire and until the elections and qualifications of their successors.

Background

On May 11, 2022, Theodore J. Flocco, Jr., a director of the Company, passed away. Mr. Flocco had served as a director of the Company since 2008. He also served on the Audit Committee and compensation committee of the Company's Board.

The By-laws provide that "[a]ny vacancies in the Board of Directors, whether arising from death, resignation, removal or any other cause except an increase in the number of directors, shall be filled by a vote of the majority of the Board of Directors then in office even though that majority is less than a quorum. A majority of the entire Board may fill a vacancy that results from an increase in the number of directors. In the event that at any time a vacancy exists in any office of a director that may not be filled by the remaining directors, a special meeting of the shareholders shall be held as promptly as possible and in any event within sixty (60) days, for the purpose of filling the vacancy or vacancies. Any director elected or appointed to fill a vacancy shall hold office for the balance of the term then remaining and until a successor has been chosen and qualifies or until his earlier resignation or removal."

On May 12, 2022, following Mr. Flocco's death, Director Harry Madonna called a meeting of the Board and Directors. Andrew B. Cohen, Lisa Jacobs, Harry Madonna, and Harris Wildstein (the "Madonna Parties") attended this meeting and took action purporting to appoint Harry D. Madonna, Esq. to serve as interim chairman of the Board, replacing Vernon W. Hill, II, and also purported to appoint director Lisa R. Jacobs as Corporate Secretary of the Company.

On May 17, 2022, three shareholders and directors of the Company-Vernon W. Hill, III, Brian Tierney, and Barry Spevak (the "Hill Parties")-filed a shareholder derivative action on behalf of the Company against the Madonna Parties. Among other counts, the complaint alleged that the Madonna Parties breached fiduciary duties and violated the federal proxy solicitation laws, and sought judgments declaring as much. Among other relief, it sought appointment of a custodian to manage the affairs of the Company pending the outcome of the lawsuit.

- 9 -

Case ID: 221102195

Following a hearing and a week-long standstill period, on May 26, 2022, the Court issued an order appointing Alfred W. Putnam, Jr. of Faegre Drinker Biddle & Reath LLP as custodian to oversee a special election of the Board to replace the late Director Theodore Flocco, and to take "any and all lawful actions necessary to manage Republic First in its shareholders' best interests, including, should the Custodian so decide, the election of a ninth director."

The Court in its ruling on May 31, 2022, found among other things, that the purported Board meeting lacked a quorum and that the actions taken at this meeting were ineffective. The Court further found that the Company's By-laws and Charter do not allow the remaining directors to take any significant action absent a five-member quorum, and that the directors are deadlocked. As such, the Court found that the actions taken on the May 12th meeting were ineffective.

Since the Court's original order, Mr. Putnam has accepted the appointment. On June 24, 2022, Judge Diamond modified his order to require that the Special Meeting be held before the end of July and that a ninth director be elected at this meeting. Mr Putnam has called for the Special Meeting to be held on July ___, 2022.

The Madonna Parties have appealed the Court's order appointing Mr. Putnam as custodian to the United States Court of Appeals for the Third Circuit. Argument on appeal has been scheduled for June 28, 2022.

Following the appointment of the Custodian, counsel for the Custodian met with counsel for both of the two groups of directors to consider the most expeditious way to call a special meeting of the shareholders as soon as possible. After investigation, including conversations with special counsel conducting the Investigation referred to above, it was decided that the Company should make a filing of an information statement pursuant to Section 14(c) of the Exchange Act with the SEC, as otherwise shareholders would not be able to solicit proxies for any persons they may nominate for election at the special election. The Custodian does not intend to nominate any person to fill the vacancy and will not solicit proxies for any nominee.

Because of the situation at the Company's Board of Directors, certain information is not available to the Custodian that would ordinarily be required to be included in such an information statement, such as a report from the compensation committee of the Board with respect to the compensation of the Company's management. Counsel spoke several times with the staff of the Division of Corporation Finance of the SEC and developed an approach to address this. Counsel shared this approach with counsel for the two groups of directors and solicited their views on the approach. Since then, counsel has worked with management to prepare this Information Statement, and on June 13, 2022, counsel to the Custodian provided a draft of the Information Statement to counsel for the directors.

Once this Information Statement has been finalized, it will be filed with the SEC and mailed to shareholders. The final Information Statement will include the formal notice for the Special Meeting to be held approximately 20 days after mailing in accordance with Section 14(c) of the Exchange Act, during which period shareholders may solicit proxies for the election of their candidates for election to the Board.

- 10 -

Case ID: 221102195

<u>Nominating & Voting Procedures</u>

The By-laws provide that "…at all Annual Meetings of shareholders commencing after the Annual Meeting of Shareholders to be held in 1996, if any, any stockholder who desires to propose nominees to the Board of Directors must provide for the receipt of a written notice of the intention to nominate a person or persons for election as directors by the Secretary of the Corporation: (i) with respect to an election to be held at any annual meeting of shareholders in accordance with the provision of Rule 14a-8, and (ii) with respect to an election to be held at a special meeting of shareholders for the election of directors, the close of business on the seventh (7th) day following the day on which notice of such meetings is first given to shareholders."

"The notice is required to contain: (i) the name and address of the shareholder who intends to make the nomination and of the person or persons to be nominated; (ii) a representation that the shareholder is a holder of record of stock entitled to vote at the meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (iv) such other information regarding each nominee proposed by such shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the SEC had each nominee been nominated or intended to be nominated, by the Board of Directors of the Corporation; and (v) the consent of each nominee to serve as a director of the Company if so elected. The chairman of any meeting of shareholders to elect directors and the Board of Directors may refuse to recognize the nomination of any person not made in compliance with the foregoing."

In addition, pursuant to the Pennsylvania Banking Code, the advance approval of the Pennsylvania Department of Banking and Securities is required in order to solicit proxies for the election of directors of the Company. Persons intending to solicit proxies for an individual are encouraged to consult the Pennsylvania Department of Banking and Securities.

Persons nominating individuals for election may solicit their own proxies separately. We are not asking you for a proxy and you are requested not to send us a proxy. Nevertheless, shareholders may vote: (1) by preparing, executing and transmitting to us a proxy appointment conforming to the applicable provisions of Pennsylvania law and our By-laws; or (2) by attending the Special Meeting in person and voting. Please note that if you hold your shares through a shareholder, broker, bank or other nominee, and you wish to vote at the Special Meeting (whether in person or by appointment of a proxy), you must obtain a legal proxy issued in your name from the record holder.

**Director Nominees**

The Custodian and the Company's Board will make no recommendation and will not take any position with respect to the election of any director. The Company and Custodian will not submit any nominee for election to the Board at the Special Meeting. The Custodian has received nominations of Peter B. Bartholow, Gregory B. Braca, and Brian R. Ford to fill director vacancies and has concluded, on a preliminary basis, that these nominations satisfy the requirements of the By-laws. The Custodian has also received notice that the shareholders who made these nominations intend to solicit proxies in support of their election. The Custodian will not be soliciting any proxies for the Special Meeting.

Case ID: 221102195

The information provided below with respect to the nominees has been provided by the shareholder(s) making the respective nomination. Neither the Custodian nor the Company has undertaken to verify any of the information provided.

● **Peter B. Bartholow**, age 73, has been nominated by Driver Management Company LLC, Driver Opportunity Partners I LP and Mr. J. Abbott R. Cooper, who together beneficially own 385,854 shares of common stock, par value $0.01 per share, of the Company. Mr. Batholow most recently served as Chief Operating Officer and Chief Financial Officer and on the board of directors of Texas Capital Bancshares, Inc. (NASDAQ: TCBI), a bank holding company, and Chief Financial Officer of its subsidiary, Texas Capital Bank, from 2003, and Chief Operating Officer, from 2014, until stepping down from his Chief Financial Officer roles in June 2017 and his eventual retirement from the company in December 2017. Prior to that, Mr. Bartholow served as Managing Director of Hat Creek Partners LLC, a private equity investment company, from 1999 to 2003. From 1995 to 1998, Mr. Bartholow served as Corporate Vice President of Finance at Electronic Data Systems, Corp. (formerly NYSE: EDS) ("EDS"), a multinational information technology equipment and services company. Mr. Bartholow served as Chief Financial Officer of First USA, Inc. (formerly NYSE: FUS), a financial services company originally formed as a subsidiary of MCorp, from 1994 to 1995. From 1989 to 1994, Mr. Bartholow served as Chairman of the Board of Directors, Chief Financial Officer, Chief Executive Officer and President of MCorp, which was a bank holding company a majority of whose banks were acquired by Bank One Corporation (formerly NYSE: ONE). Mr. Bartholow served on the board of directors of MTech, a publicly owned technology services company, of which MCorp was the majority stockholder, from 1985 to 1988, when MTech was acquired by EDS. Mr. Bartholow also served on the board of directors of A.T. Kearney, Inc., a subsidiary of EDS and provider of management consulting services, from 1995 to 1998 and MCorp, from 1989 to 1994. Mr. Bartholow received an M.B.A. from the University of Texas and a Bachelor's Degree in Economics from Vanderbilt University.

● **Gregory B. Braca**, age 58, has been nominated by George E. Norcross, III, Philip A. Norcross, Gregory B. Braca and the Avery Conner Capital Trust, who together beneficially own 6,251,806 shares of common stock, par value $0.01 per share, of the Company. Mr. Braca is the President and Chief Executive Officer of General American Capital, LLC, an investment holding company, a position he has held since January 31, 2022. Before his departure on January 28, 2022, Mr. Braca served as President and Chief Executive Officer of TD Bank US Holding Company, a bank holding company, and its subsidiaries TD Bank, N.A., a national bank ("TD Bank") and TD Bank USA, National Association, a national bank from June 2017 to December 2021. During his tenure as Chief Executive Officer of TD Bank, Mr. Braca was also a member of the board of directors. Mr. Braca also served as Group Head of U.S. Banking of Toronto-Dominion Bank, a banking and financial services company and the parent company of TD Bank ("TD Bank Group") and as a member of their management committee during this same period. Since joining Commerce Bank, N .A., a national bank ("Commerce Bank") and a predecessor to TD Bank, in 2002, Mr. Braca has held various positions, including Chief Operating Officer from November 2016 to June 2017, Head of Corporate and Specialty Banking from January 2012 to November 2016, a business he started, and Metro President ofNY from June 2002 to January 2012 of TD Bank (and Commerce Bank, prior to its acquisition by TD Bank Group in 2008). In addition, Mr. Braca was a member of TD Bank's management committee from January 2012 to December 2021. Mr. Braca began his banking career in 1982 working at other leading financial institutions, including Citibank, N.A., Marine Midland Bank, a former New York bank, which was acquired by HSBC in 1980, and Barclays Bank of New York, N.A., as a Relationship Manager in 1989. Mr. Braca also spent 10 years from December 1992 to June 2002 at FleetBoston Bank, a Massachusetts-based bank, in several roles, including running the Healthcare Corporate Banking business as Senior Vice President/Team Leader New York from 1998 to 2002. In addition to serving as Chairman of the board of directors of the New York Bankers Association, a trade group, most recently from February 2020 to February 2022 and as a member of the board since 2015, Mr. Braca has been a member of various non-profit and community organization boards, including the Big Brothers Big Sisters of New York City from 2015 to present.

