**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>Plaintiffs,<br><br>vs.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>Defendants. | : : : : : : : : : : : : : : : : : | **CIVIL ACTION**<br>**NO. 22-cv-04953 (BMS)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR EXPEDITED REMAND**

In an outrageous and transparent attempt to manipulate the judicial system, avoid responsibility for their actions, overturn the ruling of a respected state court judge, and set their own deadlines for responding to Plaintiffs' pending preliminary injunction motion, Defendant, Republic First Bancorp, Inc. ("Republic First" or the "Company") and its board of directors (the "Board")—individual defendants Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV (collectively, the "Director Defendants" and, together with the Company, "Defendants")—wrongfully removed, with no legitimate basis, a shareholder voting rights case asserting exclusively Pennsylvania state law claims

only three days before an injunction hearing was scheduled to be held before the Hon. Judge Ramy I. Djerassi in the Court of Common Pleas of Philadelphia County. Before they removed this case, Defendants had sought repeatedly and unsuccessfully to delay that hearing, pleading personal difficulties, the press of their local counsel's obligations in another case, and the unwillingness of certain Defendants to appear in person before the Court of Common Pleas as required by Judge Djerassi's order setting the hearing. Not content with improperly removing the case with no notice to Plaintiffs, Defendants' counsel, Alan Epstein, Esq., then implicitly sought from Plaintiffs' counsel still further delays based on his trial schedule—notwithstanding that George M. Vinci, Esq. from the same firm had previously appeared for Defendants in the state court action (and requested delays based on *his* trial schedule), and notwithstanding that, as Judge Djerassi previously noted, Defendants' lead counsel have been admitted *pro hac vice* and can appear on their behalf. This Court must sanction this gamesmanship, remand this case, delay the annual meeting which is the subject of the underlying action, and issue monetary sanctions for this abusive conduct.

Defendants' removal is patently invalid. Defendants have absolutely no good faith basis to argue federal question jurisdiction. Instead, Defendants' removal is just another tactic in their long line of bad-faith machinations to rig the upcoming board election and undermine the proxy contest being waged by Plaintiffs George

E. Norcross, III, Gregory B. Braca, and Philip A. Norcross (collectively, "Plaintiffs"). As the Complaint explains, when faced with Plaintiffs' proxy contest, Defendants eliminated two board seats to prevent Plaintiffs from nominating, and the Company's shareholders from electing, fully half of the Board in upcoming elections. This alone violated Plaintiffs' rights to engage in their proxy contest and shareholder voting rights. Still unsatisfied, Defendants also lulled Plaintiffs into believing they were record holders of Company stock by accepting a number of prior requests and nominations—but when Plaintiffs nominated a candidate to run for the Board at the upcoming annual meeting, Defendants reversed course and rejected their nomination, claiming Plaintiffs were not record holders but merely beneficial owners of Company stock (albeit owning almost 10% of the outstanding shares).

As described above, Defendants' removal (almost thirty days after receiving the Complaint) followed on the heels of their request to the state court for a delay in the briefing and hearing on Plaintiffs' pending injunction motion. Although the state court denied Defendants' request to delay and instead imposed a schedule consistent with Plaintiffs' request for expedited relief, it afforded Defendants a choice: if Defendants truly required more time to prepare, the state court was willing to delay the hearing if Defendants delayed the Company's annual meeting, so that this critical shareholders' rights case could be heard while the playing field between the parties was still level. Instead of accepting this reasonable option, Defendants took the

decision out of the state court's hands and overrode its orders by removing the case the day before their response to the injunction motion was due and only three days before the hearing on the motion was scheduled to occur. Defendants dodged the fair adjudication of their actions by wrongly removing this case, seeking to employ a run-out-the-clock strategy so that the merits of Plaintiffs' case are never adjudicated and the Company's annual meeting goes ahead despite Defendants' negation of the shareholders' fair right to vote in a contested election.

