# EXHIBIT B

# PHILADELPHIA COURT OF COMMON PLEAS
## PETITION/MOTION COVER SHEET

**CONTROL NUMBER:**

22121214

**(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)**

### FOR COURT USE ONLY

**ASSIGNED TO JUDGE:**

**ANSWER/RESPONSE DATE:**

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://courts.phila.gov*

November Term, 2022
*Month* | *Year*
No. ___ 02195

Name of Filing Party:

GEORGE E NORCROSS-PLF
GREGORY B BRACA-PLF
PHILIP A NORCROSS-PLF

NORCROSS ETAL VS REPUBLIC FIRST
BANCORP, INC. ETAL

Has another petition/motion been decided in this case? ☐ Yes ☒ No
Is another petition/motion pending? ☐ Yes ☒ No

*If the answer to either question is yes, you must identify the judge(s):*

**INDICATE NATURE OF DOCUMENT FILED:**

☐ Petition *(Attach Rule to Show Cause)*  ☒ Motion
☐ Answer to Petition  ☐ Response to Motion

TYPE OF PETITION/MOTION (see list on reverse side)

PRELIMINARY INJUNCTION

PETITION/MOTION CODE
(see list on reverse side)
PRINJ

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

## I. CASE PROGRAM

COMMERCE PROGRAM

Name of Judicial Team Leader: JUDGE PAULA PATRICK
Applicable Petition/Motion Deadline: N/A
Has deadline been previously extended by the Court: N/A

## II. PARTIES *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

SHAWN F SUMMERS
1735 MARKET STREET 51ST FLOOR ,
PHILADELPHIA PA 19103
BENJAMIN C DUSTER
50 SOUTH 16TH STREET SUITE 2400 ,
PHILADELPHIA PA 19102
REPUBLIC FIRST BANCORP INC
50 SOUTH 16TH STREET SUITE 2400 ,
PHILADELPHIA PA 19102
HARRY MADONNA
50 SOUTH 16TH STREET SUITE 2400 ,
PHILADELPHIA PA 19102
ANDREW B COHEN
50 SOUTH 16TH STREET SUITE 2400 ,
PHILADELPHIA PA 19102
LISA JACOBS
50 SOUTH 16TH STREET SUITE 2400 ,

## III. OTHER

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

December 5, 2022 | SHAWN F. SUMMERS

*(Attorney Signature/Unrepresented Party)* | *(Date)* | *(Print Name)* | *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 2212009346
06-DEC-22 10:32:27

PHILADELPHIA PA 19102
HARRIS WILDSTEIN
    50 SOUTH 16TH STREET SUITE 2400 ,
    PHILADELPHIA PA 19102
PETER B BARTHOLOW
    50 SOUTH 16TH STREET SUITE 2400 ,
    PHILADELPHIA PA 19102

BALLARD SPAHR LLP
By: Adrian R. King, Jr. (PA No. 69315)
    M. Norman Goldberger (PA No. 28241)
    Laura E. Krabill (PA No. 76879)
    Shawn F. Summers (PA No. 327471)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8622
kinga@ballardspahr.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross, <br><br> Plaintiffs, <br><br> vs. <br><br> Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV, <br><br> Defendants. | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY <br><br> November Term, 2022 <br><br> No. 02195 |

## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross (collectively "Plaintiffs") are entitled to an injunction to stop the board of directors (the "Board") of defendant Republic First Bancorp, Inc. ("Republic First" or the "Company") from impermissibly reducing the size of the Board in a blatant attempt to entrench themselves by interfering with the voting rights of all Company shareholders, undermining the proxy contest being conducted by Plaintiffs, and

-1-

Case ID: 221102195
Control No.: 22121214

mooting the purpose of a special shareholder meeting sought by Plaintiffs and other shareholders. The Board must also be barred from enforcing the unreasonable deadline it set for shareholders to submit director nominations for the delayed 2022 annual meeting and from rejecting the nomination submitted by Plaintiffs— additional steps in Defendants' concerted bad faith scheme to rig the election of directors at the expense of shareholders' franchise.

The Company's 2022 annual meeting and election of directors has been scheduled by Defendants to take place on January 26, 2023. Plaintiffs have sought approval from the Pennsylvania Department of Banking to solicit proxies for that meeting and anticipate that approval will be granted shortly after the end of the public comment period, set to expire on December 8, 2022. Plaintiffs have attempted to resolve their conflicts with Defendants and avoid burdening the Court with this motion, but those efforts have proven unsuccessful. Accordingly, Plaintiffs request that the Court order Defendants to respond to this Motion by December 12, 2022, and conduct a hearing later that week, so that Plaintiffs (and all Company shareholders) will know the number of Board seats up for election and Plaintiffs can move forward with their director nominations and proxy solicitation efforts sufficiently in advance of the Defendants' scheduled January 26, 2023 annual shareholder meeting.

