# EXHIBIT C

BALLARD SPAHR LLP
By:  Adrian R. King, Jr. (PA No. 69315)
     M. Norman Goldberger (PA No. 28241)
     Laura E. Krabill (PA No. 76879)
     Shawn F. Summers (PA No. 327471)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8622
kinga@ballardspahr.com

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>Plaintiffs,<br><br>vs.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>Defendants. | : : : : : : : : : : : : : : : : : : | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY<br><br>November Term, 2022<br><br>No. 02195 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**I.      MATTER BEFORE THE COURT**

Before the Court is the Motion for Preliminary Injunction filed by Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross.  Plaintiffs' Motion is necessitated by the illegal, inequitable and oppressive acts of the board of directors (the "Board") of Defendant Republic First Bancorp, Inc. ("Republic First," or the "Company") specifically designed to entrench themselves in office and

Case ID: 221102195
Control No.: 22121214

disenfranchise the Company's shareholders, all to defeat Plaintiffs' ongoing proxy contest.

Faced with Plaintiffs' challenge to their control over the Company, the Board members—defendants Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV (the "Director Defendants")—adopted two self-serving schemes to take the election of directors out of the shareholders' hands where it belongs and disrupt Plaintiffs' proxy contest. First, after finally scheduling the long delayed 2022 annual shareholder meeting where three board seats were up for election and with Plaintiffs' request for a special shareholder meeting to fill two Board vacancies pending, the Director Defendants abruptly reduced the size of the Board from eight to six seats (the "Board Entrenchment Scheme") in a blatant attempt to prevent Plaintiffs from nominating and/or supporting the nominations of—and the Company's shareholders from electing—up to four new directors, potentially seating half of the Board. Second, to further tip the election in their favor and take away the shareholders' voting rights, Defendants also manipulated the process for shareholders to nominate director candidates in bad faith, providing an unreasonably short window for nominations and then rejecting Plaintiffs' nomination of Mr. Braca (the "Rigged Nomination Scheme").

Case ID: 221102195
Control No.: 22121214

Both the Board Entrenchment Scheme and the Rigged Nomination Scheme are specifically designed to impinge on the voting rights of all of the Company's shareholders and undermine Plaintiffs' right to contest the election of directors. Pennsylvania courts have long recognized and protected a shareholder's right to vote (and the commensurate right to wage a proxy contest) as the most fundamental right and privilege of the ownership of company stock. The shareholder franchise is the bedrock of corporate democracy, constituting the primary way, via election of directors, that owners of a corporation—the shareholders—control the direction their corporation takes. Directors are not permitted to take actions (even if technically legal) that curtail or impede the efficacy of this fundamental right.

And, here, both the Board Entrenchment Scheme and Rigged Nomination Scheme violate Pennsylvania law and the Company's own bylaws. If implemented, the Board Entrenchment Scheme will result in a lopsided six-member board with three classes of one, two, and three members each. But 15 Pa. C.S. § 1724(b) requires that, if a board is classified, the classes must be as equal as possible. Republic First's governing documents are in accord—Article II, Section 2 of the Company's bylaws require that the Board be divided into "three classes as nearly equal as possible." Likewise, the Rigged Nomination Scheme violates Pennsylvania law and Rule 14a-8 promulgated under the Securities Exchange Act (the "Exchange Act"), which is incorporated into the nomination of directors under both the Company's Articles of

Case ID: 221102195
Control No.: 22121214

Incorporation and bylaws. Both the statute and the rule require that the deadline for nominations be reasonable. Instead, in bad faith, Defendants set a short ten calendar day deadline (including two intervening weekends and a federal holiday) not for any legitimate business purpose but specifically to undermine Plaintiffs' proxy contest and nomination.

Judicial relief is even more essential here not only because this Board has violated fundamental shareholder rights, but also has woefully underperformed. The Director Defendants have been responsible for a business strategy that has depleted capital, stifled earnings and produced a stock price performance that is the worst in the industry. Many of the Defendants sat by for years while shareholder value was destroyed and resources were diverted to insiders and their associates.

Defendants' actions were designed to rig the election in favor of the incumbent directors and prevent Plaintiffs from contesting the election of directors and the shareholders from having a voice in the Company. Defendant's blatant and illegal acts of entrenchment in adopting the Board Entrenchment Scheme and the Rigged Nomination Scheme cannot be allowed to stand where Plaintiffs have been engaged in a proxy contest for the election of directors at the long delayed 2022 annual meeting, currently scheduled for January 26, 2023, and have sought a special shareholder meeting to fill Board vacancies. Accordingly, Plaintiffs ask this Court to enjoin Defendants from implementing the Board Entrenchment Scheme, or any

Case ID: 221102195
Control No.: 22121214

similar scheme that alters the Company's bylaws or the size of the Board, until the 2022 annual shareholder meeting and a special shareholder meeting take place. Likewise, Plaintiffs ask this Court to enjoin Defendants from effectuating the Rigged Nomination Scheme.

The 2022 annual meeting and election of Class III directors is scheduled to take place on January 26, 2023. Plaintiffs have sought approval from the Pennsylvania Department of Banking to solicit proxies for that meeting and anticipate that approval will be granted shortly after the end of the public comment period, set to expire on December 8, 2022. Plaintiffs have attempted to resolve their conflicts with Defendants and avoid burdening the Court with this motion, but those efforts have proven unsuccessful. Accordingly, Plaintiffs request that the Court order Defendants to respond to this Motion by December 12, 2022, and conduct a hearing later that week, so that Plaintiffs (and all Company shareholders) will know the number of Board seats up for election and Plaintiffs can move forward with their proxy solicitation efforts sufficiently in advance of the January 26, 2023 annual shareholder meeting.

## II.      STATEMENT OF QUESTIONS INVOLVED

1.      Should Defendants be enjoined from implementing their plan to reduce the size of the Company's board from eight to six seats, or taking any other similar action to alter the size of the company's board or amend its bylaws, when their plan

Case ID: 221102195
Control No.: 22121214

directly undermines Plaintiffs' proxy contest and the voting rights of all the Company shareholders?

Suggested answer: Yes.

2.    Should Defendants be enjoined from enforcing the unreasonably short nomination deadline and refusing to accept Plaintiffs' director nominations?

Suggested answer: Yes.

## III.    FACTUAL BACKGROUND

### A.    The Republic First Board and Governing Documents

Republic First is a Pennsylvania corporation and the holding company for Republic First Bank ("Republic Bank"). Compl. ¶ 2. Since at least 2009, the Board has been composed of eight seats divided into two Class I directors, three Class II directors and three Class III directors. *Id*. ¶ 57. Each class of directors is elected to serve a three year term, with the class up for election rotating at each annual meeting. *Id.* ¶ 3. The Class III directors are up for election at the 2022 annual shareholder meeting. *Id.*

The Company's last annual shareholder meeting was held on April 27, 2021; the 2022 annual shareholder meeting (and the election of the Class III directors) was originally scheduled to occur in early May 2022. *Id.* ¶ 59. After the Board's 2021 annual meeting, the directors were: defendant Madonna and non-party Brian Tierney

Case ID: 221102195
Control No.: 22121214

(Class I); defendants Jacobs, Wildstein and Cohen (Class II); and non-parties Vernon W. Hill, II, Barry L. Spevak and Theodore J. Flocco, Jr. (Class III). *Id.* ¶ 2.

Republic First is governed by its Articles of Incorporation and bylaws. The key provisions for this case are as follows:

Article II, Section 2 of the bylaws provides:

> The Board of Directors shall be divided into three classes as nearly equal as possible. The members of each class shall be elected for a term of three years and until their successors are elected and qualified. One class shall be elected by ballot annually. . . . A director need not be a citizen of the United States or a resident of the Commonwealth of Pennsylvania but must be a shareholder of the Corporation at the commencement of his term.

*Id.* ¶ 54; Compl. Exhibit 1 (Republic First bylaws).

Article II, Section 7 of the bylaws states:

> Any vacancies in the Board of Directors, whether arising from death, resignation, removal or any other cause except an increase in the number of directors, shall be filled by a vote of the majority of the Board of Directors then in office even though that majority is less than a quorum. . . . In the event that at any time a vacancy exists in any office of a director that may not be filled by the remaining directors, a special meeting of the shareholders shall be held as promptly as possible and in any event within sixty (60) days, for the purpose of filling the vacancy or vacancies. . . .

*Id.* ¶ 55; Ex. 1.

Case ID: 221102195
Control No.: 22121214

According to Article I, Section 2 of the bylaws:

> Special meetings of the shareholders for any purpose or purposes . . . may be called at any time (a) by the Chairman of the Board, (b) by the Board of Directors or (c) at the request in writing of shareholders entitled to cast at least twenty (20%) percent of the votes entitled to be cast at the meeting upon payment by such shareholders to the Corporation of the reasonably estimated cost of preparing and mailing a notice of the meeting (which estimated cost shall be provided to such shareholders by the Secretary of the Corporation) . . . .

*Id.* ¶ 53; Ex. 1.

Finally, Article II, Section 4 of the bylaws (consistent with the Articles of Incorporation) reads:

> <u>Nomination by Shareholders.</u>  At all Annual Meetings of shareholders . . . any stockholder who desires to propose nominees to the Board of Directors must provide for the receipt of a written notice of the intention to nominate a person or persons for election as directors by the Secretary of the Corporation: (i) with respect to an election to be held at any annual meeting of shareholders in accordance with the provision of Rule 14a-8 . . . .
>
> The notice is required to contain: (i) the name and address of the shareholder who intends to make the nomination and of the person or persons to be nominated; (ii) a representation that the shareholder is a holder of record of stock entitled to vote at the meeting and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (iii) a description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder; (iv) such other information regarding

Case ID: 221102195
Control No.: 22121214

each nominee proposed by such shareholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had each nominee been nominated or intended to be nominated, by the Board of Directors of the Corporation; and (v) the consent of each nominee to serve as a director of the Company if so elected. The chairman of any meeting of shareholders to elect directors and the Board of Directors may refuse to recognize the nomination of any person not made in compliance with the foregoing.

