**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:　　CIVIL ACTION NO. 2:22-cv-04953 |

**<u>DEFENDANTS' OPPOSITION TO MOTION TO REMAND</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 3

III.    LEGAL STANDARD............................................................................................ 5

IV.     ARGUMENT ........................................................................................................ 6

      A.      This Court Has Federal Question Jurisdiction. ...................................... 6

           1.      The Complaint Necessarily Raises Disputed Federal Issues. .................... 6

                a.      The Complaint Necessarily Raises, and the Parties Dispute, the Applicability and Effect of Rule 14a-8. ................................... 7

                b.      The Complaint Necessarily Raises and the Parties Dispute the Applicability and Effect of Federal Banking Regulations. ................................................................................. 10

                c.      Courts Have Found Federal Issues Were Necessarily Raised in Similar Circumstances. ................................................... 12

           2.      The Federal Issues Are Substantial and Capable of Resolution Without Disrupting the Federal-State Balance. ........................................ 13

      B.      Removal Was Proper, and Sanctions Are Unwarranted ....................................... 16

           1.      The Court Should Deny the Request for Attorneys' Fees and Costs........ 16

           2.      Delaying the Annual Meeting is Not Appropriate Relief ......................... 18

V.      CONCLUSION.................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Benjamin v. JBS S.A.*,
    516 F. Supp. 3d 463 (E.D. Pa. 2021) ................................................................... 14

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) .................................................................................. 7

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022) ............................................................................... 5, 6

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ............................................................................................. 6

*D'Alessio v. N.Y. Stock Exch., Inc.*,
    258 F.3d 93 (2d Cir. 2001) .................................................................................. 13

*ECRI v. McGraw-Hill, Inc.*,
    809 F.2d 223 (3d Cir. 1987) ................................................................................. 8

*Empire Healthchoice Assur., Inc. v. McVeigh*,
    547 U.S. 677 (2006) ........................................................................................... 14

*First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*,
    384 F. App'x 64 (3d Cir. 2010) .......................................................................... 16

*Goldman v. Citigroup Glob. Mkts. Inc.*,
    834 F.3d 242 (3d Cir. 2016) ................................................................................. 5

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ................................................................................... passim

*Gunn v. Minton*,
    568 U.S. 251 (2013) .................................................................................... 5, 6, 14

*Hill v. Cohen*,
    40 F.4th 101 (3d Cir. 2022) ............................................................................... 12

*Holtzman v. Phila. Museum of Art*,
    No. 22-cv-0122-JMY, 2022 WL 2651851 (E.D. Pa. July 7, 2022) ................ 7, 8, 10

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
    922 F. Supp. 2d 475 (S.D.N.Y. 2013) ................................................................ 13

*In re Orthopedic "Bone Screw" Prod. Liab. Litig.*,
    132 F.3d 152 (3d Cir. 1997) ............................................................................... 19

*In re Processed Egg Prod. Antitrust Litig.*,
    836 F. Supp. 2d 290 (E.D. Pa. 2011) ............................................................ 16, 17

*In re Zyprexa Prods. Liab. Litig.*,
    375 F. Supp. 2d 170 (E.D.N.Y. 2005) ................................................................. 7

*Jackson Cty. Bank v. DuSablon*,
   915 F.3d 422 (7th Cir. 2019) ................................................................ 17

*Kalick v. Nw. Airlines Corp.*,
   372 F. App'x 317 (3d Cir. 2010) ........................................................... 14

*Ke v. DiPasquale*,
   828 F. App'x 98 (3d Cir. 2020) ............................................................... 8

*Koresko v. Murphy*,
   464 F.Supp.2d 463 (E.D. Pa. 2006) ........................................................ 7

*League of Women Voters of Pa. v. Cmwlth. of Pa.*,
   921 F.3d 378 (3d Cir. 2019)................................................................... 18

*Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*,
   874 F. Supp. 648 (M.D. Pa. 1995) ........................................................ 18

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
   772 F.3d 158 (3d Cir. 2014)............................................................... 6, 13

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005) ............................................................................. 16

*Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital*,
   415 F.3d 145 (1st Cir. 2005) .................................................................. 7

*NASDAQ OMX Group, Inc. v. UBS Sec. LLC*,
   770 F.3d 1010 (2d Cir. 2014)................................................................ 13

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A*,
   824 F.3d 308 (2d Cir. 2016)............................................................ 12, 14

*Nicodemus v. Union Pac. Corp.*,
   440 F.3d 1227 (10th Cir. 2006) .............................................................. 7

*Patel v. Allstate New Jersey Ins. Co.*,
   648 F. App'x. 258 (3d Cir. 2016) .......................................................... 19

*Pennsylvania Indep. Oil & Gas Ass'n v. Com., Dep't of Envtl. Prot.*,
   135 A.3d 1118 (Pa. Commw. Ct. 2015) ................................................... 8

*Plains All Am. Pipeline L.P. v. Cook*,
   866 F.3d 534 (3d Cir. 2017)................................................................... 8

*PNC Bank, N.A. v. PPL Elec. Utils. Corp.*,
   189 F. App'x. 101 (3d Cir. 2006) ...................................................... 7, 12

*Ryan v. Johnson*,
   115 F.3d 193 (3d Cir. 1997)................................................................... 6

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*,
   828 A.2d 995 (Pa. 2003) ........................................................................ 8

*United Jersey Banks v. Parell*,
   783 F.2d 360 (3d Cir. 1986)............................................................. 5, 11

*Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n,*
  894 F.3d 509 (3d Cir. 2018)......................................................................... 8

