**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>Plaintiffs,<br><br>v.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>Defendants. | CIVIL ACTION NO. 2:22-cv-04953 |

**DECLARATION OF LISA R. JACOBS IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

1

1. My name is Lisa R. Jacobs. I am over 21 years of age. I have never been convicted of a felony or a crime involving moral turpitude, and am fully competent to make this declaration. Except as to matters stated on information and belief, the facts stated in this declaration are within my personal knowledge and are true and correct; as to matters identified as being to my information and belief, I am informed and believe them to be true. I am a Defendant in the above-captioned action. This declaration is being submitted with Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction.

2. I currently serve as an independent director on the board of directors (the "Board") of Republic First Bancorp Inc. ("FRBK" or the "Company") and have served as a director since 2017. I also serve as Corporate Secretary, Chair of the Nominating Committee, Chair of the Compliance and Risk Management Committee, and a member of the Compensation Committee.

**The Norcross Group's History with the Company**

3. In late 2021, George E. Norcross, III, Gregory B. Braca, Philip A. Norcross, and the Avery Conner Capital Trust (the "Norcross Group") began engaging with the Company, delivering a series of letters to the Board expressing an interest in investing in the Company and acquiring a controlling or substantial interest in it, and recommending that the Company replace its then-Chief Executive Officer, Vernon W. Hill, II, with Mr. Braca.

4. In the months that followed, the Norcross Group became increasingly critical of Mr. Hill, as well as of former directors Theodore J. Flocco, Jr., Brian P. Tierney and Barry L. Spevak. In addition to leveling criticism, the Norcross Group demanded that the Board form a special litigation committee to investigate aspects of the now-former directors' conduct. The Norcross Group also served multiple books and records demands on the Company.

5.      On March 8, 2022, the Norcross Group filed the first of three lawsuits it would eventually lodge against the Company this year, captioned *Norcross v. Republic First Bancorp, Inc., et al.*, No. 220300955 in the Court of Common Pleas of Philadelphia County (the "First Norcross Lawsuit").  In the First Norcross Lawsuit, the Norcross Group sued the Company and Messrs. Hill, Flocco, Tierney and Spevak, alleging, among other things, that the director defendants had amended or intended to amend certain key executives' employment and compensation agreements in violation of shareholder voting rights and that such amendments were fundamentally unfair transactions.

6.      On March 29, 2022, the Norcross Group filed a second suit against the Company, *Norcross v. Republic First Bancorp, Inc., et al.*, No. 220303030 also in the Court of Common Pleas of Philadelphia County (the "Second Norcross Lawsuit").  This time, the Norcross Group was unhappy with the confidentiality conditions requested by the Company before it would share with the Norcross Group certain corporate books and records that it had demanded.

7.      On May 2, 2022, the Norcross Group filed a preliminary proxy statement with the SEC to oppose the election of Messrs. Hill, Flocco, and Spevak (who the Norcross Group anticipated would comprise the Company's director slate at its 2022 Annual Meeting).

8.      Shortly thereafter, Mr. Flocco died.  Following his death, the Company announced, on May 13, 2022, that the Board had appointed Harry Madonna as Interim Chairman of the Board, replacing Mr. Hill (as I discuss below).  After that announcement, the Norcross Group voluntarily dismissed the First Norcross Lawsuit and the Second Norcross Lawsuit.

9.      Throughout this entire time period, despite their vocal opposition to Mr. Hill and the slate of directors that the Norcross Group anticipated that the Company would put forward at its 2022 annual meeting, the Norcross Group never nominated its own candidate to serve on the

Company's Board. By contrast, another stockholder group critical of the Company, Driver Opportunity Partners and its affiliates (together, "Driver"), which unlike the Norcross Group was and is a record holder of Company shares, actually put forward an alternative slate of directors, one of whom, Peter Bartholow, now sits on the Board (as I also discuss below).

**Deadlock on the Board and Appointment of a Custodian**

10. Prior to May 2022, and in part owing to complaints leveled by the Norcross Group, the Board of FRBK was split evenly into two groups that disagreed over the future direction of the Company. One group consisted of Messrs. Hill, Tierney, Spevak, and Flocco; the other consisted of Mr. Madonna, Andrew Cohen, Harris Wildstein, and myself.

