**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| George E. Norcross, III, Gregory B. Braca, and Philip A. Norcross,<br><br>Plaintiffs,<br><br>vs.<br><br>Republic First Bancorp, Inc., Harry Madonna, Andrew B. Cohen, Lisa Jacobs, Harris Wildstein, Peter B. Bartholow, and Benjamin C. Duster, IV,<br><br>Defendants. | : : : : : : : : : : : : : : : : : | **CIVIL ACTION**<br>**NO. 22-cv-04953 (PD)** |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR**
**MOTION FOR EXPEDITED REMAND**

Defendants' opposition brief ("Def. Br.") fails to address the elephant in the room—that Defendants only removed this action on the eve of an injunction hearing after they were unable to persuade the state court to delay. The removal was a tactical ploy to derail the state court's determination so Plaintiffs would not have enough time to wage a successful proxy contest even if they prevailed.

In an effort to avoid sanctions for their bad-faith removal, Defendants contort the allegations of the Complaint and misapply controlling law to try to fit a square peg into a round hole. Defendants admit, as they must, that none of the counts in Plaintiffs' Complaint asserts a claim under federal law. Instead, Defendants claim that three counts of the Complaint somehow turn on issues of federal law and therefore jurisdiction is proper under the *Grable* test. But, try as they might, Defendants do not and cannot show that any federal issue is "necessarily raised." None of Plaintiffs' claims requires a court to interpret or apply federal law for Plaintiffs to prevail.

Defendants are wrong on both the facts and the law and their distortions cannot succeed. This case should be remanded and Defendants sanctioned for their bad-faith abuse of the judicial system.

## I.     The Complaint Provides No Basis for Federal Question Jurisdiction

As an initial matter, Defendants ignore the heavy burden they must meet to avoid remand. On a motion to remand, "it is always the removing party's burden to prove the propriety of removal, and any doubts about the existence of federal jurisdiction must be resolved in favor of remand." *Lumbermans Mut. Cas. Co. v. Fishman*, No. 99-0929, 1999 U.S. Dist. LEXIS 14501, at *4 (E.D. Pa. Sep. 22, 1999) (citing *Batoff v. State Farm Ins. Co*., 977 F.2d 848, 851 (3d Cir.1992)); *see also Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) (stating removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand"). Where a complaint does not assert a federal claim (which Defendants concede is the case here (*see* Def. Br. 5)), federal jurisdiction exists "only if [a federal law] question 'is a necessary element of one of the well-pleaded state claims.'" *United Jersey Banks v. Parell*, 783 F.2d 360, 366 (3d Cir. 1986).   In other words, federal issues are "necessarily raised" only where "vindication of a right under state law must necessarily turn on some construction of federal law." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc*., 772 F.3d 158, 163 (3d Cir. 2014); *see also Goldman v. Citigroup Glob. Mkts. Inc*., 834 F.3d 242, 249 (3d Cir. 2016) (federal subject matter jurisdiction exists where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law") (*quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

That is plainly not the case here. Defendants contend that Plaintiffs' purely state law claims somehow require interpretation of federal laws—one of which is not even cited in the Complaint (or Defendants' Notice of Removal), and the other of which the Complaint does not assert provides

Plaintiffs any relief.  (*See* Def. Br. 6).  These federal laws need not be analyzed, interpreted or even considered to establish Plaintiffs' right to relief under their state law claims.

Plaintiffs' claims are straightforward state law shareholder rights claims against a Pennsylvania company and its board—Defendants manipulated the board composition and rigged the nomination process for the upcoming annual shareholder meeting to entrench themselves, squelch Plaintiffs' ongoing proxy contest, and disenfranchise Plaintiffs and all other Republic First shareholders.  Nothing about Plaintiffs' claims relies on any federal rule or statute.