● **Brian R. Ford**, age 73, has been nominated by Vernon W. Hill. II who, together with certain of its affiliates, beneficially owns 6,422,864 shares of common stock, par value $0.01 per share, of the Company. Mr. Ford was the Chief Executive Officer of Washington Philadelphia Partners, LP, a real estate investment company, from 2008 through 2010. He retired as a partner from Ernst & Young LLP in June 2008 where he had been employed since 1971. Mr. Ford serves on the board of Clearway Energy, Inc. (NYSE: CWEN), a renewable energy owner, where he is the lead independent director, chairman of the audit committee, and a member of the compensation committee and the corporate governance, conflicts and nominating committee. Mr. Ford currently also serves on the board of FS Investment Corporation, a specialty finance company, where he also serves as the chairman of the audit committee. He is also a trustee of Drexel University. From 2013 to 2020, Mr. Ford served on the board of AmeriGas Propane, Inc., where he was a member of the audit and corporate governance committees. Mr. Ford received his B.S. in Economics from Rutgers University.

Please refer to the proxy materials filed with the SEC on behalf of the nominees when they become available. You can access these proxy statements, and any other relevant documents, without cost on EDGAR at www.sec.gov.

**Current Directors**

Each of the following individuals is an incumbent director who will continue to serve as a director of the Company until the end of his or her respective term or until a successor is elected and qualified. The specific backgrounds and qualifications of our current directors are reflected in each person's biography below. There are no family relationships among any of our directors or executive officers. There are no arrangements or understandings between any of our directors and any other person pursuant to which any person was selected as a director.

Case ID: 221102195

**Harry D. Madonna, Esq.**, age 79, has served as president of the Company since 2001, and as a director of the Company since 1988. In February 2021 he was also named as Chairman Emeritus of the Company. He previously served as Chief Executive Officer of the Company from 2001 through February 2021. Mr. Madonna also served as Chairman of the Bank from 1988 through February 2021 and Chief Executive Officer of the Bank from 2001 through February 2021. He served as Chairman of the Company from 1988 to 2016 and served as the Bank's president from 2001 until May 2010. From 1999 through November 2012, Mr. Madonna served as executive chairman of First Bank of Delaware, a commercial bank headquartered in the state of Delaware, and served as its chief executive officer from January 2002 until July 2008. Mr. Madonna was of counsel to Spector Gadon & Rosen, PC, a general practice law firm located in Philadelphia, Pennsylvania from January 1, 2002 until June 30, 2005 and prior to that, was a partner of Blank Rome LLP, a law firm located in Philadelphia, Pennsylvania from 1980 until December 2001.

**Brian P. Tierney, Esq.**, age 65, has been a director of the Company and the Bank since April 2011. He has also served as chief executive officer of Brian Communications, a strategic communications agency and as chairman of Real Time Media, an interactive marketing services agency since November 2010. He was publisher of The Philadelphia Inquirer and Daily News, news providers, and chief executive officer of its parent company, Philadelphia Media Holdings LLC, from June 2006 and August 2006, respectively, until October 2010. He previously served as chairman and chief executive officer of Tierney Holdings LLC, a private investment firm. From June 2004 to March 2005, he was vice chairman of Advanta Corp., a commercial bank that specialized in the issuance of credit cards. Prior to that period, he was the founding partner of T2 Group, a strategic communications firm, from November 2003 until it was sold to Advanta Corp. He currently serves on the board of The Graham Company, a 100% employee-owned company through an ESOP Trust.

Class II Directors

**Lisa R. Jacobs, Esq.**, age 63, has been a director of the Company and the Bank since February 2017. Ms. Jacobs has been a partner at Stradley Ronon Stevens & Young, LLP, since August 2021 and prior to that was a partner at DLA Piper, LLP from 2011 through July 2021, each of which is a law firm specializing in business law.

**Harris Wildstein, Esq.**, age 76, has been a director of the Company and the Bank since 1988. From 1999 through November 2012, Mr. Wildstein served as a director of First Bank of Delaware, a commercial bank headquartered in the state of Delaware. Since September 2004, Mr. Wildstein has been an owner and officer of Lifeline Funding, LLC, a pre-settlement funding organization.

**Andrew B. Cohen**, age 50, has been a director of the Company and the Bank since June 2017. Andrew B. Cohen is the Chief Investment Officer and Co-Founder of Cohen Private Ventures an investment firm. He is a member of the board of directors of several public and private companies including Laureate Education, Inc.

Case ID: 221102195

**Vernon W. Hill II**, age 76, has been a director and Chairman of the Company since 2016. In February 2021, he was named to the additional role of Chairman of the Bank and Chief Executive Officer of the Company and the Bank. Mr. Hill previously served as the chairman, chief executive officer, and president of Commerce Bancorp, Inc., a Cherry Hill, New Jersey-based bank that later merged with TD Bank, which he founded in 1973.

**Barry L. Spevak**, C.P.A., age 61, has been a director of the Company and the Bank since April 2004. He has also been a partner with Downey, Spevak and Associates, Ltd., a certified public accounting firm, since 1991.

Board's Recommendation

The Custodian and the Board make no recommendation and take no position with respect to the election of any person as a director at the Special Meeting. The Custodian and the Company will not be submitting any person for election to the Board at the Special Meeting.

Case ID: 221102195

## BOARD OF DIRECTORS AND COMMITTEES

**Director Independence and Leadership**

The Company's current board is comprised of eight director positions and is led by Vernon W. Hill, II, Chairman and Chief Executive Officer. Following Mr. Flocco's death, the Madonna Parties called a Board meeting and, among other things, purported to remove Vernon W. Hill, II as Chairman, but the Court found that this purported Board meeting lacked a quorum and that the actions taken at this meeting were ineffective.

The Board has previously determined that all of the Company's non-executive board members are independent under NASDAQ's corporate governance listing standards, resulting in 71% of the current Board being deemed independent of management. In addition, the Board has previously determined that all members of the audit, nominating and governance, and compensation committees are independent (as defined under the applicable SEC rules and the listing standards of NASDAQ). The Custodian has made no independent review of the independence of any of the Company's directors. The Custodian believes that he would be regarded as independent under the NASDAQ's listing standards and the applicable rules of the SEC.

The Board had previously determined that the late Mr. Flocco also was independent under these criteria and that Vernon W. Hill, II, and Harry D. Madonna were not independent.

**Meetings of the Board and Attendance**

The Board met on ten occasions during 2021. All of the directors attended at least 75% of the meetings of the Board and of the committees of which they were members. The Custodian does not know whether any or all of the directors will be present at the Special Meeting.

**Board Diversity**

Nasdaq's Board Diversity Rule, which was approved by the SEC in August 2021, is a disclosure standard designed to encourage a minimum board diversity objective for companies and provide stakeholders with consistent, comparable disclosures concerning a company's current board composition. The table below provides certain highlights of the composition of our current Board members.

Case ID: 221102195

| Board Diversity Matrix As of December 31, 2021 | | | | |
|---|---|---|---|---|
| Total Number of Directors | 8 | | | |
| | Female | Male | Non-Binary | Did Not Disclose Gender |
| **Part I: Gender Identity** | | | | |
| Directors | 1 | 7 | - | - |
| **Part II: Demographic Background** | | | | |
| African American or Black | - | - | - | - |
| Alaskan Native or American Indian | - | - | - | - |
| Asian | - | - | - | - |
| Hispanic or Latinx | - | - | - | - |
| Native Hawaiian or Pacific Islander | - | - | - | - |
| White | 1 | 7 | - | - |
| Two or More Races or Ethnicities | - | - | - | - |
| LGBTQ+ | - | | | |
| Did Not Disclose Demographic Background | - | | | |

**Board Committees**

The Board conducts much of its business through committees (the "Board Committees"), including a standing audit committee, nominating and governance committee, and compensation committee. Each of these committees operate under a charter which can be found on the Company's website at *www.myrepublicbank.com* under the "Investor Relations" section.

Audit Committee

The Board has designated a standing audit committee, currently consisting of Messrs. Spevak and Wildstein. Mr. Flocco served as chair of this committee until his recent death. Based on information supplied by the directors the Board had previously determined that: (1) all members of the audit committee are independent as defined under the applicable SEC rules and the listing standards of NASDAQ, including the independence criteria applicable to audit committee members, and (2) Mr. Spevak and prior to his passing, Mr. Flocco, qualified as audit committee financial experts, as defined in SEC rules and regulations.

Case ID: 221102195

The audit committee held nine meetings during 2021, and it operates under a written charter approved by the Board. The responsibilities of the audit committee are to, among others:

- assist the Board with the oversight of the integrity of the Company's financial statements and internal controls, the Company's compliance with legal and regulatory requirements, the independent registered public accounting firm's qualifications and independence and the performance of the Company's internal audit function and the independent registered public accounting firm;
- establish procedures for receipt, retention, and handling complaints regarding accounting, internal accounting controls, and auditing matters, including procedures for confidential, anonymous submission of concerns by employees regarding accounting and auditing matters;
- retain, evaluate, and where appropriate, replace the independent auditor, set the independent auditor's compensation, oversee the work of the independent auditor and pre-approve all audit services to be provided by the independent auditor;
- review with the independent auditor and members of management conducting the internal audit, the adequacy and effectiveness of the systems of internal controls, accounting practices, and disclosure controls and procedures of the Company and current accounting trends and developments, and take such action with respect thereto as may be deemed appropriate;
- make a recommendation to the Board as to whether the audited financial statements should be included in the Company's Annual Report on Form 10-K;
- prepare the report required to be prepared by the audit committee pursuant to the rules of the SEC for inclusion in the Company's annual proxy statement; and
- review in advance the public release of all financial information.

Compensation Committee

The Board has designated a standing compensation committee, currently consisting of Messrs. Spevak (chair) and Ms. Jacobs. Mr. Flocco was a member of this committee until his recent death. The compensation committee operates under a written charter approved by the Board. The charter provides, among other things, that the compensation committee be comprised of at least three members.

Case ID: 221102195

Based on information supplied by the directors, the Board had previously determined that all members of the compensation committee are independent under NASDAQ listing standards, and "non-employee directors," as defined in SEC Rule 16b-3. The compensation committee held ten meetings in 2021. The compensation committee's responsibilities include, among others, the following:

- review and approve the Company's overall compensation philosophy and oversee the administration of related compensation and benefit programs, policies and practices;
- set the compensation of the chief executive officer and other executive officers of the Company. Regarding compensation for officers other than the chief executive officer, the committee consults with the chief executive officer and the other officers of the Company as appropriate;
- evaluate the performance of the chief executive officer and review and approve the chief executive officer's evaluation of performance of the other executive officers in light of approved performance goals and objectives;
- review and recommend for approval to the Board cash-based incentive compensation plans, equity-based compensation plans, defined benefit and contribution plans and other welfare benefit plans or amendments or modifications to such plans;
- grant stock options and other awards under equity-based plans;
- review and discuss with management the Compensation Discussion and Analysis ("CD&A") to be included in the Company's annual proxy statement, if required, and determine whether to recommend to the Board that the CD&A be included in the Company's proxy statement, if applicable;
- provide the compensation committee report for inclusion in the Company's proxy statement, if required, that complies with the rules and regulations of the SEC; and
- retain an independent, external consulting firm to advise the compensation committee, as it deems appropriate, including the authority to approve the consultant's fees and other retention terms.

Nominating and Governance Committee

The Board has designated a standing nominating and governance committee, currently consisting of Messrs. Wildstein (chair), Spevak and Tierney. Based on information supplied by the directors, the Board had previously determined that all members of the nominating and governance committee were independent under NASDAQ listing standards. The nominating and governance committee operates under a written charter approved by the Board. This committee held one meeting in 2021.