The case should be remanded and Defendants sanctioned for their bad-faith removal. In addition to awarding Plaintiffs their costs and attorneys' fees, this Court should sanction Defendants by ordering that the 2022 annual meeting of shareholders scheduled for January 26, 2023, be delayed until at least sixty (60) days after Plaintiffs' preliminary injunction motion can be heard—which will put the parties in the same position they would have been in absent Defendants' improper removal.

## I.    FACTUAL BACKGROUND

### A.    Plaintiffs' Complaint Asserts Claims Under State Law.

On November 22, 2022, Plaintiffs filed a state law voting rights case in the Philadelphia Court of Common Pleas (Commerce Program), alleging that Republic First and its Board were attempting to thwart Plaintiffs' on-going proxy contest and negate the voting rights of Plaintiffs and all Company shareholders by manipulating

the Board composition and nomination process.  (*See generally* Complaint, ECF No. 1-1).  In essence, in the midst of Plaintiffs' proxy contest, Defendants reduced the number of board seats to limit Plaintiffs' ability to nominate directors and the shareholders' ability to elect up to half of the Board in the upcoming 2022 annual meeting and a special meeting Plaintiffs had requested (the "Board Entrenchment Scheme").  (*Id.* ¶ 19).  To further ensure that Plaintiffs' proxy contest would not succeed, Defendants also rejected Plaintiffs' director nomination claiming Plaintiffs were not "record holders" of Company stock, despite previously accepting Plaintiffs' record holder status and inducing Plaintiffs to believe they were record holders (the "Rigged Election Scheme").  (*Id.* ¶ 23).

The Complaint asserts six causes of action, all under Pennsylvania law: (Count I) "Declaratory and Injunctive Relief:  Violation of Shareholder Voting Rights through the Board Entrenchment Scheme"; (Count II) "Declaratory and Injunctive Relief:  Violation of Shareholder Voting Rights through the Nomination Process and Rejection of Plaintiffs' Nominee"; (Count III) "Declaratory and Injunctive Relief:  Waiver of Enforcement of the Bylaws"; (Count IV) "Declaratory and Injunctive Relief:  Estoppel"; (Count V) "Declaratory and Injunctive Relief: Violation of Company Articles, Bylaws and Pennsylvania Law in Setting an Unreasonable Nomination Deadline"; and (Count VI) "Declaratory and Injunctive Relief:  Violation of Bylaws." (*Id.* ¶¶ 129–78).

Plaintiffs delivered their Complaint to Defendants' counsel the day it was filed.  (Declaration of Laura E. Krabill, Esq. ("Krabill Decl.") ¶ 2, Ex. A (Nov. 22, 2022 email to Defendants' counsel without attachments)).

### B. Defendants Attempt to Delay a Ruling on Plaintiffs' Injunction Motion.

After Plaintiffs unsuccessfully attempted to resolve their dispute with Defendants, and with the delayed 2022 annual shareholder meeting and election of directors fast approaching,[1] on December 5, 2022, Plaintiffs filed a motion for preliminary injunction (the "PI Motion").  (Krabill Decl. ¶ 3, Exs. B (PI Motion with proposed orders), C (Memorandum of Law in Support of the PI Motion, the "PI Brief"), and D (Declaration of Philip A. Norcross, with all exhibits except the Complaint)).  Again, Plaintiffs delivered their PI Motion to Defendants' counsel the day it was filed.  (*Id.* ¶ 4, Ex. E (Dec. 5, 2022 email to Defendants' counsel without attachments)).

---

[1] The 2022 annual shareholder meeting was originally scheduled for early May 2022.  (*See* Compl. ¶ 7).  Significant upheaval at the Company, including infighting among the eight directors (four of whom are no longer on the Board) and two dissident shareholder groups waging proxy contests, resulted in Republic First's auditors demanding an internal investigation and delayed the Company's 2021 audited financial statements and Form 10-K.  (*Id.* ¶¶ 8–11).  The Company finally filed its belated Form 10-K (due in March 2022) on October 26, 2022, and announced that its 2022 annual shareholders meeting would take place on January 26, 2023.  (*Id.* ¶¶ 15, 17).