Case ID: 221102195
Control No.: 22121214

In support of this Motion, Plaintiffs rely on the verified complaint filed in this action the Declaration of Philip Norcross filed herewith, and further state as follows:

1. On November 22, 2022, Plaintiffs filed their Complaint ("Compl.") in this action seeking to prevent the Company's Board—made up of the individual defendants here, Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV (collectively, the "Director Defendants" and, together with the Company, the "Defendants")—from proceeding with its plan to reduce the size of the Board from eight to six seats, eliminating two director vacancies (the "Board Entrenchment Scheme"), and from enforcing its unreasonable deadline for the submission of director nominees and rejection of Plaintiffs' nomination (the "Rigged Nomination Scheme"). The sole reason for the Board Entrenchment Scheme and the Rigged Nomination Scheme is to thwart an ongoing proxy contest being conducted by Plaintiffs, in accordance with federal and state law, and prevent the Company's shareholders from having the opportunity to potentially replace up to half of the Board and install directors who will look out for the best interests of the Company and its shareholders rather than the Director Defendants' own selfish interests. The Defendants' actions not only deprive shareholders of their franchise, but entrench a Board and management team that has failed disastrously resulting in a sharp slide in the Company's stock—by almost 44% in the last 6 months.

Case ID: 221102195
Control No.: 22121214

2.     Republic First is a Pennsylvania company and the holding company for Republic First Bank ("Republic Bank").   Compl. ¶ 2.[1]   From 2008 through November 4, 2022, the Company has had eight director seats, divided into three classes—two Class I directors, three Class II directors and three Class III directors. *Id.*

3.     Since early December 2021, several significant investors in the Company, including Plaintiffs, have publicly reported their dissatisfaction with the Board and management and their desire to elect a slate of new independent directors at the Company's 2022 annual meeting.  *Id.* ¶ 60.

4.     One Company shareholder, Driver Management Company LLC and certain of its affiliates ("Driver"), announced its intention to nominate an alternative slate of three candidates for election as directors at the Company's 2022 annual meeting.  *Id.* ¶ 61; Exhibit 3 (December 9, 2021 Form 8-K).  Plaintiffs and the Avery Conner Trust (for which Plaintiff Philip Norcross serves as a trustee) also publicly announced that they intended to, "independently and at [their] own cost, file appropriate proxy materials and engage in activities that may constitute solicitation under the SEC's proxy rules in opposition to the Issuer's three Class III director

---

[1]     A true and correct copy of the Complaint, along with all of its exhibits, is attached hereto as Exhibit A.  Unless otherwise stated, all references herein to paragraph numbers are paragraphs of the Complaint and all references to exhibits are to the exhibits to the Complaint.

Case ID: 221102195
Control No.: 22121214

nominees . . . and in support of the candidates . . . nominated by [Driver] for election as Class III directors at the Issuer's 2022 annual meeting of shareholders . . . ." *Id.* ¶ 67 (quoting Exhibit 6 (February 10, 2022 Form 13D/A)).

5. With two groups of shareholders criticizing the Company's Board and management and engaging in proxy contests, the Board erupted into two warring factions, with four directors (defendants Madonna, Cohen, Jacobs and Wildstein, the "Madonna Faction") publicly accusing the other four directors (non-parties Hill, Flocco, Spevak and Tierney, the "Hill Faction") of entrenchment and undermining shareholder voting rights. *Id.* ¶ 68.

6. The Hill Faction responded that the Madonna Faction was making intentionally false and misleading claims to undermine the Hill Faction's bids for reelection as directors because, according to Hill, Madonna and Cohen were intent on selling the Company to further their own personal financial interests. *Id.* ¶ 69.

7. The infighting among Board members resulted in significant upheaval at the Company, prompting multiple lawsuits, including two filed by Plaintiffs based on their concerns about the revelations being made by the Board members, and one by Driver seeking to force the 2022 annual meeting to take place as scheduled in early May 2022 so it could proceed with its proxy solicitations. *Id.* ¶ 70.

8. In May 2022, one of the Hill Faction directors, Theodore Flocco, died. *Id.* ¶ 72. This led to more litigation as the Hill Faction filed suit in federal court in

Case ID: 221102195
Control No.: 22121214

Philadelphia to block the Madonna Faction from taking advantage of its majority. *Id.* ¶ 73.

9. On May 31, 2022, finding that the Madonna Faction had acted illegally, oppressively and fraudulently, the federal court appointed esteemed Philadelphia lawyer Alfred Putnam as custodian of the Company to oversee its operations and hold a special shareholder meeting to elect two new directors, one to replace Mr. Flocco and a new ninth director to ensure the Board would not be evenly split. *Id.* ¶ 74.