*Id.* ¶ 56; Ex. 1; *see also* Compl. Ex. 2 (First Republic Articles of Incorporation), art. VII, § D (same).

## B. The Company Has Been in an Extended Period of Turmoil.

Since early December 2021, several significant investors in the Company have publicly reported their dissatisfaction with the Board and management and their desire to elect a slate of new independent directors to replace the incumbent directors up for election at the Company's 2022 annual meeting. *Id.* ¶ 60.

On December 9, 2021, Republic First announced that it had received a letter from Driver Management Company LLC and certain of its affiliates ("Driver"), an investment management company that owned approximately 668,824 shares of the Company's stock, expressing Driver's intent to nominate an alternative slate of three candidates as directors in connection with the Company's 2022 annual meeting. *Id.* ¶ 61; Exhibit 3 (December 9, 2021 Form 8-K). For months afterward, Driver and the Company issued competing press releases and filings with the Securities

Case ID: 221102195
Control No.: 22121214

Exchange Commission ("SEC") regarding Driver's criticisms of the Board and management and its efforts to elect its slate of directors, rather than the three incumbent Class III directors up for reelection at the 2022 annual meeting. *Id.* ¶¶ 62–63; Exhibit 4 (January 14, 2022 PREN14A).

On January 31, 2022, Plaintiffs and the Avery Conner Capital Trust (the "Avery Trust"), for which Plaintiff Philip Norcross serves as a trustee, filed a Form 13D with the SEC, disclosing that they collectively owned 3,910,921 shares of Company stock, amounting to approximately 6.6% of the Company's outstanding shares. *Id.* ¶ 64; Exhibit 5 (January 31, 2022 Form 13D). Through several subsequent acquisitions, Plaintiffs and the Avery Trust increased their ownership to 5,706,583 shares, or approximately 9.6% of the Company's outstanding stock. *Id.* ¶ 66; Exhibit 6 (February 10, 2022 Form 13D/A). On February 10, 2022, Plaintiffs and the Avery Trust announced that they intended to, "independently and at [their] own cost, file appropriate proxy materials and engage in activities that may constitute solicitation under the SEC's proxy rules in opposition to the Issuer's three Class III director nominees . . . and in support of the candidates (Peter B. Bartholow, Pamela D. Bundy and Richard H. Sinkfield III) nominated by [Driver] for election as Class III directors at the Issuer's 2022 annual meeting of shareholders . . . ." *Id.* ¶ 67 (quoting Ex. 6).

Case ID: 221102195
Control No.: 22121214

With two groups of significant shareholders criticizing the Company's Board and management, the Board erupted into two warring factions, with four directors (defendants Madonna, Cohen, Jacobs and Wildstein, the "Madonna Faction") publicly accusing the other four (non-parties Hill, Flocco, Spevak and Tierney, the "Hill Faction") of entrenchment and undermining shareholder voting rights. *Id.* ¶ 68. The Hill Faction responded that the Madonna Faction was making intentionally false and misleading claims in an effort to undermine the Hill Faction's bids for reelection as directors because, according to Hill, Madonna and Cohen were intent on selling the Company to further their own personal financial interests. *Id.* ¶ 69.

The infighting among Board members resulted in significant upheaval at the Company, prompting multiple lawsuits, including two filed by Plaintiffs based on their concerns about the revelations being made by the Board members, and one by Driver seeking to force the 2022 annual meeting to take place as scheduled in early May 2022 so it could proceed with its proxy solicitations. *Id.* ¶ 70.

The upheaval also caused the Company's auditors to insist that an investigation be conducted by independent counsel regarding the various accusations made by the Board members before it would certify the Company's 2021 financials. *Id.* ¶ 71. This delayed Republic First's required SEC 2021 annual report filing on Form 10-K and several subsequent 2022 quarterly financial reports on Form

Case ID: 221102195
Control No.: 22121214

10-Q, resulting in the Company receiving a notice from NASDAQ that it would be delisted if it did not complete its required SEC filings. *Id.*

In May 2022, one of the Hill Faction directors, Theodore Flocco, died. *Id.* ¶ 72. The Madonna Faction, now with the majority, immediately took advantage of their former colleague's death by holding a Board meeting and voting to replace Hill with one of its members, defendant Madonna, as Chairman of the Board. *Id.* At that point, the remaining members of the Hill Faction filed suit in federal court to block the majority from holding meetings and taking action without a quorum of the Board. *Id.* ¶ 73.

On May 31, 2022, finding that the Madonna Faction had acted illegally, oppressively and fraudulently, the federal court appointed esteemed Philadelphia lawyer Alfred Putnam to serve as a custodian of the Company and hold a special shareholder meeting to elect two new directors, one to replace Mr. Flocco and a new ninth director to ensure that the Board would not be evenly split. *Id.* ¶ 74. Mr. Putnam scheduled the special shareholder meeting and solicited nominations from shareholders. *Id.* ¶ 75; Exhibit 7 (July 5, 2022 Schedule 14C). Plaintiffs submitted Mr. Braca's nomination to Mr. Putnam and Defendant Jacobs, the Company's secretary, including a statement that Plaintiff Philip Norcross was a record owner of Company stock and including a letter from Mr. Norcross' broker attesting that he was record owner of 10,000 shares of Company stock. *Id.* ¶ 75; Exhibit 8 (June 21,

Case ID: 221102195
Control No.: 22121214

2022 nomination letter). The Company did not challenge Mr. Norcross' record ownership and accepted the nomination of Mr. Braca. *Id.*

Plaintiffs also continued to pursue a books and records request they had submitted to the Company before Mr. Putnam's appointment. *Id.* n.3. Mr. Putnam questioned the validity of the request sent on behalf of Plaintiff George Norcross—a beneficial owner—citing Pennsylvania law defining "shareholder" as a record owner. *Id.* In response, Plaintiffs sent a letter (cc'd to Defendant Jacobs in her role as secretary) revising the request to come from Plaintiff Philip Norcross, including a letter from his broker certifying that Mr. Norcross was a record owner of 10,000 shares of Company stock purchased on November 16, 2021. *Id.* Again, the Company accepted Philip Norcross as a record holder and provided certain of the books and records sought in the request. *Id.*

Before the special meeting could take place, on July 6, 2022, the U.S. Court of Appeals for the Third Circuit reversed the district court's decision and upheld the Madonna Faction's right to appoint a new director to fill Mr. Flocco's seat despite the absence of a quorum under the Company's bylaws. *Id.* ¶ 76. Immediately thereafter, the Madonna Faction canceled the special shareholder meeting, declining to give shareholders a say in the composition of their Board, and instead usurped that important right and appointed Defendant Benjamin Duster to the Board as a new Class III director. *Id.* ¶ 77; Exhibit 11 (July 11, 2022 Schedule 14A). In appointing

Case ID: 221102195
Control No.: 22121214

Defendant Duster, the Board touted his experience on Wall Street and with mergers and acquisitions, giving credence to the Hill Faction's claims that defendants Madonna and Cohen were intent on selling the Company for their own personal financial benefit. *Id.* ¶ 78. But, Defendant Duster's appointment to the Board was invalid from the outset, as he specifically violated Article II, Section 2 of the Company's bylaws, commanding that a director "must be a shareholder of the Corporation at the commencement of his term." *Id.* ¶ 77. Defendant Duster was not a shareholder when he was appointed as a director and continued not to hold any Company stock at least as late as October 25, 2022, as reported by the Company in its recent SEC filings. *Id.*; Exhibit 12 (excerpt from Form 10-K).

In any event, the three remaining members of the Hill Faction ultimately conceded defeat and resigned. *Id.* ¶ 79. Hill and Spevak (the other two Class III directors) resigned on August 9, 2022. *Id.* Tierney, the last Hill Faction director (and a Class I director), followed on September 19, 2022. *Id.* This left three vacant Board seats: two Class III seats (up for election at the 2022 annual meeting) and one Class I seat. *Id.*

### C. The Madonna Faction Entrenches Itself.

While the litigation and infighting played out on the public stage, the Company failed to file its annual report on SEC Form 10-K or schedule its 2022 annual meeting of shareholders. *Id.* ¶ 80. Plaintiffs and Driver continued to actively

Case ID: 221102195
Control No.: 22121214

pursue their proxy contests, criticizing the Board and management for the direction of the Company and its abysmal financial and market performance, as well as its lack of transparency. *Id.* ¶ 81.