**Rules and Statutes**

12 U.S.C. § 1841 ......................................................................................... 6, 11

15 U.S.C. § 78n(a) ........................................................................................ 2, 6

12 C.F.R. § 225.32 .................................................................................. 6, 11, 12

17 C.F.R. § 240.14a-8 ................................................................................ passim

17 C.F.R. § 240.14a-8(i)(8)(iv) ......................................................................... 10

17 C.F.R. § 240.14a-8(i)(8)(v) .......................................................................... 10

28 U.S.C. § 1331 ........................................................................................ 3, 5, 9

28 U.S.C. § 1441 ............................................................................................... 4

28 U.S.C. § 1441(a) .......................................................................................... 5

28 U.S.C. § 1446(b)(2) ..................................................................................... 18

28 U.S.C. § 1447(c) ......................................................................................... 16

**Other Authorities**

*Shareholder Proposals*, SEC Release No. 34-56160,
  72 Fed. Reg. 43466 (July 27, 2007) ............................................................ 10, 15

Defendants Republic First Bancorp, Inc. ("FRBK" or the "Company"), Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV (the "Board" and with FRBK, the "Defendants"), respectfully submit this Opposition to the Motion for Remand (the "Remand Motion") filed by Plaintiffs George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross ("Plaintiffs" or the "Norcross Group"). *See* Dkt. No. 4. For the reasons set forth below, the Remand Motion should be denied.

## I.    INTRODUCTION

Relying on manufactured urgency and feigned, hyperbolic outrage that Defendants had the temerity to exercise their statutory right to remove their lawsuit, Plaintiffs urge that this Court lacks subject matter jurisdiction and must remand. But their argument ignores the plain language of Plaintiffs' own allegations, which invoke federal law repeatedly.

Plaintiffs assert six claims for declaratory and injunctive relief stemming from their ongoing proxy contest in advance of FRBK's 2022 Annual Meeting, set for January 26, 2023, and their pique over FRBK's rejection of their attempted nomination of Plaintiff Gregory Braca for election as a director. FRBK's rejection was straightforward: its Articles of Incorporation (the "Charter") and By-Laws unambiguously require (and have for decades required) that a stockholder wishing to nominate a director candidate be an owner of record; and the nominating stockholder, Plaintiff Philip Norcross, was not. Neither was any other Norcross Group member. Significantly, Plaintiffs do not dispute this essential fact. Rather, they proffer various arguments for why the Charter and By-Laws do not actually mean what they say—or more precisely, why the clearly-stated rule does not apply to them. The work-arounds to the record-ownership requirement that Plaintiffs put forward in Counts I, II and V of their Complaint all turn on substantial and disputed issues of *federal* law. As such, their claims "arise under" federal law, and removal was proper.

Counts II and V challenge the Company's 10-day period for nominations and rejection of

1

Mr. Norcross's notice purporting to nominate Mr. Braca as a director candidate.  Plaintiffs timely filed a notice within the 10-day nomination window.  They allege harm arising from the 10-day deadline, however, because they say that Securities and Exchange Commission ("SEC") Rule 14a-8, promulgated under Section 14(a) of the Securities Exchange Act of 1934, *see* 17 C.F.R. § 240.14a-8 & 15 U.S.C. § 78n(a), means Mr. Norcross did not need to be a record owner had he held his shares for one year.  They allege that the nomination window closed two days before Mr. Norcross could reach that one-year period, and urge that the Board set that deadline to deprive the Norcross Group of this purported alternative approach to nominating directors.  As we discuss below, and in greater detail in Defendants' papers opposing the Norcross Group's motion for preliminary injunction ("PI Motion"), Plaintiffs' Rule 14a-8 arguments fail on the very face of the regulation, and Defendants dispute the applicability and scope of Rule 14a-8 altogether.  But for purposes of this motion, it is clear that Plaintiffs' claims, which expressly invoke the Rule repeatedly in these two Counts, turn on the scope and effect of Rule 14a-8, a matter of *federal* law.

Count I challenges the FRBK Board's judgment to reduce its size from eight seats to six.  Plaintiffs claim that this meant that federal banking regulations would trigger a regulatory-approval requirement that prevented Plaintiffs from nominating more than one director candidate.  Setting aside that Plaintiffs made no effort to nominate two director candidates, Plaintiffs' argument again turns on the disputed scope and effect of the federal regulations they reference—specifically, Federal Reserve Bank ("FRB") Regulation Y, 12 C.F.R. Part 225 ("Reg Y"), which relates to "control" of a bank holding company such as FRBK.  Again, Plaintiffs seriously misread Reg Y.  But for current purposes, Plaintiffs again cannot avoid that the harm they have allegedly suffered necessarily turns on construction of this *federal* regulation.

The substantial federal issues raised *by Plaintiffs* demonstrate that Defendants did not

merely have a good-faith basis for removal, but that this Court in fact has subject matter jurisdiction under 28 U.S.C. § 1331.  Plaintiffs' table-banging assertions that removal lacked any basis are wrong, and their demand for sanctions should be rejected in full.  In particular, the oxymoronic notion that this Court should at once find that it lacks jurisdiction but simultaneously purport to exercise jurisdiction to enter an injunction that, as a practical matter, would give the Norcross Group all of the relief it seeks is both non-sensical and flatly inconsistent with Third Circuit precedent.  The Court should deny Plaintiffs' motion for remand and deny their request for multiple sanctions.

## II.    BACKGROUND

Plaintiffs filed their Complaint in the Philadelphia County Court of Common Pleas on November 22, 2022, asserting six counts challenging a purported scheme by FRBK to entrench its Board and deny Plaintiffs' rights as a stockholder, including through its rejection of Philip Norcross's notice of intent to nominate Mr. Braca, its setting of a 10-day nomination period, its reduction in the number of FRBK Board seats from eight to six, and its appointment of Benjamin Duster as a director.  *See* Compl. (Dkt. No. 1-1).  They did not serve their Complaint at that time. Defendants generally deny the allegations and insist that their actions were proper.