11. As noted above, Mr. Flocco passed away in early May 2022. On May 13, 2022, the majority of the remaining directors called a special Board meeting, at which time we voted to remove Mr. Hill as Chairman of the Board and install Mr. Madonna as Chairman, among other actions. Messrs. Hill, Tierney, and Spevak declined to attend the meeting and asserted that the actions taken were improper.

12. On May 16, 2022, the majority of the Board called two more special meetings, intending, among other things, to appoint a new director to fill the vacancy left by Mr. Flocco.

13. In response, Messrs. Hill, Tierney, and Spevak filed litigation in the U.S. District Court for the Eastern District of Pennsylvania challenging the Board's actions. Rejecting Company arguments based on Article II, Section 7 of the Company's Amended and Restated By-Laws (the "By-Laws"), which governs the appointment of directors in the event of a vacancy, the District Court held that the majority of the Board had acted without a proper quorum (holding that quorum needed to be based on the eight-director Board that existed prior to Mr. Flocco's death). The District Court held that the Board's actions were likely ultra vires and unlawful. Therefore,

3

on May 26, 2022, the District Court issued an order appointing a custodian to (i) oversee a special meeting of shareholders, (ii) to elect a director to replace the late Mr. Flocco, and (iii) take any and all lawful actions necessary to manage the Company.

14. In June 2022, the custodian appointed by the Court, Alfred Putnam, commenced the process to schedule a special meeting of shareholders to fill the Board vacancy resulting from Mr. Flocco's death. While I later learned that Plaintiffs made a demand to inspect certain of the Company's books and records (including shareholder lists) in June 2022, and that Philip Norcross advised of his intention to nominate Mr. Braca as a director of the Company at the contemplated special meeting, the Board was unaware of, and was not involved in reviewing or considering, either the books and records request or Philip Norcross's nomination; nor was I aware of Mr. Putnam's responses to any of these matters.

15. On July 6, 2022, the U.S. Court of Appeals for the Third Circuit reversed the District Court's determination to impose a custodian on the Company. The Court of Appeals held that the District Court had erred in its interpretation of Article II, Section 7 of the Company's By-Laws and had been wrong to appoint a custodian.

16. During the period from the District Court's decision on May 26, 2022 until the Court of Appeals decision on July 6, 2022, the court-appointed custodian, consistent with the District Court's order, had exercised what were normally Board powers. With the Court of Appeals' decision, the Board's normal power and authority were restored.

17. Following the Court of Appeals' decision, in August 2022, Mr. Hill resigned as the Company's CEO. The Board appointed Mr. Madonna as Interim CEO and began a formal search for a new CEO. Messrs. Hill, Tierney, and Spevak also resigned as directors of the Company in August and September of 2022.

**The Company's 2022 Annual Meeting**

18. Internally, the Company's 2022 annual meeting of shareholders (the "Annual Meeting") was originally planned for April 26, 2022, roughly a month after the Company had anticipated filing its Annual Report on Form 10-K for the year ended December 31, 2021 (the "Annual Report") with the U.S. Securities and Exchange Commission ("SEC").

19. On March 31, 2022, the Company's auditors, in connection their audit of the Company's financial statements for the year ended December 31, 2021, advised that they were requesting that an independent investigation be undertaken concerning certain previously disclosed related-party transactions and related matters that were the subject of then-pending litigation involving the Company, including the First Norcross Lawsuit.

20. While this investigation was ongoing, the Company was unable to file its Annual Report.

21. The Company announced that its Annual Meeting had to be delayed until after the Company could filed its Annual Report. The Company delayed the Annual Meeting solely because the Company was unable to file its Annual Report.

22. Because the Annual Meeting had been postponed, the Board contemplated and publicly announced on multiple occasions its intention to set the Annual Meeting promptly after the filing of the Annual Report.

23. Before the Annual Meeting could be scheduled, the Board received multiple letters from the Norcross Group expressing frustration with the postponement of the Annual Meeting and urging the Company to hold its Annual Meeting without further delay. For example, in a June 10, 2022 letter, the Norcross Group stated that "Company needs to hold a shareholder meeting as soon as possible."