Despite this, Defendants contend that Count I of the Complaint (asserting violations of shareholder rights based on the board's elimination of two vacant seats) requires the Court interpret federal banking law because Plaintiffs stated that the reduction "arguably limited" their ability to nominate more than one director.  (*See* Def. Br. 10–12, Compl. ¶ 16 n.2).  This is not an element of any claim, and no determination on this issue is required or even relevant to a decision on Plaintiffs' claim.  No claim whatsoever turns on this fact.  Instead, as the Complaint demonstrates, the state law claim Plaintiffs assert is focused on actions by Defendants that are identical to those engaged in by a similarly motivated Board seeking to entrench itself in *Pell v. Kill*, 135 A.3d 764 (Del. Ch. 2016).  (*See* Compl. ¶¶ 23–24, 134–35, 148–49).  That case is, not surprisingly, wholly ignored by Defendants in their remand brief because it demonstrates unequivocally the state law and only state law underpinnings of the claims in this case.  In *Pell* (cited in the Complaint and a central focus of Plaintiffs' injunction motion and brief—*see* Plaintiffs' Motion for Preliminary Injunction (the "Pennsylvania PI Motion"), attached as Exhibit B to the Declaration of Laura E. Krabill accompanying Plaintiffs' Motion for Preliminary Injunction (the "Krabill Decl."), Dkt. No. 5-6, at ¶¶ 59, 62–64; Memorandum of Law in Support (the "Pennsylvania PI Brief"), attached as Exhibit C to the Krabill Decl., Dkt. No. 5-7, at 31–35, 43–44), the Delaware Chancery Court found

the board's reduction of the number of seats in the face of a potential proxy contest invalid and a violation of the dissident shareholders' voting rights and right to contest a board election.[1] *Pell*, 135 A.3d at 769–70.

Here, the 2022 annual shareholder meeting had three Class III board seats up for election (two with incumbent directors appointed by the Board in the past six months without shareholder approval, alongside one vacant seat). Defendants eliminated one of those three Class III seats, necessarily restricting Plaintiffs' (and other shareholders') ability to nominate or advocate for a director to fill the empty seat and to vote for a director who would not be hand-picked by and aligned with the incumbent Board members. Defendants' board reduction scheme also undermined Plaintiffs' proxy contest by requiring Plaintiffs' candidate to face a more difficult election, running against an incumbent director rather than to fill a vacant seat. It mooted Plaintiffs' special meeting request to allow shareholders to elect directors to fill the two vacant board seats. It violated the Company's bylaws, both by rendering the classes of Board seats uneven (with one Class I, three Class II, and two Class III directors) and by failing to fill a board vacancy within 60 days. All of these harms to Plaintiffs' proxy contest and voting rights establish Plaintiffs' right to relief. None of this relies on any federal law or issue.

---

[1]   Indeed, Defendants' manipulation of the board composition to stymie shareholders' voting rights is even more apparent now in light of their most recent actions. On December 22, 2022, Defendants expanded the Board to add back one of the seats they eliminated only one month earlier. (*See* Declaration of Adrian R. King filed herewith ("King Decl.") ¶ 3, Ex. B). Despite their claimed business justification, the intent and effect of Defendants' manipulation of the Board composition is clear—it allowed the Director Defendants to fill vacancies with directors of their choosing, rather than allowing Plaintiffs and the Company's other shareholders to elect the stewards of their enterprise. As the Delaware Chancery Court explained in *Pell*: "The problem is that when facing an electoral contest, incumbent directors are not entitled to determine the outcome for the stockholders. Stockholders elect directors, not the other way around." *Pell*, 135 A.3d at 769.

No court need determine (or even consider) whether the reduction of board seats did, in fact, alter the number of directors Plaintiffs could nominate to hold that Defendants' actions constituted an impermissible infringement of Plaintiffs' voting rights. Defendants seek to take background information about a regulatory provision and bootstrap it into a federal claim where none exists. Such attempts have routinely been rejected as what they undoubtedly are -- futile attempts to unjustifiably expand federal jurisdiction. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 709 (3d Cir. 2022) (for a complaint to raise a "substantial, disputed federal question," it must be necessary that "to prove some *element* of a state-law claim, the plaintiff had to win on an issue of federal law.") (emphasis in original); *see also Manning*, 772 F.3d at 160 (rejecting federal-question jurisdiction despite repeated references to Reg SHO because "the success of Plaintiffs' state-law cause of action does not 'necessarily' depend upon the contents of federal law").

Likewise, Defendants claim that Counts II and V of the Complaint (asserting violation of shareholder voting rights, the Company's Articles, Bylaws, and Pennsylvania law based on Defendants' rigging of the nomination process) implicate federal jurisdiction because Plaintiffs reference Rule 14a-8, which is incorporated into the nomination process set forth in the Company's Articles and Bylaws. (Def. Br. 7–10). Again, Defendants are wrong on the facts and the law.