In addition to the responsibilities described below, with regard to overseeing the selection and recommendation of board nominees, the nominating and governance committee's responsibilities include, among other things, the following:

- make recommendations to the Board from time to time as to changes that the committee believes to be desirable in the size of the Board or any committee thereof and the establishment of any new committees of the Board that the nominating and governance ommittee believes to be necessary or desirable;
- conduct annually an evaluation of the performance of the Board as a whole and the directors in such manner as the committee deems appropriate and, through its chairperson, communicate this evaluation to the full Board; and
- maintain an orientation program for new directors and an education program for continuing directors.

Case ID: 221102195

Under the Nominating and Governance Committee Charter, the nominating and governance committee is to evaluate candidates it has identified or who have been recommended to it based on the selection criteria provided in the Nominating and Governance Committee Charter. This criteria, including the diversity of the nominees, and other criteria deemed relevant by the nominating and governance committee, will be further described in the Company's proxy statement for the Company's 2022 annual meeting of shareholders.

The nominating and governance committee is not recommending any nominees for election at the Special Meeting.

The procedures for shareholders to recommend director candidates at the 2022 annual meeting are described under the heading "Shareholder Proposals and Nominations for the 2022 Annual Meeting".

## CORPORATE GOVERNANCE

### Hedging and Pledging Policies

The Company's policy pertaining to Material Nonpublic Information and Personal Investing prohibits directors, officers, and employees from purchasing financial investments (including equity swaps, collars and similar derivative securities) or otherwise engage in transactions that hedge or offset, or are designed to hedge or offset, any potential decrease in the market value of the Company's securities.

### Risk Management and Oversight

The Board oversees the Company's risk management through the Compliance and Risk Management Committee, which consists of two members of management, including the Company's President and the Bank's President and Chief Operating Officer, and four independent directors. The Chief Risk Officer also regularly presents at the Compliance and Risk Management Committee meetings. The Compliance and Risk Management Committee held six meetings during 2021, and is chaired by Lisa Jacobs, Esq. In addition to this committee, there is also an Internal Compliance and Risk Management Committee, which also held six meetings during 2021, which is chaired by the Chief Risk Officer and consists of members of senior management representing various lines of business and areas of support tasked with identifying and addressing the risks of the Company. Minutes from these meetings are reported to the Compliance and Risk Management Committee, and minutes from the Compliance and Risk Management Committee are reported to the Bank's full board. The Chief Risk Officer reports directly to the Compliance and Risk Management Committee and administratively to President and Chief Operating Officer.

The Board has adopted an Enterprise-wide Risk Management Program ("ERM Program") that focuses on identifying, measuring, monitoring and reporting on material risks affecting the Company and promotes a culture of compliance with applicable laws and regulations. The Bank's board reviews a comprehensive Enterprise-wide Risk Assessment Report, prepared by the Chief Risk Officer, which includes metrics and trends on major risk areas, including credit, compliance (including Bank Secrecy Act, Anti-Money Laundering, and Office of Foreign Assets Control regulations), operational (including information security and cyber security), interest rate, liquidity, market, reputation, and strategic. The Board's ERM Program utilizes third-party software to develop a more data-driven program that is intended to align with the Company's strategic goals, creates a culture of increased risk awareness, gives management greater access to information for strategic, enterprise-wide decision making, and allows the board and executive management to understand and measure its environmental, social and governance ("ESG") risks.

Case ID: 221102195

Given the heightened level of risk associated with cybersecurity and information security, the Company utilizes a third-party scanning provider to assist it in scanning and patching systems for security vulnerabilities. Patching is managed via daily updates from vendors or "as-they-happen" notifications of vulnerability patches. This threat and vulnerability management program is one part of a larger framework of monitoring and alerting systems and a larger cybersecurity framework using the NIST (National Institute for Standards and Technology) Cybersecurity Framework. The Bank's Chief Information Security Officer also maintains membership in information sharing institutions such as FS-ISAC, CISA and the FBI/DHS to name a few. The Company's Cybersecurity Program is integrated with information technology processes and has a governance model with segregation of duties reporting to the risk management function. In addition, as part of our defense-in-depth framework, inclusive of our incident response plan and recovery plan, the Company maintains a Cybersecurity Insurance Policy that is ongoing and reviewed annually. The Cybersecurity Insurance Policy includes provisions for dependent business and system failure expenses which includes "any actual or alleged cyber security breach or privacy and security wrongful act resulting in the unauthorized acquisition of cardholder data as defined under PCI-DSS." The Company has not had any security events that have risen to the level of a cybersecurity incident or breach of its systems or data.

The Chief Information Security Officer provides information security updates to the Bank's board, the Compliance and Risk Management Committee and IT Committee at least quarterly. Information security training is provided to all directors, executive officers and employees annually. The Company has also adopted a comprehensive Information Data and Cybersecurity Program which includes a detailed Incident Response Plan in order to provide a structured and systemic incident response process for information security incidents that affect any of the information technology systems, network, or data of the Company. This Program is implemented and maintained by the Chief Information Security Officer and is subject to annual review by the Compliance and Risk Management Committee, approval by the Bank's board, and is subject to annual audits by both the internal and external auditors. The Incident Response Plan is also tested each year utilizing different information security and cybersecurity scenarios.

See "BOARD OF DIRECTORS AND COMMITTEES" beginning on page 15 for more information on responsibilities of each of the Board Committees. Below is a chart depicting how each Board Committee assists the board in its risk oversight responsibilities:

Case ID: 221102195

| Committee | Risk Oversight Responsibilities |
|---|---|
| Audit Committee | Responsible for assessing and overseeing areas of financial reporting, internal controls and compliance with accounting regulatory requirements. |
| Compensation Committee | Responsible for risks related to compensation policies and incentive programs. |
| Nominating and Governance Committee | Responsible for risks associated with board organization and membership, succession planning, and corporate governance. |
| Asset/Liability Committee | Responsible for risks associated with our exposure to fluctuations in interest rates and liquidity needs. |
| Compliance and Risk Management Committee | Responsible for overseeing the risk management infrastructure and addressing risk and strategy simultaneously, including consideration of risk appetite. In addition, responsible for monitoring risks, overseeing risk exposures and advising the board on risk strategy. Lastly, responsible for managing compliance with applicable laws and regulations. |
| IT Steering Committee | Responsible for overseeing information technology, information security, and cyber security risks faced by the Company and the Bank, and to ensure the IT infrastructure is sufficient to appropriately address these risks. |

Notwithstanding that each committee is responsible for evaluating certain risks and overseeing the management of such risks, the entire Board is regularly informed through committee reports about such risks.

**Communication with Directors**

Any shareholder may communicate with our board, or any individual member or members of the Board, by directing communication to the Corporate Secretary, Republic First Bancorp, Inc., Two Liberty Place, 50 South 16th Street, Suite 2400, Philadelphia, PA 19102, together with a request to forward the communication to the intended recipient or recipients. In general, all shareholder communications delivered to the corporate secretary for forwarding to the Board or specified board members will be forwarded in accordance with the shareholder's instructions. The corporate secretary, however, may not forward any abusive, threatening or otherwise inappropriate materials.

Case ID: 221102195

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth, as of June 15, 2022, information with respect to the holdings of Company voting securities of all persons which, according to filings with the SEC and the Company's stock transfer records, may be beneficial owners of more than five percent (5%) of the outstanding Common Stock. The table also sets forth this information for each current director, each executive officer named in the 2021 Summary Compensation Table, and all of the Company's directors, director nominees, and executive officers as a group, based, in the case of the directors, on information supplied by them.

| Name of Beneficial Owner or Identity of Group (1) | Number of Shares Beneficially Owned (2) | | Percentage of Ownership (2) |
|---|---|---|---|
| **Current Directors** | | | |
| Vernon W. Hill, II | 6,422,864 | (3) | 9.97% |
| Andrew B. Cohen | 95,500 | (4) | * |
| Lisa R. Jacobs | 100,433 | (5) | * |
| Harry D. Madonna | 669,000 | (6) | 1.0% |
| Barry L. Spevak | 176,832 | (7) | * |
| Brian P. Tierney | 234,746 | (8) | * |
| Harris Wildstein | 867,963 | (9) | 1.4% |
| **Named Executive Officers Who are not Directors** | | | |
| Frank A. Cavallaro | 190,065 | (10) | * |
| Andrew J. Logue | 241,395 | (11) | * |
| Jay Neilon | 203,000 | (12) | * |
| Tracie A. Young | 141,062 | (13) | * |
| All directors and executive officers as a group (11 persons) | 9,342,860 | | 14.1% |
| **5% Percent Beneficial Shareholders** | | | |
| Blackrock, Inc. | 7,888,909 | (14) | 12.4% |
| Camden Asset Management, LP | 6,499,974 | (15) | 9.3% |
| CPV Holdings, LLC | 5,442,570 | (16) | 8.5% |
| Avery Conner Capital Trust | 4,527,184 | (17) | 7.1% |

---

\* Represents beneficial ownership of less than 1%.

(1) Unless otherwise indicated, the address of each beneficial owner is c/o Republic First Bancorp, Inc., Two Liberty Place, 50 S. 16th Street, Suite 2400, Philadelphia, PA 19102. The group of directors and executive officers was determined as of March 8, 2021.

Case ID: 221102195

(2) The securities "beneficially owned" by an individual are determined in accordance with the definition of "beneficial ownership" set forth in Rule 13d-3 under the Exchange Act of 1934. Any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (i) voting power, which includes the power to vote, or to direct the voting of, common stock; and/or, (ii) investment power, which includes the power to dispose, or to direct the disposition, of common stock, is determined to be a beneficial owner of the common stock. All shares are subject to the named person's sole voting and investment power unless otherwise indicated. Shares beneficially owned include shares issuable upon exercise of options which are currently exercisable or which will be exercisable within 60 days of June 15, 2022. Shares beneficially owned also include shares issuable upon conversion of convertible securities which are currently convertible or which will be convertible within 60 days of June 15, 2022. Percentage calculations presume that the identified individual or group exercise or convert all of his, her or their respective options and convertible securities, and that no other holders of options exercise their options or convert their convertible securities. As of June 15, 2022, there were 63,753,722 shares of the Common Stock outstanding. Other than those persons listed in the table above, the Company is not aware of any person, as such term is defined in the Exchange Act, that beneficially owns more than 5% of its Common Stock as of June 15, 2022.

(3) Mr. Hill's total includes 425,000 shares of Common Stock issuable subject to options which are currently exercisable. Also includes 2,295,666 shares held in multiple trusts of which Mr. Hill serves as a trustee and 500,000 shares held an IRA account controlled by his wife. Mr. Hill owns 50,000 shares of convertible preferred stock issued by the Company which are convertible into 416,667 shares of Common Stock. A restriction on conversion included in the preferred stock instrument prohibits conversion to the extent that such conversion would cause the holder to own or control 10% or more of the Common Stock outstanding. Accordingly, the calculation of the number of shares beneficially owned in the table does not include 23,000 shares of preferred stock which are currently convertible into 191,667 shares of Common Stock. The address of Mr. Hill is 14000 Horizon Way, Suite 100, Mt. Laurel, NJ 08054.

(4) Mr. Cohen's total includes 75,000 shares of Common Stock issuable subject to options which are currently exercisable. Andrew Cohen is the co-founder and chief investment officer of Cohen Private Ventures, LLC which may be deemed an affiliate of CPV Republic Investment, LLC, which holds shares of Common Stock as described in Footnote 17 below. Andrew Cohen does not have the power to vote on or dispose of such shares and accordingly does not beneficially own those shares.

(5) Ms. Jacobs' total includes 75,000 shares of Common Stock issuable subject to options which are currently exercisable and 1,000 shares of preferred stock which are currently convertible into 8,333 shares of common stock.

(6) Mr. Madonna's total includes 624,000 shares of Common Stock issuable subject to options which are currently exercisable.