The PI Motion requested that the Court restrain Defendants from enforcing their improper board reduction scheme as a violation of shareholder voting rights (including the concomitant rights of Plaintiffs to wage a proxy fight). (PI Motion at 25). Plaintiffs cited a recent Delaware Chancery Court decision by Vice Chancellor Laster with virtually identical facts where an injunction like the one Plaintiffs sought was granted. (*Id.* ¶¶ 62–63). Further, Plaintiffs requested that Defendants be required to reopen the nomination process if additional Board seats would be up for election. (*Id.* ¶ 56). Finally, regardless of the board reduction issue, Plaintiffs demanded that Defendants be enjoined from rejecting their director nomination based on waiver, estoppel and violation of the Company's bylaws and Pennsylvania law. (*See* PI Brief at 40–56). The PI Motion requested that the Court order Defendants to respond by Monday, December 12, 2022, and schedule a hearing later the same week. (PI Motion at 2).

On December 6, Plaintiffs and Defendants conferred on a schedule for Defendants' response and a hearing. (Krabill Decl. ¶ 5). Because the Company's 2022 annual shareholders meeting and election of directors is scheduled for January 26, 2023, to effectively engage in their proxy contest and solicit their fellow shareholders' votes, Plaintiffs contended that a hearing before the Christmas holidays was necessary. (*Id.*) Defendants claimed they believed a hearing in the first week of January would provide Plaintiffs sufficient time to conduct their proxy

contest.  (*Id.*)  Plaintiffs also advised Defendants that the judge appointed to the case has a conflict with Plaintiffs' law firm and recuses herself from cases in which the firm appears, so Plaintiffs believed that the judicial assignment would likely need to change.  (*Id.* ¶ 6). That afternoon, the parties spoke with Susan Packer, the Court of Common Pleas Commerce Program administrator, who advised that she would resolve the judicial appointment issue but that the parties would need to contact the assigned judge to address scheduling.  (*Id.* ¶ 7).  The parties were notified late that afternoon that Judge Djerassi had been appointed to the case.  (*Id.* ¶ 8; ECF No. 1-7 (Docket report)).  The parties agreed to contact chambers together the next day. (Krabill Decl. ¶ 8, Ex. F (Dec. 6-7 email correspondence)).

On December 7, local counsel for Defendants advised that he was traveling and unavailable until the afternoon to call chambers.  (*Id.* ¶ 9).  The parties therefore contacted chambers together at approximately 3:30 p.m.  (*Id.*) Judge Djerassi's office directed the parties to submit letters (or a joint letter) setting forth their positions on scheduling.  (*Id.*)  The parties were also advised that Judge Djerassi was scheduled to be on vacation in early January.  (*Id.*)

Plaintiffs attempted to coordinate a joint letter with Defendants and provided a draft with their position to Defendants at approximately 2:00 PM the next day.  (*Id.* ¶ 10, Ex. G (Dec. 8 email correspondence)). Defense counsel advised Plaintiffs that lead defense counsel had a funeral that morning and Defendants therefore would not

be able to complete their portion of the proposed joint letter until after hours or the next morning.    (*Id.*) In light of the urgency of the matter, Plaintiffs advised Defendants that they would submit their letter to the Court setting forth their position and agreed to advise the Court in their letter that Defendants intended to provide their position the next day; they did so.  (*Id.* ¶¶ 10–11, Ex. H (Plaintiffs' Dec. 8 letter to the Court)).

On December 8, 2022, the Court entered an order setting Defendants' response date for the PI Motion as Wednesday, December 14 and scheduling a hearing for Friday, December 16.  (*Id.* ¶ 12, Ex. I (Dec. 8 Order)).  On December 9, Defendants submitted a letter to the Court asking that it delay their response date and the hearing.  (*Id.* ¶ 13, Ex. J (Defendants' Dec. 9 letter to the Court)).  Later that day, Ms. Packer advised that the judge would delay the hearing until mid-January if Defendants delayed the 2022 annual shareholder meeting by at least thirty (30) days; otherwise, the response and hearing would proceed as ordered.  (*Id.* ¶ 14, Ex. K (Dec. 9 email from Susan Packer). The Court also noted that *pro hac vice* counsel could defend the case, making the unavailability of local counsel George M. Vinci, Esq. irrelevant.  (*Id.*)