10. Mr. Putnam scheduled the special shareholder meeting and announced that he had received nominations from several shareholders, including Plaintiffs, who nominated Mr. Braca to join the Company's Board. *Id.* ¶ 75; Exhibit 7 (July 5, 2022 Schedule 14C). In submitting Mr. Braca's nomination to Mr. Putnam and Defendant Jacobs, the Company's secretary, Plaintiffs included a letter from Mr. Norcross' broker attesting that Mr. Norcross was record owner of 10,000 shares of Company stock. *Id.* ¶ 75; Exhibit 8 (June 21, 2022 nomination letter). The Company did not challenge Mr. Norcross' status as a record shareholder. *Id.* ¶ 75.

11. Before the special meeting could take place, the federal appellate court ruled in the Madonna Faction's favor, reversing the lower court's ruling. The Madonna Faction immediately cancelled the shareholder meeting and instead proceeded to appoint, without shareholder input or approval, Defendant Benjamin

Case ID: 221102195
Control No.: 22121214

Duster to the Board to fill Mr. Flocco's vacant seat. *Id.* ¶¶ 76–77. (Defendant Duster, however, was not a valid director as he was not a Company shareholder at the commencement of his term, as expressly required by Article II, Section 2 of the Company's bylaws.) *Id.* ¶ 77.

12. Conceding defeat, the three remaining members of the Hill Faction resigned. *Id.* ¶ 79. Hill and Spevak (the other two Class III directors) resigned on August 9, 2022. *Id.* Tierney, the last Hill Faction director (and a Class I director), followed on September 19, 2022. *Id.* This left three vacant Board seats: two Class III seats (up for election at the 2022 annual meeting) and one Class I seat. *Id.*

13. After the Madonna Faction took control of the Board, Plaintiffs were initially hopeful that the Board would take positive operational and governance steps to reverse actions taken before the Board's implosion; unfortunately, that did not happen. *Id.* ¶ 86. Instead, the Board has continued to mismanage the Company and its affairs, resulting in a further significant decline in share price and worsening of other financial metrics. *Id.* The Board has also engaged in breaches of fiduciary duty designed to keep the shareholders in the dark and retain control of the Company to benefit their own self-interests at the expense of the Company and its shareholders. *Id.* ¶ 87.

14. Among other things, the Board:

    a. Reported that an investigation into the Board members' competing allegations demanded by the Company's auditors was

Case ID: 221102195
Control No.: 22121214

completed in August 2022, but has continually failed to report the findings or conclusions of the investigation;

b.    Failed to timely file the Company's required annual report on Form 10-K and quarterly financial reports on Form 10-Q with the SEC, resulting in Republic First facing potential delisting from the NASDAQ exchange;

c.    Failed to schedule any shareholder meeting (annual or special) to allow the shareholders to elect three Class III directors (whose terms should have ended by May 2022) and a Class I director despite repeated calls by Plaintiffs for special shareholder meetings for those purposes;

d.    Reinstated defendant Madonna's employment contract with an increased salary and significant parachute payments (amounting to millions of dollars in the event of certain change of control transactions), and delayed over one month reporting that decision in violation of SEC reporting rules; and

e.    Immediately after reporting the employment arrangement with Madonna—providing him significant incentive to sell the Company at any price—announced the formation of a "strategic review" committee and the intent to engage with potential "transaction" partners, essentially conducting a fire sale while the Company's assets are significantly impaired as a result of the Board's abysmal investment and business decisions. The sale of the business would therefore only benefit the Director Defendants, particularly Madonna who would receive substantial change of control payments, to the significant detriment of the Company and its shareholders.

*Id.* ¶ 88.

15.    In light of the Board's failure to address the Company's serious problems and its apparent insistence on doubling down on entrenchment efforts akin to the ones the Madonna Faction had derided the Hill Faction for taking, Plaintiffs renewed their challenges to the Board and reiterated their intention to engage in a

Case ID: 221102195
Control No.: 22121214

proxy contest and promote alternative candidates to fill the vacant Board seats and the Duster seat up for election at the delayed 2022 annual meeting. *Id.* ¶ 89.

16. On September 22, 2022, Plaintiffs publicly criticized the Board for its inaction and entrenchment in a letter to the Board, emphasizing that the lack of a shareholders' meeting had allowed the directors to avoid facing accountability from the Company's shareholders well past the time the Class III director seats should have been subjected to a contested election. *Id.* ¶ 91; Exhibit 16 (September 13, 2022 Schedule 13D/A).

17. Plaintiffs also disclosed that, in connection with Plaintiffs' offer to infuse capital into the Company (and provide other benefits to the Company), the Board had demanded a standstill agreement that would prohibit Plaintiffs from nominating directors for election at the 2022 annual shareholders' meeting. *Id.* ¶ 92.

18. Driver likewise continued to make SEC filings critical of the Board including its lack of transparency. *Id.* ¶ 93; Exhibit 17 (September 22, 2022 Schedule 14A).

19. On October 4, 2022, the Board avoided one of its challenges—it made a deal with Driver to buy its silence and acquiescence to the Board's ongoing control of the Company in exchange for the Board appointing Driver nominee, defendant Bartholow, as a new Class III director (filling one of the Hill and Spevak seats) and paying Driver $925,000. *Id.* ¶ 94; Exhibit 18 (October 4, 2022 Form 8-K).