Plaintiffs continued to press for the election of new independent directors who would change the direction of the Company and improve its performance. *Id.* ¶ 82. After the Madonna Faction took control of the Board, Plaintiffs sought to actively engage with the Board and increase their ownership in the Company above a 10% limitation set forth in the Articles. *Id.* ¶ 85. Although Plaintiffs were initially hopeful that the prevailing Madonna Faction would take positive steps to reverse actions that had been taken before the Board's implosion and to set the Company on the right path, that did not happen. *Id.* ¶ 86. Instead, the Board continued to mismanage the Company, resulting in a significant further reduction in Republic Bank's stock price and worsening of other financial metrics. *Id.* Further, the Board has continued to rebuff advances made by Plaintiff to infuse capital into the Company and provide much needed assistance in managing its affairs, including through the appointment of Mr. Braca as CEO. *Id.*

Indeed, since the Madonna Faction and Defendant Duster took control, the Board has engaged in breaches of fiduciary duty designed to keep the shareholders in the dark and retain control of the Company to benefit their own self-interests at

Case ID: 221102195
Control No.: 22121214

the expense of the Company and its shareholders. *Id.* ¶ 87.  Among other things, the

Board took the following actions:

a.  It named Madonna interim CEO and Executive Chairman;

b.  It reported that the investigation demanded by the Company's auditors was completed in August 2022, but has continually failed to report the findings or conclusions of the investigation;

c.  It failed to timely file the Company's required annual report and quarterly financial reports with the SEC, resulting in Republic First facing potential delisting from the NASDAQ exchange;

d.  It failed to schedule any shareholder meeting (annual or special) to allow the shareholders to elect three Class III directors (whose terms should have ended by May 2022) and a Class I director despite repeated calls by Plaintiffs for special shareholder meetings for that purpose;

e.  It reinstated Madonna's employment contract with an increased salary and significant parachute payments (amounting to millions of dollars) in the event of certain change of control transactions, and delayed over one month in reporting that decision, in violation of SEC reporting rules; and

f.  Immediately after reporting the employment arrangement with Madonna—providing him significant incentive to sell the Company— it announced the formation of a "strategic review" committee and its intent to engage with potential "transaction" partners, essentially conducting a fire sale while the Company's assets are significantly impaired as a result of the Board's abysmal investment and business decisions.  The sale of the business would therefore only benefit the Director Defendants, particularly Madonna who would receive substantial payments upon a change of control, to the significant detriment of the Company and its shareholders.

*Id.* ¶ 88.

In light of the Board's failure to rectify the Company's problems and its

apparent insistence on doubling down on Board entrenchment despite the Madonna

Case ID: 221102195
Control No.: 22121214

Faction deriding the Hill Faction for doing so, Plaintiffs renewed their challenges to the Board's actions and reiterated their intention to engage in a proxy contest and promote alternative candidates to fill the vacant Board seats and other seats up for election at the long-delayed 2022 annual meeting. *Id.* ¶ 89.

For instance, on September 22, 2022, Plaintiffs publicly criticized the Board for its inaction and entrenchment in a letter to the Board, emphasizing that the lack of a shareholders' meeting had allowed the directors to avoid facing accountability from the Company's shareholders well past the time the Class III directors should have been subjected to a contested election. *Id.* ¶ 91; Exhibit 16 (September 22, 2022 Schedule 13D/A). Plaintiffs also reported that, in connection with Plaintiffs' offer to infuse the Company with capital (as well as other proposals to benefit the Company), the Board tried to impose a standstill agreement that would prohibit Plaintiffs from nominating directors for election at the 2022 annual shareholders' meeting. *Id.* ¶ 92.

Driver likewise continued to make SEC filings critical of the Board, particularly of its decision to install Madonna as interim CEO and provide him with significant parachute payments in connection with a change of control transaction, as well as the Company's lack of transparency about the members of the strategic review committee and whether Madonna had any role in the strategic review process. *Id.* ¶ 93; Exhibit 17 (September 22, 2022 Schedule 14A).

Case ID: 221102195
Control No.: 22121214

On October 4, 2022, the Board avoided one of its challenges—it announced that it had made a deal with Driver to buy its silence and acquiescence to the Board's ongoing control of the Company in exchange for the Board's agreement to appoint Driver nominee Defendant Bartholow as a new Class III director (filling one of the Hill and Spevak seats) and to pay Driver $925,000. *Id.* ¶ 94; Exhibit 18 (October 4, 2022 Form 8-K). This still left two vacant Board seats—one of the two Class III seats vacated by Hill and Spevak on August 9, 2022, and the Class I seat vacated by Tierney on September 19, 2022. *Id.* ¶ 95. Contrary to the dictates of Article II, Section 7 of the Republic First bylaws, the Class III seat remained vacant for more than 60 days with the Board failing to fill it and refusing to call a shareholders' meeting for that purpose. *Id.*

Accordingly, Plaintiffs delivered a letter to the Board requesting a special shareholders' meeting for two purposes: (1) adopting a resolution encouraging the Board to revise Madonna's employment agreement to eliminate the incentive to engage in a change of control transaction; and (2) "[e]lecting two directors to the board of directors of Republic First (the 'Board'), one to serve as a Class I director and one to serve as a Class III director until the annual meeting of shareholders at which such director's term expires and until the elections and qualifications of their respective successors. The directors elected at the Special Meeting would fill the Class I and Class III vacant seats as a result of the resignation of Brian P. Tierney

Case ID: 221102195
Control No.: 22121214

and the resignation of either Vernon W. Hill, II or Barry L. Spevak." *Id.* ¶ 97; Exhibit 20 (October 25, 2022 letter to the Board).

### D. The Company Finally Files Its Form 10-K and the Election of Class III Directors at the Annual Meeting Becomes Imminent

On October 24, 2022, the Company reported that the audit of its 2021 financials was finally complete but that it was awaiting a response from its former auditor before it could file its belated 2021 Form 10-K. *Id.* ¶ 98. Recognizing that they would finally have the opportunity to solicit proxies from fellow shareholders[1] and nominate directors, at least for two of the three Class III seats, as well as potentially support candidates nominated by other shareholders as they had with the Driver nominees, Plaintiffs immediately sought books and records from the Company, including shareholder information, so that their proxy solicitation firm could contact fellow shareholders. *Id.* ¶ 99; Exhibit 21 (October 25, 2022 books and records request). Plaintiffs' books and records request again included a representation that Mr. Philip Norcross was a record owner of Company stock and a letter from Mr. Norcross' broker attesting to that fact. *Id.* Again, Defendants did not challenge Mr. Norcross's record ownership and expressly agreed to provide certain of the requested documents subject to the entry of a confidentiality

---

[1] Plaintiffs are in the process of obtaining approval from the Pennsylvania Department of Banking to solicit proxies and expect that approval to be granted shortly after the close of the public comment period on December 8, 2022. Norcross Decl. ¶¶ 2–5.

Case ID: 221102195
Control No.: 22121214

agreement. *Id.* Since then, the confidentiality agreement has been fully executed and the Company has provided shareholder lists to Plaintiffs' proxy solicitation firm. *Id.*; Norcross Decl. ¶ 12.

On October 26, 2022, the Company finally filed its long overdue Form 10-K. Compl. ¶ 100. With the filing of the Form 10-K, Defendants' only stated obstacle to scheduling the belated 2022 annual shareholders' meeting was eliminated and the Board would be forced to finally face the judgment of the Company's shareholders. *Id.* ¶ 101.

On November 4, 2022, the Company announced that the 2022 annual shareholders' meeting would take place on January 26, 2023, almost nine months after its originally scheduled date. *Id.* ¶ 104; Exhibit 25 (November 4, 2022 Form 8-K). Apparently recognizing that Plaintiffs' proxy contest at the annual meeting and the election of a Class I director pursuant to Plaintiffs' special meeting demand could result in the turnover of half the Board (assuming the Company's shareholders elected two new directors to fill the vacant Class I and Class III seats and replaced the two existing Class III directors), the Director Defendants devised a plan to upend the proxy contest and prevent the shareholders from exercising their right to elect their chosen representatives for the Board. *Id.* ¶ 106.

Rather than allow Plaintiffs to potentially nominate and/or advocate for—and the shareholders to elect—up to four directors, the Board adopted the Board

Case ID: 221102195
Control No.: 22121214

Entrenchment Scheme, eliminating the Class I seat vacated by Tierney and the remaining vacant Class III seat. *Id.* On November 7, 2022, the Company announced that the Board would nominate incumbent directors, defendants Bartholow and Duster, as Class III directors for election at the 2022 annual shareholders' meeting and revealed for the first time that, effective November 4, 2022, the Board chose to reduce the size of the Board from eight members to six. *Id.* ¶ 107; Exhibit 26 (November 7, 2022 Form 8-K).

Under federal banking regulations, as Defendants certainly know, the Board Entrenchment Scheme would limit Plaintiffs' ability to nominate directors to serve on the Board from two to one, based on potential issues regarding "control" of Republic Bank. *Id.* ¶ 108. It also would defeat the primary purpose of Plaintiffs' pending special meeting request—the election of two directors to fill the two vacant Board seats. *Id.* The Board's decision to institute the Board Entrenchment Scheme also came after the vacant Class III Board seat should have already been filled under Article II, Section 7 of the Company's bylaws through a shareholder election. *Id.*

The Defendants had no legitimate basis to reduce the number of Board seats. *Id.* ¶ 109. The Board Entrenchment Scheme does not solve the problem of a potential deadlock on the Board, as there is still an even number of seats. *Id.* It does not ensure oversight of management where, as here, all of the Board members are beholden to Madonna, the interim CEO and Executive Chair. *Id.* And, the Board

Case ID: 221102195
Control No.: 22121214

Entrenchment Scheme does not maintain the equality among the classes of directors (now with one Class I director, two Class III directors and three Class II directors) mandated by the Company's bylaws and Pennsylvania law. *Id.* Instead, the Board Entrenchment Scheme was clearly designed to entrench the Company's current Board and prevent Plaintiffs and the Company's other shareholders from electing new independent directors to fill up to four of the eight Board seats through Plaintiffs' requested special shareholder meeting and the 2022 annual meeting, thereby significantly changing the dynamics and direction of the Board and the Company. *Id.* ¶ 110.