On December 5, Plaintiffs filed their PI Motion.  *See* Dkt. No. 5-6.  Refusing to accept the consequences of Plaintiffs' failure to become record holders of FRBK stock at the time of their nomination notice, *see* Compl. Exs. 27-28, Plaintiffs seek broad, affirmative, mandatory case-dispositive injunctive relief as their first order of business—asking the Court in essence to not merely allow, but to direct the Company to give them, a "do-over."[1]  On December 8, the state

---

[1] Defendants' Opposition to Plaintiffs' pending motion for preliminary injunction (the "PI Opposition") is filed concurrently with this Opposition to their Remand Motion.  As explained more fully in the PI Opposition, Plaintiffs come nowhere close to satisfying the heavy burden they face to obtain the intrusive, affirmative injunction they seek. They ask to delay FRBK's 2022 Annual Meeting for at least 60 days, despite previously demanding multiple times

court entered a scheduling order without Defendants' input, setting a hearing for December 16. *See* Dkt. No. 4-12 (state court scheduling order).

Meanwhile, Defendants agreed to accept service of the Complaint shortly thereafter as Plaintiffs agreed that Defendants could defer their formal response to the Complaint. At that time, Defendants were working hard to respond to Plaintiffs' voluminous PI Motion filings, while also assessing removability. Within a few days of accepting service, Defendants determined that removal was proper based on the Complaint's repeated reliance on federal law—including SEC Rule 14a-8 (Compl. ¶¶ 23, 56, 119-22, 144, 164) and the purported impact of federal banking regulations (*id.* ¶¶ 20, 31, 108 & n.2)—to support Plaintiffs' claims. Accordingly, on December 13, Defendants exercised their right to remove to this Court under 28 U.S.C. § 1441, invoking federal question jurisdiction. *See* Dkt. No. 1 (Notice of Removal).

Defendants dispute in every detail Plaintiffs' assertion that removal lacked a valid basis and was in bad faith. From this case's start, Defendants have tried to coordinate on schedule so that the action could proceed in a rational, albeit expedited, manner given the upcoming Annual Meeting. *See* Decl. of George M. Vinci ("Vinci Decl.") ¶ 2; Decl. of Alan B. Epstein ("Epstein Decl.") ¶¶ 6-7. Instead, Plaintiffs have just acted, on a schedule that suited them and without consultation. While Defendants dispute that the Remand Motion fairly presents the history of this

---

that the Company hold its meeting as soon as possible. They seek to force FRBK to accept a clearly invalid nomination notice, *see* Compl. p. 60-61, ignoring that they possessed the same information as the Company to determine if they were record holders. They assert that the 10-day nomination window was "unreasonable" because it fell two days before Mr. Norcross allegedly would have satisfied SEC Rule 14a-8's one-year beneficial-ownership provision, *see id.* ¶¶ 144, 164, ignoring that the Rule simply does not apply to director elections or supplant the record-holder requirement. They want to reopen the nomination period and increase the Board size to permit additional nominees, *id.* p. 60, yet federal banking regulations prohibit them from nominating another candidate without seeking regulatory approval. And they insist that this draconian, case-dispositive relief be ordered immediately, purportedly so they can solicit proxies in advance of the Annual Meeting, despite the fact that Plaintiffs' own delays are the sole reason they cannot solicit proxies, and could not even if the Court were to direct FRBK to accept the Braca nomination. It is *Plaintiffs* who failed to seek needed Pennsylvania regulatory approval and to file a preliminary proxy statement with the SEC—both prerequisites to soliciting proxies. *See* PI Opposition at 3, 35-36.

case, Plaintiffs' aspersions are ultimately irrelevant to the Court's inquiry here:  does it have subject matter jurisdiction?  Defendants accordingly note their disagreement with Plaintiffs' shrill rendition, but do not intend to trouble the Court with anything approaching a point-by-point refutation unless the Court wishes otherwise.

## III.    LEGAL STANDARD

Removal is permitted where a federal district court has original jurisdiction over a case. *See* 28 U.S.C. § 1441(a).  Federal courts have original subject matter jurisdiction in "all civil actions *arising under* the Constitution, laws, or treaties of the United States," otherwise known as federal question jurisdiction.  *Id.* § 1331 (emphasis added).  Where, as here, a complaint alleges claims that purport to arise only under state law, federal jurisdiction may nevertheless lie when "some substantial federal issue must be resolved."  *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022).  In particular, a case "arises under" federal law where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 257-58 (2013).  This is sometimes known as the "*Grable* test" after the decision in which it was first articulated, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  This type of federal question jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable*, 545 U.S. at 312.

To assess federal question jurisdiction, courts look to the plaintiff's complaint; however, courts will not allow a plaintiff to omit pleading federal questions in an effort to avoid removal. *United Jersey Banks v. Parell*, 783 F.2d 360, 365, 367 (3d Cir. 1986); *see also Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) ("complaint establishes either that

federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law"). While *Grable* sets out a limited rule, *see Gunn*, 568 U.S. at 257, "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them by Congress." *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

## IV.   ARGUMENT

### A.   This Court Has Federal Question Jurisdiction.

Plaintiffs' ability to bring their claims for declaratory and injunctive relief turns on two substantial issues of federal law: (1) the scope and applicability of SEC Rule 14a-8, promulgated under Section 14(a) of the Securities Exchange Act, *see* 17 C.F.R. § 240.14a-8 & 15 U.S.C. § 78n(a); and (2) the effect of Federal Reserve Bank regulations governing "control" of bank holding companies, *see* 12 C.F.R. § 225.32 & 12 U.S.C. § 1841 *et seq.* The Court's construction of these two federal laws will be dispositive of whether Plaintiffs in fact face any purported harm even if their allegations of Defendants' wrongdoing have merit (which they do not). Injury is, of course, an essential element of their claims, necessary to establish standing. These issues of federal law are disputed and can be resolved by this Court without disrupting the federal-state balance. As such, this case falls squarely within the *Grable* test. Because subject matter jurisdiction exists, Plaintiffs' motion to remand should be denied.