24. On October 26, 2022, the Company filed its Annual Report with the SEC.

25. Shortly thereafter, on November 4, 2022, the Company announced that the Annual Meeting would take place on January 26, 2023, providing shareholders with nearly three months' notice of the meeting.

26. On November 4, 2022, the Company also announced that the new deadline for nominations of directors for the postponed Annual Meeting would be November 14, 2022. I understand that record shareholders were permitted to submit notices of an intent to nominate candidates for election as directors at any time, including at any time before the Company had set the date for the Annual Meeting.

27. Neither the Norcross Group nor their counsel expressed any objection to the Board regarding the 10-day deadline at the time it was announced, despite being in close communication with the Company though its counsel and advisors.

**Philip Norcross's November 2022 Director Nomination**

28. In a letter dated October 25, 2022, Philip Norcross made another demand for certain of the Company's books and records. The first item in Mr. Norcross's demand was "a complete record or list of the holders of record of the outstanding shares of the Company's common stock." In response, the Company shared a list of record shareholders with Mr. Norcross, dated as of November 2, 2022.

29. After November 4, when the Company announced the deadline for shareholder director nominations, and although he had apparently prepared nomination materials previously, Philip Norcross waited seven days to advise of his intention to nominate Mr. Braca for election to the Board. Mr. Norcross's nomination letter and accompany materials (the "Notice Materials") were sent November 11, 2022. The Notice Materials included a letter, apparently from Mr.

Norcross's securities brokerage firm, Janney Montgomery Scott LLC, asserting that Mr. Norcross was a record holder of Company shares. The Notice Materials were submitted within the deadline that the Board had established for shareholder nominations of director candidates.

**Mr. Norcross's Failure to Satisfy the Record Holder Requirement**

30. In evaluating the Notice Materials, records maintained by the Company's transfer agent reflect that Philip Norcross was not in fact a record holder of the Company's common stock between November 11 and November 15, 2022, despite his representation in the Notice Materials.

31. Under Article VII, Section D of the Company's Articles of Incorporation (the "Charter"), shareholders who desire to propose nominees to the Board must provide advance written notice of their intentions. Among other things, the advance notice provision requires the nominating shareholder to submit a notice containing five elements, one of which is a "representation that the shareholder is a holder of record of stock entitled to vote at the meeting[.]" Article II, Section 4 of the Company's By-Laws, contains the same provision. These provisions have been part of the Company's charter documents for many years—and in particular, many years before the Norcross Group first began engaging with the Company in late 2021. I believe Mr. Norcross must have been aware of the record-ownership requirement (as well as the other elements of the Company's advance notice provision) because he included a letter from his brokerage firm that represented that he was a record owner (though that representation was inaccurate).

32. The Company's Charter and By-Laws require record ownership for a shareholder to be eligible to nominate directors. Because Philip Norcross's representation that he was a record holder of the Company's stock was untrue, both on the date of his nomination of Mr. Braca and at the deadline for presenting nominations, his Notice Materials were defective under the Company's

7

Charter and By-Laws. The Board accordingly rejected Mr. Norcross's nomination by letter dated November 16, 2022.

33. Had Philip Norcross been a record holder of FRBK shares when he made his nomination in mid-November, or as of the November 14, 2022 nomination deadline, I was prepared, based on the information I had at the time, to accept his nomination of Mr. Braca to the Board and have the Company proceed with a contested election at its Annual Meeting. In fact, on November 14, 2022, concurrently with the Board's consideration of the Notice Materials, the Board interviewed Mr. Braca for the open position of CEO of the Company. The Norcross Group had suggested Mr. Braca as a CEO candidate in connection with the Company's process to replace Mr. Madonna, who has been serving in that role on an interim basis.

34. My understanding and belief was, and is, that the record-ownership provisions in the Company's governing documents are meaningful requirements adopted by many companies to help confirm actual ownership of shares by persons nominating directors. I view the Company's Charter and By-Laws as agreements with the stockholders, and I do not believe that the Company can waive provisions of these foundational documents, or enforce them in a haphazard manner. Even if the Board could legally pick and choose among Charter and By-Law provisions to enforce, I do not believe that it would be sound corporate policy to do so. Instead, my view is that evenhanded application of the rules is the more appropriate course of action.