To the extent Defendants claim that the Complaint relies on Rule 14a-8 to argue that the nomination deadline was unreasonably short, the Complaint specifically asserts that violation under *Pennsylvania state law* (15 Pa. C.S. § 1758(e)). (Compl. ¶ 122 (citing the statute and its explanatory notes) & Count V (asserting violation of Pennsylvania law)). Once again, Defendants conflate background contextual allegations with the state law claims actually presented. Plaintiffs pointed out that even federal law requires reasonable time for nominations in a discussion of the appropriate nomination processes, but precisely and with clarity predicated their claims on state

law grounds and those grounds alone. The fact that the deadline unjustifiably imposed by Defendants also violated the "reasonable time" requirement of Rule 14a-8 cannot provide federal jurisdiction.   As the Third Circuit and Supreme Court have repeatedly held, "even if Plaintiffs' claims were partially predicated on federal law, federal law would still not be 'necessarily raised'" under the *Grable* test if the claim is "supported by alternative theories" some of which do not rely on establishing a violation of federal law. *Manning*, 772 F.3d at 164 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)).   Here, although Plaintiffs' claims mention federal law, they are not even partially predicated on that law.

Further, Defendants' contention that Plaintiffs rely on the rule to support their nomination is a total mischaracterization of the explicit counts of the Complaint.   Instead, the Complaint asserts that Defendants waived any requirement of record ownership and are estopped from rejecting Mr. Norcross' status as a record holder of shares based on their acceptance of Mr. Norcross as a record owner on three prior occasions.  (Compl. ¶¶ 116–17, 142–146, Counts III, IV).  Further, Plaintiffs explain that they could have cured the purported deficiency in the nomination if Defendants had not set the nomination deadline in bad faith and advised Plaintiffs before the deadline of their position that Plaintiffs were not record holders.  (Compl. ¶ 118).  Again, none of this requires any consideration of Rule 14a-8 for Plaintiffs to prevail or of any other federal law.  Estoppel and bad faith are not federal law concepts contemplated by the federal question grant of jurisdiction to the federal courts.   Instead, they are quintessential state law concepts, involving appropriate procedures for states to govern corporations created under the states' jurisdiction.   Federalizing state corporation law is impermissible absent clear congressional intent.  *See Santa Fe v. Green*, 430 U.S. 462, 464 (1977).

6

In fact, contrary to Defendants' claims to this Court, the Complaint repeatedly concedes that Plaintiffs do not and cannot rely on Rule 14a-8 to allow their nomination because the deadline was two days before they would have met the one-year holding requirement under the rule. (Compl. ¶¶ 119–20, 144, 164 ("Defendants also set an unreasonable deadline for submission of director nominations . . . in bad faith and with the specific goal of precluding Plaintiffs from meeting the standards under the Exchange Act Rule 14a-8 . . . .")). Rather than forming the basis for any claim, the Complaint's reference to Rule 14a-8 only bolsters Plaintiffs' other evidence that Defendants acted in bad faith in setting the nomination deadline.[2] As Pennsylvania courts have ruled, even if a Board's actions could otherwise be permissible, they violate Pennsylvania law if taken in bad faith to undermine a proxy contest. *See Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D.&C.4th 391, 406–07 (Phila. C.P. 2002).

More likely to avoid sanctions than any legitimate effort to support removal, Defendants cite 37 cases purportedly supporting their contention that federal question jurisdiction lies here, none of which helps them. In fact, the vast majority reject federal question jurisdiction in cases where federal statutes or rules are far more integral to the plaintiffs' claims than here. (*See* Def. Br. 5 (citing *City of Hoboken*, 45 F.4th at 699 (upholding remand despite federal laws regarding oil production and Shelf Act); *Gunn v. Minton*, 568 U.S. 251 (2013) (ordering remand for

---

[2] Even then, no court need determine if Plaintiffs could, in fact, rely on Rule 14a-8 if the deadline were later; the trier of fact need only consider whether Defendants set the deadline in bad faith to foreclose Plaintiffs from making that argument. Notably, while Defendants submit declarations from all of the Board members in opposition to Plaintiffs' injunction motion, (*see* Dkt. Nos. 20-1 through 20-8), those declarations are carefully crafted to avoid addressing whether the Board considered Plaintiffs' ownership when setting the November 14 deadline for submitting nominations. The silence is deafening. And, the declarations are not subject to cross-examination—an opportunity Plaintiffs would have had on December 16 had the injunction hearing in the state court gone forward. Defendants have thus far avoided that test of their assertions through their improper removal.

malpractice action requiring trying a patent case within the malpractice case); *United Jersey Banks*, 783 F.2d 360 (reversing denial of remand in case involving bank mergers despite significant federal banking statutes); *Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242 (3d Cir. 2016) (dismissing challenge to FINRA arbitration award regarding securities violations for lack of federal question jurisdiction)); *id.* at 6 (citing *Manning*, 772 F.3d at 158 (reversing denial of remand and finding no federal question jurisdiction over claims relating to short selling despite multiple references to Reg SHO)); *id.* at 14 (citing *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317 (3d Cir. 2010) (dismissing claim asserting breach of contract through violation of Federal Aviation Act for lack of federal question jurisdiction under *Grable* test))).