(7) Mr. Spevak's total includes 135,000 shares of Common Stock issuable subject to options which are currently exercisable.

(8) Mr. Tierney's total includes 120,000 shares of Common Stock issuable subject to options which are currently exercisable.

(9) Mr. Wildstein's total includes 135,000 shares of Common Stock issuable subject to options which are currently exercisable. Also includes 19,083 shares in trust for his daughter, and 14,032 shares held by his wife.

(10) Mr. Cavallaro's total includes 153,000 shares of Common Stock issuable subject to options which are currently exercisable.

(11) Mr. Logue's total includes 203,500 shares of Common Stock issuable subject to options which are currently exercisable

(12) Mr. Neilon's total includes 153,000 shares of Common Stock issuable subject to options which are currently exercisable.

(13) Ms. Young's total includes 126,000 shares of Common Stock issuable subject to options which are currently exercisable.

(14) Information is derived from a _____ filed with the SEC on _____ by BlackRock, Inc. The report states that BlackRock, Inc. had sole voting power over _____ common shares and sole dispositive power over _____ common shares as of _____. The principal business office address is 55 East 52nd Street, New York, NY 10055.

(15) Information is derived from a Schedule 13G filed with the SEC on February 9, 2021, by Camden Asset Management, LP and John Wagner. The report states that each of the reporting persons named in the filing had shared voting and shared dispositive power over 6,499,974 common shares issuable upon conversion of shares of convertible preferred stock as of December 31, 2021. The principal business office address of each reporting person is 2029 Century Park East, Suite 2010, Los Angeles, CA 90067.

(16) Information is derived from a Form 13F filed with the SEC on February 14, 2022 by CPV Partners, LLC. The principal business office address is 72 Cummings Point Road, Stamford, CT 06902.

(17) Information is derived from a Form 13D/A Amendment No. 17 filed with the SEC on June 10, 2022 by George E. Norcross, III, Avery Conner Capital Trust, Philip A. Norcross, Susan D. Hudson, Geoffrey B. Hudson, Rose M. Guida, and Gregory B. Braca. The principal business office address is 350 Royal Palm Way, Suite 500, Palm Beach, FL 33480.

Case ID: 221102195

# EXECUTIVE OFFICERS AND COMPENSATION

## Executive Officers

The following sets forth certain information regarding the current executive officers of the Company and the Bank.

*Vernon W. Hill, II*, 76, has served as a director and Chairman of the Company since 2016. He was named to the additional roles of Chief Executive Officer of the Company and the Bank and Chairman of the Bank in February 2021. Mr. Hill was previously the chairman, chief executive officer and president of Commerce Bancorp, Inc. which he founded in 1973. He was also the chairman and founder of Metro Bank in the U.K. from 2010 until 2019.

*Frank A. Cavallaro*, 53, has served as an Executive Vice President and Chief Financial Officer of the Company and the Bank since February 2012. Mr. Cavallaro had previously served as a Senior Vice President and Chief Financial Officer of the Company and the Bank since August 2009. Prior to joining the Company, Mr. Cavallaro, served as a vice president in the finance department for Commerce Bank, N.A. and its successor TD Bank, N.A., an American national bank, from September 1997 to August 2009. Mr. Cavallaro, a certified public accountant, has more than twenty-five years of experience in the financial services industry and, prior to that, three years of experience in public accounting with Ernst & Young LLP.

*Andrew J. Logue*, 64, has served as President and Chief Operating Officer of the Bank since May 2010. Mr. Logue had previously served as Executive Vice President and Chief Operating Officer of the Bank since August 2008. Prior to joining the Bank, Mr. Logue, served as senior vice president/enterprise risk management for Commerce Bank, N.A. and its successor TD Bank, N.A., an American national bank, from March 1991 to August 2008. Mr. Logue served in various functions during his tenure at Commerce Bank, N.A.

*Jay M. Neilon*, 68, has served as an Executive Vice President and Chief Credit Officer of the Bank since February 2012. Mr. Neilon had previously served as a Senior Vice President and Chief Credit Officer of the Bank since December 2008. Prior to joining the Bank, Mr. Neilon, served as senior credit officer for Commerce Bank, N.A. and its successor TD Bank, N.A., an American National Bank, from July 1992 to December 2008. Prior to Commerce Bank, N.A., Mr. Neilon held various credit and lending positions with Fidelity Bank, Philadelphia, PA from September 1976 to July 1992.

*Tracie A. Young*, 52, has served as an Executive Vice President and Chief Risk Officer of the Bank since February 2015. Ms. Young had previously served as a Senior Vice President and Chief Risk Officer of the Bank since April 2010. Ms. Young has over 30 years of experience in the areas of risk management and compliance for financial institutions. Prior to joining the Bank, Ms. Young served in various internal audit, compliance and risk management roles for Harleysville National Bank and Trust Company, a Pennsylvania-based regional bank, from 1992 to 2010 including the director of risk management and director of internal audit positions.

- 24 -

Case ID: 221102195

The following table shows the annual compensation of our Chief Executive Officer, our Chief Financial Officer and the three most highly compensated executive officers of the Company other than the Chief Executive Officer and Chief Financial Officer for the fiscal year ended December 31, 2021. Collectively, these officers are referred to as our "named executive officers".

### 2021 Summary Compensation Table

The following table shows the annual compensation of the Company's named executive officers for the fiscal years ended December 31, 2021, 2020 and 2019.

| Name and Principal Position | Year | Salary ($) | Bonus ($) | Stock Awards (1) ($) | Option Awards (2) ($) | Change in Pension Value and Nonqualified Deferred Compensation Earnings ($) | All Other Compensation ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|
| Vernon W. Hill, II Chairman and Chief Executive Officer (3) | 2021 | 403,846 | - | 110,220 | - | - | 8,405 | 522,471 |
| Harry D. Madonna President and Chairman Emeritus (4) | 2021 | 455,577 | - | 110,220 | - | 56,503 | 55,330 | 677,630 |
| | 2020 | 330,961 | - | - | 92,000 | 61,350 | 150,237 | 634,548 |
| | 2019 | 415,000 | - | - | 223,000 | 167,000 | 64,955 | 869,955 |
| Frank A. Cavallaro Chief Financial Officer (5) | 2021 | 354,231 | 75,000 | 83,500 | - | - | 31,805 | 544,535 |
| | 2020 | 342,692 | 10,000 | - | 36,800 | - | 30,555 | 420,047 |
| | 2019 | 320,769 | 60,000 | - | 90,000 | - | 29,914 | 490,683 |
| Andrew J. Logue Chief Operating Officer (6) | 2021 | 483,000 | 75,000 | 83,500 | - | - | 40,973 | 682,473 |
| | 2020 | 448,077 | 10,000 | - | 112,500 | - | 38,440 | 542,517 |
| | 2019 | 465,384 | 60,000 | - | 112,500 | - | 36,477 | 674,361 |
| Jay Neilon Chief Credit Officer (7) | 2021 | 324,692 | 60,000 | 45,090 | - | - | 29,889 | 459,671 |
| | 2020 | 327,115 | 10,000 | - | 36,800 | - | 29,028 | 402,943 |
| | 2019 | 312,692 | 50,000 | - | 90,000 | - | 29,500 | 482,192 |
| Tracie A. Young Chief Risk Officer (8) | 2021 | 309,692 | 60,000 | 45,090 | - | - | 23,400 | 438,182 |
| | 2020 | 311,538 | - | - | 36,800 | - | 23,861 | 372,199 |
| | 2019 | 290,769 | 50,000 | - | 90,000 | - | 22,862 | 453,631 |

(1) Reflects the grant date fair value of restricted stock units ("RSUs") which were granted in February 2021 pursuant to the terms of the 2014 Equity Incentive Plan. The RSUs granted to Mr. Hill and Mr. Madonna vest in full on the one-year anniversary date of the grant. The RSUs granted to Messrs. Cavallaro, Logue, Neilon and Ms. Young vest ratably in four equal installments each year on the anniversary date of the grant.

(2) The amount shown is the aggregate fair value as of the grant date in accordance with FASB ASC Topic 718. We will include the assumptions used in the calculation of these amounts in the footnotes to our audited financial statements that will be included in our Annual Report on Form 10-K for the fiscal year ended December 31, 2021.

Case ID: 221102195

(3) Mr. Hill was named to the role of Chief Executive Officer and became an employee of the Company in February 2021. In 2021, all other compensation for Mr. Hill includes $8,405 of automobile and transportation allowance.

(4) Mr. Madonna served as the Company's Chief Executive Officer through February 2021 at which time he transitioned to the role of President and Chairman Emeritus of the Company. In 2021, all other compensation for Mr. Madonna includes $32,481 of automobile and transportation allowance, $5,640 for a club membership, $5,809 for Company paid supplemental long-term disability policy premiums, and $11,400 in matching contributions made to Mr. Madonna's 401(k) plan account.

(5) In 2021, all other compensation for Mr. Cavallaro includes $20,405 of automobile and transportation allowance and $11,400 in matching contributions made to Mr. Cavallaro's 401(k) plan account.

(6) In 2021, all other compensation for Mr. Logue includes $22,805 of automobile and transportation allowance, $6,768 for a club membership, and $11,400 in matching contributions made to Mr. Logue's 401(k) plan account.

(7) In 2021, all other compensation for Mr. Neilon includes $18,489 of automobile and transportation allowance and $11,400 in matching contributions made to Mr. Neilon's 401(k) plan account.

(8) In 2021, all other compensation for Ms. Young includes $12,000 of automobile and transportation allowance and $11,400 in matching contributions made to Ms. Young's 401 (k) plan account.

### Grants of Plan-Based Awards in 2021

The following table sets forth information concerning the grant of plan-based awards to the Company's named executive officers during the year ended December 31, 2021.

| Name | Grant Date | All Other Stock Awards: Number of Units (1) (#) | Grant Date Fair Value of Stock Awards ($) |
|---|---|---|---|
| Vernon W. Hill, II | February 18, 2021 | 33,000 | $ 110,220 |
| Harry D. Madonna | February 18, 2021 | 33,000 | $ 110,220 |
| Frank A. Cavallaro | February 18, 2021 | 25,000 | $ 83,500 |
| Andrew J. Logue | February 18, 2021 | 25,000 | $ 83,500 |
| Jay M. Neilon | February 18, 2021 | 13,500 | $ 45,090 |
| Tracie A. Young | February 18, 2021 | 13,500 | $ 45,090 |

The Company's compensation committee authorized the granting of RSUs as shown in the table above. RSUs issued to Mr. Madonna represented the equivalent of annual grant of equity awards as set forth in his employment agreement. Vesting provisions are set forth in the "Outstanding Equity Awards at December 31, 2021 Fiscal Year End" table included on pages 29 through 30.

(1) RSUs granted to Mr. Hill and Mr. Madonna vest in full on the one-year anniversary date of the grant, February 18, 2022. RSUs granted to Mr. Cavallaro, Mr. Logue, Mr. Neilon and Ms. Young vest in four equal annual installments beginning February 18, 2022, the first anniversary date of the grant.