After Ms. Packer's email, Defendants asked Plaintiffs to jointly request a hearing the week of December 19 if the Court was amenable to that request.  (*Id.* ¶ 15, Ex. L (Dec. 9–13 email correspondence)).  Plaintiffs pointed out that Defendants

had the ability to obtain additional time by simply delaying the meeting (which had already been delayed by eight months from its originally scheduled date).  (*Id.*) Defendants refused and proceeded to communicate with Plaintiffs about witnesses, exhibits and attendance at the December 16 hearing.  (*Id.* ¶¶ 15–16).

### C.  Defendants Removed the Action With No Valid Basis, in Bad Faith, to Delay the Hearing on the PI Motion.

Without any prior notice to Plaintiffs, rather than file their response to the PI Motion and proceed with the hearing as the court ordered, after hours on December 13, 2022, Defendants filed their Notice of Removal.[2]  (*Id.* ¶ 17).  The removal effectively stripped the state court of jurisdiction.  Thus, Defendants essentially granted themselves the delay they had unsuccessfully sought from the Court and Plaintiffs—with the concomitant result of further delaying Plaintiffs' ability to proceed with their proxy contest until resolution of their PI Motion.  Two days after their removal, Alan Epstein, Esq., of the same firm as Mr. Vinci, informed Plaintiffs' counsel that he would be on trial this week and asked Plaintiffs to notify him if they intended to take any action, implying that he would be unavailable and seek delays on the resolution of any motions Plaintiffs filed in this Court.  (*Id.* ¶ 18).  Mr. Epstein

---

[2]  Plaintiffs received notice of the removal the morning of December 14, after it was reviewed and accepted by the Philadelphia Court of Common Pleas prothonotary's office.  (*Id.* ¶ 17, Ex. M (Court of Common Pleas filing notification)).

suggested that he would likely now be serving as lead local counsel, rather than Mr. Vinci, due to his experience with removal proceedings. (*Id.*) He provided no explanation why his partner Mr. Vinci, whose trial the prior week was one of the bases Defendants provided in seeking delay in the state court, would be unavailable this week or why lead counsel from the firm of Vinson & Elkins could not proceed. (*Id.*) Mr. Epstein followed this request with an email to Plaintiffs' counsel, again referencing his trial schedule and asking that Plaintiffs coordinate with him upon filing any motions in this Court, so the parties could "jointly call" this Court's Deputy "to set up an appropriate scheduling conference with the Judge." (*Id.* ¶ 19, Ex. N (Dec. 18 email from Alan Epstein)).

## II.   <u>ARGUMENT</u>

Defendants' removal of the case to this Court was improper as there is no federal question jurisdiction. This is not even a close call. Defendants' federal question assertion flies in the face of binding precedent from the U.S. Supreme Court and the Third Circuit Court of Appeals.

Defendants do not contend that any of Plaintiffs' claims assert federal causes of action, nor could they as all of the claims specifically allege state law violations. Instead, Defendants claim that "the Complaint sets forth a cause of action *based upon in substantial part on public policy concerns in a federal statute*." (Notice of Removal, ¶ 3) (emphasis added). In particular, they contend that "[i]n their

Complaint, Plaintiffs allege *inter alia* that Defendants' conduct violates federal law, specifically Section 14 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78n, and implementing Securities and Exchange Commission regulations, including Rule 14a-8), 17 C.F.R. § 240.14a-8 as alleged by Plaintiffs to be incorporated into the Company's By-laws." (*Id.* ¶ 2).