Case ID: 221102195
Control No.: 22121214

20.     This still left two vacant Board seats—one of the two Class III seats vacated by Hill and Spevak on August 9, 2022, and the Class I seat vacated by Tierney on September 19, 2022. *Id.* ¶ 95.

21.     Contrary to the dictates of Article II, Section 7 of the Republic First bylaws, which require the Board either to fill a vacancy or hold a special shareholder meeting to do so within sixty days, the Class III seat remained vacant beyond October 9, 2022, with no sign of the Board calling any shareholders' meeting to fill the vacancy. *Id.*

22.     Plaintiffs therefore delivered a letter to the Board requesting a special shareholders' meeting for two purposes, one of which was to allow the shareholders to fill the two vacant Board seats—*i.e.*, "[e]lecting two directors to the board of directors of Republic First (the 'Board'), one to serve as a Class I director and one to serve as a Class III director . . . ." *Id.* ¶ 97; Exhibit 20 (October 25, 2022 letter to the Board requesting a special meeting).

23.     On October 24, 2022, the Company finally announced that the audit of its 2021 financials was complete but noted that it was waiting for a response from its former auditor before it could file its belated Form 10-K. *Id*. ¶ 98.

24.     Recognizing that they would soon have the opportunity to solicit proxies from fellow shareholders and nominate directors, at least for two of the three Class III seats, as well as potentially support candidates nominated by other

Case ID: 221102195
Control No.: 22121214

shareholders, Plaintiffs immediately sought books and records from the Company, including shareholder information, so that their proxy solicitation firm could contact fellow shareholders. *Id.* ¶ 99; Exhibit 21 (October 25, 2022 books and records request).[2] Plaintiffs' books and records request again included a representation that Mr. Philip Norcross was a record owner of Company stock and a letter from Mr. Norcross' broker attesting to that fact. *Id.* ¶ 99.

25.     Defendants did not challenge Mr. Norcross's record ownership and, instead, expressly agreed to provide certain of the requested documents subject to the entry of a confidentiality agreement. *Id.* The confidentiality agreement has been fully executed, and the Company has in fact provided shareholder lists to Plaintiffs' proxy solicitation firm. *Id.*; Norcross Decl. ¶ 12.

26.     On October 26, 2022, the Company finally filed its long overdue Form 10-K. *Id.* ¶ 100. The Form 10-K revealed that there were certain related-party transactions that had not been properly disclosed previously. *Id.* Despite this, the Company still failed to provide any details about the investigation demanded by its auditors, relating to, among other things, such insider transactions, that had purportedly been completed in August 2022. *Id.*

---

[2]     Plaintiffs are in the process of obtaining approval to solicit proxies and expect that approval to be granted by the Pennsylvania Department of Banking shortly after the comment period closes on December 8, 2022. Norcross Decl. ¶¶ 2-5.

Case ID: 221102195
Control No.: 22121214

27.     Nonetheless, with the filing of the Form 10-K, the only obstacle Defendants had relied on to avoid scheduling the belated 2022 annual shareholders' meeting was eliminated and the Board would be forced to finally face the judgment of the Company's shareholders. *Id.* ¶ 101.

28.     On November 4, 2022, the Company finally announced that the Board had scheduled the 2022 annual shareholders' meeting to take place on January 26, 2023, almost nine months after its originally scheduled date and beyond the time provided under Pennsylvania law. *Id.* ¶ 104; Exhibit 25 (November 4, 2022, Form 8-K).

29.     The November 4, 2022 announcement also demanded that shareholders submit nominations for Board seats by November 14—*i.e.*, within ten calendar days (including two intervening weekends and a federal holiday). *Id.* ¶ 105.

30.     Apparently recognizing that Plaintiffs' proxy contest at both the annual meeting and with respect to the special meeting demand could result in the turnover of half of the Board (assuming the Company's shareholders elected four new directors to fill the vacant Class I and Class III seats and replace the two incumbent Class III directors), the Director Defendants devised the Board Entrenchment Scheme to undermine Plaintiffs' and other shareholders' right to vote for their representatives on the Board. *Id.* ¶ 106.

Case ID: 221102195
Control No.: 22121214

31.    In particular, on November 7, 2022, the Company announced that the Board would nominate the two incumbent Class III directors, defendants Bartholow and Duster, for election at the 2022 annual meeting. *Id.* ¶ 107; Exhibit 26 (November 7, 2022 Form 8-K).  The Company also revealed for the first time that, effective November 4, 2022, the Board chose to reduce the size of the Board from eight members to six. *Id.* ¶ 107.