At the time it was announced, the Board Entrenchment Scheme was only the latest of the Director Defendants' overreaching defensive measures taken to entrench themselves at the expense of the franchise of the Company's shareholders. *Id.* ¶ 113. The Board Entrenchment Scheme followed the Director Defendants' refusal to grant Plaintiffs an exception to the Articles to allow them to purchase more of the Company's shares, extended delay in scheduling the 2022 annual meeting, refusal to schedule a special meeting for the election of directors, cancellation of the special meeting to fill Mr. Flocco's seat scheduled by the court-appointed custodian, suppression of opposition by buying off Driver with a Board seat and $925,000 payment, and attempt to prevent Plaintiffs from continuing their proxy contest in

Case ID: 221102195
Control No.: 22121214

exchange for considering their proposals to inject capital and otherwise benefit the Company and its shareholders. *Id.*

### E. The Board Sets an Unreasonably Short Nomination Deadline and Refuses to Accept Plaintiffs' Nomination.

Defendants were still not done with their efforts to rig the director election and undermine the shareholders' rights to select the custodians of their company. *Id.* ¶ 114. Defendant took yet another step to tilt the election in favor of the incumbent directors, and prevent Plaintiffs from contesting the election of directors and the shareholders from having a voice in the Company. *Id.*

Pursuant to the Company's November 4, 2022, notice setting the date for the delayed 2022 annual shareholder meeting as January 26, 2023, Defendants imposed an unreasonably short deadline for shareholders to submit director nominations—November 14, 2022 (only ten calendar days later, including two intervening weekends and a federal holiday). *Id.* ¶ 119. Despite having made the decision on November 4, Defendants also changed the landscape part way through their unreasonably short nomination period when they announced on November 7, 2022, that only two seats, rather than three, would be up for election at the 2022 annual meeting. *Id.* ¶ 107.

Despite the shortened time period and the shifting goalposts, to ensure they satisfied the Company's demands, on November 11, 2022 (three days before the deadline), Plaintiffs submitted Mr. Braca as their nominee for election to the Board

-23-

Case ID: 221102195
Control No.: 22121214

at the 2022 annual meeting. *Id.* ¶ 115; Exhibit 27 (November 11, 2022 notice of nomination). As with multiple prior submissions to the Company and Board (two books and records requests and the nomination of Mr. Braca in connection with the special shareholder meeting ordered by the federal court), Plaintiffs attached a letter from Plaintiff Philip Norcross' broker asserting that Mr. Norcross is a record owner of 10,000 shares of Company stock and has been since November 16, 2021. *Id.* Plaintiffs also submitted their Schedule 13D filings with the SEC showing their beneficial ownership of almost 10% of the Company's shares. *Id.* The nomination was submitted on time and contained all of the information required by the Company's Articles of Incorporation and bylaws. *Id.*

On November 16, 2022, two days after the nomination deadline, Defendants for the first time disputed Mr. Norcross' record ownership of Company stock and refused to accept the nomination of Mr. Braca for election to the Board. *Id.* ¶ 116; Exhibit 28 (November 16, 2022 letter from Defendant Madonna to Philip Norcross). Defendants did so to avoid a fair proxy contest, despite having accepted the very same proof of Mr. Norcross' record ownership, as evidenced by letters from his broker, three times before without dispute and with full knowledge of the Company's internal records regarding its shareholders. *Id.* ¶ 117. Plaintiffs believed, based on the representations of Mr. Norcross' broker and Defendants' prior conduct and statements, that Plaintiff Philip Norcross was a valid record owner of

Case ID: 221102195
Control No.: 22121214

Company stock. *Id.* Defendants knew that Plaintiffs held that belief and induced that belief despite having superior access to the Company's official records. *Id.* Defendants also failed to advise Plaintiffs of their new challenge to Mr. Norcross' record ownership before the deadline to prevent Plaintiffs from being able to cure any deficiency, by either obtaining records ownership or asking another record holder to nominate Mr. Braca. *Id.* ¶ 118.

Moreover, Defendants' bad faith and improper purpose in imposing an unreasonably short deadline for director nominations now became clear as yet another in the long line of defensive measures taken by Defendants to entrench themselves and derail Plaintiffs' proxy contest and the shareholders' right to vote in a free and fair election. *Id.* ¶ 119. Under the Company's Articles and bylaws, a beneficial shareholder (rather than a record owner) may nominate directors by complying with Rule 14a-8 under the Exchange Act. *Id.* ¶¶ 120, 56; Exs. 1, 2. Rule 14a-8 allows a beneficial owner (rather than a record holder) to nominate directors if the shareholder owns at least $25,000 of stock for one year. *Id.* ¶ 120. The statements from Mr. Norcross' broker, submitted multiple times to Defendants, as well as Plaintiffs Schedule 13D filings with the SEC, showed that Mr. Norcross purchased 10,000 shares of Company stock (worth over $25,000) on ***November 16, 2021***. *Id.* Defendants set the unreasonably short November 14, 2022, deadline for

Case ID: 221102195
Control No.: 22121214

nominations, not for any valid reason, but instead to foreclose Plaintiffs from satisfying the one-year holding standard under Rule 14a-8 *by two days*. *Id.*

Even assuming arguendo that Defendants did not set the nomination deadline in bad faith with the intent to interfere with Plaintiffs' ability to nominate directors and influence the Board election, the deadline was unreasonable. The Company delayed from March 17, 2022 to October 26, 2022 filing its 2021 annual report on Form 10-K. *Id.* ¶ 123. It also failed to timely file any of its required 2022 quarterly financial disclosures on Form 10-Q and filed none before the nomination deadline. *Id.* In fact, it belatedly filed its first quarter Form 10-Q on November 18, 2022, four days *after* the nomination deadline. *Id.* The Company still has not filed its belated second and third quarter Form 10-Qs. *Id.* As of the November 14 artificial deadline for nominations, Republic First shareholders were in the dark about the Company's financial status and its operations under the current Board and management—critical information in determining whether to nominate other directors and who would be the best candidates to address the Company's business and financial needs. *Id.*

Defendants' only proffered excuse for setting the unreasonable and self-serving nomination deadline was the Company's alleged need to "print and send its proxy materials for the 2022 Annual Meeting." *Id.* ¶ 125 (quoting Ex. 25). Yet, over the past five years, the Company has mailed its annual meeting proxy between

Case ID: 221102195
Control No.: 22121214

35 and 38 days before the scheduled meeting, meaning that the 2022 annual meeting proxy will likely be printed and sent no sooner than December 19, 2022. *Id.*

Thus, Defendants' actions of setting a short deadline of ten calendar days after the announcement of the 2022 annual meeting (while depriving shareholders of required SEC financial information and with over two months before the meeting date) is unreasonable and was done in bad faith to stifle Plaintiffs' proxy contest and ability to present viable alternate candidates for the Company's shareholders to elect, as well as a proxy contest by any other shareholder. *Id.* ¶ 126. By their actions, Defendants have undermined Plaintiffs' right to engage in a proxy contest, deprived the Company's shareholders of their rightful voice in the governance of the Company, and sown chaos and confusion into the market. Defendants' actions are wrongful and constitute irreparable harm warranting the imposition of injunctive relief.

## IV. ARGUMENT

### A. The Board's Actions are Inequitable and Impermissible as a Matter of Pennsylvania Law.

Pennsylvania law recognizes that the right to vote is the most fundamental right of ownership of company stock. *See Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 322 n.8 (Pa. 1961). The right to vote ensures corporate democracy, the principle that the owners of a corporation should control the direction that their corporation takes. *Wareheim v. Wareheim*, 777 A.2d 469, 481

-27-

Case ID: 221102195
Control No.: 22121214

(Pa. Super. 2001), *rev'd on other grounds*, 860 A.2d 41 (Pa. 2004). While the business judgment rule affords directors leeway in decisions they make in good faith and with due care, and while directors may consider constituencies other than the shareholders, neither provision can validate corporate actions designed to undermine shareholders' voting rights. *Id.* at 480. Pennsylvania courts will look to the inequity of a corporate board's actions and strike down measures that have as their purpose or effect the curtailment of shareholders' fundamental voting rights. *See id.* at 478; *Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C.4th 391, 406–07 (Phila. C.P. 2002).

The right to wage a proxy contest and nominate directors is commensurate with a shareholder's right to vote and is therefore among the most fundamental rights of ownership of company stock. *See Jewelcor Mgmt.*, 60 Pa. D. & C.4th at 400, 406–07; *Reifsnyder*, 173 A.2d at 322 n.8. Thus, actions by directors designed to undermine or thwart a shareholder's right to engage in a proxy contest undermine all corporate shareholders' voting rights and are invalid. *See Warehime*, 777 A.2d at 481. Defendants' action in eliminating two Board seats, setting a short deadline for shareholders to submit director nominations, and rejecting Plaintiffs' nomination of Mr. Braca for election to the Board are part and parcel of their scheme to entrench themselves and rig the election to prevent the Company's shareholders from having their rightful say in the governance of Republic First.

Case ID: 221102195
Control No.: 22121214

There is no legitimate basis for Defendants' decision to reduce the number of Board seats in advance of an imminent (and overdue) annual meeting, during an active proxy contest with Plaintiffs. The Board Entrenchment Scheme does not solve the problem of a potential deadlock on the Board. And, it violates the express requirement of equality among the classes of directors mandated by Article II, Section 2 of the Company's bylaws and 15 Pa. C.S. § 1724(b). Defendants similarly rigged the nomination process to frustrate Plaintiff's proxy contest by setting an unreasonably short deadline for nominations—one that Defendants knew fell two days shy of Mr. Norcross's one year ownership qualification under Rule 14a-8—and by refusing to recognize Mr. Norcross as a record holder despite having done so repeatedly before.

The Board's actions are clearly designed to entrench the Director Defendants and prevent Plaintiffs and the Company's other shareholders from electing new independent directors to fill up to four of the eight Board seats, thereby significantly changing the dynamics and direction of the Board and the Company. Defendants' actions prevent Company shareholders from freely exercising their voting rights to elect the three Class III directors who should have been installed seven months ago, and a fourth director to fill the vacant Class I seat pursuant to Plaintiffs' special meeting demand. Neither the Board Entrenchment Scheme nor the Rigged Nomination Scheme serves any legitimate business, operational or governance

Case ID: 221102195
Control No.: 22121214

purposes. Their only purpose is to benefit and entrench the current Board, while disenfranchising the shareholders the Board is supposed to protect. As such, the Defendants' actions are inequitable and impermissible.