### 1.   The Complaint Necessarily Raises Disputed Federal Issues.

Counts I, II, and V necessarily raise disputed issues of federal law. A federal issue is necessarily raised where "to prove some element of a state-law claim, the plaintiff ha[s] to win on an issue of federal law." *Hoboken*, 45 F.4th at 709; *see also Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (federal issue necessarily raised where vindication of right under state law necessarily turns on "some construction of federal law"). A

federal issue is sufficiently raised where, as here, "Plaintiffs explicitly rely on [federal law] to maintain their action," and "Plaintiffs' version of events and its necessary vindication will certainly turn on a thorough investigation of the [federal law's] application, and whether it applies to Plaintiffs' claims." *Holtzman v. Phila. Museum of Art*, No. 22-cv-0122-JMY, 2022 WL 2651851, at *6 (E.D. Pa. July 7, 2022).

Numerous federal courts have retained jurisdiction over state law claims that turn on disputed issues arising under federal statutes or complex federal regulatory schemes. *See*, *e.g.*, *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x. 101, 104 (3d Cir. 2006) (jurisdiction where state law claim raised interpretation of a section of the Internal Revenue Code); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234-37 (10th Cir. 2006) (jurisdiction where state law claims required court to construe National Trails System Act); *Municipality of San Juan v. Corporacion Para El Fomento Economico De La Ciudad Capital*, 415 F.3d 145, 148 n.6 (1st Cir. 2005) (jurisdiction where propriety of defendant's conduct under state law "turn[ed] entirely on its adherence to. . . federal regulatory requirements"); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194-95 (2d Cir. 2005) (jurisdiction where state law claims required court to decide whether defendants violated Communications Act of 1934); *Koresko v. Murphy*, 464 F.Supp.2d 463 (E.D. Pa. 2006) (jurisdiction where state law contract claim would fail if defendant made certain disclosures required by federal law); *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 171-73 (E.D.N.Y. 2005) (jurisdiction where state law claims alleged defendant's conduct was in violation of the Federal Food, Drug, and Cosmetic Act and its implementing regulations).

### a.   The Complaint Necessarily Raises, and the Parties Dispute, the Applicability and Effect of Rule 14a-8.

Plaintiffs' Complaint refers to Rule 14a-8 over and over, citing that Rule as a reason why the record-owner requirement in FRBK's Charter and By-Laws does not mean what it says or,

alternatively, why shareholders owning $25,000 worth of stock for a year are purportedly exempt from the record-ownership prerequisite to be eligible to nominate a director candidate. In their Remand Motion, Plaintiffs turn tail, eschew their repeated references to federal law, and try to characterize their many invocations of Rule 14a-8 as "tangential." *See* Pls. Memo ISO Remand (Dkt. No. 4-1) at 18. But there can be no serious doubt that Plaintiffs "explicitly rely" on SEC Rule 14a-8, as a key underpinning to Counts II and V of their Complaint. *See Holtzman*, 2022 WL 2651851, at *6. These claims seek to enjoin and declare invalid the Company's rejection of Philip Norcross's purported nomination of Mr. Braca and its enforcement of the 10-day period for shareholder nominations of director candidates. *See* Compl. ¶¶ 144, 150, 164, 168; *see also id.* ¶¶ 119-22.[2] "Issuance of a declaratory judgment or an injunction requires a threat of future harm." *Ke v. DiPasquale*, 828 F. App'x 98, 101 (3d Cir. 2020); *see also Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n,* 894 F.3d 509, 523 (3d Cir. 2018) (declaratory judgments require a "real and substantial threat of harm"); *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 541 (3d Cir. 2017) (requiring "substantial threat of real harm" for a declaratory judgment); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (mandatory injunctions require "a clear showing of immediate irreparable injury").[3] The existence of Plaintiffs' alleged injury turns on a construction

---

[2] Plaintiffs' suggestion of mere tangential reference to Rule 14a-8 is belied by the Complaint's repeated references to and reliance on (a misreading of) the Rule. And the Complaint's reliance on Rule 14a-8 is reiterated in Plaintiffs' PI Motion and supporting memorandum of law. *See, e.g.*, PI Motion (Dkt. No. 5-6) at ¶ 47 (nomination deadline was "unreasonably short" and "in bad faith to prevent Plaintiffs from satisfying the one-year holding standard under Rule 14a-8" (citing Compl. ¶ 120)); PI Motion Mem. (Dkt. No. 5-7) at 25-26 ("Rule 14a-8 allows a beneficial owner (rather than a record holder) to nominate directors if the shareholder owns at least $25,000 of stock for one year . . . Defendants set the unreasonably short November 14, 2022, deadline for nominations, not for any valid reason, but instead to foreclose Plaintiffs from satisfying the one-year holding standard under Rule 14a-8 by two days." (citing Compl. ¶ 120; emphasis removed)); *id.* at 29 (nomination process "rigged" to frustrate Plaintiffs' proxy contest "by setting an unreasonably short deadline for nominations—one that Defendants knew fell two days shy of Mr. Norcross's one year ownership qualification under Rule 14a-8[.]"; *id.* at 46 (similar). The import of this one-year holding period and its impact on a shareholder's purported ability to nominate directors is a central feature of these arguments.

[3] *Cf. Pennsylvania Indep. Oil & Gas Ass'n v. Com., Dep't of Envtl. Prot.*, 135 A.3d 1118, 1123 (Pa. Commw. Ct. 2015) (standing in declaratory judgment actions requires "direct and immediate harm"); *Summit Towne Ctr., Inc. v. Shoe*

of Rule 14a-8.  And this reality means that this Court has subject matter jurisdiction under Section 1331.