35. As described above, the Company provided the Norcross Group with shareholder lists showing the record holders of Company stock on at least two occasions in 2022 in response their books and records demands. It turns out that, again, neither Philip Norcross nor any other member of the Norcross Group was included as a record holder on any of these lists.

36. The Board's rejection of Mr. Norcross's Notice Materials on November 16, 2022, was based solely on Mr. Norcross's failure to meet the record-ownership requirement of the Charter and By-Laws, and not for any other reason or purpose.

37. I categorically deny that my or the Board's rejection of Mr. Norcross's nomination of Mr. Braca was part of some supposed plan to entrench current Board members, disenfranchise stockholders, or otherwise to diminish the rights of our stockholders. To the contrary, I believe that our action, evenhandedly applying the clearly stated rules set out in our charter documents, enhanced and confirmed stockholder rights and their protection because adherence to the stated rules negates the opportunity for arbitrary action by the Board or individual stockholders that might advance their interests to the detriment of the general stockholder population.

**Benjamin Duster's Appointment to the Board**

38. In July 2022, following the Third Circuit Court of Appeals' decision confirming the Board's right and duty to do so, the Board appointed Benjamin Duster as a director to fill a Board seat left vacant by Mr. Flocco's death. The Board appointed Mr. Duster pursuant to Article II, Section 7 of the By-Laws, which governs the filling of vacancies on the Board and permits—indeed, requires—the Board to fill a vacancy by a Board vote.

39. Article II, Section 7 of the By-Laws does not mention or require stock ownership for a person being appointed as a director to fill a Board vacancy and serve out the balance of a departed-director's term. While the Board was and is aware that Article II, Section 2 of the By-Laws requires a director to be a Company shareholder "at the commencement of his term," Mr. Duster was appointed to fill out a term "commenced" by someone else—in this case Mr. Flocco, who, by reason of his death, could not conclude his term.

9

**Reduction in Board Seats**

40. On November 4, 2022, the Board determined to reduce the size of the Board from eight to six directors. Under Article II, Section 2 of the By-Laws, the Board has the authority to fix the size of the Board with anywhere between 5 and 25 directors. No By-Law amendment was required, or adopted, to take this action.

41. Again, I categorically deny the Norcross Group's allegation that the reduction in the number of Board seats was part of some scheme to entrench current directors or to limit stockholder rights. The Board's actions, including working with another stockholder group critical of Company management and policies, Driver, to, among other things, identify and appoint Peter Bartholow to the Board in October 2022, negate the Norcross Group's assertions.

42. The decision to reduce the current number of directors was, in the first instance, a reflection of the current number of directors. I believe that it is common for companies to modify their number of directors to reflect the number of people actually serving on the board. Furthermore, as noted above, the Company has been subject to time-consuming and expensive litigation, including a lawsuit brought by Mr. Hill in May 2022 concerning the Board's prior efforts to fill the vacancy resulting from Mr. Flocco's death. These expenses included the expense to defend both the Company and its directors who were sued. More recently, Messrs. Hill and Spevak have sued several directors, and Mr. Hill has sued the Company asserting additional claims. In considering the matter, the Board determined that, no matter who it selected to fill the director vacancies, its nomination of any new director during this charged period could put the Company at risk of additional expense and distraction due to litigation challenging the nomination, which was not in the best interest of the Company or its shareholders. In my judgment, this assessment was correct, and so I voted to reduce the size of the Board.

43. Reducing the number of directors to the number in place, filling the vacancy left by Mr. Flocco's death with Mr. Duster (a person truly independent of the Company), and filling another vacancy with an independent director put forward by Driver (a stockholder who had been very critical of the Company's Board and management) were to me actions that advance stockholder interests and stockholder democracy rather than entrench current directors and disenfranchise stockholders, as the Norcross Group asserts. I had and have no intention, and do not believe I have taken actions to, entrench the current Board, disenfranchise stockholders, or otherwise infringe upon the rights our investors have as FRBK shareholders.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 14th day of December 2022.

Lisa R. Jacobs