Defendants stretch to find any case law upholding removal where federal jurisdiction is premised on satisfying the *Grable* test. The few cases they cite demonstrate that removal in this case was entirely unwarranted. For instance, in *Holtzman v. Phila. Museum of Art*, No. 22-cv-122-JMY, 2022 U.S. Dist. LEXIS 120490 (E.D. Pa. July 7, 2022), cited repeatedly by Defendants, the plaintiffs relied on the extended limitation period set forth in the Holocaust Expropriated Art Recovery Act ("HEAR Act") of 2016, to assert their untimely state law claims to recover certain artwork from the museum. *Id.* at *18–19. There were substantial disputes over whether the HEAR Act applied to the art at issue and, absent its application, the claims would necessarily fail. *Id.* at *22–23. The Court also recognized that the plaintiffs' ownership claims would necessarily rely on international law and treaties that would need to be analyzed and applied for plaintiffs to prevail. *Id.* at *23–24. The Court explained that Holtzman's reliance on federal law as an essential element of the claims was starkly different than in *Manning*, where the plaintiffs cited federal securities laws regarding short sale regulations "as a way to exemplify defendants' improper behavior; however, they alleged those misgivings had been perpetrated in violation of state law. They did

not affirmatively plead that any portion of their claim depended on the interpretation of the regulations they mentioned, nor did the relief they requested ultimately entail the court's resolution of a federal issue." *Id.* at *17–18. Here, the Complaint's few references to Rule 14a-8 and federal banking regulations, as in *Manning*, only "exemplify defendants' improper behavior"—the claims in the Complaint are not dependent on any interpretation of federal law.

Likewise, in *PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101 (3d Cir. 2006), cited by Defendants, the plaintiff sought a declaratory judgment that a trust for black lung funds did not contain "excess assets" as defined by federal tax law. *Id.* at 104. Interpreting the federal tax law was essential to ruling on the claim. *Id.* at 104–05. Indeed, there is no indication in the court's ruling that plaintiff ever challenged the removal of the action. In *Koresko v. Murphy*, 464 F. Supp. 2d 463 (E.D. Pa. 2006), also cited by Defendants, the plaintiff's claim for rescission of the parties' contract relied on defendant's purported violation of federal law regarding odometer disclosures. *See id.* at 465–66 ("More specifically, Plaintiff assert that Defendants failed to comply with 49 U.S.C. § 32705[] . . . ."). And, in *New York ex rel. Jacobsen v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308 (2d Cir. 2016), plaintiff's qui tam action alleged that various securitizations by Wells Fargo did not qualify as REMICs under federal tax laws and therefore were taxable under New York state law. *Id.* at 317. Clearly, the analysis and determination of the federal tax laws was essential to the claim. *See id.* at 317–18 (analyzing *Grable* factors). Finally, Defendants rely on multiple cases against securities exchanges where the claims required determining whether the exchanges violated federal rules and regulations governing them. (*See* Def. Br. 13). These cases have no applicability here and only go to show that remand is required.

## II.        Sanctions for Defendants' Bad Faith Removal Are Warranted

Defendants' distortion of Plaintiffs' claims and the legal standards for remand in their brief further support Plaintiffs' request for sanctions.  Here, rather than any legitimate belief that federal jurisdiction was proper, Defendants removed this action in a bad-faith abuse of the judicial process to prevent the state court from proceeding with the scheduled injunction hearing.