Case ID: 221102195

*Description of Employment Agreements*

*Employment Agreement with Mr. Madonna.* The Company, the Bank and Mr. Madonna are parties to an amended employment agreement dated as of March 1, 2021 (the "2021 agreement" or the "agreement"), which superseded in its entirety the employment agreement dated March 10, 2017, as previously amended (the "prior employment agreement"). Mr. Madonna consented to the change in officer position in February 2021 from President and Chief Executive Officer to President and Chairman Emeritus of the Company and agreed that such change would not constitute a Termination Event within the meaning of the prior employment agreement or otherwise violate the terms of the prior employment agreement. The 2021 agreement provides for extensions on each annual anniversary date to continue through the end of the then-current Term, plus an additional one-year period, unless either party provides written notice that such party desires to terminate the agreement prior to the anniversary date of the effective date and each anniversary date thereafter. The Company and the Bank may also terminate Mr. Madonna's employment at any time for specified events of "good reason" (as defined in the agreement). Mr. Madonna may terminate the 2021 agreement with six months prior notice. Mr. Madonna may also terminate the agreement for specified events of "good cause" (as defined in the agreement). In February 2022, following the approval of a majority of the members of the compensation committee, the Company and the Bank provided written notice to Mr. Madonna of their intention to not renew his employment agreement. As a result of this notice, the agreement will terminate in accordance with its terms on February 28, 2023.

Mr. Madonna's annual base salary under the 2021 agreement was set at $415,000 effective March 1, 2021. Mr. Madonna is eligible to receive annual increases in base salary at the sole discretion of the compensation committee of the Company after taking into account criteria determined in advance by the compensation committee, and bonuses based on a percent of annual base salary in the sole discretion of the compensation committee upon achievement of established criteria. Any additional compensation may be granted in the form of equity-based awards to align his interests with those of the Company's shareholders.

The 2021 amended employment agreement also provides for the annual issuance of options to Mr. Madonna to purchase not less than 100,000 shares of Common Stock (or an equivalent value in restricted stock or stock units) effective March 1, 2021 and continuing annually thereafter so long as Mr. Madonna remains employed under the terms of the agreement. Option grants will be based on meeting or exceeding criteria established from year to year by the committee charged with the responsibility for making grants under the Company's stock incentive plan. Such options, restricted stock or stock units will vest one year after the date of grant or earlier upon the occurrence of either a Change in Control (as defined in the agreement) or a Termination Event (as defined in the agreement) and will be granted at a per share exercise price equal to fair market value of the stock on the date of grant.

Mr. Madonna will also be entitled to certain other customary perquisites, including use of an automobile and reimbursement of related operating expenses, health and disability insurance available to all employees, and reimbursement for travel, entertainment and club dues and expenses. Under the agreement, the Company and the Bank also agree to reimburse Mr. Madonna for the cost of term life insurance policies providing a death benefit in the amount of $4.0 million. The cost to the Company of such life insurance policies from and after March 1, 2021, will reduce, on a dollar-for-dollar basis, the severance payment payable to Mr. Madonna described below.

Mr. Madonna's agreement provides for certain severance and change in control benefits. In the event of termination of Mr. Madonna's employment for any reason, including a merger or sale of the Company or the Bank or transfer of a majority of the stock of the Company or the Bank (any one of which shall be considered a "Change in Control") or failure by the Company and the Bank to continue his employment at the termination of the agreement or any subsequent employment agreement, or if Mr. Madonna is not elected a member of the boards of directors of the Company or the Bank or upon agreement that Mr. Madonna is to transition from service as President and Chairman Emeritus to service as a non-employee director of the Company and the Bank (each a "Termination Event"), Mr. Madonna would be entitled to receive a severance payment in the amount of $1.6 million, and five years of continued health benefits. Mr. Madonna would not be entitled to any severance or other payments in the event that his employment terminates for cause, resignation by him without good cause, or as a result of his death. Subject to compliance with Section 409A of the Internal Revenue Code, all severance payments are to be made in a lump sum within 30 days after the applicable termination event.

Case ID: 221102195

In the event of a merger or sale or transfer of a majority of the stock of the Company or the Bank while Mr. Madonna remains employed by the Company and the Bank or remains serving as a director (or within one year after Mr. Madonna ceases to provide any services to either the Company or the Bank in any capacity), he will be entitled, in addition to any other compensation payable to him under the agreement, to a transaction bonus in an amount determined by the compensation committees of the Company and the Bank, which cannot be less than $1.0 million. The transaction bonus is payable within 30 days following consummation of the transaction giving rise to payment of such bonus.

The agreement provides for non-disclosure by Mr. Madonna of any confidential information relating to the business of the Company or the Bank during or after the period of his employment, except in the course of employment related duties. In the event that the amounts and benefits payable under the agreement are such that Mr. Madonna becomes subject to the excise tax provisions of Section 4999 of the Internal Revenue Code, Mr. Madonna will be entitled to receive a tax gross-up payment to reimburse him for the amount of such excise taxes. He will also receive a tax gross-up payment for certain other taxes payable by him with respect to certain perquisites under the agreement.

*Employment Agreements with Messrs. Logue, Cavallaro and Neilon and Ms. Young.* On July 14, 2015, the Bank entered into employment agreements with each of Andrew J. Logue, President and Chief Operating Officer of the Bank; Frank A. Cavallaro, Executive Vice President and Chief Financial Officer of the Company and the Bank; Jay M. Neilon, Executive Vice President and Chief Credit Officer of the Bank; and Tracie A. Young, Executive Vice President and Chief Risk Officer of the Bank. Each of the employment agreements is for a one-year term commencing on July 1, 2015, with annual renewals thereafter absent notice of non-renewal by either party at least six months prior to an annual renewal date.

Under the employment agreements, each executive officer is entitled to receive a specified annual base salary and is eligible to participate in other compensation plans or programs maintained by the Company or the Bank for senior executive officers, including stock compensation, retirement, savings and similar plans. Each executive officer is also able to earn an annual bonus based on criteria established by the compensation committee of the Board.

In the event of termination of an executive officer's employment, including resignation by the officer for specified events of "good reason" or a failure to continue an officer's employment at termination of the employment agreement, the officer would be entitled to receive a lump-sum payment equal to two times the officer's base salary in effect immediately prior to termination (the "Severance Payment"). If the executive's employment is terminated as a result of, or in contemplation of, a change in control of the Company, the executive would be entitled to receive the Severance Payment unless the executive accepts a position after the change of control in the surviving company. No severance is payable in the event of termination of an executive's employment for specified events of "cause," or as a result of an executive's death, disability or resignation without good reason.

The employment agreements include customary provisions relating to non-competition and non-solicitation of customers and employees for a period of twelve months following termination of employment. The employment agreements replace and supersede any prior employment or change in control agreements to which any of the executive officers were a party.

- 28 -

Case ID: 221102195

## Outstanding Equity Awards at 2021 Fiscal Year End

The following table sets forth information concerning outstanding equity awards held by the Company's named executive officers as of December 31, 2021.

| Name | Option Awards | | | | | Stock Awards | |
|---|---|---|---|---|---|---|---|
| | Number of Securities Underlying Unexercised Options Exercisable (#) | Number of Securities Underlying Unexercised Options Unexercisable (#) | | Option Exercise Price ($) | Option Expiration Date | Number of Shares or Units of Stock That Have Not Vested (#) (5) | Market Value of Shares or Units of Stock That Have Not Vested ($) (6) |
| Vernon W. Hill, II | 25,000 | - | | 2.95 | 5/10/23 | - | - |
| | 100,000 | - | | 8.00 | 2/28/27 | - | - |
| | 100,000 | - | | 8.40 | 2/22/28 | - | - |
| | 100,000 | - | | 6.60 | 2/19/29 | - | - |
| | - | 100,000 | (1) | 3.01 | 2/27/30 | - | - |
| | - | | | - | - | 33,000 | 122,760 |
| Harry D. Madonna | 12,000 | - | | 1.95 | 2/28/22 | - | - |
| | 12,000 | - | | 2.69 | 3/13/23 | - | - |
| | 12,000 | - | | 3.68 | 2/28/24 | - | - |
| | 100,000 | - | | 3.55 | 3/12/25 | - | - |
| | 100,000 | - | | 3.99 | 2/23/26 | - | - |
| | 100,000 | - | | 8.00 | 2/28/27 | - | - |
| | 100,000 | - | | 8.40 | 2/22/28 | - | - |
| | 100,000 | - | | 6.60 | 2/19/29 | - | - |
| | - | 100,000 | (1) | 3.01 | 2/27/30 | - | - |
| | - | | | - | - | 33,000 | 122,760 |
| Frank A. Cavallaro | 15,000 | - | | 1.95 | 2/28/22 | - | - |
| | 12,000 | - | | 2.69 | 3/13/23 | - | - |
| | 12,000 | - | | 3.68 | 2/28/24 | - | - |
| | 12,000 | - | | 3.55 | 3/12/25 | - | - |
| | 12,000 | - | | 3.99 | 2/23/26 | - | - |
| | 25,000 | - | | 8.00 | 2/28/27 | - | - |
| | 22,500 | 7,500 | (2) | 8.40 | 2/22/28 | - | - |
| | 20,000 | 10,000 | (3) | 6.60 | 2/19/29 | - | - |
| | 10,000 | 30,000 | (4) | 3.01 | 2/27/30 | - | - |
| | - | | | - | - | 25,000 | 93,000 |

Case ID: 221102195

| Name | Option Awards | | | | | Stock Awards | |
|---|---|---|---|---|---|---|---|
| | Number of Securities Underlying Unexercised Options Exercisable (#) | Number of Securities Underlying Unexercised Options Unexercisable (#) | | Option Exercise Price ($) | Option Expiration Date | Number of Shares or Units of Stock That Have Not Vested (#) (5) | Market Value of Shares or Units of Stock That Have Not Vested ($) (6) |
| Andrew J. Logue | 15,000 | - | | 1.95 | 2/28/22 | - | - |
| | 12,000 | - | | 2.69 | 3/13/23 | - | - |
| | 12,000 | - | | 3.68 | 2/28/24 | - | - |
| | 12,000 | - | | 3.55 | 3/12/25 | - | - |
| | 15,000 | - | | 3.99 | 2/23/26 | - | - |
| | 50,000 | - | | 8.00 | 2/28/27 | - | - |
| | 30,000 | 10,000 | (2) | 8.40 | 2/22/28 | - | - |
| | 25,000 | 25,000 | (3) | 6.60 | 2/19/29 | - | - |
| | 12,500 | 37,500 | (4) | 3.01 | 2/27/30 | - | - |
| | - | - | | - | - | 25,000 | 93,000 |
| Jay Neilon | 15,000 | - | | 1.95 | 2/28/22 | - | - |
| | 12,000 | - | | 2.69 | 3/13/23 | - | - |
| | 12,000 | - | | 3.68 | 2/28/24 | - | - |
| | 12,000 | - | | 3.55 | 3/12/25 | - | - |
| | 12,000 | - | | 3.99 | 2/23/26 | - | - |
| | 25,000 | - | | 8.00 | 2/28/27 | - | - |
| | 22,500 | 7,500 | (2) | 8.40 | 2/22/28 | - | - |
| | 20,000 | 20,000 | (3) | 6.60 | 2/19/29 | - | - |
| | 10,000 | 30,000 | (4) | 3.01 | 2/27/30 | - | - |
| | - | - | | - | - | 13,500 | 50,220 |
| Tracie A. Young | 15,000 | - | | 1.95 | 2/28/22 | - | - |
| | 12,000 | - | | 2.69 | 3/13/23 | - | - |
| | 3,000 | - | | 3.55 | 3/12/25 | - | - |
| | 6,000 | - | | 3.99 | 2/23/26 | - | - |
| | 25,000 | - | | 8.00 | 2/28/27 | - | - |
| | 22,500 | 7,500 | (2) | 8.40 | 2/22/28 | - | - |
| | 20,000 | 20,000 | (3) | 6.60 | 2/19/29 | - | - |
| | 10,000 | 30,000 | (4) | 3.01 | 2/27/30 | - | - |
| | - | - | | - | - | 13,500 | 50,220 |

(1) Options vest and become exercisable on February 27, 2022.