Defendants' assertion is false. The Complaint does not even mention Section 14 of the Exchange Act. And, the Complaint's only references to Rule 14a-8 demonstrate that the causes of action are **not** based on any federal statute or rule, much less based "in substantial part on public policy concerns in a federal statute." The Complaint cites provisions of the Company's Articles of Incorporation and bylaws which specify that "any stockholder who desires to propose nominees to the Board of Directors must provide for the receipt of a written notice of intention to nominate a person or persons for election as directors . . . in accordance with the provisions of Rule 14a-8." (Compl. ¶ 56). The Complaint then accuses Defendants of setting the nomination deadline for the 2022 annual meeting in bad faith specifically to preclude Plaintiffs from using the Rule to nominate directors as a beneficial owner of Company stock rather than a "record holder"—specifically, Plaintiffs would have satisfied Rule 14a-8's one-year beneficial ownership holding requirement ***two days after*** the nomination deadline set by Defendants. (*Id.* ¶¶ 119–120, 144, 164). Thus, Plaintiffs concede that the Rule is inapplicable to their

nomination but only reference the provision to bolster their showing that Defendants manipulated the Board nomination process in bad faith to undermine Plaintiffs' proxy contest.

The only other reference to Rule 14a-8 is its requirement that nominations be submitted within a "reasonable time before the company begins to print and send its proxy materials." (*Id.* ¶ 122). The Complaint then specifically asserts that the nomination deadline was "not reasonable at all under Pennsylvania law" and cites 15 Pa. C.S. § 1758(e), governing "advance notice of nominations," in support of its position, including "the considerations to be taken into account in determining reasonableness of an advance notice bylaw" specified in the explanatory notes to the Pennsylvania statute. (*Id.* ¶¶ 121–22).

The Third Circuit Court of Appeals has repeatedly held that complaints with far stronger connections to federal law do not give rise to federal question jurisdiction and cannot be removed. Defendants' removal was invalid and the case must be remanded.

Furthermore, the clear inapplicability of federal court jurisdiction as well as the timing and circumstances of Defendants' removal establish that Defendants acted in bad faith to delay adjudication on Plaintiffs' PI Motion and voting rights claims and to interfere with Plaintiffs' proxy contest. Defendants' action in removing this case is only the latest in a long line of defensive measures taken by

the Director Defendants to entrench themselves, derail Plaintiffs' proxy contest, manipulate the election of directors and disenfranchise the Company's shareholders. Based on the removal statute and this Court's inherent equitable powers, Defendants should be sanctioned, both monetarily and by enjoining Defendants from holding the 2022 annual shareholder meeting until at least sixty (60) days after Plaintiffs obtain a hearing on their PI Motion in state court (putting the parties back in the position they would have been in if the December 16 hearing on Plaintiffs' PI Motion had proceeded as scheduled).

### A.     Defendants' Removal Was Improper as the Action Does Not "Arise Under" the Laws of the United States.

Defendants removed Plaintiffs' action under 28 U.S.C. § 1441(a), claiming that this Court has original federal question jurisdiction under 28 U.S.C. § 1331. As the Third Circuit has repeatedly held, "[t]he removing party . . . carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court. Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Manning v. Merrill Lynch Pierce Fedder & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (reversing denial of remand); *see also City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 705–06 (3d Cir. 2022) ("Plaintiffs choose which claims to file, in which court, and under which law. Defendants may prefer federal court, but they may not remove their cases to federal court unless federal laws let them. Here, they do not."); *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009).

In cases where removal is based on federal question jurisdiction, the Third Circuit holds: "[i]f plaintiffs say their claims are state law claims, we almost always credit that." *Chevron Corp.*, 45 F.4th at 707. Further, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916–17 (3d Cir. 1994) (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10 (1983) ("a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law").

As the Third Circuit explained in *Goldman v. Citigroup Global Mkts., Inc.*, 834 F.3d 242, 249 (3d Cir. 2016):

> "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). However, even if the cause of action is based on state law, there is a "special and small category of cases in which arising under jurisdiction still lies." *Id.* (internal quotation marks omitted). In those special cases, which depend for jurisdiction on the analysis set forth in the Supreme Court's opinion in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065 (summarizing the jurisdictional test set forth in *Grable*).

Defendants do not contend that federal law creates any cause of action asserted in the Complaint, nor could they.  Each of Plaintiffs' claims is based entirely on state law, asserting breaches of shareholder voting rights and corporate governance violations by a Pennsylvania company and its Board.  Thus, Defendants must rely on the "special and small category of cases" under the *Grable* test.