32.    Thus, rather than allow Plaintiffs to potentially nominate and/or advocate for—and the shareholders to elect—up to four new directors (one to fill Tierney's vacant Class I seat at the special shareholder meeting requested by Plaintiffs and required under the bylaws and three Class III directors at the 2022 annual meeting), the Board eliminated the vacant Class I and Class III seats, leaving only two of six Board seats up for election. *Id.*

33.    Under federal banking regulations, as Defendants clearly know, the Board Entrenchment Scheme would also limit Plaintiffs' ability to nominate directors to serve on the Board from two to one, based on potential issues regarding "control" of a bank holding company. *Id.* ¶ 108.  In addition, it would moot the primary purpose for Plaintiffs' pending special meeting request—the election of two directors to fill the two vacant Board seats. *Id.*  The Board's decision to institute the Board Entrenchment Scheme also came after the vacant Class III Board seat should

Case ID: 221102195
Control No.: 22121214

have already been filled under Article II, Section 7 of the Company's bylaws through a shareholder election. *Id.*

34.     The Director Defendants had no legitimate basis to reduce the number of Board seats.  The Board Entrenchment Scheme does not solve the problem of a potential deadlock on the Board, as there are still an even number of seats.  It does not ensure oversight of management where, as here, all of the Board members are beholden to Madonna, the interim CEO and Executive Chair, and a six member Board is far out of the norm for the number of directors of a banking organization of this size (or almost any sized bank).  And, the Board Entrenchment Scheme does not maintain the equality among the classes of directors (now with one Class I director, two Class III directors and three Class II directors) mandated by the Company's bylaws and Pennsylvania law.

35.     Instead, the Board Entrenchment Scheme was clearly designed to entrench the Company's current Board and prevent Plaintiffs and the Company's other shareholders from electing new independent directors to fill up to four of the eight Board seats, thereby significantly changing the dynamics and direction of the Board and the Company.  It prevents Company shareholders from freely exercising their voting rights to elect the three Class III directors who should have been installed seven months ago, and a fourth director to fill the vacant Class I seat pursuant to the Company's bylaws and Plaintiffs' special meeting demand.

-14-

Case ID: 221102195
Control No.: 22121214

36. That was not the end of Defendants' entrenchment efforts. Defendants took one additional step to rig the election in favor of the incumbent directors, undermine Plaintiffs' proxy contest and deny the shareholders their voice in selecting the proper stewards of the Company.

37. Specifically, pursuant to the Company's November 4, 2022, notice finally scheduling the long-delayed 2022 annual shareholder meeting and setting the deadline for submitting nominations, on November 11, 2022 (three days before the deadline), Plaintiffs submitted Mr. Braca as their nominee for election to the Board at the 2022 annual meeting. *Id*. ¶115; Exhibit 27 (November 11, 2022 notice of nomination).

38. As with multiple prior submissions to the Company and Board, Plaintiffs attached as their proof of ownership a letter from Plaintiff Philip Norcross' broker asserting that Mr. Norcross is a record owner of 10,000 shares of Company stock and has been since November 16, 2021. *Id*. ¶ 115. Plaintiffs also submitted their Schedule 13D filings with the SEC showing their beneficial ownership of almost 10% of the Company's shares. *Id*. The nomination was submitted on time and contained all of the information required by the Company's Articles of Incorporation and bylaws. *Id*.

39. On November 16, 2022, two days after the deadline Defendants imposed for submitting nominations, Defendants for the first time disputed Mr.

Case ID: 221102195
Control No.: 22121214

Norcross' record ownership of Company stock and refused to accept the nomination of Mr. Braca for election to the Board. *Id*. ¶ 116; Exhibit 28 (November 16, 2022 letter from Defendant Madonna to Philip Norcross).

40.     Defendants did so to avoid a fair proxy contest, despite having accepted the very same proof of Mr. Norcross' record ownership three times before—for the two books and records requests and the nomination of Mr. Braca as director in connection with the special shareholder meeting called by the custodian—without dispute and with full knowledge of the Company's internal records regarding its shareholders. *Id*. ¶ 117.

41.     Defendants failed to alert Plaintiffs of their objection to Mr. Braca's nomination until after the deadline to prevent Plaintiffs from being able to cure any deficiency by obtaining record shares or asking another record owner to nominate Mr. Braca. *Id*. ¶ 118.

42.     With the Rigged Nomination Scheme, Defendants set an unreasonable deadline for submission of director nominations (a mere ten calendar days, with two intervening weekends and a federal holiday) in bad faith, with the specific goal of precluding Plaintiffs from nominating a director candidate. *Id*. ¶ 119.

43.     As discussed above, Plaintiff Philip Norcross had averred his record ownership (based on the representation of his broker) several times before and the Company, including the Director Defendants, had repeatedly accepted that assertion

Case ID: 221102195
Control No.: 22121214

without objection despite having superior access to the Company's official shareholder records. *Id.* ¶ 117; Exhibits 8 (June 21, 2022 nomination of Gregory Braca for the Board), 10 (June 13, 2022 books and records request), 21 (October 25, 2022 books and records request).