## B. Entry of a Preliminary Injunction Is Warranted

Plaintiffs are entitled to a preliminary injunction to prevent the irreparable harm they will suffer if the Rigged Nomination Scheme stands and the long delayed 2022 annual meeting is held with the Board Entrenchment Scheme in place. *See Pell v. Kill*, 135 A.3d 764 (Del. Ch. 2016) (enjoining board plan to reduce the number of board seats in the midst of a proxy contest); *Jewelcor*, 60 Pa. D. & C.4th at 396 (enjoining board from advancing date of shareholder meeting in the midst of a proxy contest); *Aprahamian v. HBO & Co*., 531 A.2d 1204 (Del. Ch. 1987) (granting relief where the board postponed the annual stockholders meeting only after discovery it was likely to lose a proxy contest). Under Pennsylvania law, a plaintiff must satisfy six factors to obtain preliminary injunctive relief:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;
>
> (2) greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;
>
> (3) a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

-30-

Case ID: 221102195
Control No.: 22121214

> (4) the activity the injunction seeks to restrain is actionable, that plaintiff's right to relief is clear, and that the wrong is manifest, or, in other words, that plaintiff is likely to prevail on the merits;
>
> (5) the injunction is reasonably suited to abate the offending activity; and,
>
> (6) a preliminary injunction will not adversely affect the public interest.

*Warehime*, 860 A.2d at 46–47 (quoting *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1002 (Pa. 2003)). Plaintiffs meet each one.

This case is very similar to both *Jewelcor* and *Pell v. Kill* where the courts enjoined board action that was specifically designed to interfere with ongoing proxy contests. In *Jewelcor*, Judge Herron of this Court granted a preliminary injunction to bar a corporate board from advancing the date of the company's shareholder meeting to frustrate a shareholder proxy contest. 60 Pa. D. & C.4th at 396. Specifically, the board of directors of Thistle Group Holdings Co. notified shareholders that the company's annual meeting would be held on April 17, 2002. *Id.* at 394. After Jewelcor Management, Inc., an owner of 500 shares of Thistle stock, notified Thistle it was nominating individuals for election to the board and began soliciting proxies based on the April 17 date, the board moved the shareholder meeting date to April 3, purportedly to avoid a lengthy proxy fight that would distract from business. *Id.* at 395.

-31-

Case ID: 221102195
Control No.: 22121214

Jewelcor filed a complaint and moved for a preliminary injunction to prevent the board from moving the meeting date earlier than April 17, which this Court granted. *Id.* at 393. The Court found the board's attempt to move the meeting date was a blatant attempt to manipulate the election and interfere with the shareholder's right to contest the election of directors. *Id.* at 396. The Court further held that the board's action, even though not illegal, was improper and inequitable, noting "[a] corporation's board of directors acts improperly when it manipulates a corporate election to perpetuate its own control of the corporation." *Id.* at 399. The Court concluded that Jewelcor would be irreparably harmed by the earlier election date and that the balance of the preliminary injunction factors weighed in Jewelcor's favor. *Id.* at 396.

Likewise, in *Pell v. Kill*, Vice Chancellor Laster of the Delaware Chancery Court enjoined a board reduction scheme very similar to the one the Director Defendants adopted here. 135 A.3d at 769. In *Pell*, Cogentix Medical, Inc. had scheduled its annual meeting for May 20, 2016. *Id.* at 768. Before the dispute that led to the litigation, Cogentix, like Republic First, had eight board seats staggered into three classes. *Id.* Approximately one month before the annual meeting, plaintiff Lewis Pell publicly reported his intention to seek changes in the composition of the board and management team, including unseating defendant Robert Kill. *Id.* at 769. In response, the majority of the board (who were aligned with defendant Kill)

Case ID: 221102195
Control No.: 22121214

developed a strategy to shrink the size of the Board from eight seats to five and reduce the number of Class I seats up for election at the annual meeting to one. *Id.* Through the board reduction scheme, the board majority sought to preserve their control over the board and neutralize the threat of Pell's proxy contest. *Id.* Before the reduction, the company's stockholders had the opportunity to elect three nominees to the Class I seats, potentially shifting the board majority to Pell. *Id.* By reducing the number of Class I seats, the incumbent directors ensured that no matter how the stockholders voted, the incumbent directors would retain a majority. *Id.* Based on these facts, the Chancery Court ruled: "The problem is that when facing an electoral contest, incumbent directors are not entitled to determine the outcome for the stockholders. Stockholders elect directors, not the other way around. Even assuming that the Defendant Directors acted for an unselfish purpose, they still acted inequitably. A preliminary injunction shall issue enjoining the Company from implementing the portion of the Board Reduction Scheme that otherwise would become effective at the Annual Meeting." *Id.* at 769–70

In this case, the Board Entrenchment Scheme and the Rigged Nomination Scheme are blatant efforts to frustrate Plaintiffs' proxy contest, subvert the special shareholder meeting request and prevent the Company's shareholders from exercising their voting rights to significantly alter the composition of the Board,

Case ID: 221102195
Control No.: 22121214

potentially electing new candidates to fill up to half the Board seats (three Class III directors and one Class I director).

In granting the injunction in *Jewelcor,* Judge Herron analyzed each of the injunction factors and found that they favored issuing the injunction. 60 Pa. D. & C.4th at 396–411. The exact same analysis applies to this case. Indeed, if anything, the actions of the Director Defendants here are more egregious than in *Jewelcor* and must be stopped through immediate injunctive relief.

**1) An Injunction Is Necessary to Prevent Immediate and Irreparable Harm**

Plaintiffs have no adequate remedy at law and the harm to them is immediate and irreparable. As Judge Herron recognized in *Jewelcor,* "[i]nterference with a shareholder's election rights has been held to constitute immediate and irreparable harm by courts both inside and outside the Commonwealth." *Id.* at 408 (citing *International Banknote Co. v. Muller*, 713 F. Supp. 612, 623 (S.D.N.Y 1989) ("Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares or unnecessarily frustrating them in their attempt to obtain representation on the board of directors."); *Treco, Inc. v. Land of Lincoln Sav. & Loan*, 572 F. Supp. 1447, 1450 (N.D. Ill. 1983) ("Due to the impending time constraints imposed by the October 26, 1983 annual meeting, plaintiffs will suffer irreparable harm should the Court refuse to grant immediate injunctive relief."); *Warehime*, 777 A.2d at 469). Further, this Court

-34-

Case ID: 221102195
Control No.: 22121214

recognized that the right to solicit proxies for election of directors, in circumstances similar to those presented here, is concomitant with a shareholder's voting rights. *Jewelcor*, 60 Pa. D. & C.4th at 400, n.6 ("It is possible to draw a distinction between a shareholder's right to vote in a board election, on the one hand, and the shareholder's right to field candidates and to solicit proxy votes in that election. The Court finds this distinction meaningless in this case and will treat [Jewelcor's] right to solicit proxies and to field the Nominees as concomitant with its voting rights").

Likewise, in *Pell*, the Delaware Chancery Court found irreparable harm to the plaintiff (and the company shareholders) from a Board Reduction Scheme just like the one the Defendants have adopted here. *Pell*, 135 A.2d at 793. It explained:

> Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares. Harm of that nature must be prevented before a shareholders' meeting in cases where, as here, any post-meeting adjudication might come too late.

*Id.* (internal citations omitted). The *Pell* court concluded that, absent an injunction, the company's stockholders would be prevented from exercising their voting rights by electing three directors at the annual meeting. *Id.*

Similarly, here, by pre-ordaining the results of the 2022 annual meeting, the Board Entrenchment Scheme and Rigged Nomination Scheme deprive Plaintiffs of their right to wage a proxy fight and shareholders of their right to vote. "This loss of voting power constitutes irreparable injury." *Phillips v. Insituform of N. Am., Inc.*,

-35-

Control No.: 22121214

C.A. No. 9173, 1987 Del. Ch. LEXIS 474, at *33, 1987 WL 16285, at *11 (Del. Ch. Aug. 27, 1987).

Courts have also found immediate and irreparable harm where boards interfere with the nomination process for directors with knowledge of an ongoing or potential proxy contest. *See Lerman v. Diagnostic Data, Inc.*, 421 A.2d 906, 913 (Del. Ch. 1980) (invalidating the setting of an annual meeting 63 days in the future where bylaws required stockholder nominations at least 70 days in advance of the meeting because the board acted with "full knowledge of [the dissident's] intentions" to launch a proxy contest.); *Hubbard v. Hollywood Park Realty Enters.*, C.A. No. 11779, 1991 Del. Ch. LEXIS 9, at *35 (Del. Ch. Jan. 14, 1991) (finding enforcement of advance notice deadline for nominations inequitable where, after the nomination deadline had passed, the leading dissident agreed to join the board and abandoned its proxy contest).

Here, the annual meeting is scheduled to take place in less than two months— on January 26, 2023. Before Defendants adopted the Board Entrenchment Scheme, Plaintiffs could have nominated two directors for election at the 2022 annual meeting without risk of violating the federal banking regulations limiting a shareholder's ability to exercise "control" over a federal bank or its holding company. With the reduction of the board to six seats, Plaintiffs are limited to one director nominee. And now, the Board has thwarted even that single nomination through the Rigged

Case ID: 221102195
Control No.: 22121214

Nomination Scheme, by setting an unreasonably short deadline to submit nominations and asserting, for the first time, that Mr. Norcross is not a record shareholder despite recognizing him as one previously. The Board Entrenchment Scheme and Rigged Nomination Scheme inhibit Plaintiffs' ability to contest the upcoming Board election and solicit proxies from their fellow shareholders.

As in *Jewelcor*, this Court should have "little difficulty finding that [Plaintiffs'] inability to involve itself in the corporate election process and to solicit the proxy votes of other [company] shareholders constitutes immediate and irreparable harm." *Jewelcor*, 60 Pa. D. & C.4th at 409.