For example, Plaintiffs' complaints about the purportedly "short" nomination window can *only* have credence if their proffered interpretation of Rule 14a-8 is correct.  We know this because Mr. Norcross in fact *met* the 10-day deadline:  his purported nomination of Mr. Braca was timely submitted on November 11, 2022.  The nomination was rejected because Mr. Norcross was not a record holder of FRBK shares.  Compl. ¶ 115, Exs. 27 (nomination notice) & 28 (rejection notice). Plaintiffs' Complaint and PI Motion try to excuse this apparently fundamental problem with Mr. Norcross's nomination; they urge that his record ownership status (or his lack thereof) should not matter because Rule 14a-8, which they note is referenced in the Company's Charter and Bylaws, supposedly "allows a shareholder with beneficial ownership (rather than a record holder) to make a proposal if the shareholder owns at least $25,000 of stock for one year."  Compl. ¶ 120.  The 10-day nomination deadline allegedly frustrated Mr. Norcross's reliance on Rule 14a-8 "by setting the nomination deadline for two days before Mr. Norcross would have met the one-year ownership standard under the Rule."  *Id.* ¶¶ 144, 164.  In other words, had Mr. Norcross been a beneficial owner for just two more days, he alleges that his status as a mere beneficial, rather than a record, owner would not have mattered because he supposedly could have nominated Mr. Braca in this alternative manner pursuant to Rule 14a-8.

These allegations make clear, then, that Plaintiffs' only potential alleged "injury" from the nomination deadline is to Mr. Norcross's supposed "ability to rely on Rule 14a-8."  *Id.* ¶¶ 144, 164.  And far from being "tangential," this alleged injury necessarily turns on whether Plaintiffs'

---

*Show of Rocky Mount, Inc.*, 828 A.2d 995, 1001 (Pa. 2003) (injunction must be "necessary to prevent immediate and irreparable harm").

proffered interpretation of Rule 14a-8 is correct.  (It is not.  *See* PI Opposition Mem. at 25-28.)

Nor is Rule 14a-8's one-year ownership provision the only Rule 14a-8 issue that matters to

Plaintiffs' case.  Defendants dispute the very "applicability" and the "effect" of Rule 14a-8,

including: (a) whether it applies to nominations of director candidates at all (the Rule expressly

*excludes* from its terms shareholder nominations of director candidates, *see* 17 C.F.R. § 240.14a-

8(i)(8)(iv)-(v)); and (b) whether it operates to supplant the record-holder requirement in FRBK's

Charter and By-Laws (it does not, as the SEC has made clear that the Rule does not supplant state

law and Pennsylvania expressly permits advance-notice charter and bylaw provisions of the sort

at issue here, *see* Shareholder Proposals, SEC Release No. 34-56160, 72 Fed. Reg. 43466, 43467

(July 27, 2007); 15 Pa. Cons. Stat. Ann. § 1758).

Of course, who is right and who is wrong about what Rule 14a-8 does or does not provide

is not the point.  The question, for purposes of assessing federal jurisdiction, is whether Plaintiffs'

"version of events and its necessary vindication will certainly turn on a thorough investigation of

[Rule 14a-8's] application, and whether it applies to Plaintiffs' claims."  *See Holtzman*, 2022 WL

2651851, at *6; *see also Grable*, 545 U.S. at 315 n.3.  And as to this question, Plaintiffs' allegations

and preliminary injunction arguments make clear that the answer is clearly "Yes."  *See Grable*,

545 U.S. at 315, 315 n.3 (issue actually disputed where parties disagree about a federal statute's

"meaning" or if there is "any controversy respecting [the statute's] validity, construction, or

effect"); *Holtzman*, 2022 WL 2651851, at *7 (issue actually disputed where parties disagreed as

to the "applicability" of federal law).

### b.   The Complaint Necessarily Raises and the Parties Dispute the Applicability and Effect of Federal Banking Regulations.

Count I likewise turns on a disputed issue of federal law to establish the required element

of injury.  Count I seeks an injunction and declaration that the reduction in Board size from eight

to six directors is "inequitable and impermissible," or "invalid."[4]   Compl. ¶¶ 19, 65, 134-36. Plaintiffs ask that the Court: (a) enjoin Defendants from making any changes to the size of the Board until after the Annual Meeting; and (b) affirmatively require Defendants to reopen the nomination process, including to "allow Plaintiffs to nominate two candidates." *Id.* ¶¶ 65, 134-36.   Plaintiffs allege that the reduction in Board size "restrict[ed] Plaintiffs' ability to nominate directors from two to one in light of federal banking regulations" based on "potential issues regarding 'control' of Republic Bank's holding company." *Id.* ¶¶ 20, 108 & n.2.[5]   Their reference to federal banking regulation is to the Bank Holding Company Act, 12 U.S.C. § 1841 *et seq.*, and related Reg Y, 12 C.F.R. § 225.32.[6]   As such, Count I requires the Court to interpret whether federal banking regulations in fact have the effect of limiting Plaintiffs' ability to nominate directors following the Board's decision to reduce its size.

Again, this issue is actually disputed.   Defendants contend—contrary to Plaintiffs' interpretation of Reg Y and as discussed in depth in Defendants' PI Opposition—that Plaintiffs would trigger a regulatory-approval requirement if they sought more than one Board seat, *regardless* of whether the Board had six or eight members.   The Norcross Group is allegedly the beneficial owner of approximately 9.9% of the Company's outstanding shares.   Compl. ¶ 37.   Reg

---

[4] To the extent Count I is based on an alleged failure to divide Board seats into three classes "as nearly equal as possible," it is moot.  The Company recently completed its hiring of a new Chief Executive Officer, who also joined the Board as a Class I director.  As such, there are now two Class I directors, three Class II directors, and two Class III directors.  *See* Decl. of Michael Charlson ISO PI Opposition, Ex. 13 (FRBK Form 8-K).

[5] The Complaint's reliance on federal banking regulations as the basis for Plaintiffs' alleged harm from the reduction in Board size is reiterated in Plaintiffs' pending motions.  *See, e.g.*, Pls. Memo. ISO Remand (Dkt. 4-1) at 5 ("Defendants reduced the number of board seats to limit Plaintiffs' ability to nominate directors[.]"; PI Motion at ¶ 33 ("Under federal banking regulations," Defendants purported scheme "would also limit Plaintiffs' ability to nominate directors to serve on the Board from two to one, based on potential issues regarding 'control' of a bank holding company."); PI Motion Mem. at 21 (same) (citing Compl. ¶ 108); *id* at 36 (Before Defendants allegedly improper actions, "Plaintiffs could have nominated two directors for election at the 2022 annual meeting without risk of violating the federal banking regulations. . . . ").