Defendants' opposition fails to address the history of the proceedings in the state court establishing their bad faith in removing this action to derail the state court's injunction hearing because they have no legitimate excuse.[3]  Defendants have sought delay at every turn as part of their scheme to avoid a fair election of directors.  The removal was just another ploy to delay and gain an unfair advantage by forestalling the resolution of Plaintiffs' claims and Plaintiffs' ability to proceed with proxy solicitations for their chosen director candidate.[4]

---

[3]    Defendants' only response to the timing of their removal is that it came "[w]ithin a few days of accepting service." (Def. Br. 4).  This characterization is misleading at best.  Plaintiffs emailed the Complaint to lead defense counsel on November 22, 2022—the day it was filed.  Defense counsel confirmed there would be no issue with accepting service. (Krabill Decl., Dkt. No. 5-4, at ¶ 2).  Shortly before the injunction hearing, apparently as part of their ploy to make this very argument, defense counsel emailed plaintiffs' counsel purporting to clarify the terms of the acceptance of service.  (*Id.* ¶ 16, Ex. L, Dkt. No. 5-16 (Dec. 12 email correspondence)).  By that time, defense counsel had already participated in calls with the state court administrator and judge's chambers and submitted a letter to the court seeking to delay their response time and the injunction hearing.  (*Id.* ¶¶ 13–16).  The bad faith timing of Defendants' December 13 removal (the day before their response was due and three days before the scheduled hearing) cannot be brushed aside with claims that they only just accepted service.

[4]    Defendants claim Plaintiffs are still precluded from soliciting shareholders because they have not received approval from the Pennsylvania banking commission.  (Def. Br. 17–18).  This is untrue.  As Plaintiffs anticipated, they received that approval on December 16—the day the injunction hearing was set to proceed in state court.  (*See* King Decl. ¶ 2, Ex. A (Dec. 16, 2022 letter)).  Defendants also criticize Plaintiffs for not filing a preliminary proxy with the SEC.  (Def. Br. 18).  This is absurd—where Defendants have wrongfully rejected Plaintiffs' director nomination and advised shareholders to ignore any proxy sent to them by Plaintiffs, Plaintiffs would be sowing confusion in the marketplace by filing a preliminary proxy with the SEC before their right to nominate is established in this suit.

Defendants lacked an objectively reasonable basis for seeking removal, which alone justifies an award of attorneys' fees and costs under 28 U.S.C. § 1447(c). But, more importantly, after unsuccessfully advocating for a delay of the injunction briefing and hearing in the state court, Defendants used their improper removal to obtain the extension of time that court refused to grant. The state court had given Defendants the opportunity to obtain additional time if Defendants agreed to delay the 2022 annual meeting for 30 days. (*See* Krabill Decl., Dkt. No. 5-4, at ¶ 14). The court had agreed to schedule the hearing for mid-January and even proffered a likely date (January 18, 2023). (*Id.*) Instead of accepting the court's proposal, Defendants took the extension by improper means.

This Court has inherent powers to sanction abusive litigation conduct, just as it has power to award attorneys' fees and costs, even where it otherwise lacks jurisdiction over a removed action. Otherwise, litigants could engage in improper delaying tactics through removal with little to no risk of consequences. The Court's inherent powers allow it to fashion a sanction that is appropriate to redress the misconduct. Here, where the state court offered Defendants the delay they sought upon a specific condition and Defendants obtained the delay through improper means, it is entirely appropriate for this Court to order that Defendants adhere to the condition the state court imposed—delaying the annual meeting by 30 days. Furthermore, now in light of the delays caused by Defendants' misconduct, the state court may not be able to address the injunction motion in the time frame it had previously proposed. This warrants a 60-day (rather than 30-day) delay of the meeting date, to give the state court more flexibility in scheduling. The sanction Plaintiffs propose is not, as Defendants suggest, "case dispositive," but only attempts to put the parties in the position they would have been in absent Defendants' misconduct. It is perfectly aligned to

redress Defendants' misconduct.  This Court has the power to issue this nonmonetary sanction and should exercise that power here.


Dated: January 4, 2023                    Respectfully submitted,


                                          /s/ M. Norman Goldberger_____
                                          **BALLARD SPAHR LLP**
                                          M. Norman Goldberger
                                          Adrian R. King, Jr.
                                          Laura E. Krabill
                                          Shawn F. Summers
                                          1735 Market Street, 51st Floor
                                          Philadelphia, PA 19103
                                          Direct: (215) 864.8622
                                          kinga@ballardspahr.com
                                          goldbergern@ballardspahr.com
                                          krabilll@ballardspahr.com


                                          *Attorneys for Plaintiffs George E. Norcross, III,*
                                          *Gregory B. Braca, and Philip A. Norcross*

OF COUNSEL:

Brian T. Frawley
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
212.558.4000
frawleyb@sullcrom.com