(2) Options vest and become exercisable in four equal annual installments beginning February 22, 2019, the first anniversary date of the grant.

(3) Options vest and become exercisable in four equal annual installments beginning February 19, 2020, the first anniversary date of the grant.

(4) Options vest and become exercisable in four equal annual installments beginning February 27, 2021, the first anniversary date of the grant.

(5) RSUs granted to Mr. Hill and Mr. Madonna vest in full on the one-year anniversary date of the grant, February 18, 2022. RSUs granted to Mr. Cavallaro, Mr. Logue, Mr. Neilon and Ms. Young vest in four equal annual installments beginning February 18, 2022, the first anniversary date of the grant.

(6) The market value realized upon vesting was calculated using the closing price of Common Stock ($3.72 per share) on December 31, 2021.

Case ID: 221102195

**Option Exercises and Stock Vested in 2021**

There were no exercises of outstanding stock options or vesting of stock awards for the Company's named executive officers during the year ended December 31, 2021.

**Pension Benefits at December 31, 2021**

In 1992, the Company adopted a supplemental retirement plan for non-employee directors. The plan was frozen to new participants in 1992, but the Company continues to maintain the plan for participants who served as non-employee directors in 1992. At that time, Mr. Madonna was a non-employee director and he continues to be a participant in the plan. The present value of accumulated benefit was calculated based upon the actuarial present value of accumulated benefits, calculated as of December 31, 2021, as described below. The plan provides for a retirement benefit of $25,000 per year for ten years, which payments may begin at the later of actual retirement date or 65 years of age. Mr. Madonna has reached 65 years of age and the amount shown in the table below represents the present value of the accumulated benefit amount necessary to fund $25,000 annual payments over a ten year period commencing December 31, 2021, which was the end of the Company's most recently completed fiscal year. Present value was calculated using a 4% discount rate.

| Name | Plan Name | Number of Years Credited Service (#) (1) | Present Value of Accumulated Benefit (1)($) | Payments During Last Fiscal Year ($) |
|------|-----------|------------------------------------------|---------------------------------------------|--------------------------------------|
| Harry D. Madonna | Amended and Restated Supplemental Retirement Plan | 29 | 210,883 | - |

(1) Mr. Madonna's years of credited service and the present value of his accumulated benefit were determined as of December 31, 2021, which is the same pension plan measurement date that the Company used for financial statement reporting purposes with respect to its audited financial statements for the fiscal year ended December 31, 2021. Years of credited service reflect the number of years since the plan was adopted.

Case ID: 221102195

### Nonqualified Deferred Compensation at December 31, 2021

The Company maintains a deferred compensation plan for the benefit of certain officers and directors. In 2009, the compensation committee prohibited any additional individuals from participating in the plan. Mr. Madonna is the only named executive officer who is an eligible participant. The plan permits participants to make elective contributions to their accounts, subject to applicable provisions of the Internal Revenue Code. In addition, the Company may make discretionary contributions to participant accounts. Company contributions are subject to vesting, and generally vest three years after the end of the plan year to which the contribution applies, subject to acceleration of vesting upon certain changes in control (as defined in the plan) and to forfeiture upon termination for cause (as defined in the plan). Participant accounts are adjusted to reflect contributions and distributions, and income, gains, losses, and expenses as if the accounts had been invested in permitted investments selected by the participants, including Common Stock. The plan provides for distributions upon retirement and, subject to applicable limitations under the Internal Revenue Code, limited hardship withdrawals.

| Name | Executive Contributions in Last Fiscal Year ($) | Registrant Contributions in Last Fiscal Year ($) | Aggregate Earnings (Losses) in Last Fiscal Year ($) (1) | Aggregate Withdrawals/ Distributions in Last Fiscal Year ($) | Aggregate Balance at Last Fiscal Year-End ($) (2) |
|---|---|---|---|---|---|
| Harry D. Madonna | - | - | 56,503 | - | 897,092 |

(1) Mr. Madonna's deferred compensation account is credited with gains, losses and expenses as if it had been invested in shares of a private equity fund as allowed by the plan. The amount reported is also included in the 2021 Summary Compensation Table.

(2) The Company contributions to the deferred compensation plan vested over a three-year period as defined in the plan. At December 31, 2021, the aggregate balance of $897,092 was fully vested.

## Potential Payments Upon Termination or Change in Control

*Termination or Change in Control Provisions in Agreements.* The Company and the Bank are parties to employment agreements that provide severance benefits to the named executive officers under certain circumstances in the event of termination of their employment, including as a result of a change in control of the Company or the Bank. For a description of such agreements, see "Description of Employment Agreements."

*Termination or Change in Control Provision in Deferred Compensation Plan.* Our deferred compensation plan provides that:

- a participant is 100 percent vested as to amounts voluntarily deferred by the participant; and
- any company contributions will be 100 percent vested upon a "change of control" (as defined in the deferred compensation plan).

A participant's benefits in the deferred compensation plan are payable as soon as practicable following a termination of employment from the Company. Mr. Madonna is the only named executive officer who is an eligible participant in the deferred compensation plan.

*Change in Control Provisions in the Company's Equity Compensation Plans.* The Company's equity compensation plans each provide that all outstanding stock options become immediately exercisable upon a change of control of the Company (as defined in the plans). The plans also provide that upon a change of control of the Company, all restrictions on the transfer of restricted shares granted under the plans which have not been forfeited prior to such date shall lapse.

- 32 -

Case ID: 221102195

The following table shows the estimated amount of payments and benefits that would be provided by the Company to the named executive officers under the plans and agreements described above, that were in effect as of December 31, 2021, assuming their employment was terminated as of December 31, 2021, for various reasons as described below.

**Reason for Termination of Employment**

| Name of Officer and Nature of Payment | Termination by Executive for Cause or Termination by Us Without Cause | Death | Disability | Termination by Us Without Cause or Termination by Executive for Cause in Connection with Change in Control | Transition from Executive Officer to Non-Employee Board Member |
|---|---|---|---|---|---|
| **Vernon W. Hill, II** | | | | | |
|   Total cash payment (1) | $ 1,500,000 | $ 1,500,000 | $ 386,333 | $ 2,307,942 | $ - |
|   Acceleration of stock and option awards (4) | - | - | 193,760 | 193,760 | - |
|   Cost of continuation of benefits | 25,786 | - | - | 25,786 | - |
|   Total | $ 1,525,786 | $ 1,500,000 | $ 562,093 | $ 2,527,488 | $ - |
| **Harry D. Madonna** | | | | | |
|   Total cash payment (2) | $ 2,697,975 | $ 1,107,975 | $ 2,697,975 | $ 5,135,300 | $ 1,590,000 |
|   Acceleration of stock and option awards (4) | - | - | - | 193,760 | - |
|   Cost of continuation of benefits | 66,001 | - | 66,001 | 66,001 | 66,001 |
|   Total | $ 2,763,975 | $ 1,107,975 | $ 2,763,975 | $ 5,395,061 | $ 1,656,001 |
| **Andrew J. Logue** | | | | | |
|   Total cash payment (3) | $ 960,000 | - | - | $ 960,000 | - |
|   Acceleration of stock and option awards (4) | - | - | - | 119,625 | - |
|   Cost of continuation of benefits | - | - | - | - | - |
|   Total | $ 960,000 | | | $ 1,079,625 | - |
| **Jay Neilon** | | | | | |
|   Total cash payment (3) | $ 654,000 | - | - | $ 654,000 | - |
|   Acceleration of stock and option awards (4) | - | - | - | 71,520 | - |
|   Cost of continuation of benefits | - | - | - | - | - |
|   Total | $ 654,000 | | | $ 725,520 | - |
| **Frank A. Cavallaro** | | | | | |
|   Total cash payment (3) | $ 720,000 | - | - | $ 720,000 | - |
|   Acceleration of stock and option awards (4) | - | - | - | 114,300 | - |
|   Cost of continuation of benefits | - | - | - | - | - |
|   Total | $ 720,000 | | | $ 834,300 | - |
| **Tracie A. Young** | | | | | |
|   Total cash payment (3) | $ 624,000 | - | - | $ 624,000 | - |
|   Acceleration of stock and option awards (4) | - | - | - | 71,520 | - |
|   Cost of continuation of benefits | - | - | - | - | - |
|   Total | $ 624,000 | | | $ 695,520 | - |

(1)  Represents amounts payable in accordance with the terms of Mr. Hill's employment agreement including an amount equal to three times Mr. Hill's base salary in effect immediately prior to termination. The total cash payment due in connection with a change in control also includes reimbursement of certain excise taxes that may become payable in connection with this termination payment. The amount payable as a result of termination due to a permanent disability is calculated assuming that Mr. Hill receives on a monthly basis an amount equal to 70% of his base salary through the end of the current term of his employment agreement after consideration of standard employer-provided disability benefits.

Case ID: 221102195

(2)    Represents amounts payable in accordance with terms of employment agreement including a fixed sum equal to $1.59 million as consideration for Mr. Madonna's services to the Company prior to termination. Also includes $897,092, representing benefits payable under the deferred compensation plan, and $210,883, representing the present value of Mr. Madonna's supplemental retirement benefits, or ten annual payments of $25,000 each, determined using a 4% discount rate. The total cash payment due in connection with a change in control includes a transaction bonus in the amount of $1.0 million plus reimbursement of certain excise taxes that may become payable in connection with this termination payment. In lieu of annual supplemental retirement benefit payments, Mr. Madonna may elect to receive an assignment of a life insurance policy, which had a cash surrender value of $263,564 at December 31, 2021. The amounts detailed above are payable within 30 days of a termination event.

(3)    Represents a lump sum severance payment due in accordance with employment agreement in an amount equal to two times the executive's annual base salary in effect immediately prior to termination. The amount is payable within 30 days of a termination event or in connection with a change in control unless the executive accepts a position with the surviving company after a change in control.

(4)    Amount represents the value of accelerated vesting of unexercisable stock options and restricted stock units. The value of stock options that become vested is based on the difference between the price of our common stock on an assumed termination date of December 31, 2021 ($3.72) and the exercise price of all unexercisable stock options listed in the "Outstanding Equity Awards at December 31, 2021 Fiscal Year End" table in this information statement.

Termination of employment by an executive officer without cause or termination by the Company with cause would not result in any payments or continuation of benefits to the executive officers in the table above.

### Chief Executive Officer Pay Ratio Disclosure

The following pay ratio information is provided in accordance with the requirements of Item 402(u) of Regulation S-K of the Exchange Act.

For fiscal 2021, the Company's last completed fiscal year:

- the median of the annual total compensation of all employees of the Company (other than the Chief Executive Officer) was $55,192; and
- the annual total compensation of the Company's Chief Executive Officer, Vernon W. Hill, II, was $618,625.

Based on this information, the ratio for 2021 of the annual total compensation of the Chief Executive Officer to the median of the annual total compensation of all employees is 11 to 1.

The following steps were taken to determine the annual total compensation of the median employee and the Chief Executive Officer:

- As of December 31, 2021, the employee population consisted of approximately 514 individuals, including full time, part time, temporary, and seasonal employees employed on that date. This date was selected because it aligned with calendar year end and allowed identification of employees in a reasonably efficient manner.