Under the test, for a federal issue to be "necessarily raised," "vindication of a right under state law [must] necessarily turn[] on some construction of federal law." In *Manning v. Merrill Lynch*, plaintiffs asserted claims under New Jersey law accusing defendants of "a market manipulation scheme" including naked short selling, where the complaint "repeatedly mention[ed] the requirements of Regulation SHO" [17 C.F.R. § 242.200] to support the claims.  *Manning*, 772 F.3d at 161.  The Third Circuit ruled that Regulation SHO was not an element of plaintiffs' claims which could be decided without reference to federal law.  *Id.* at 163–64.  The Court explained that even if plaintiffs' claims were "partially predicated on federal law, federal law would still not be necessarily raised" where plaintiffs could prevail on their state law claims without any need to prove a violation of federal law.  *Id.* at 164.  Accordingly, the Third Circuit concluded that "federal-question jurisdiction [was] lacking" and that the district court improperly denied plaintiffs' remand motion.  *Id.* at 168; *see also Weathers v. Sch. Dist. of Phila.*, 2019 U.S. Dist. LEXIS 44545, at *19 (E.D. Pa. Mar. 18, 2019) (finding, because "a claim supported by

alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each," federal procurement regulations did not create federal jurisdiction because requirements were duplicative of state regulations).  Likewise, in *Goldman v. Citigroup*, the Third Circuit found no federal question jurisdiction over a plaintiff's effort to vacate a FINRA arbitration decision that centered entirely on violations of federal securities laws and regulations.  The Court ruled that plaintiffs did not satisfy any of the four part *Grable* test and dismissed for want of jurisdiction.  834 F.3d at 256–58.

And, in *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court held that there was no federal question jurisdiction under the *Grable* test for a legal malpractice case that centered on claims that counsel committed malpractice in a patent litigation.  While recognizing that the malpractice case would essentially require the state court to hear a patent case within the malpractice case, the Court nonetheless concluded that the federal issues were not substantial enough to warrant federal question jurisdiction under *Grable*.  *Id.* at 260–65.

Here, Defendants' effort to invoke federal-question jurisdiction is far more attenuated.  The Complaint seeks declaratory and injunctive relief for claims arising entirely under Pennsylvania law for Defendants' bad faith infringement of shareholder voting rights, including thwarting Plaintiffs' proxy contest and director nomination.  Plaintiffs asserted no federal causes of action.

The Complaint's only references to Rule 14a-8 under the Exchange Act point out that Plaintiffs cannot rely on the Rule for their director nomination because Defendants set the nomination deadline in bad faith two days before Plaintiffs would have satisfied the Rule's beneficial ownership test. The Complaint also notes that Rule 14a-8 specifies that the nomination deadline must be "reasonable" but then relies entirely on Pennsylvania law requiring that advance notice provisions for board nominations be reasonable for their claims. Thus, Defendants utterly fail the very first prong of the *Grable* test.

The other parts of the test are likewise inapplicable—Defendants can hardly dispute that Plaintiffs are unable to rely on Rule 14a-8 for their nomination or that the timeline for nominations must be reasonable. The minimal references to the Rule are tangential to the claims that Defendants violated Pennsylvania law by entrenching themselves, thwarting Plaintiffs' proxy contest and infringing shareholder voting rights. And, lastly, the case focuses on the internal affairs of a Pennsylvania company and violations of shareholder rights by its Board— quintessential state law issues which Pennsylvania state courts have an overriding interest in addressing.

Defendants fall woefully short of meeting their burden to establish federal-question jurisdiction, and their removal of this action was improper. The case should be remanded to the state court without delay.