44.     Defendants knew that Plaintiffs were relying on their record ownership for their interactions with the Company and would do so again in submitting director nominations.  Defendants induced Plaintiffs to do so by their conduct in accepting Mr. Norcross' record ownership in providing books and records and in accepting Mr. Braca as a director candidate in the special meeting ordered by the federal court. Yet, Defendants planned to refute Mr. Norcross' record ownership at the most critical time—when Plaintiffs submitted a director nomination for the 2022 annual meeting.

45.     Defendants also knew that, under the Company's Articles of Incorporation and Article II, Section 4 of its bylaws, a beneficial owner of Company stock who is not a record owner can nonetheless submit a nomination pursuant to Rule 14a-8 of the Exchange Act if the shareholder owned at least $25,000 of stock for one year.  *Id.* ¶ 120.

46.     The statements from Mr. Norcross' broker, submitted multiple times to Defendants, as well as Plaintiffs' Schedule 13D filings with the SEC, showed that

Case ID: 221102195
Control No.: 22121214

Mr. Norcross purchased 10,000 shares of Company stock (worth over $25,000) *on November 16, 2021*. *Id.*

47.     Defendants set the unreasonably short November 14, 2022, nomination deadline not for any legitimate reason but instead in bad faith to prevent Plaintiffs from satisfying the one-year holding standard under Rule 14a-8. *Id.*

48.     Indeed, even assuming arguendo Defendants did not set the deadline in bad faith, the nomination deadline was not reasonable as a matter of law. *Id.* ¶ 121. The Company delayed from March 17, 2022 to October 26, 2022 filing its annual report on Form 10-K. *Id.* ¶ 123. It failed to file any of its required 2022 quarterly financial reports on Form 10-Q on time, and none had been filed by the nomination deadline. *Id.* In fact, it belatedly filed its first quarter 2022 Form 10-Q on November 18, 2022, four days *after* the nomination deadline. *Id.* The Company still has not filed its belated second and third quarter 2022 Form 10-Qs. *Id.* Accordingly, by the November 14, 2022 deadline, shareholders were completely in the dark about the financial status of the Company and its operations under the current Board and management—critical information in determining whether to nominate other directors who would be best positioned to address the Company's business and financial needs. *Id.* ¶ 123.

49.     Defendants' only proffered excuse for setting the self-serving November 14 deadline was the alleged need to "print and send its proxy materials

-18-

Case ID: 221102195
Control No.: 22121214

for the 2022 Annual Meeting." *Id.* ¶ 125. This purported justification is at best pretextual, and at worse patently false. Over the past five years, the Company has mailed its annual meeting proxy between 35 and 38 days before the scheduled meeting. *Id.* Here, with the 2022 annual meeting scheduled for January 26, 2023, the Company's proxy statement will likely not be sent until December 19, 2022 at the earliest. *Id.*

50. Thus, Defendants' actions of setting a short deadline of ten calendar days after the announcement of the 2022 annual meeting (while depriving shareholders of required SEC financial information and with over two months before the meeting date) was not reasonable and was done in bad faith to stifle Plaintiffs' proxy contest and the ability of Plaintiffs (and all Company shareholders) to present and vote upon viable alternate candidates for the Board election. *Id.* ¶ 126.

51. By their actions, Defendants have undermined Plaintiffs' right to engage in a proxy contest, deprived the Company's shareholders of their rightful voice in the governance of the Company, and sown chaos and confusion into the market. Defendants' actions constitute irreparable harm warranting the imposition of immediate injunctive relief. *Id.* ¶ 128.

52. Pennsylvania law recognizes the right to vote as among the most fundamental rights of ownership of company stock. *See Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 322 n.8 (Pa. 1961). The right to vote is

Case ID: 221102195
Control No.: 22121214

fundamental to corporate democracy—the principle that the owners of a corporation should control the direction that their corporation takes. *Warehime v. Warehime*, 777 A.2d 469, 481 (Pa. Super. 2001), *rev'd on other grounds,* 860 A.2d 41 (Pa. 2004). While the business judgment rule affords directors leeway in decisions they make in good faith and with due care, it does not permit corporate actions designed to undermine shareholders' voting rights. *Id*. at 480.

53. Furthermore, 15 Pa. C.S. § 1724(b) provides that, unless a company's articles of incorporation provide otherwise, "[e]ach class [of directors] shall be as nearly equal in number as possible." Likewise, Article II, Section 2 of the Company's bylaws requires that "[t]he Board of Directors shall be divided into three classes as nearly equal as possible." Compl. ¶ 54 (citing Exhibit 1 (Company bylaws)). Defendants' Board Entrenchment Scheme, by eliminating one Board seat from each of Classes I and III—leaving one director in Class I, three directors in Class II, and two directors in Class III—is in direct violation of both Pennsylvania law and the Company's bylaws.