**2) Greater Injury Would Result from Refusing an Injunction and Issuance of an Injunction Will Not Substantially Harm other Parties**

Greater injury would result from refusing an injunction than granting it, and, concomitantly, issuance of an injunction will not substantially harm other interested parties in the proceedings. Defendants cannot establish any legitimate harm from the issuance of an injunction to prevent the Board Entrenchment Scheme—the Company has had eight Board seats for 15 years, and the Board Entrenchment Scheme does not resolve any concern about potential Board deadlock since the Board would continue to have an even number of seats. Further, a six member Board is far out of the norm for the number of directors of a banking organization of this size (or almost any sized bank).

Case ID: 221102195
Control No.: 22121214

Nor does recognizing Mr. Norcross as a record shareholder harm Defendants. Indeed, they have done so several times before. The Board has, therefore, waived the right to challenge Mr. Norcross' record ownership for purposes of nominating director candidates. *See Elliott v. Lindquist*, 52 A. 2d 180, 183 (Pa. 1947) (determining that the stockholders waived compliance with bylaws by failure to adhere to them on any prior instance); *Golasa v. Struse*, 9 Pa. D. & C.3d 48, 53 (Phila. C.P. 1978) (citing *Elliott*, 52 A.2d at 180–83) ("Individual provisions of the bylaws may be waived by the conduct of parties just as provisions of a contract[.]").

The Company has ample time to nominate additional directors to fill the two Board vacancies that they attempted to eliminate by the Board Entrenchment Scheme. Defendants also have ample time to prepare the Company's proxy statement, since the Company's usual practice shows that the proxy statement will not be issued until late December in any event. And, the existing Class III directors (defendants Duster and Bartholow) will not be impacted in their ability to run for their seats.[2] The "risk" that the Company's shareholders may elect directors whom the incumbents disfavor or oust incumbent directors up for election is no harm at all, but rather the vindication of the shareholder franchise. *See Aprahamian*, 531 A.2d

---

[2] Defendant Duster has never been a valid director of the Company since he did not own shares upon the commencement of his term in office in violation of the Company's governing documents. Accordingly, his nomination as an incumbent director is invalid in any event so entering the requested injunction would actually assist Defendants who will be able to make a valid nomination.

Case ID: 221102195
Control No.: 22121214

at 1208 ("The incumbent directors have no vested right to continue to serve as directors and therefore will suffer no harm if they are defeated.").

Any minimal additional cost to the Company of paying two additional directors is substantially outweighed by the harm to Plaintiffs' right to contest the election of directors and all Company shareholders' right to substantially alter the composition of the Board and direction of the Company. Indeed, "[s]hareholder voting rights are sacrosanct. The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm." *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012). "The harm threatened here is to the corporate electoral process, a process which carries with it the right of shareholders to a meaningful exercise of their voting franchise and to a fair proxy contest with an informed electorate." *Packer v. Yampol*, C.A. No. 8432, 1986 Del. Ch. LEXIS 413, at *32, 1986 WL 4748, at *11 (Del. Ch. Apr. 18, 1986).

Accordingly, there is far greater harm in denying the injunction than in granting it and an injunction will not substantially harm other interested parties.

### 3) A Preliminary Injunction Will Restore the Status Quo

A preliminary injunction will also properly restore the parties to their status as it existed immediately prior to the Defendants' wrongful conduct. If the Court enjoins Defendants from implementing the Board Entrenchment Scheme and the

Case ID: 221102195
Control No.: 22121214

Rigged Nomination Scheme, the parties will be returned to the status quo ante. Plaintiffs' special shareholder meeting request to fill the two vacant Board seats will remain pending. The 2022 annual shareholder meeting will occur on January 26, 2023 as scheduled. Plaintiffs and other Republic First shareholders will be able to nominate directors to fill the two Board vacancies and to run for the two incumbent Class III director seats up for election at the 2022 annual meeting. And, all Company shareholders will have the opportunity to elect directors for the Class III seats up for election at the annual meeting and the Board vacancies so they can exercise their control over the governance and direction of the Company.

### 4) Plaintiffs Are Likely to Prevail on the Merits

The activity the injunction seeks to restrain is actionable; in other words, Plaintiffs are likely to succeed on the merits. This is true with respect to both the Board Entrenchment Scheme and the Rigged Nomination Scheme.

### a. The Board Entrenchment Scheme and Rigged Nomination Scheme Are Illegal Infringements of the Shareholder Franchise.

Both the Board Entrenchment Scheme and the Rigged Nomination Scheme are blatant efforts to entrench the Director Defendants, infringe on Plaintiffs' proxy contest and prevent the Company's shareholders from exercising their right to elect directors of their choosing who oppose the direction taken by the current Board. They are therefore invalid and Plaintiffs are likely to succeed on their claims.

Case ID: 221102195
Control No.: 22121214

Again, the *Jewelcor* decision is instructive. As this Court ruled, "[a] corporation's board of directors acts improperly when it manipulates a corporate election to perpetuate its own control of the corporation." *Jewelcor*, 60 Pa. D. & C.4th at 399. Where, as here, a board's action "amounts to little more than an effort to maintain domination over [the company's] operations," the plaintiff's right to relief is clear. *Id.*

Citing primarily Delaware law, the *Jewelcor* decision found "strong support, albeit mostly from outside the Commonwealth, for granting injunctive relief where a corporation or its directors interfere with the fair election of directors." *Id.* at 401–05 (citing *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 239 (Del. 1982) ("The courts of this state will not allow the wrongful subversion of corporate democracy by manipulation of the corporate machinery or by machinations under the cloak of Delaware law"); *Aprahamian*, 531 A.2d at 1206–07 ("The corporate election process, if it is to have any validity, must be conducted with scrupulous fairness and without any advantage being conferred or denied to any candidate or slate of candidates."); *Schnell v. Chris-Craft Industries*, 285 A.2d 437, 439 (Del. 1971) (reversing denial of injunction where board's motivation in taking actions "was to impede a dissident group of shareholders' ability to wage a proxy fight over the election of directors"—finding the board had "attempted to utilize the corporate machinery and the Delaware Law for the purpose of perpetuating itself in office;

Case ID: 221102195
Control No.: 22121214

and, to that end, for the purpose of obstructing the legitimate efforts of dissident stockholders in the exercise of their rights to undertake a proxy contest against management. These are inequitable purposes, contrary to established principles of corporate democracy . . . [and] may not be permitted to stand."); *Steinberg v. American Bantam Car Co.*, 76 F. Supp. 426 (W.D. Pa. 1948) (issuing injunction after repeated movement of meeting date by board); and *Warehime*, 777 A.2d at 480 (enjoining stock plan that served to entrench current board as improper even though plan was not illegal—"[t]he directors' actions were improper, not because of a breach in duty to the corporation, but because of the principle of corporate democracy, the core issue in the present remand, which bars actions otherwise properly taken that are designed to undermine voting rights")).

In *Jewelcor*, the defendants argued that their actions could not be enjoined because they were legal. *Jewelcor*, 60 Pa. D. & C.4th at 406. The Court was not impressed, finding that "inequitable action does not become permissible simply because it is legally possible." *Id.* at 405 (quoting *Schnell*, 285 A.2d at 439). Here, Defendants will likely point to bylaw provisions allowing the Board to set the number of directors, set the nomination deadlines and reject director nominations. Just as in *Jewelcor*, even if Defendants' conduct were technically legal and not in violation of the bylaws (which it is, as discussed below), that does not insulate the

-42-

Case ID: 221102195
Control No.: 22121214

Board's actions where the intent and effect was clearly to entrench the Board and undermine the shareholder franchise rights.

In *Jewelcor*, this Court thus ruled that "tinkering with corporate elections to interfere with shareholders' electoral rights violates a director's fiduciary duty to shareholders and is enjoinable." *Id.* at 401. It concluded that it had "no doubt" that the board's actions were "an intentional and improper infringement on [plaintiff's] rights as a shareholder to contest a Board election." *Id.* at 406.

The same is clearly true here, and this Court should likewise look to a factually analogous decision by the Delaware Chancery Court for guidance. Again, *Pell v. Kill* presents very similar facts, and the Delaware court determined that an injunction precluding a board's plan to reduce the number of board seats in the midst of a proxy contest was warranted. 135 A.2d at 764, 769–70. In *Pell*, like here, to avert a proxy contest that could have shifted the board majority from one faction to another, the board reduced the number of seats up for election at the upcoming annual meeting. *Id.* at 768. While the company's bylaws permitted the board to alter the number of board seats, the Delaware court found that the directors "still acted inequitably" and that the plaintiff was likely to succeed on the merits of his voting rights claim. *Id.* at 769.

Emphasizing the importance of the shareholder franchise (just as under Pennsylvania law), Vice Chancellor Laster wrote:

Case ID: 221102195
Control No.: 22121214

> Maintaining a proper balance in the allocation of power between the stockholders' right to elect directors and the board of directors' right to manage the corporation **is dependent upon the stockholders' unimpeded right to vote effectively in an election of directors**.

*Id.* at 786 (quoting *MM Cos. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1126–27 (Del. 2003)) (emphasis added). The *Pell* court explained that Delaware courts "have remained assiduous in carefully reviewing any board actions designed to interfere with or impede the effective exercise of corporate democracy by shareholders, especially in an election of directors." *Id.* (quoting *Liquid Audio*, 813 A.2d at 1127).

The court concluded that the directors' plan to reduce the number of board seats violated these core principles and that plaintiff was likely to succeed on the merits of his claim: "in this case, the Defendant Directors acted in the face of an anticipated proxy contest. 'That defensive action by the [Defendant Directors] compromised the essential role of corporate democracy in maintaining the proper allocation of power between the shareholders and the Board, because that action was taken in the context of a contested election for successor directors.'" *Id.* at 793 (quoting *Liquid Audio*, 813 A.2d at 1132). The court therefore found that "Pell has established a reasonable probability of showing successfully that the Board Reduction Plan is preclusive. Pell has therefore established a reasonable likelihood of success on the merits on [his] claim . . . ." *Id.* at 789.