[6] Although Plaintiffs do not include a citation for their relied-upon "federal banking regulations," the "artful pleading doctrine" prohibits a free pass for using a vague description of the federal law at issue to avoid removal.  *See Parell*, 783 F.2d at 367.

Y sets a presumption of "control" for those with ownership of 5% or more of voting securities and director representatives that "*comprise 25 percent or more* of the board of directors[.]"  12 C.F.R. § 225.32(d)(1)(i)-(ii).  As such, two directors of an eight-person Board would trigger Reg Y just as it would if there were six directors.  Thus, Defendants dispute that Plaintiffs suffered any injury from the reduction in Board seats.  But more to the point, an interpretation of federal law is necessary to adjudicate this claim.  Federal jurisdiction lies.

### c. Courts Have Found Federal Issues Were Necessarily Raised in Similar Circumstances.

Federal courts have found state-law claims necessarily raised federal issues and found removal proper in circumstances similar to those presented here.  For instance, in *PNC Bank*, the Third Circuit held that the district court properly exercised jurisdiction over a plaintiff's "state-law declaratory judgment" action because it necessarily raised a federal question—specifically, the interpretation of a provision of the Internal Revenue Code.  189 F. App'x. at 104.  Likewise in *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, the court held that a claim under New York law necessarily raised a federal issue.  824 F.3d 308, 310-11 (2d Cir. 2016).  The complaint alleged that Wells Fargo violated New York's False Claims Act (NYFCA) by making false statements in certain mortgages to avoid paying state and city taxes under a state law tax exemption intended for real estate mortgage investment conduits (REMICs).  *Id*.  But to claim REMIC status, Wells Fargo had to file IRS Form 1066s.  *Id.* at 317.  The Court held that liability was predicated on assertions that the filings contained false information and that Wells Fargo trusts did not qualify for REMIC status.  *Id.*  In other words, jurisdiction lied because, "to establish a false statement or record within the meaning of NYFCA, [the plaintiff] must prove at least that the trusts did not qualify under federal law."  *Id.*; *cf. Hill v. Cohen*, 40 F.4th 101, 112 (3d Cir. 2022) (claims denominated with federal law titles were "not so 'wholly insubstantial' that they fail to create

federal question jurisdiction").

Federal courts have also affirmed removal where a complaint sets out purely state law claims but the underlying substantive issues concerned federal securities laws.  For example, in *NASDAQ OMX Group, Inc. v. UBS Sec. LLC*, the Second Circuit held that whether "NASDAQ has violated its federally prescribed duty to operate a fair and orderly exchange necessarily raises a disputed question of federal law."  770 F.3d 1010, 1021 (2d Cir. 2014).  In *D'Alessio v. N.Y. Stock Exch., Inc.*, the Court of Appeals held that federal courts have jurisdiction where the plaintiff's "suit is rooted in violations of federal law" and "the gravamen of [the plaintiff's] state law claims is that [the defendant] . . . failed to perform its statutory duty created under federal law, to enforce its members' compliance with those laws."  258 F.3d 93, 101 (2d Cir. 2001).  And in *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, the court held it had subject matter jurisdiction where plaintiff's state law negligence claims required resolution of a substantial federal question: whether defendant's conduct "was or was not consistent with the duties imposed upon [it] as a national securities exchange registered under the Exchange Act, the rules and regulations promulgated by the SEC under the Exchange Act, and NASDAQ's own rules."  922 F. Supp. 2d 475, 482, 484 (S.D.N.Y. 2013).  This Court, facing the necessity to resolve conflicting interpretations of SEC Rule 14a-8 and FRB Reg Y, should reach the same conclusion.[7]

### 2.    The Federal Issues Are Substantial and Capable of Resolution Without Disrupting the Federal-State Balance.

The final two *Grable* factors are also satisfied.  First, the issues related to both Rule 14a-8 and federal banking laws are substantial.  When evaluating whether a federal issue is "substantial,"

---

[7] Plaintiffs' cited authority *Manning v. Merrill Lynch Pierce Fedder & Smith, Inc.*, 772 F.3d 158 (3d Cir. 2014), is distinguishable.  There, the court found that "no causes of action are predicated *at all* on a violation of [federal law]."  *Id.* at 164 (original emphasis).  By contrast, Plaintiffs here specifically rely on SEC Rule 14a-8 and federal banking regulations as the *basis* for their purported injury—an essential element to their claims.

the relevant question is not whether the issue is important "to the particular parties in the immediate suit," but whether the question ought to be resolved by a federal court because it is important "to the federal system as a whole." *Gunn*, 568 U.S. at 260-61. This includes state-created claims that "involve pure issues of law and an application of those issues, which sensibly belong in a federal court." *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010).

*Wells Fargo* is instructive. There, the court held that the federal REMIC regulations were substantial because "[t]he statute, the implementing regulations, and the additional regulatory guidance" are "necessarily complex" and govern a national market in mortgage-backed securities in which "major financial institutions" likely have stakes in the regulations' meaning. 824 F.3d at 317-18. So too here. The interpretation and application of Rule 14a-8 and Reg Y raise legal and policy issues that are significant to many stakeholders in the federal system. As noted below, the SEC implemented Rule 14a-8 to augment state law with rules for conducting proxy campaigns and ensuring proper disclosure to stockholders. Whether stockholders may utilize Rule 14a-8 to negate record-holder requirements in a company's governing documents is highly relevant to stockholders of companies incorporated in every state. And the many public companies (including bank holding companies) nationwide that could receive a shareholder's director nomination have a stake in how Rule 14a-8 and Reg Y are interpreted. The applicability of these federal rules to director elections will "govern numerous other cases" in the federal system. *Benjamin v. JBS S.A.*, 516 F. Supp. 3d 463, 470 (E.D. Pa. 2021) (internal cite omitted); *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 681 (2006) (substantial federal issue would "establish a rule applicable to numerous [other] cases"). As such, this Court's resolution of Plaintiffs' claims will further national uniformity and ensure proper precedential interpretation of Rule 14a-8 and Reg Y.