- 34 -

- For purposes of identifying the median employee from our employee population base, wages from our internal payroll records for the twelve-month period ended December 31, 2021 were used. These wages were consistent with amounts reported to the Internal Revenue Service on Form W-2 for fiscal 2021. Consistent with the calculation of the Chief Executive Officer's annual compensation, other elements of employee compensation were considered and added, if applicable when calculating the annual total compensation for all employees.
- In addition, the compensation of approximately 60 full time or part time employees who were hired during 2021 and employed on December 31, 2021 was annualized. No full-time equivalent adjustments were made for part time employees, of which there were approximately 20.
- The median employee was identified using this compensation measure and methodology, which was consistently applied to all employees. The amounts reported in the 2021 Summary Compensation Table for named executive officers was used for the total annual compensation of the Chief Executive Officer. The salary amount reported in this table was annualized to reflect a full year's compensation for the purpose of calculating the pay ratio disclosure.

Compensation Committee Interlocks and Insider Participation

During the last fiscal year, Messrs. Spevak (chair) and Flocco and Ms. Jacobs served as members of the compensation committee. None of the members of the compensation committee are a present or past employee or officer of the Company. None of the members of the compensation committee have had and/or maintain related party transactions with the Company that are required to be reported under Item 404 of Regulation S-K.

Case ID: 221102195

**Director Compensation**

The following table sets forth information regarding compensation paid by the Company to its non-employee directors during 2021.

Director Compensation in 2021

| Name | Fees Earned or Paid in Cash ($) | Stock Awards ($) (1) | Change in Pension Value and Nonqualified Deferred Compensation Earnings | Total ($) |
|---|---|---|---|---|
| Andrew B. Cohen | 59,500 | 28,390 | - | 87,890 |
| Theodore J. Flocco, Jr. | 95,500 | 28,390 | - | 123,890 |
| Vernon W. Hill II (2) | 43,333 | - | - | 43,333 |
| Lisa R. Jacobs, Esq. | 68,750 | 28,390 | - | 97,140 |
| Barry L. Spevak | 85,500 | 28,390 | 38,513 | 152,403 |
| Brian Tierney, Esq. | 55,500 | 28,390 | - | 83,890 |
| Harris Wildstein, Esq. | 77,750 | 28,390 | 28,703 | 134,843 |

(1) The amount shown is the aggregate grant date fair value calculated in accordance with FASB ASC Topic 718. Each of the non-employee directors in the table above, with the exception of Mr. Hill, received a grant of 8,500 restricted stock units (RSUs) on February 18, 2021. Each of the RSUs vest in full on the one-year anniversary date of the grant, subject to acceleration upon consummation of a change in control.

(2) Mr. Hill's services agreement (described in the section entitled "Services and Employment Agreements with Chairman and Chief Executive Officer" below) provided for aggregate compensation of $360,000 on an annual basis for all of the services he provided under the services agreement as Chairman of the Board. In February 2021, Mr. Hill was named to the additional role of Chief Executive Officer and entered into an employment agreement. The fees reflected in the table above represent payments made during the months of January and February 2021 under the services agreement while he served only as Chairman. All compensation, including equity awards, received under his new employment agreement are reported in the 2021 Summary Compensation Table for all named executive officers.

At December 31, 2021, each of the non-employee directors in the table above held the following aggregate number of option awards and restricted stock awards:

| Name | Option Awards | Stock Awards |
|---|---|---|
| Andrew B. Cohen | 75,000 | 8,500 |
| Theodore J. Flocco, Jr. | 140,000 | 8,500 |
| Lisa R. Jacobs, Esq. | 75,000 | 8,500 |
| Barry L. Spevak | 140,000 | 8,500 |
| Brian Tierney, Esq. | 140,000 | 8,500 |
| Harris Wildstein, Esq. | 140,000 | 8,500 |

Case ID: 221102195

Employee directors receive no additional compensation for their service on the Board. During 2021, non-employee directors received a $12,500 quarterly retainer fee. The audit committee chair received an annual fee of $20,000 for serving as the chairman of the committee during 2021 and $2,000 for each committee meeting attended. The other members of the audit committee received $1,500 for each committee meeting attended. The chair of all other Board committees received an annual fee of $3,000 for serving as a committee chairman during 2021 and each member of those committees received $1,000 for every committee meeting attended.

Certain non-employee directors, namely Messrs. Spevak and Wildstein, are also eligible to participate in a nonqualified deferred compensation plan. Their deferred compensation accounts are credited with gains, losses and expenses as if they had been invested in the common stock of the Company and shares of certain publicly traded mutual funds as allowed by the plan. The gains credited to their deferred compensation accounts during 2021 are reflected in the "Director Compensation in 2021" table above.

**Services and Employment Agreements with Chairman and Chief Executive Officer**

On March 9, 2017, the Company entered into an agreement with Vernon W. Hill, II regarding his provision of services to the Company as Chairman of the Board (the "services agreement"). The initial term of the agreement was a five-year period commencing on March 9, 2017. In addition to his position as Chairman of the Board, Mr. Hill became Chief Executive Officer of the Company and the Bank and Chairman of the Board of the Bank in February 2021. Accordingly, the Company and Mr. Hill entered into a new employment agreement (the "employment agreement"), which replaced the existing services agreement, effective as of March 1, 2021, to reflect the changes in Mr. Hill's duties and positions.

Under the services agreement, Mr. Hill served as Chairman of the Board, to preside over all meetings of the Board and shareholders, and perform such other functions as required of a public company board chairman and such other duties as the Board may require, which he did through February of 2021. For services under the agreement, Mr. Hill was entitled to receive base compensation of not less than $360,000 per year, and to participate in any bonus programs, incentive compensation plans, stock option plans or similar benefit or compensation plans at any time in effect that are made generally available to directors and executive officers of the Company.

Under the new employment agreement, Mr. Hill is entitled to receive base compensation of not less than $490,000 per year, and to participate in any bonus programs, incentive compensation plans, stock option plans or similar benefit or compensation plans at any time in effect that are made generally available to directors and executive officers of the Company. The employment agreement is for a two-year term and is extended on each annual anniversary date to provide for a two-year term unless either party provides written notice that such party desires to terminate the agreement prior to an annual anniversary date. The Company may terminate Mr. Hill's services under the agreement at any time with or without "cause" (as defined in the agreement). In the event of a termination by the Company for cause, Mr. Hill would be entitled to any prorated portion of his compensation through the termination date and the Company would have no further obligations under the agreement. In the event that the Company terminates Mr. Hill's services without cause, the Company would be required to pay Mr. Hill, a lump-sum severance payment equal to three times his base salary plus a continuation of specified benefits for a period of one year. The Company may also terminate the agreement for permanent disability, in which case Mr. Hill would receive a portion of his compensation for the balance of the remaining term of the agreement offset by any disability payments due to Mr. Hill under any company-sponsored disability plan. In the event of death, Mr. Hill's estate would be entitled to a death benefit equal to three times compensation.

Case ID: 221102195

Mr. Hill may voluntarily terminate his services under the employment agreement for specified events of "good reason" occurring within three years after a change in control of the Company. In the event of Mr. Hill's voluntary termination for any of such events of good reason following a change in control of the Company, he would be entitled to a lump-sum severance payment equal to three times his base salary plus a continuation of specified benefits for a period of one year.

## CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS

### Transactions with Related Persons

The Bank has made, and expects to continue to make in the future, loans to directors and executive officers of the Company and the Bank, and to their immediate family members, and to firms, corporations, and other entities in which they and their immediate family members maintain interests. None of such loans are nonaccrual, past due, restructured or potential problems, and all of such loans were made in the ordinary course of business, on substantially the same terms, including interest rates and collateral, as those prevailing at the time for comparable loans with persons not related to the Company or the Bank and did not involve more than the normal risk of collectability or present other unfavorable features.

The Company entered into a services agreement with Mr. Hill, dated March 9, 2017, regarding his provision of services to the Company as Chairman of the Board. Effective as of March 1, 2021, the Company entered into a new employment agreement with Mr. Hill to reflect his additional position as Chief Executive Officer. The new agreement replaces in its entirety, the prior services agreement with Mr. Hill that was initially entered into on March 9, 2017. For a description of Mr. Hill's services agreement and the replacement employment agreement with the Company, see "Services and Employment Agreements with Chairman and Chief Executive Officer" on page 37 through page 38.

Mr. Hill is Chairman of the Board, the Chief Executive Officer, and a beneficial owner of more than five percent of the outstanding Common Stock. Accordingly, he and his wife are considered related persons. Pursuant to the agreements described above, Mr. Hill received $43,333 during 2021 and $260,000 during 2020 as compensation under his services agreement for his role on the Board. In addition, we paid $667,000 and $390,000 during 2021 and 2020, respectively, to InterArch, Inc., a company that is wholly-owned by Mr. Hill's wife, for marketing, graphic design, architectural, and project management services. We also paid $177,000 per year during 2021 and 2020 to Glassboro Properties, LLC related to a land lease agreement for our Glassboro store. Mr. Hill has an ownership interest in Glassboro Properties LLC, which is a commercial real estate firm.

We paid $120,000 per year during 2021 and 2020, to Brian Communications for public relations services. Brian Tierney, a member of the Board, is the chief executive officer of Brian Communications, a strategic communications agency.

Case ID: 221102195

Please refer to the proxy materials filed with the SEC on behalf of the nominees when they become available. You can access these proxy statements, and any other relevant documents, without cost on EDGAR at www.sec.gov.

<u>Review, approval or ratification of transactions with related persons</u>

All transactions, including arrangements and relationships, with related persons that are required to be disclosed pursuant to Item 404 of SEC Regulation S-K are approved by our Board excluding interested parties. Extensions of credit to insiders, including related persons, are made pursuant to a written policy designed to ensure compliance with Federal Reserve Board Regulation O, the primary federal banking regulation which governs extensions of credit to insiders, and is applicable to the Bank.

## ENVIRONMENTAL, SOCIAL, DIVERSITY, EQUITY AND INCLUSION HIGHLIGHTS

As a publicly traded, community oriented financial institution, it is incumbent upon the Company to assure that its operations are conducted in a manner that is both consistent with environmental preservation and supportive of the entire community in which it operates.

### *Environmental Commitments*

While the Company does not have a formal environmental policy because the nature of its operations does not result in a direct, material impact on the environment, the Company strives to operate in a manner that is environmentally friendly when building or renovating our stores by utilizing materials intended to leave as small a carbon footprint as economically feasible. Additionally, through the Bank's credit portfolio, the Company has strived to focus its efforts on companies that also operate in an environmentally favorable manner.

### *Social Commitments*

As part of the Company's focus on social sustainability, the Bank maintains a Community Reinvestment Act Committee (the "CRA Committee"), whose mission it is to positively impact the communities in which we live and work by focusing on certain core initiatives, including financial empowerment; education; diversity and inclusion; volunteerism; and health and wellness.