## B.   Defendants Should Be Sanctioned for Their Bad Faith Improper Removal.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Where, as here, Defendants had no objectively reasonable basis for removal, sanctions in the form of attorney fees and costs are warranted. *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) (recognizing that removal can sometimes be misused "as a method for delaying litigation and imposing costs on the plaintiff."); *League of Women Voters of Pa. v. Pennsylvania*, 921 F.3d 378 (3d Cir. 2019) (affirming sanctions for improper removal except as to individual senator); *Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*, 874 F. Supp. 648, 656 (E.D. Pa. 1995) (awarding attorney's fees and costs because "minimal research" would have shown defendants that removal was improper).

In addition, this Court has broad "inherent powers" including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Gov't Emples. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 174 (E.D. Pa. 2017) ("[F]ederal courts possess inherent authority to sanction a party or attorney who has acted in 'bad faith, vexatiously, wantonly, or for oppressive reasons.' . . . This inherent authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'") (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, (2017));

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (recognizing the "well-acknowledged inherent power of a court to levy sanctions," "in response to abusive litigation practices"). Where parties have abused the litigation process to obtain an underhanded tactical advantage at an annual meeting, federal and Pennsylvania courts have imposed appropriate sanctions tailored to the wrongdoer's conduct. *See Strategic Turnaround Equity Partners, L.P. v. Fife*, No. 10-cv-11305, 2010 U.S. Dist. LEXIS 63629, at *32–35 (E.D. Mich. June 28, 2010) (striking motion to dismiss and counterclaims filed in bad faith after the close of business four days before an annual meeting); *Gordon Props., LLC v. First Owners Ass'n of Forty Six Hundred (In re Gordon Props., LLC)*, 460 B.R. 681, 699–700 (E.D. Va. 2011) (imposing monetary sanction on directors who attempted to cancel annual meeting, with the opportunity to avoid sanction if meeting held as scheduled); *QRK v. Kenilworth Court Residents Ass'n*, No. CI-16-04989, 2017 Pa. Dist. & Cnty. Dec. LEXIS 7378, at *82–85 (Lancaster Cty. C.P. Oct. 25, 2017) (removing director from board as a sanction for improperly suspending member's voting rights before an annual meeting, and "his persistent pattern of conduct regarding annual and special meetings has been to act in bad faith"). Where there is a "pattern of wrongdoing" or a "wrongdoing that actually prejudices the wrongdoer's opponent," stronger and more severe sanctions are warranted. *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

Finally, Defendants' notice of removal was subject to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1446(a), which requires that a filing "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). Rule 11 allows a court to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation," and specifically authorizes "nonmonetary directives" that would "deter repetition of the conduct." Fed. R. Civ. P. 11(c).[3]

This case is akin to *Jackson County Bank v. Dusablon*, 915 F.3d 422 (7th Cir. 2019), in which the Seventh Circuit Court of Appeals upheld the award of sanctions against a defendant for improper removal. There, like here, defendant's removal asserted federal question jurisdiction claiming the applicability and interpretation of certain federal securities laws were central to the claims and defenses. The federal court quickly dispensed with that argument, finding that defendant ignored the *Grable* test and other controlling precedent, and remanded the case to state court.

---

[3]   Plaintiffs do not move for sanctions under Rule 11 because the procedure and 21-day notice provision under the Rule would allow Defendants to avoid sanctions by withdrawing their Notice of Removal while still achieving their improper purpose of delaying the injunction hearing and undermining Plaintiffs' proxy contest. Nonetheless, the sanctions permitted under Rule 11 provide guidance for appropriate sanctions this Court may order under its inherent equitable powers to address Defendants' bad-faith misconduct.

*Id.*  The plaintiff argued that the defendant "used the removal statute inappropriately to postpone preliminary injunction proceedings in state court and 'run the clock' on" plaintiff's claim.   Based on defendants' improper removal and bad faith litigation tactics, the court ordered defendant to pay costs and fees under 28 U.S.C. § 1447(c).