54. As such, the Defendants' actions are illegal, inequitable and impermissible under Pennsylvania law. *See Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C.4th 391 (Phila. C.P. 2002) (enjoining board from advancing date of shareholder meeting in the midst of a proxy contest); *Pell v. Kill,*

Case ID: 221102195
Control No.: 22121214

135 A.3d 764 (Del. Ch. 2016) (enjoining board plan to reduce the number of board seats in the midst of a proxy contest).

55. Plaintiffs are therefore entitled to a preliminary injunction to prevent Defendants from implementing the Board Entrenchment Scheme or any similar measure that has the effect of impeding, thwarting, frustrating, or interfering with Plaintiffs' proxy contest and all of the Company's shareholders' voting rights.

56. Specifically, Plaintiffs request that this Court enjoin Defendants from implementing the Board Entrenchment Scheme or making any other amendments to the Company's bylaws or the size of the Board until after the Company has held both the 2022 annual meeting (allowing the election of three Class III directors) and a special meeting for the election of directors to fill the vacant Class I Board seat. Defendants must also reopen the nomination process for both the 2022 annual meeting and for a special meeting to allow shareholders to nominate candidates for all four seats.

57. Defendants' actions in adopting the Rigged Nomination Scheme to prevent Plaintiffs from nominating a candidate for election to the Company's Board is likewise an impermissible infringement on Plaintiffs' right to challenge the election of directors and all Company shareholders' rights to a free and fair election and an untarnished ability to choose the stewards of their Company.

Case ID: 221102195
Control No.: 22121214

58.     Thus, Plaintiffs further request Defendants be precluded from effectuating the Rigged Nomination Scheme by enforcing the nomination deadline or precluding Plaintiffs' Board nominations.

59.     As set forth in more detail in their brief in support of this Motion, Plaintiffs satisfy each requirement for entry of a preliminary injunction. Indeed, this case is very similar to both *Jewelcor* and *Pell v. Kill* where the courts enjoined board action designed to interfere with ongoing proxy contests.

60.     In *Jewelcor*, Judge Herron of this Court granted a preliminary injunction to bar a corporate board from advancing the date of the company's shareholder meeting to frustrate the efforts of a shareholder proxy contest. 60 Pa. D. & C.4th at 396.

61.     The Court found the board's attempt to move the meeting date was an attempt to manipulate the election and interfere with the shareholder's right to contest the election of directors. *Id.* at 396. The Court found that the board's action, even though not illegal, should be enjoined as improper and inequitable, noting "[a] corporation's board of directors acts improperly when it manipulates a corporate election to perpetuate its own control of the corporation." *Id.* at 399. The Court ruled that each of the preliminary injunction factors weighed in favor of enjoining the board's action. *Id.* at 396.

Case ID: 221102195
Control No.: 22121214

62.     Likewise, in *Pell v. Kill*, Vice Chancellor Laster of the Delaware Chancery Court enjoined a board reduction plan very similar to the one the Director Defendants adopted here. 135 A.3d at 769–70. In *Pell*, Cogentix Medical, Inc., like Republic First, had eight board seats staggered into three classes. *Id.* at 768. Approximately one month before the annual meeting, plaintiff Lewis Pell publicly disclosed his intention to seek changes in the composition of the board and management team, including unseating defendant Robert Kill. *Id.* at 769. In response, the majority of the board (who were aligned with Kill) developed a tactic to shrink the size of the Board from eight seats to five and reduce the number of Class I seats up for election at the annual meeting to one. *Id.* Through the board reduction plan, the board majority sought to preserve their control over the board and neutralize the threat of Pell's proxy contest. *Id.* Before the reduction, the company's stockholders had the opportunity to elect three nominees to the Class I seats, potentially establishing a new board majority. *Id*. By reducing the number of Class I seats, the incumbent directors ensured that no matter how the stockholders voted, the incumbent directors would retain a majority. *Id.*

63.     Based on these facts, the Chancery Court ruled: "The problem is that when facing an electoral contest, incumbent directors are not entitled to determine the outcome for the stockholders. Stockholders elect directors, not the other way around. Even assuming that the Defendant Directors acted for an unselfish purpose,

-23-

Case ID: 221102195
Control No.: 22121214

they still acted inequitably.  A preliminary injunction shall issue enjoining the Company from implementing the portion of the Board Reduction Plan that otherwise would become effective at the Annual Meeting." *Id*. at 769–70.

64.    In this case, the Board Entrenchment Scheme and the Rigged Nomination Scheme are blatant efforts by Defendants to prevent the Company's shareholders from exercising their voting rights to significantly alter the composition of the Board, potentially electing up to half of its members (three Class III directors and one Class I director), by undermining Plaintiffs' proxy contest and subverting the special shareholder meeting request.

65.    The Board Entrenchment Scheme and the Rigged Nomination Scheme are impermissible infringements on Plaintiffs' proxy contest and the voting rights of all Republic First shareholders.  Such actions must be enjoined now before the annual meeting to allow Plaintiffs to nominate two candidates and support candidates nominated by other shareholders and to protect the voting rights of all Company shareholders.  Injunctive relief should be granted here because Defendants will otherwise succeed in their efforts to subvert the fundamental voting rights of shareholders in a proxy contest and entrench the current Board.  But there is another reason why injunctive relief is necessary.  While under the oversight of the current Board, the Company has not merely performed poorly; it is the worst performing bank with assets of $1.0 billion or more in the United States.  Its tangible equity ratio

Case ID: 221102195
Control No.: 22121214

is the lowest, by a wide margin, among all those banks. If Defendants are able to continue to thwart the judgment and will of shareholders by a rigged director-election process, they will continue to pose a threat to the Company's shareholders, employees and customers.

For all the foregoing reasons, and the reasons set forth in more detail in the memorandum of law filed herewith, which is incorporated herein by reference in its entirety, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Injunction:

      a.    enjoining Defendants from implementing the Board Entrenchment Scheme, or any similar measure that has the effect of impeding, thwarting, frustrating, or interfering with shareholders' voting rights;

      b.    enjoining Defendants from making any amendments to the Company's bylaws or the size of the Board until after the 2022 annual meeting and a special shareholder meeting for the election of a director to fill the vacant Class I seat; and

      c.    enjoining Defendants from any attempt to enforce the nomination deadline or preclude Plaintiffs' Board nomination.

Case ID: 221102195
Control No.: 22121214

Respectfully submitted,

Dated: December 5, 2022

/s/ Adrian R. King, Jr.
Adrian R. King, Jr. (PA No. 69315)
M. Norman Goldberger (PA No. 28241)
Laura E. Krabill (PA No. 76879)
Shawn F. Summers (PA No. 327471)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8622
kinga@ballardspahr.com
goldbergerm@ballardspahr.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Brian T. Frawley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
212.558.4000
frawleyb@sullcrom.com

Case ID: 221102195
Control No.: 22121214

| | | |
|---|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross, <br><br> Plaintiffs, <br><br> vs. <br><br> Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY <br><br> November Term, 2022 <br><br> No. 02195 |

## <u>SCHEDULING ORDER ON PRELIMINARY INJUNCTION MOTION</u>

**AND NOW**, this _____ day of _____, 2022, upon consideration of the Motion for Preliminary Injunction filed by Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross, the memorandum of law in support thereof, the Declaration of Philip A. Norcross, and attached exhibits;

**IT IS HEREBY ORDERED** that Defendants shall file their response to the Motion by December 12, 2022;

**IT IS FURTHER ORDERED** that the Court will conduct a hearing and argument on Plaintiffs' Motion on December \_\_\_\_, 2022, at _____ \_.m., in Courtroom _____.

Case ID: 221102195
Control No.: 22121214

**SO ORDERED**.

By the Court:

_____
                                                J.

Case ID: 221102195
Control No.: 22121214

| | | |
|---|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>Plaintiffs,<br><br>vs.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY<br><br>November Term, 2022<br><br>No. 02195 |

## <u>ORDER GRANTING PRELIMINARY INJUNCTION</u>

**AND NOW**, this _____ day of _____, 2022, upon consideration of the Motion for Preliminary Injunction filed by Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross, the memorandum of law in support thereof, any response thereto, and having taken evidence and heard argument of the parties, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants are hereby enjoined from implementing the November 4, 2022 decision to reduce the size of the board of directors of Republic First Bancorp, Inc. (the "Company") from eight members to six, and from taking any similar measure that has the effect of impeding, thwarting, frustrating, or interfering with shareholders' voting rights;

Case ID: 221102195
Control No.: 22121214

**IT IS FURTHER ORDERED** that Defendants are enjoined from making any amendments to the Company's bylaws or the size of the Company's board until after the 2022 annual meeting and a special meeting for the election of a director to fill the board's vacant Class I seat;

**IT IS FURTHER ORDERED** that Defendants reopen nominations for director candidates for the 2022 annual meeting to elect three Class III directors and allow nominations for a special shareholder meeting to be held to fill the vacant Class I Board seat;

**IT IS FURTHER ORDERED** that Defendants are enjoined from enforcing the nomination deadline of November 14, 2022;

**IT IS FURTHER ORDERED** that Defendants are enjoined from rejecting Plaintiffs' nomination(s) of candidates for the Board on the grounds that Plaintiffs are not "record holders" of Company stock or any other invalid ground;

**IT IS FURTHER ORDERED** that Defendant Benjamin C. Duster, IV not participate in any Board meetings or decisions as he is not a valid director of the Company and his nomination for reelection as an incumbent Class III director at the Company's 2022 annual meeting is null and void; and

**IT IS FURTHER ORDERED** that Plaintiffs deposit with the Prothonotary legal tender of the United States in the amount of five hundred dollars ($500.00) to be held by the Prothonotary, conditioned that if this injunction is dissolved because

Case ID: 221102195
Control No.: 22121214

improperly granted, Plaintiffs shall pay to any person injured all damages sustained by reason of granting the injunction and all legally taxable costs and fees.

**SO ORDERED**.

By the Court:

_____
J.

Case ID: 221102195
Control No.: 22121214