Case ID: 221102195
Control No.: 22121214

Likewise, here, Plaintiffs have been engaged in a proxy contest for most of this year, publicly announcing their disagreements with the Board's actions and stating their intent to support new independent directors rather than the Board's nominees. Plaintiffs have also requested a special shareholder meeting to fill the two Board vacancies. In response, Defendants have delayed holding the 2022 annual meeting where three Class III directors were up for election. Defendants have repeatedly refused to schedule special shareholder meetings for the election of directors, including to fill the two vacant Board seats. Defendants have paid off one dissident shareholder, Driver, to obtain its silence and acquiescence to the Board's chosen director nominees. Defendants tried to induce Plaintiffs to sign a standstill agreement, prohibiting them from nominating directors for election at the 2022 annual meeting. And, when none of Defendants' delaying or cajoling worked to stop Plaintiffs from proceeding with their proxy contest, Defendants adopted the Board Entrenchment Scheme and Rigged Nomination Scheme to take the decision out of the Plaintiffs' hands. By eliminating two of the Board seats, Defendants precluded Plaintiffs from nominating more than one director, effectively mooted the primary purpose of Plaintiffs' special shareholder meeting request and prevented the Company's shareholders from potentially replacing half of the eight member Board.

Defendants further undermined Plaintiffs' proxy contest by improperly refuting (after repeatedly accepting) Mr. Norcross' status as a record holder of

Case ID: 221102195
Control No.: 22121214

Republic First and imposing an unreasonable nomination deadline in bad faith in an effort to preclude Plaintiffs from nominating director candidates at all. As discussed above, under the Articles and bylaws, a beneficial owner of shares (rather than a record holder) may nominate candidates for election as directors in compliance with Rule 14a-8. Rule 14a-8 equates certain shareholders with beneficial ownership to record holders—in particular, as relevant here, if the shareholder owns at least $25,000 of stock for one year. 17 CFR § 240.14a-8(b)(i)(C). The statements from Mr. Norcross' broker, submitted multiple times to Defendants, as well as the Schedule 13D statements filed with the SEC multiple times since January 2022, showed that Mr. Norcross purchased 10,000 shares of Company stock (worth over $25,000) on ***November 16, 2021***. Thus, it appears clear, consistent with their other entrenchment ploys, that Defendants set November 14, 2022, as the deadline for nominations not for any valid reason but instead to foreclose Plaintiffs from satisfying the one-year holding standard under Rule 14a-8 to make a nomination. Defendants' bad faith in setting that deadline for the improper purpose of frustrating Plaintiffs' Board nomination, and enabling the Company's shareholders to evaluate that nomination utterly refutes any attempt by Defendants to justify the deadline as reasonable or necessitated by any valid corporate purpose.

Defendants' actions place an unreasonable burden on the shareholder franchise—precluding the Company's owners from being able to select the directors

Case ID: 221102195
Control No.: 22121214

who the shareholders determine are best aligned with their interests and will exercise better judgment in overseeing the operations of the Company. In manipulating the nomination process, Defendants have acted for the purpose of entrenchment and to impermissibly interfere with the shareholder franchise, without any legitimate justification for their actions.

There can be no serious dispute that the Director Defendants' actions here in adopting the Board Entrenchment Scheme and Rigged Nomination Scheme are for the specific purpose of foiling Plaintiffs' proxy contest and the ability of the Company's shareholders to express their will by potentially installing up to four new independent directors—half of the Board. As in *Jewelcor* and *Pell v. Kill*, the Defendants' Board Entrenchment Scheme and Rigged Nomination Scheme are inequitable and designed to impinge on Plaintiffs' proxy contest and the shareholders' voting rights. Plaintiffs' are therefore likely to succeed on the merits of their claims.

b. **The Board Entrenchment Scheme and Rigged Nomination Scheme Violate Pennsylvania Law and the Company's Governing Documents.**

Even if the Board did not adopt the Board Entrenchment Scheme and Rigged Nomination Scheme in bad faith with the specific intent to interfere with Plaintiff's franchise rights, Plaintiffs would still be likely to succeed on the merits because both schemes violate Pennsylvania law and the Company's governing documents.

Case ID: 221102195
Control No.: 22121214

First, by eliminating the vacant Class I and Class III Board seats, Defendants have rendered the director classes unequal (with one Class I director, three Class II directors and two Class III directors). This is a clear violation of Pennsylvania law (15 Pa. C.S. § 1724(b)) and of Article II Section 2 of the Company's bylaws, requiring that "[t]he Board of Directors shall be divided into three classes as nearly equal as possible."

Second, the nomination period provided by Defendants does not meet the standards under Pennsylvania law or the Company's governing documents. Under Rule 14a-8, incorporated into director nominations under the Company's Articles and bylaws, nominations must be submitted within a "reasonable time before the company begins to print and send its proxy materials." Similarly, 15 Pa. C.S. § 1758(e), entitled "Advance notice of nominations and other business," provides that companies must provide a "reasonable time" for shareholder proposals and nominations. The explanatory notes to Section 1758 explain that advance notice requires providing a "reasonable opportunity for shareholders to comply with them" and that they be "reasonable in relationship to corporate needs."

> Among the considerations to be taken into account in determining the reasonableness of an advance notice bylaw authorized by subsection (e) is whether the time frame within which director nominations or shareholder resolutions must be submitted is consistent with the corporation's need, if any, to (i) prepare and publish a proxy statement, (ii) verify that a director nominee meets any established qualifications for director and is willing to

Case ID: 221102195
Control No.: 22121214

serve, (iii) determine that a proposed resolution is a proper subject for shareholder action, and (iv) give interested parties adequate opportunity to communicate a recommendation or response with respect to such matters or to solicit proxies.

*Id.*

Here, the Company's November 14, 2022, deadline for nominations did not provide a "reasonable opportunity for shareholders to comply with them."  As discussed above, because of Defendants' delays in reporting its 2022 financial information, the November 14 deadline did not allow shareholders to make an informed judgment about the performance of the Board and management— critical information in determining whether to nominate other directors.  Moreover, Defendants changed the landscape part way through the short nomination period by announcing the reduction in the number of Board seats on November 7, 2022.  Thus, Plaintiffs and other shareholders lost the opportunity to nominate three Class III directors as they understood for over a year would be up for election at the 2022 annual meeting, reducing to one week the time period for shareholders to consider potential nominations.

The deadline was also not consistent with any corporate need.  The Company had delayed scheduling the 2022 annual meeting for over six months.  The January 26, 2023 meeting was over two months away from the nomination deadline.  Defendants' only proffered excuse for setting the unreasonably short deadline was

Case ID: 221102195
Control No.: 22121214

the purported need to "print and sent its proxy materials for the 2022 Annual Meeting." This justification was at best pretextual, and at worse false. Over the past five years, the Company has mailed its annual meeting proxy between 35 and 38 days before the scheduled meeting, meaning that the 2022 annual meeting proxy will likely not be printed and mailed until December 19, 2022, at the earliest. Furthermore, Defendants needed no time to determine if a director nominee meets the qualifications and is willing to serve, as the nomination process set forth in the Company's governing documents requires any nominations to include those very details for them to review. In addition, as evidenced by the timing of the Company's usual proxy filing (35 to 38 days before the meeting), it is clear that proxy advisor firms and shareholders who may solicit proxies do not need more than a month in advance of the January 23, 2023 meeting to analyze any proxy statements and provide recommendations or responses.

Under these circumstances, the nomination deadline was unreasonably short as a matter of law. *See Linton v. Everett*, C.A. No. 15219, 1997 Del. Ch. LEXIS 117, at *29–30 (Del. Ch. July 31, 1997) (finding advance notice bylaw requiring stockholders to make director nominations within ten days of mailing of meeting notice inequitable where the corporation had not held an annual meeting in three years because the only way stockholders could have participated in the highly

Case ID: 221102195
Control No.: 22121214

important election for control of the corporation was to have maintained a full slate of directors ready to be nominated on a hair trigger).

### c. The Rigged Nomination Scheme Is Invalid for Additional Reasons.

In addition to the blatant manipulation of the Board election for the purpose of disrupting Plaintiffs' proxy contest and infringing the shareholders' right to elect directors of their choosing, Defendants' Rigged Nomination Scheme is invalid and illegal on several additional grounds.

Defendants lulled Plaintiffs into believing that Plaintiff Philip Norcross would be treated as a record owner of Company stock through their repeated acceptance of his status as one while having superior access to the Company's official shareholder lists. Again, the court appointed custodian, Mr. Putnam, challenged Plaintiff George Norcross's request for books and records on the grounds that only a record owner was entitled to inspect the Company's books and records. In response, Plaintiffs revised the books and records demand to come from Philip Norcross and submitted (to both Mr. Putnam and Defendant Jacobs) a statement from Mr. Norcross' broker that he was a record owner of 10,000 shares of Company stock. The Company provided documents in response to that demand. Second, Philip Norcross submitted (to Mr. Putnam and Defendant Jacobs) his nomination of Mr. Braca as a director candidate for the special shareholder meeting ordered by the federal court, again submitting his broker's statement as evidence of his record ownership. The

Case ID: 221102195
Control No.: 22121214

Company accepted the nomination and named Mr. Braca as a director candidate before the special meeting was aborted. And, lastly, on October 25th in anticipation of the annual meeting and the ability to solicit proxies, Plaintiffs submitted another books and records demand to Defendants, again including Philip Norcross' statement of record ownership as provided by his broker. The Defendants agreed to provide documents in response to that demand subject to the entry of a confidentiality agreement.

Defendants waited until Plaintiffs nominated Plaintiff Braca as a director candidate for election at the 2022 annual meeting before denying Mr. Norcross's status as a record owner. Even then, Defendants did not reveal their objection to Mr. Norcross's record ownership until two days after the deadline they set for submitting nominations, denying Plaintiffs the opportunity to address the challenge before the deadline.

First, Defendants have waived their right to deny Mr. Norcross is a record owner of Republic First shares by their prior conduct. Defendants have repeatedly accepted Mr. Norcross' broker statement as proof of record ownership (including for the purpose of a prior director nomination) and acted in conformance with Mr. Norcross being a record owner despite having access to the Company's official share registers. *Elliot v. Lindquist,* 52 A.2d 180 (Pa. 1947) is instructive. In that case, the stockholders of a closely held company had sold, transferred, or assigned stock

-52-

Case ID: 221102195
Control No.: 22121214

without first giving the board notice and an opportunity to participate as required by the company's bylaws. *Id*. at 183. When plaintiffs objected to a similar stock sale by defendants, the Pennsylvania Supreme Court rejected plaintiffs' claim, finding that plaintiffs had not complied with the bylaw provisions they complained were contravened. *Id*. The Court concluded that the bylaws "constitute the contract between the stockholders and are subject to the rules governing a written contract signed by all the parties," meaning they can be abandoned, modified, or changed by words or conduct. *Id*. at 182 (citing *Weldon & Kelly Co. v. Pavia Co*., 354 Pa. 75, 79, 46 A. 2d 466 (Pa. 1946); *Jacobs v. Wilkes-Barre Twp. School District,* 355 Pa. 449, 453, 50 A.2d 354 (Pa. 1947)). Thus, the plaintiffs had waived the bylaw provisions by declining to enforce them previously. *Id*. at 183. Similarly, in *Golasa v. Struse*, this Court affirmed that "corporate bylaws amount to a contract among shareholders" and individual provisions "may be waived by the conduct of parties just as provisions of a contract." 9 Pa. D. & C.3d at 53 (citing *Hornsby v. Lohmeyer*, 364 Pa. 271, 72 A. 2d 294 (Pa. 1950); *Elliott*, 52 A.2d at 180–83). There, shareholders failed to comply with bylaw provisions requiring payment for shares before voting. *Id*. at 51. When the defendants rejected the plaintiff's attempt to vote based on his failure to pay for his shares, the court declined to "permit this provision [of the bylaws] to be used to prevent plaintiff from voting" because defendants had waived the provision by their own conduct. *Id*. at 53. The court held that plaintiff,

-53-

CASE

Case ID: 221102195
Control No.: 22121214

"[a]s a shareholder in a corporation where the payment requirement was waived . . . had the right to vote," and that any actions taken at the shareholder meeting where plaintiff was denied the right to vote were null and void. *Id.* at 54. Here too, Defendants' repeated recognition of Mr. Norcross as a record holder waives any effort by the Board to deny his record holder status in determining his eligibility to nominate a director.

Defendants are also estopped from denying Mr. Norcross' record holder status. Equitable estoppel "is applicable whenever a party, either by act or representation, intentionally or negligently induces another to believe certain facts, and the other justifiably relies and acts upon that belief." *DiFabio v. Star Appraisers, Inc.*, No. 2005-C-0712, 2007 Pa. Dist. & Cnty. Dec. LEXIS 308, at *41 (Lehigh Cty. C.P. June 11, 2007) (citing *Liberty Prop. Trust v. Day-Timers, Inc.*, 815 A.2d 1045, 1050 (Pa. Super. 2003)). To establish estoppel, a party must show: (i) it lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) it relied on the conduct of the party against whom estoppel is claimed; and (iii) it suffered a prejudicial change of position as a result of his reliance. *Dousman v. Kobus,* C.A. No. 19258-NC, 2002 Del. Ch. LEXIS 67, at *17 (Del. Ch. June 6, 2002). Each element is present in this case.

Mr. Norcross believed he was a record holder based on the representations from his broker and Defendants' repeated acceptance of Mr. Norcross' status as a

-54-

Case ID: 221102195
Control No.: 22121214

record holder and actions in conformity with that status. Defendants had sole access to the official Company records showing the record holders of Company stock.[3] Despite this, Defendants did not refute Mr. Norcross's record ownership (and in fact implicitly acknowledged it) in multiple prior dealings. Such conduct induced Mr. Norcross to justifiably rely on his record ownership status. Had Plaintiffs understood that Mr. Norcross was not a record holder of Company stock, they could have easily obtained record ownership of shares months ago or asked another record holder to nominate Mr. Braca. In sum, Mr. Norcross justifiably relied on Defendants' repeated recognition of his record holder status. Defendants are therefore estopped from denying it now.

### d. All of the Board's Bad Faith Actions Are Void Due to the Participation of Defendant Duster, an Invalid Board Member.

As discussed above, in July 2022, the Madonna Faction of the Board appointed Defendant Duster as a director to fill the Board seat vacated by Mr. Flocco's death. Defendant Duster, however, was never properly appointed to the

---

[3] In response to Plaintiffs' first books and records demand, Republic First produced purported shareholder lists to Plaintiffs in early July, 2022. Norcross Decl. ¶ 11. The record shareholder list, however, appeared incomplete and inaccurate since it identified exactly 100 record holders (and noted that 100 "accounts" had been "selected" for the report). Shortly after Plaintiffs' receipt of the shareholder lists, the special shareholder meeting scheduled by the custodian was cancelled, thereby mooting Plaintiffs immediate need for the shareholder list—to submit proxy materials to their fellow shareholders—so Plaintiffs did not follow up on the report's apparent discrepancies at that time.

Case ID: 221102195
Control No.: 22121214

Board.  Under Article II, Section 2 of the Company's bylaws, a director "**must be a shareholder of the Corporation at the commencement of his term**."  Defendant Duster did not own **any** Company stock when he was appointed to the Board and, indeed, as the Company confirmed in its Form 10-K filing on October 26, 2022, Duster continued to lack any ownership of Company shares three months after his term commenced.  As such, Defendant Duster is not a valid director and the Board has been improperly constituted since his appointment.

Defendant Duster's involvement in Board decisions (particularly the bad faith decisions designed to entrench the Board and favor his "election" as a Class III director at the delayed 2022 annual meeting) has tainted the Board's corporate governance process and rendered all of the Board's actions, including the Board Entrenchment Scheme and Rigged Nomination Scheme, void.  *See Linkerhof v. Del. SPCA,* No. 11-256-LPS, 2012 U.S. Dist. LEXIS 31896, at *11–12 (D. Del. Mar. 9, 2012) (*citing Adams v. Calvarese Farms Maint. Corp.,* C.A. No. 4262-VCP, 2010 Del. Ch. LEXIS 199, at *30 (Del. Ch. Sep. 17, 2010))*; Whitman v. Fuqua*, 549 F. Supp. 315, 323 (W.D. Pa. 1982) (noting that actions of an improperly constituted board in breach of a legal or equitable duty to the corporation may be void).  Further, defendant Duster's invalidity as a director renders his nomination by the Board as an incumbent Class III director similarly illegitimate.

-56-

Case ID: 221102195
Control No.: 22121214

This too demonstrates that Plaintiffs are likely to succeed on the merits of their claims to find the Defendants' actions invalid.

**5) The injunction Is Reasonably Limited to Redress the Wrong**

The injunction sought by Plaintiffs is reasonably suited to abate the offending activity. Here, Plaintiffs ask only that the Court enjoin Defendants from implementing the improper Board Entrenchment Scheme and Rigged Nomination Scheme (or any similar defensive measure). The injunction will thus allow a fair Board election where the shareholders will finally have their say in the proper stewards of their business, rather than having directors foisted upon them by Board appointment or have Board seats sit empty (depriving the Company of additional insight and leadership it could gain from qualified directors with varying views and skill sets).

The injunction is therefore limited to preventing the Defendants' improper conduct but does not otherwise alter the governance of the Company or inhibit the business of the annual meeting or Board elections.

**6) A Preliminary Injunction Will Not Adversely Affect the Public Interest**

The preliminary injunction will not adversely affect, but indeed will promote, the public interest. There is no public interest in allowing directors of a Pennsylvania corporation to manipulate the board election process or prevent shareholders from exercising their rights to engage in a proxy contest. To the contrary, the public

Case ID: 221102195
Control No.: 22121214

interest supports vindicating shareholders' voting rights and preventing inequitable conduct and the violation of Pennsylvania corporate law. *See, e.g.*, *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 509 (Pa. 2014) ("[W]hen the Legislature declares particular conduct to be unlawful, it is tantamount to categorizing it as injurious to the public.").

This Court should grant the requested injunction to uphold Plaintiffs' most fundamental rights of ownership—their rights to nominate directors, engage in a proxy contest and vote as holders of Company stock.

## V.     RELIEF REQUESTED

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Preliminary Injunction and enjoin Defendants from implementing the Board Entrenchment Scheme, the Rigged Nomination Scheme, or any similar measure that has the effect of impeding, thwarting, frustrating, or interfering with Plaintiffs' proxy contest and the shareholders' voting rights. The relief requested is detailed in the proposed order submitted herewith.

Case ID: 221102195
Control No.: 22121214

Respectfully submitted,

Dated: December 5, 2022

/s/ Adrian R. King, Jr.
Adrian R. King, Jr. (PA No. 69315)
M. Norman Goldberger (PA No. 28241)
Laura E. Krabill (PA No. 76879)
Shawn F. Summers (PA No. 327471)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
215.864.8622
kinga@ballardspahr.com
goldbergerm@ballardspahr.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Brian T. Frawley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
212.558.4000
frawleyb@sullcrom.com

Case ID: 221102195
Control No.: 22121214