Second, this Court's resolution of these issues would not disrupt any federal-state balance

of power established by Congress. Quite the contrary. Again, the SEC enacted its proxy rules, including Rule 14a-8, to ensure proper disclosure to stockholders in proxy campaigns; in doing so, it intended to reinforce and augment, not supplant, state law. *See* Shareholder Proposals, SEC Release No. 34-56160, 72 Fed. Reg. 43466, 43467 (July 27, 2007) ("[T]he federal proxy authority is not intended to supplant state law, but rather to reinforce state law rights with a sturdy federal disclosure and proxy solicitation regime.").[8] In addition, the Bank Holding Company Act and Reg Y reflect FRB policies on control concerns and are intended to facilitate "permissible investments" in banking companies. Preamble to Final Rule (approved Jan. 30, 2020);[9] *see also* "Federal Reserve finalizes rule to simplify and increase the transparency of the Board's rules for determining control of a banking organization," Federal Reserve Press Release (Jan. 30, 2020).[10] In short, the proper application and effect of Rule 14a-8 and Reg Y are distinctly federal concerns. Plaintiffs miss the point when they assert that this case focuses on the "internal affairs of a Pennsylvania company and violations of shareholder rights by its Board." *See* Mot. at 18. In fact, this case involves serious questions of whether *federal law* applies and affects shareholder nominations to a Pennsylvania company, such that a board's conduct violates shareholder rights. Adjudicating Plaintiffs' claims in federal court does not contravene any congressional intent to keep certain cases in state court; indeed, it enhances the federal-state balance.

---

[8] *See also* Speech by Keith F. Higgins, Director, Division of Corporation Finance, SEC "Rule 14a-8: Conflicting Proposals, Conflicting Views," (February 10, 2015) https://www.sec.gov/news/speech/rule-14a-8-conflicting-proposals-conflicting-views#_edn5 ("In particular, our federal proxy regulatory scheme, adopted under Section 14(a) of the Exchange Act, regulates the proxy process through which most shareholders in public companies exercise the voting rights granted to them under state law. It is designed not to supplant the rights granted under state law, but rather to help give them effect in a system in which shareholders rarely attend a meeting to vote in person.").

[9] The rule is available at https://www.federalreserve.gov/aboutthefed/boardmeetings/files/control-rule-fr-notice-20200130.pdf.

[10] The press release is available at https://www.federalreserve.gov/newsevents/pressreleases/bcreg20200130a.htm.

**B.      Removal Was Proper, and Sanctions Are Unwarranted**

Plaintiffs' request for sanctions—both an award of attorney's fees and costs, and an order enjoining the 2022 Annual Meeting for at least 60 days following the presumptive state court resolution of their PI Motion—is inappropriate.  As discussed above, removal was proper; this Court has subject matter jurisdiction.  But even if this Court were to disagree and remand the case, the requested sanctions are not warranted.

**1.      The Court Should Deny the Request for Attorneys' Fees and Costs**

Section 1447(c) permits an award of attorneys' fees and costs only in limited circumstances that do not exist here.  *See* 28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  There is no presumption favoring a fee award.  *Id.* at 137.  And courts widely recognize that factual contexts exist where "no court has had occasion to consider arguments like those raised by Defendants," or where "no obvious authority" either supporting or contravening removal exists, or where a defendant could reasonably "attempt[] to extend this area of law."  *In re Processed Egg Prod. Antitrust Litig.*, 836 F. Supp. 2d 290, 303 (E.D. Pa. 2011).  A fee award in circumstances like these is also inappropriate.

Here, as detailed above, Defendants have a reasonable basis for invoking federal question jurisdiction.  Accordingly, the request for attorneys' fees and costs should be denied.  *See First Am. Title Ins. Corp. v. JP Morgan Chase & Co.*, 384 F. App'x 64, 67 (3d Cir. 2010) (reversing Section 1447(c) award where removal was objectively reasonable); *Processed Egg*, 836 F. Supp. 2d at 294 (remanding for lack of jurisdiction, but denying plaintiff's request for fees because defendants had objective, nonfrivolous basis for removal, and further rejecting plaintiff's

accusation of intentional delay). *Processed Egg* is particularly on point because, much like Plaintiffs here, the plaintiffs alleged that the removal was an "intentional attempt to delay the litigation." *See* 836 F. Supp. 2d at 303; *compare* Remand Mem. at 22. In fact, the removal here was undertaken in good faith. Vinci Decl. ¶ 3; Epstein Decl. ¶ 3. And as we describe below, it could not have been the source of any delay in Plaintiffs' efforts to solicit proxies even if Plaintiffs were to prevail across the board on their PI Motion (which they will not).

Plaintiffs' cited authorities are inapposite. In *Jackson Cty. Bank v. DuSablon*, the court affirmed a fee award where the defendant (1) untimely removed an action (2) based on a purported federal-law defense (which cannot serve as a basis for removal), (3) after the state court denied his motion to dismiss on the same basis, (4) to delay injunction proceedings so the clock would run on his non-compete clause. *See* 915 F.3d 422, 423-24 (7th Cir. 2019). The defendant neither cited cases supporting his position nor attempted to apply controlling law to oppose remand. *Id.* at 425.

None of those circumstances is present here. Defendants timely removed (at most a few days after agreement to accept service), have a reasonable basis for doing so under *Grable*, and attempted to work with Plaintiffs on scheduling so the case could proceed on an expedited basis. *See* Vinci Decl. ¶ 2. The fact that the state court entered a scheduling order did not preclude removal. Nor has removal affected Plaintiffs' ability to run an effective proxy contest in advance of the January 26, 2023 meeting. The fact is that Plaintiffs would still be barred under federal and state law from soliciting proxies for Mr. Braca *even if* this Court or a state court were to act today to grant Plaintiffs the injunctive relief they seek. As further explained in Defendants' brief opposing Plaintiffs' PI Motion, Plaintiffs have not yet obtained required approvals from the Pennsylvania Department of Banking and Securities; in fact, Plaintiffs did not begin the process to seek approval until November 15, 2022, although they could have done so at any time. The

Department has 60 days to decide the application.  Nor have Plaintiffs even filed a preliminary proxy statement, much less worked through the process of SEC review and possible amendment necessary for a proxy statement to become definitive.  Absent a definitive proxy statement, Plaintiffs may not solicit proxies.  There is and has been *nothing* stopping Plaintiffs from filing a preliminary proxy statement, including while litigation is pending.  That they have not done so speaks volumes, and this is a shortcoming that falls squarely on Plaintiffs no matter how one views the merits.  *See generally* PI Opposition at 3, 35-36.[11]

## 2.    Delaying the Annual Meeting is Not Appropriate Relief

Plaintiffs' sanctions request hits its nadir with their remarkable demand for an injunction "requiring Defendants to delay the 2022 annual shareholder meeting until sixty (60) days after the state court can hear Plaintiffs' PI Motion."  Mot. at 23-24.  The request for this non-monetary sanction, purportedly pursuant to the Court's "inherent powers," is inappropriate.  Mot. at 19, 23.  It should perhaps come as no surprise that Plaintiffs' requested "sanction" mirrors in substantial part the relief sought by their PI Motion.  *See* Dkt. Nos. 5-2 ("Proposed Interim Order") & 5-3 (Proposed Order) at 2 (asking Court to enjoin 2022 Annual Meeting for at least 60 days after a decision on the PI Motion).

As noted, there is no basis for sanctions here at all.  But even if there were, Plaintiffs' injunction demand is non-sensical.  Plaintiffs cannot on the one hand insist that this Court lacks jurisdiction, while on the other hand ask the Court to *exercise jurisdiction* to enter a substantive order affecting the parties' rights at issue in what would be a case-dispositive way.  The Third

---

[11] Plaintiffs' additional authorities are even further afield, involving circumstances not analogous to those here.  *See League of Women Voters of Pa. v. Cmwlth. of Pa.*, 921 F.3d 378 (3d Cir. 2019) (defendant lacked an objectively reasonable basis for removal where removal was untimely and the defendant failed to obtain consent to removal from all defendants, as required by 28 U.S.C. § 1446(b)(2)); *Little League Baseball, Inc. v. Welsh Pub. Grp., Inc.*, 874 F. Supp. 648, 656 (M.D. Pa. 1995) (defendant failed to conduct "minimal research" that would have revealed a lack of diversity jurisdiction).

Circuit has previously considered "whether the inherent power to sanction extends in a case, over which the court lacks subject matter jurisdiction, to permit the court to impose a sanction which will be dispositive of the merits of the case." *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 156 (3d Cir. 1997). That Court answered simply: "We think not." *Id.*; *see also Patel v. Allstate New Jersey Ins. Co.*, 648 F. App'x. 258, 262–63 (3d Cir. 2016) (similar). An order delaying the Annual Meeting by at least 60 days is a *de facto* adjudication on the merits because Plaintiffs will insist that, in light of the delayed meeting, Defendants should re-open the nomination period—essentially granting Plaintiffs the "do-over" that they seek for their failure to comply with the Company's Charter and By-Laws in the first place. In the interim, Plaintiffs could remedy their record-holder deficiency and nominate Mr. Braca—the central bit of relief they seek in their underlying Complaint. This relief is not permissible should the Court lack subject matter jurisdiction. In any event, should the Court remand this case, Plaintiffs will have the opportunity to make a request to the state court if they can show a basis for an injunction. If the Court of Common Pleas is the court where the merits of this matter is to be heard—a position with which Defendants disagree—that is the court that should assess the merits and fashion an appropriate remedy if Plaintiffs can sustain their heavy burden to demonstrate that Defendants somehow violated the law by requiring Plaintiffs actually to adhere to the clearly stated, long-standing nomination requirements as set forth in the Company's Charter and By-Laws, and that Plaintiffs face immediate and irreparable harm as a result.

/ / /

/ /

/

19

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court deny the

motion for expedited remand and decline to impose sanctions.

**SPECTOR GADON ROSEN VINCI P.C.**

Dated:  December 28, 2022             */s/ George M. Vinci, Jr.*
                                      George M. Vinci, Jr., Esquire (ID #52645)
                                      Alan B. Epstein, Esquire (ID #2346)
                                      David B. Picker (ID #65153)
                                      Neal R. Troum, Esquire (ID #94572)
                                      1635 Market Street, 7th Floor
                                      Philadelphia, PA  19103
                                      (215) 241-8888 / FAX- (215) 241-8844
                                      gvinci@sgrvlaw.com
                                      aepstein@sgrvlaw.com
                                      dpicker@sgrvlaw.com
                                      ntroum@sgrvlaw.com

                                      *Attorneys for Defendants*

OF COUNSEL:

**VINSON & ELKINS LLP**
Michael L. Charlson* (CA Bar 122125)
Meghan Natenson* (CA Bar 312634)
555 Mission Street, Suite 2000
San Francisco, CA 94105
Phone: 415-979-6910
mcharlson@velaw.com
mnatenson@velaw.com

Marisa Antonelli* (NY Bar 4789848)
1114 Avenue of the Americas, 32nd Floor
New York, New York 10036
Phone: 212-237-0151
mantonelli@velaw.com

*Admitted pro hac vice

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 28, 2022, a true and correct copy of the foregoing

Opposition was served on all counsel of record via the Court's ECF system.

<u>*/s/ George M. Vinci Jr.*      </u>
George M. Vinci, Jr.