Below are some of the initiatives and events we are proud to highlight for 2021:

- *Flexible Lending Programs* - The Bank participates in several flexible loan programs which offer access to credit to underserved members of the community including:
  - o *Philadelphia Neighborhood Home Preservation Loan Program* - The Bank became one of only two lenders to partner with the City of Philadelphia to offer community homeowners with low-interest loans to restore, repair, and renew their homes;
  - o *PHFA K-Fit* and *NJHMFA Down Payment Assistance Loan Programs* - Our participation in these programs allows us to provide qualified borrowers with forgivable second loans to help offset down payments and closing costs;
  - o *Federal Housing Administration (FHA) Programs* - The Bank participates in the FHA's 203(b) and 203(K) Rehabilitation Programs, as well as the FHA's First Front Door Program which provides qualified first-time homebuyers with grant money towards their down payment and/or closing costs;

- 39 -

Case ID: 221102195

- o *FHLB Pittsburgh First Front Door and Affordable Housing Programs* - The Bank participates in the First Front Door Program for qualified first-time homebuyers, which provides grants towards down payments and closing costs, while the Affordable Housing Program finances the development affordable housing projects to help benefit our communities in Pennsylvania; and
  - o We continue to offer Fannie Mae HomeReady, NJHMFA Homeward Bound, VA, USDA, and SBA loans.
- *Financial Literacy* - We promote financial literacy through a number of education programs including:
  - o Our Money Zone Program, which offers learning-level appropriate financial education classes and webinars for all members of the community (Pre-K through elder care), as delivered through our partnerships with local schools and community centers;
  - o Our participation in the Camden Future Bankers Camp, which offers high school students a discussion in career development and introduced them to the student banking experience, which educated them on opening and maintaining a bank account;
  - o Our tax preparation and educational programs with CEIBA; and
  - o Our small business lending and entrepreneurial education initiatives through our partnerships with organizations such as Entrepreneur Works of Philadelphia and The Enterprise Center.
- *Supporting Education* - We have supported various educational institutions through EITC for over $90,000 in 2021. In addition, the Bank offers tuition reimbursement to its employees in order to foster and promote continuing education internally.
- *Supporting Non-Profits and Community Reinvestments (CRA):* We contributed over $420,000 in 2021 to community organizations and charities through sponsorships and contributions to 501(c)(3) programs, which includes over $300,000 in sponsorship and contributions, as well as over $120,000 in CRA grants.
- *Supporting Empowerment* - We supported empowerment of underserved populations in several ways including:
  - o Partnering with the City of Philadelphia's BankOn Program to provide safe and affordable banking services (including deposit accounts) to underbanked and underserved community members;
  - o Partnering with the Women's Opportunities Resource Center (WORC) to provide a Family Savings Accounts (FSA) program to promote social and economic self-sufficiency for economically disadvantaged women and their families;
  - o Partnering with Bottomless Closet in New York City to host a clothing drive, offer career coaching, interview preparation, and resume feedback to women seeking employment. In addition to serving as partner, the Bank was proud to offer full-time employment to one of Bottomless Closet's clients in 2021; and

Case ID: 221102195

- o  We partnered with schools in Camden, NJ (LEAP Academy and St. Joseph Pro-Cathedral) to present the "Be All You Can Be" presentation to high school students predominantly from low- to moderate-income neighborhoods.
- *Supporting Health and Wellness* - In 2021, we engaged in the following initiatives promoting health and wellness:
  - o  Our partnership with Girls on the Run Philadelphia to sponsor their efforts to train young girls to build social, emotional and physical skills, while encouraging healthy habits for life;
  - o  Our partnership with Manna to help provide nutritious meals for individuals in the greater Philadelphia area who are suffering from serious illness and who are at nutritional risk due to disease or treatment or disease;
  - o  The Bank partners with Humana, our EAP, program to offer counseling opportunities for all employees and any member of an employee's household. Information is available 24/7 through Humana's interactive website where videos and articles are available, as well a free telephone service to connect employees and family members to counselors specializing in a variety of mental health challenges. In 2021 Humana also focused attention on COVID-19 related stress with special articles and videos available to all employees; and
  - o  The Summer of 2021 encouraged wellbeing both onsite and virtually with the annual walking challenging. In 2021, we engaged Fit Academy, a black-owned Philadelphia business, and featured the owner to provide inspirational videos for the participants. Our "Do The Red Thing" wellness platform supported by Wellright, also included other wellness challenges to help employees begin and sustain personalized wellness journeys through activities for stress management, mental wellness, weight management and specific disease management. A variety of activities, articles and videos are available. Incentives are provided so that employees earn points for the "Do The Red" thing catalogue while they focus on wellness.
- *FHLB Pittsburgh Home4Good Program* - The Bank is a partner in the Home4Good Program, a flexible grant program that supports projects, programs, and activities that lead to stable housing for those who are homeless or at risk of becoming homeless.
- *Urban Affairs Coalition* - We partnered with the Urban Affairs Coalition to explore how to break down the barriers to homeownerships for minority and low- to moderate-income borrowers in our communities.
- *Volunteerism* - We sponsored several backpack, book, and holiday toy drives for the benefit of several local organizations including the Acenta, City Team Chester, Juvenile Justice Center, and Book Smiles. In addition, we partnered with the Lower Bucks Homeless Shelter and Bucks County Opportunity Council to provide meals and personal care items to their residents and seniors in need.
- *Pandemic Response* - The Bank originated over 7,000 PPP loans and EIDL loans in response to the COVID-19 pandemic, 3,000 of which were in 2021 alone, which we made available to all members of the community without regard to their status as depositor.

- 41 -

Case ID: 221102195

- *Diversity, Equity, and Inclusion Initiatives ("DEI Initiatives")* - We continued to bolster our DEI Initiatives throughout 2021:
  - Virtual training for our employees, officers, and directors, which included training on inclusion in the workplace as well as implicit bias training;
  - Employees are encouraged to inspire one another through interactive month-long celebrations of Black History Month, Women's History Month and Pride month on our corporate website. Content includes information, national and local resources on the topic.
  - The Bank's Human Resources Department provided employees, officers, and directors with communications and information on the importance of diversity, equality, and inclusion.

In addition to the above, we continue to forge the partnerships and are excited for the following opportunities in 2022:

- *Habitat for Humanity of Gloucester County* - The Bank continues to explore opportunities to serve as lender for Habitat for Humanity of Gloucester County wherein we will assist with project funding, volunteer for builds, and provide financial education to the homeowners following move-in in order to foster on-going financial literacy.
- *Enhancement of Money Zone Program* - The Bank is exploring solutions that would allow for the expansion of its Money Zone to homeschooled students, the development of webinars and workshops to be delivered in multilingual formats, and the development of a program geared towards youth and adults with special needs.
- *Partnership with LEAP Academy and Rutgers University* - The Bank is working with the LEAP Academy and Rutgers University in Camden, NJ to develop an employment program wherein graduates can obtain employment with the Bank post-graduation.

### Diversity, Equity and Inclusion in the Workplace

The Company strongly believes that diversity, equity and inclusion is critical to our success and the creation of long-term value for our shareholders. The Board and executive management are committed to diversity, equity and inclusion and have adopted policies, practices and programs that focus on achieving prompt and full utilization of minorities, individuals with disabilities, Vietnam-era and disabled veterans, and women at all levels and in all segments of the workforce; discourages all forms of discrimination; provides a culture and means for reporting all types of discrimination or harassment; and penalizes all forms of retaliation.

With respect to the Board, we acknowledge that a board consisting of individuals with diverse backgrounds ensures broader representation and inspires deeper commitment to management, employees, and the communities we serve. While not specific to a particular policy, the Board has made a commitment to prioritize diversity in gender, ethnic background, and professional experience when considering candidates for director in order to improve diversity at the board level. At the present time, 14.3% of our Board is diverse from a gender, race or ethnic perspective. For additional information regarding the composition of our current Board, including diversity, see the Board Diversity Matrix on pages 15 and 16.

Case ID: 221102195

In addition, the Company evidences its commitment to a culture of inclusiveness, equality and diversity at all levels of the Company's workforce. The Company aims to maintain a workplace that presents a respectful, productive environment for everyone and enables individuals to achieve their full potential. The Company seeks to engage a diverse workforce by creating a culture of inclusion that values similarities, differences, complexities and constructive dialogue. Annually the Bank's employees complete diversity and inclusion training, with a specific course directed to managers. The course helps the team identify the importance of diversity and inclusion, unconscious bias, as well as distinguishing micro and macro aggressions in the workplace, related to gender and ethnicity. Creating a diverse internal pipeline for promotional opportunities is supported by our expansion to considering high school students in underserved neighborhoods for entry level positions. We began participating in the Young Bankers of Camden program in 2021 to introduce banking to high school students and provide an internship for students from an underserved community. In 2022, we are partnering with LEAP Academy in a job readiness program for the recruitment of high school students from a diverse and underserved community. A month-long interactive celebration of Black History, Women's History, and Pride Month provides awareness, resources and a platform for employees to share inspiration on these topics.

As of December 31, 2021, approximately 17% of our executive officers, 41% of our senior management team, and 46% of all of our other officers were diverse from a gender, race or ethnic perspective. In addition, Company-wide approximately 59% of our employees are diverse from a gender, race or ethnic perspective. The Company is committed to continue to improve its diversity as positions are added or become available.

Case ID: 221102195

## DELINQUENT SECTION 16(A) REPORTS

Section 16(a) of the Exchange Act requires the Company's officers and directors and persons who own more than 10% of a registered class of the Company's equity securities (collectively, the "Reporting Persons") to file reports of ownership and changes in ownership with the SEC and to furnish the Company with copies of these reports. Based on the Company's review of the copies of the reports filed by such persons and written representations, the Company believes that all filings required to be made by Reporting Persons for the period from January 1, 2021 through December 31, 2021 were made on a timely basis with the exception of one Form 4 filing for Mr. Wildstein related to one sale of common stock which was inadvertently filed four days late. In addition, Form 4 filings for each member of the Board and each named executive officer related to the grant of restricted stock units on February 18, 2021 were inadvertently filed two days late.

## SHAREHOLDER PROPOSALS AND NOMINATIONS FOR THE 2022 ANNUAL MEETING

Once the Company's 2022 annual meeting of shareholders has been scheduled, the Company will provide notice as to when a written notice of any proposed director nomination or other proposal for consideration at the Company's 2022 annual meeting of shareholders must be received by the Corporate Secretary. Reference is made to the By-laws and SEC Rule 14a-8 for information concerning the content and form of such proposal and the manner in which such proposal must be made.

Nominations for election to the Board at the 2022 annual meeting may be made only in writing by a shareholder entitled to vote at the 2022 annual meeting of shareholders. Such nominations must be addressed to the Company's Corporate Secretary at Republic First Bancorp, Inc., Two Liberty Place, 50 South 16th Street, Suite 2400, Philadelphia, PA 19102, and must be accompanied by the following information: (i) the name and address of the shareholder who intends to make the nomination; (ii) a representation that the shareholder is a holder of record of stock entitled to vote at the meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (iv) such other information regarding each nominee proposed by such shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the SEC had each nominee been nominated or intended to be nominated by the Board; and (v) the consent of each nominee to serve as a director of the Company if so elected. The Chairman of any meeting of shareholders held to elect directors and the Board may refuse to recognize the nomination of any person not made in compliance with such provisions.

## OTHER MATTERS

The Company is not presently aware of any matters (other than procedural matters) that will be brought before the Special Meeting which are not reflected in the attached Notice of Special Meeting of Shareholders. The By-laws of the Company provided that any shareholder proposals to be brought before the Special Meeting must be stated in writing and filed with the secretary of the Company not later than the close of business on ___ 2022, the seventh (7th) day following the day on which notice of the Special Meeting was first given to shareholders.

Case ID: 221102195

## HOUSEHOLDING

Some banks, brokers and other nominee record holders may be participating in the practice of "householding" information statements. This means that only one copy of this information statement is being delivered to multiple shareholders sharing an address unless the Company has received contrary instructions from one or more shareholders. The Company will promptly deliver a separate copy of this document to you on written or oral request to the Company's Corporate Secretary, Two Liberty Place, 50 South 16th Street, Suite 2400, Philadelphia, PA 19102, (215) 735-4422. If you want to receive separate copies of the Company's proxy statement, Annual Report to Shareholders or Form 10-K in the future, or if you are receiving multiple copies and would like to receive only one copy for your household, you should contact your bank, broker or other nominee record holder, or you may contact the Company at the above address and phone number. ***This Information Statement was prepared by the Company at the direction of the Custodian and has not been approved by the Board or any Committee thereof.***

By Order of the Custodian
Custodian

Philadelphia, Pennsylvania
_____, 2022

Case ID: 221102195