The same is true here.  Defendants had no legitimate belief that the Complaint provided federal question jurisdiction.   Instead, they are using the judicial process (and this Court) in bad faith to achieve the delay they could not obtain from Plaintiffs or the state court.   Plaintiffs set forth in detail the extensive procedures required to wage their proxy contest in their letter to the state court seeking an early injunction hearing.   (*See* Ex. H).   Each day that Plaintiffs are denied the ability to nominate directors undermines their ability to wage a successful proxy contest and defeat the incumbent directors nominated by Defendants for election at the 2022 annual meeting.   Defendants have delayed at every turn having to face judgment for their improper manipulation of the board election process.   And, when none of Defendants' delaying tactics worked and they were facing an imminent hearing on December 16, they filed their Notice of Removal, stripping the state court of jurisdiction to proceed, thus achieving the delay of the PI Motion hearing they had sought and were denied.   *See* 28 U.S.C. § 1446(d) (after notice of removal filed in state court, "the State court shall proceed no further unless and until the case is remanded").

Defendants did not advise Plaintiffs that they intended to remove the case at any time before filing their Notice of Removal. Indeed, Defendants did not even serve Plaintiffs with their Notice of Removal when it was filed, instead relying on the state court filing system to send notice the following morning after Defendants' Notice was "accepted" by the prothonotary's office. Thus, Plaintiffs only learned that Defendants' response would not be forthcoming on the day it was due and only two days before the hearing, for which Plaintiffs were busily preparing.

Even if this Court promptly remands the case, there is a good chance the state court will be unable to conduct the hearing immediately in light of the upcoming holidays and Judge Djerassi's vacation plans. Therefore, Defendants' bad faith filing of the Notice of Removal will virtually guarantee that Plaintiffs will not get a hearing on their PI Motion in time to wage an effective proxy contest if the 2022 annual shareholder meeting proceeds on January 26, 2023, as Defendants scheduled.

As sanctions for Defendants' bad faith removal and abuse of the judicial process, Plaintiffs respectfully seek an award of attorneys' fees and costs under 28 U.S.C. § 1447(c) and request leave to submit a fee petition after the Court's ruling on this motion. Furthermore, as a "nonmonetary sanction" under this Court's "inherent powers" "to fashion an appropriate sanction for conduct which abuses the judicial process," and to return the parties to the position they would have been in absent Defendants' wrongful removal, Plaintiffs respectfully request that the Court

enter an order requiring Defendants to delay the 2022 annual shareholder meeting until sixty (60) days after the state court can hear Plaintiffs' PI Motion. This sanction is particularly warranted here since the state court offered Defendants the opportunity to delay their response to the PI Motion and the hearing if Defendants delayed the annual meeting.   Defendants essentially accepted the state court's proposal to achieve delay, but did so through their improper, bad faith removal rather than delaying the meeting.   And, absent moving the annual meeting, Plaintiffs will be significantly prejudiced in their proxy contest by Defendants' bad-faith delay tactics, and Defendants will essentially succeed in their wrongful manipulation of the Board election process, even if Plaintiffs ultimately prevail on the merits of their claims.

### C.    This Matter Warrants Expedited Consideration.

For the reasons expressed above—Defendants' bad-faith tactics, the imminence of the annual meeting, and the likelihood that further delay may allow Defendants to succeed in manipulating the board election process—prompt resolution of this remand motion is necessary.   This Court is empowered to adjust response deadlines and decide this matter on an expedited basis.   *See, e.g.*, E.D. Pa. Local Rule 7.1(c).   This case warrants expedited consideration and prompt remand.

## III.  **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court remand the case to state court.  Plaintiffs also request that the Court enter sanctions against Defendants for their objectively unreasonable removal and bad faith abuse of the judicial process in the form of attorneys' fees and costs as well as ordering a delay of the 2022 annual meeting for at least sixty (60) days after the state court can hear and decide Plaintiffs' PI Motion.

Dated: December 19, 2022

Respectfully submitted,

*/s/ Laura E. Krabill*

**BALLARD SPAHR LLP**
M. Norman Goldberger
Adrian R. King, Jr.
Laura E. Krabill
Shawn F. Summers
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Direct: (215) 864.8622
kinga@ballardspahr.com
goldbergern@ballardspahr.com
krabilll@ballardspahr.com

OF COUNSEL:

Brian T. Frawley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
212.558.4000
frawleyb@sullcrom.com

*Attorneys for Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross*